

# KEZHAYA LAW PLC

MATTHEW A. KEZHAYA
1202 NE MCCLAIN RD
BENTONVILLE, AR 72712

P: (479) 431-6112
F: (479) 282-2892
MATT@KEZHAYA.LAW

October 30, 2021

Newsweek Magazine LLC
ATTN: Ms. Nancy Cooper, editor in chief
1 World Trade Ctr
Floor 72
New York, NY 10007

Newsweek Magazine LLC
c/o Allstate Corporate Services Corp., registered
99 Washington Ave.
Suite 1008
Albany, NY 12260

Newsweek Magazine LLC
ATTN: Corrections Team
      **By email only to**: support@newsweek.com

Re: <u>Satanic Temple v. Newsweek LLC</u> – demand for retraction

Ms. Cooper and Corrections Team:

I serve as general counsel for The Satanic Temple, Inc. ("**TST**"), a Massachusetts religious corporation which was recently the subject of a *Newsweek* article by Ms. Julia Duin: "Orgies, Harassment, Fraud: Satanic Temple Rocked by Accusations, Lawsuit" (available at https://www.newsweek.com/orgies-harassment-fraud-satanic-temple-rocked-accusations-lawsuit-1644042) (published on October 29, 2021).

Ms. Duin "reported," as if there was any factual merit, on anonymous rumors devoid of any factual detail, naked editorialization, and provably false allegations. She failed to engage in any basic fact-checking. She provably failed to provide my client an opportunity to respond to the statements detailed below. By this letter, I demand that *Newsweek* promptly retract the article and issue a correction statement; or, failing that, remove all of the offending material along with a correction statement. Please do so by **November 1, 2021 at 12:00 pm**, Central Time.

Initially, TST was excited at the prospect of being the subject of an article by your fine publication. *Newsweek* enjoys a reputation for credible journalism, which can be fairly credited to its robust editorial policy that supports the values of "accurate, independent, ethical and responsible journalism." "Editorial Guidelines" (available at https://www.newsweek.com/editorial-guidelines). My client expected that your reporter would follow your Guidelines. This did not pan out.

The Guidelines instruct your reporters to: (1) "Check every single fact that you include;" (2) "Weigh the data and evidence impartially;" (3) "Reach out for comment and give parties time to



## KEZHAYA LAW PLC

MATTHEW A. KEZHAYA
1202 NE MCCLAIN RD
BENTONVILLE, AR 72712

P: (479) 431-6112
F: (479) 282-2892
MATT@KEZHAYA.LAW

respond" and more particularly "If we are accusing a person or company of wrongdoing, we must include fair comment;" (4) "With very rare exception, do not aggregate stories that rely on anonymous sources;" and (5) "If in any doubt about the source of material, don't do the story." Id. The policy additionally advises: "We make any needed corrections promptly and transparently." Id.

Despite these standards, the article is riddled with offending material which can only be explained as a failure to follow the Guidelines. The numerosity and severity of the offending material suggests that Ms. Duin had an improper purpose in publishing the article. The idea is bolstered by the fact that the assertions in the piece inconsistently suggest that TST is simultaneously "inept" and "rudderless," yet also so totalitarian that no dissenters are allowed; both cozy with the alt-right yet also just an "SJW poly social club." The only consistent thread in the article is that it disparages TST. The repeated editorialization further supports that disparagement is the point. The article even ends in a call to action to raise money for people who proudly stole TST's Facebook and directed defamatory content at TST's own hard-won audience. The proof of actual malice is unavoidable.

Moreover, to the meager extent she offered TST an opportunity to comment, she abandoned the half-baked questions about TST's tax and corporate structure (they are the product of an evolving organization and based upon the advice of competent professional advisors), or that it is a "pyramid scheme" (members are neither required no pressured to donate funds to TST). So she knew how to ask questions and invite commentary, but she stopped asking about matters she wanted to include in the article.

By publishing these defamatory statements, *Newsweek* has tied its reputation to the credibility of the Defendants and other disgruntled former members. This would be defensible if Ms. Duin provided TST an opportunity to comment on the below allegations, or if she engaged in a fact-checking process, or if she evaluated the evidence impartially, or if she avoided the use of anonymous sources. She did none of this. As further detailed below, the article unashamedly presents rumor and intrigue as if it were credible reporting. Ms. Duin failed to meet your Guidelines. I am hopeful that you will adhere to your Guidelines, by making the needed corrections, "promptly and transparently."

My client takes issue with the following enumerated quotes, in order of appearance in the article as it appeared on October 29, 2021. The indented paragraph below each quote is TST's response.

1. Orgies, Harassment, Fraud: Satanic Temple Rocked by Accusations, Lawsuit

   The name of the article is misleading. In our headline-driven world, this clickbait has a tendency to harm TST by falsely implying that TST is being sued about allegations of orgies, harassment, and fraud. In fact, TST brought the lawsuit and it asserts a property dispute with an attendant defamation issue. See <u>United Federation of Churches LLC v. Johnson et al.</u>, case no. 2:20-cv-509, doc. 26 (W.D. Wa. 2020). Nothing in the piece even addresses fraud, neither by TST nor against TST.

2. The four members say they posted only links to news articles and other material already in the public sphere.



## KEZHAYA LAW PLC

MATTHEW A. KEZHAYA
1202 NE McCLAIN RD
BENTONVILLE, AR 72712

P: (479) 431-6112
F: (479) 282-2892
MATT@KEZHAYA.LAW

I could have explained some basic law to Ms. Duin, had she invited comment on this. It is universally held that there is no defense to defamation for "only" reposting defamatory matter which was already in the public sphere. 53 C.J.S. Libel and Slander; Injurious Falsehood § 99 ("The maker of a republication or repetition of a defamatory matter, although not liable for the results of the primary publication unless the republisher or repeater makes or participates in making it is, however, liable for the consequences of a subsequent publication which the republisher or repeater makes or participates in making.")

3.   They [Defendants] feel responsible for disclosing that TST . . . has plenty of its own skeletons

"Disclosing" is editorialization.  It presumes that the proffered information is true, i.e. that TST really does have "plenty of its own skeletons."  As further addressed below, each of Defendants' claims are false (to the extent they are discrete enough to even address), and Ms. Duin would have discovered this had she engaged in a basic fact-checking process before simply parroting salacious and cryptic accusations of wrongdoing from biased sources.  Minimally, she should have given TST a fair comment on the Defendants' assertions before reporting them as if they were fact.

4.   In 2018, TST sued Twitter for temporarily suspending the account of co-founder Lucien Greaves

This is materially false on at least three fronts.

First, TST did not "sue" Twitter.  To say that TST "sued" Twitter falsely suggests that TST engaged in a formal judicial complaint process, which any layman knows to be very costly.  A reasonable reader of this sentence would expect that the "suit" cost TST a lot of money.  In truth, TST invited an administrative mediation process.  The matter was covered *pro bono* by Marc (not "Mark") Randazza.  No TST money was expended.

Second, TST did not begin this process because Twitter "temporarily" suspended Greaves's account.  Instead, it was because Twitter *permanently* suspended Greaves's account.  And it did so in retaliation for Greaves taking issue with a tweet, which was beginning to go viral, that invited the general public to burn down TST's headquarters.

Third, the sentence falsely implies that, by TST raising this issue against Twitter, it inured to the sole personal benefit of Greaves.  This is missing necessary context. Twitter suspended TST's account at the same time as Greaves's account. Social media is critical to TST's ability to propagate its messaging, so TST had an obvious organizational interest in maintaining its own account.  The same is true for Greaves's account.  Greaves is TST's primary spokesperson.  If he no longer has a Twitter account, his ability to perform his role for TST is diminished, causing harm to the

## KEZHAYA LAW PLC



MATTHEW A. KEZHAYA
1202 NE MCCLAIN RD
BENTONVILLE, AR 72712

P: (479) 431-6112
F: (479) 282-2892
MATT@KEZHAYA.LAW

organization.

TST wasn't even notified that Duin was looking to report on the Twitter issue. Had Duin extended an opportunity to comment, per the Guidelines, this could have been explained and documentary evidence provided.

5.   Lucien Greaves (also known as … )

This is an egregious affront. Mr. Greaves is the regular recipient of death threats, a point he made clear to Ms. Duin in writing. On multiple occasions, he specifically asked that his legal name be omitted from this article. His name can be used to cause him harm. His legal name can be used to cause harm to those he cares about. To protect himself and those around him, he uses a pseudonym. Including his name is not only rude and harassing, it jeopardizes innocent lives.

This was plainly malicious. Your reporter had the good decency to use the pseudonyms for Scott Malphas, Jinx Strange, and Salome DeMeur throughout the piece. So, what, a source's identity need not be put to public scrutiny, but Greaves's does? This issue also ties into the false accusation, below, that TST threatened to dox a former member. If Duin is satisfied to use pseudonymous sources, "Greaves" should be satisfactory, as well.

6.   (It's not clear whether TST actually practices abortion as a religious ritual; the claim may be a legal tactic or political theatre.)

This is editorialization. It is also false. In fact, it *is* clear that TST "actually practices abortion as a religious ritual." This is a matter of public record. See <u>Satanic Temple v. Young</u>, case no. 4:21-cv-387, doc. 26 at ¶¶ 47-58 (S.D. Tx. 2021). Had Ms. Duin invited comment on the issue, we could have explained this or provided sufficient proof for her satisfaction. Instead, she made a veiled accusation that TST raised a false claim to a federal court. This is far too serious a charge to be made flippantly.

7.   Bit by bit, items critical of TST showed up on its Seattle chapter's Facebook page.

TST has no idea what this sentence is talking about. No items "critical of TST" were posted on the Chapter page until after the hacking. Instead, Defendants were posting inane material on TST's Facebook page, not critical of TST, but which endorsed leftist politics as opposed to Satanism. See <u>United Federation of Churches LLC v. Johnson et al.</u>, case no. 2:20-cv-509, doc. 26 at ¶¶ 33-42 (W.D. Wa. 2020). The Defendants' inane material created a false impression that TST is a leftist political organization. That dissuades membership from every other political walk of life. TST is a religious institution, not a political one. We invite participation and membership from all across the political spectrum.



# KEZHAYA LAW PLC

MATTHEW A. KEZHAYA
1202 NE MCCLAIN RD
BENTONVILLE, AR 72712

P: (479) 431-6112
F: (479) 282-2892
MATT@KEZHAYA.LAW

The statement also falsely implies that "items critical of TST" had something to do with the removal of Defendants from their positions on the advisory council. In fact, they were removed because: (1) they were inflaming interpersonal conflicts within the advisory council; (2) they were repeatedly operating TST's social media to endorse leftist politics as opposed to Satanism, despite repeated reminders that this was unacceptable; (3) they failed to attend a particular meeting to address the issue of appropriate content to post on TST's social media; and (4) they failed to participate in publicity efforts on a matter of organizational significance. Id. at ¶¶ 41-43. Ms. Duin should have invited comment if she did not understand the allegations of the complaint.

8.  A more recent page, "Evergreen Memes for Queer Satanic Fiends," had 500 followers

The article misquotes the complaint. The complaint says that the page was called "TST WA Allies" until Defendants stole and renamed it. See United Federation of Churches LLC v. Johnson et al., case no. 2:20-cv-509, doc. 26 at ¶ 32 (W.D. Wa. 2020). The theft took place after Defendants were removed from their advisory council positions.

We provided the Facebook page history which proves this. Id. at Exhibit 3. There is absolutely no justification for the article to claim that the complaint says the page "was" (past tense) named "Evergreen Memes for Queer Satanic Fiends."

9.  The defendants denied all charges, saying the real issue concerned an intra-chapter feud where the four of them were copied on an email about an ethics complaint involving sexual harassment.

The claim that defendants "denied" allegations is misleading in the article's context of discussing litigation pleadings. An answer is the first document in which a defendant denies any allegations of the complaint. Defendants have not filed an answer. At no point have they ever formally denied any of the allegations of the complaint.

The remainder of the sentence does not meet the allegations of the complaint. Defendants can cry foul about being removed from their advisory positions all they like, but that isn't what this case is about. This case is about their decision, after being removed, to take property which does not belong to them and then use that property to harm the property's true owner. They have never denied that. Nor can they. Sullivan contemporaneously bragged that "we [Defendants] have a meme page here that we *stole* from TST." Id. at Exhibit 5, p. 3 (emphasis added). They knew full-well that they were "stealing" property that did not belong to them.

10. Meanwhile some members wondered why an organization like TST would go after four Seattleites with very modest means while it had bigger fish to fry elsewhere.



# KEZHAYA LAW PLC

MATTHEW A. KEZHAYA
1202 NE MCCLAIN RD
BENTONVILLE, AR 72712

P: (479) 431-6112
F: (479) 282-2892
MATT@KEZHAYA.LAW

These "some members" are either anonymous sources prohibited by the Guidelines, or fabrications which should have been discovered through fact-checking.

TST was never "going after" Defendants. That is editorialization. "Going after" implies that TST started this dispute. Defendants could have exited the organization with grace. Instead, they chose to steal TST's property. This lawsuit is the only lawful means for TST to seek a remedy for the harm.

As for their "modest" means, that is no defense to a lawsuit. The law expects them to think about the legal consequences of causing financial harm *before* they cause it.

As for the "bigger fish to fry elsewhere" comment, this is false. If every exiting member had free reign to take the product of years of investment as a souvenir, TST would not last very long as an organization. Ms. Duin should have invited comment on these assertions.

11. "You have no allegations of fraudulent activity by myself, by Leah or even by Joshua"

The complaint does not assert fraud against anyone. Each of the Defendants share liability for all of the actions taken pursuant to their wrongful agreement. This is a basic doctrine, called civil conspiracy, and I could have explained it to Ms. Duin if she had invited comment on this point.

12. In a withering 14-page judgment, U.S. District Judge Richard A. Jones dismissed the lawsuit on Feb. 26, 2021, saying the plaintiffs got their facts wrong on the actual domain name of the Facebook page and that other claims made by TST were "implausible."

"Withering" is editorialization. It falsely ascribes intent to the Judge. Contra. Editorial Guidelines ("Don't imply motive.") The opinion (doc. 20) found some material facts were missing from the complaint and gave us an opportunity to correct them. This is normal, not "withering."

As for the comment that "plaintiffs got their facts wrong on the actual domain name of the Facebook page," this is simply false. On a motion to dismiss, the facts of the complaint are deemed true; there is no basis for a judge to find that a plaintiff "got their facts wrong." Instead, the order held that the Anticybersquatting Consumer Protection Act of 1999 ("**ACPA**") (which prohibits trademark infringements in a statutorily-defined "domain name") does not apply to Facebook pages. This was a legal issue, and a technical one at that. It was not a factual issue. I explained this in TST's motion to reconsider, doc. 21 at pp. 1-5, a copy of which I gave to Ms. Duin for discussion about defamation. She should have invited comment about the ACPA claim if she did not understand its legal posture.

As for the comment that "other claims made by TST were 'implausible,'" the word



KEZHAYA LAW PLC

MATTHEW A. KEZHAYA
1202 NE McCLAIN RD
BENTONVILLE, AR 72712

P: (479) 431-6112
F: (479) 282-2892
MATT@KEZHAYA.LAW

"implausible" does not appear anywhere in the order.  Again, the facts of the complaint are deemed true at this stage of the proceedings.  The Judge could not (and did not) find that the facts asserted were "implausible."  This falsely attributes a quote.  It is also editorialization.

13.  "It was tossed out because they [TST] claim to be a religion and you are allowed to criticize religions," Johnson said.  "They like to say they are a business when it comes to competitor organizations forming or when someone is using their intellectual property.  Otherwise, they claim to be a religion."

First, TST has never asserted a right to be immune from criticism.  Criticism is both constitutionally protected and is held sacred by TST's tenets.  But criticism isn't defamation.  Defamation is an injurious falsehood.  There is no First Amendment right to falsely claim that TST's ideologies support ableism, misogyny, racism, fascism, transphobia, and endorsement of police brutality (Doc. 26 at p. 11, ¶ 46) or to falsely claim that TST affiliates with Neo-Nazis (Exhibit 6 at p. 2).  When that falsehood causes an injury–which it did–TST accrues a right to sue.

Second, the article presents a false dichotomy by claiming that TST is "a business when it comes to competitor organizations . . . Otherwise, they claim to be a religion."  Religious organizations have an equal entitlement as secular organizations to protect their property rights.  This point was explained to Ms. Duin, in writing.  It is unjustifiable for her to continue parroting this false claim, as if there is something untoward about a religious organization objecting to people stealing its website and then using that website to direct harm at the organization.

14.  Of all the defendants, Johnson is the one who has spent the most time digging into TST's background. "Every time I think I've hit the bottom, there's another terrible thing comes out," he said. "People send us things we can't talk about because we can't substantiate them."

"Digging" is editorialization.  "Digging" implies that Johnson is talking to witnesses with personal knowledge, looking at primary sources, or otherwise performing some reliable investigation.  Instead, Johnson is cherrypicking scandalous rumors he finds on the internet, and offers them up to anyone who will listen as if there was any factual merit to them.  It's lazy, shoddy, and biased.  TST expected a *Newsweek* reporter to recognize that.

The claim that "there's another terrible thing comes out" should have been fact-checked.  The Editorial Guidelines require a fair opportunity to comment when accusing a company of wrongdoing for good reason.  What proof is there of this "terrible thing?"  What even is it?  This is naked rumor milling.

The comment that "People send us things we can't talk about because we can't



# KEZHAYA LAW PLC

MATTHEW A. KEZHAYA
1202 NE McCLAIN RD
BENTONVILLE, AR 72712

P: (479) 431-6112
F: (479) 282-2892
MATT@KEZHAYA.LAW

substantiate them" should have raised red flags.  The source explicitly stated that there is some unspeakably heinous allegation, *but the allegation cannot be substantiated*.  Ms. Duin should have heeded the instruction in the Editorial Guidelines: "don't do the story."

15. He [Jinx Strange] soon left the group, then was leaked material about "leaders posing happily with major alt-right media figures," he wrote.

> "Leaked" is editorialization.  It presupposes that the "material" exists outside of a fabrication.  The requirement of fact-checking protects *Newsweek*'s reputation by requiring reporters to ensure that there actually is material about "leaders posing happily with major alt-right media figures."  Who allegedly "leaked" this material?  Did she try talking with the leak?  Did she even look at this "leaked" material?  How does this source square the claim that "leaders [are] posing happily with major alt-right media figures" with Malphas's inconsistent claim that TST is nothing more than a "SJW poly social club?"  This quote plainly runs afoul of the bar against relying on anonymous sources.  She should have invited comment on this point.

16. "Accounts of sexual abuse being covered up in ways that were more than anecdotal.  Dozens of people kicked out for asking for financial records from this alleged-non-profit organization."

> This quote repeats the above breaches of *Newsweek*'s Editorial Guidelines.  Who, ostensibly, was sexually abused?  What, exactly, was done?  What did TST allegedly do to "cover up" the alleged abuse?  Who are these "dozens of people" who were purportedly "kicked out for asking for financial records?"  Did Ms. Duin even attempt to talk to any of these anonymous sources?

> There is no truth to the claims that TST covered up sexual abuse or kicked anybody out for asking for financial disclosures.  This is not journalism, it is gossip-mongering.

17. TST has driven off its best people and lowered itself to has-been status since then, Strange concluded.  "Actual activists, and even creatives, want nothing to do with them anymore."

> This quote repeats the above breaches of the Editorial Guidelines.  The source makes no effort to disguise its bias.  Far from being a "has-been," TST's membership has grown steadily and significantly over the years.  Ms. Duin should have inquired into other sources to see if this claim withstands scrutiny.  Editorial Guidelines ("try to fact-check your story by using as many sources as possible.")

18. Salome DeMeur, a pseudonym for a former member based in Pensacola, Fla., said she got sidelined after asking Greaves why "he was going to sue Twitter like it was personal vendetta, but then using TST money to do so."

> This is materially false on at least four fronts.  First, Greaves denies that the specific



**KEZHAYA LAW PLC**

MATTHEW A. KEZHAYA
1202 NE MCCLAIN RD
BENTONVILLE, AR 72712

P: (479) 431-6112
F: (479) 282-2892
MATT@KEZHAYA.LAW

claimed discussion ever took place, and more generally denies that any member was ever retaliated against for asking about the Twitter dispute.

Second, TST never "sued" Twitter, TST invited an administrative mediation process. This point was addressed under Point 4, above.

Third, TST's dispute with Twitter was not a "personal vendetta" because Twitter canceled TST's main account along with Greaves's account. This point was also addressed under Point 4, above.

Fourth, no TST money was expended on the Twitter dispute. This point was also addressed under Point 4, above.

19. Once she [Salome DeMeur] became known as a dissenter, she said, members of TST's national council threatened to out her to the Marine Corps, her employer, despite the Corps already being aware of DeMeur's religious activities.

Again, this is false. TST prohibits doxing because it invites dangerous elements of society to cause harm to the subject. We find it incredible that Ms. Duin would write an article that publicly disparages TST of doxing while, in the very same article, Ms. Duin went about doxing Greaves.

Beyond that, this allegation is nonspecific. Who threatened to "out" her to the Marine Corps? Did Ms. Duin try to talk to the mystery threatener? What constitutes the "threat?" Was it in writing? If so, did Ms. Duin look at the written documents? If she engaged in a basic fact-checking process, these questions should all have answers.

20. "After leaving, it was basically Scientology-lite," she told *Newsweek* in an email. "People were told not to talk to us. Members were trying to break up my relationship with my boyfriend. Several people were legally threatened. I know quite a few people who have refused to speak out at all because they fear legal action from TST. A few of us have been in mental health treatment since."

This is just more of the same nonspecific allegations of wrongdoing. At no point did anyone on behalf of TST try to break up this former member's relationship or issue any legal threats to former members. Ms. Duin should have fact-checked these claims or, failing that, at least given TST an opportunity for fair comment.

21. The Satanic Temple recently made some significant structural changes, apparently in an effort to appear more like a mainstream church.

"Apparently" is editorialization. It falsely ascribes intent as to the organizational changes. In fact, the organizational changes were made to decentralize decision making processes, provide a formal mechanism for congregations to share knowledge



## KEZHAYA LAW PLC

MATTHEW A. KEZHAYA
1202 NE MCCLAIN RD
BENTONVILLE, AR 72712

P: (479) 431-6112
F: (479) 282-2892
MATT@KEZHAYA.LAW

and decision-making authority, and increase inter-congregational cohesion. If Ms. Duin was interested in reporting on TST's organizational changes, she should have invited comment. Instead, she drew nefarious assumptions and reported them as facts.

22. The defendants say the case has devolved to a meritless S.L.A.P.P. (Strategic Lawsuit Against Public Participation) lawsuit as a way to bankrupt them for speaking out.

> Ms. Duin should have invited comment on this. A SLAPP is a particular kind of lawsuit, which punishes a defendant for engaging in protected speech. Washington provides for anti-SLAPP motions, which is a mechanism to deal with a SLAPP. See RCW §§ 4.24.500-525. Defendants are represented by capable counsel. If the case was even arguably a SLAPP, their attorney would have filed the appropriate moving papers. This is not a SLAPP. Defendants can say whatever they like on their own website, to their own audience, which they can develop without stealing TST's efforts. Had they done so, we would not be in litigation. Instead, they "stole" TST's Facebook pages to make their points to TST's audience, which TST developed through no shortage of effort over several years.

23. "I [Johnson] can't really get press coverage, get attorneys general to audit [TST] but what I can do is work. I can find everything public that I possibly can; tie it together as best as I can and hope that someone looks at it and picks it up."

> The primary source for this article told your reporter that he is playing internet detective for the specific purpose of causing harm to TST. The primary source told your reporter that no reputable publication would give him attention. He told your reporter that no attorney general would open an investigation on the facts provided.

> This is because the claims are either provably false, or so nebulous that there is no discrete claim to investigate. Rather than engage in even cursory fact-checking, Ms. Duin took this all at face value and tied your reputation to this amalgam of biased sources who were nakedly relying on anonymous rumors.

24. They continue to post their findings about TST on a website. "We would appreciate any support you can offer," they write in a concluding statement, "as we struggle to survive this pursuit of justice in the worst year of our lives so far."

> This is a naked call to action for the readership of *Newsweek* to financially support the Defendants. The bias is palpable. Contra. Editorial Guidelines ("We report fairly.")

> As for Defendants' "pursuit of justice," we demand fair attribution. They are referencing TST's Second Tenet ("The struggle for justice is an ongoing and necessary pursuit that should prevail over laws and institutions.") Defendants were not content to steal our Facebook pages, they must also steal our doctrinal concepts. Report on the facts and let your readership decide who holds the moral high ground.



## KEZHAYA LAW PLC

**MATTHEW A. KEZHAYA**
1202 NE MCCLAIN RD
BENTONVILLE, AR 72712

P: (479) 431-6112
F: (479) 282-2892
MATT@KEZHAYA.LAW

Defendants excommunicated themselves from TST because, rather than share fellowship with a group of like-minded people, they preferred to throw a temper tantrum over losing the opportunity to falsely attribute their personal politics onto the wider group. They do not get to take TST's Facebook pages as a consolation prize. They do not get to take TST's Seven Tenets as a consolation prize. They prefer cry-bullying over resolving a property dispute. And none of their empty shouting had any tendency to harm TST until Ms. Duin offered an opportunity for Defendants to defame my client's organization under the false guise of *Newsweek*'s credibility. Now we have a problem.

This was no *Newsweek* article. It was a hit piece. My client demands that you correct these mistakes, promptly and transparently. I propose that you take the article down immediately to preclude any further harm to TST, then determine what efforts (if any) Ms. Duin took to fact-check the claims asserted in the article. Given your wide circulation, time is a critical factor on this matter. Please advise me when you receive this request and a timeline on the next steps to correct this.

I ask for an update on or before **November 1, 2021 at 12:00 pm**, Central Time. If my client is dissatisfied with your corrective efforts by then, I am instructed to begin taking legal actions. Please let me know if I can provide anything further.

Sincerely,

Matthew A. Kezhaya

CC:

Julia Duin (**by email only to**: j.Duin@newsweek.com)