ADMITTED IN:
NEW YORK
CONNECTICUT

CAMERON STRACHER
MEDIA AND ENTERTAINMENT LAW
51 ASTOR PLACE
NEW YORK, NY 10003

(646) 992-3850
CAM@STRACHERLAW.COM

WWW.STRACHERLAW.COM

December 1, 2021

**By Email**

Matthew A. Kezhaya
1202 NE McClain Rd.
Bentonville, AR 72712

    Re:    The Satanic Temple Demand for Retraction

Dear Mr. Kezhaya:

    I represent Newsweek Publishing LLC, publisher of *Newsweek* magazine ("Newsweek"). I write in response your letter dated October 30, 2021, concerning your client The Satanic Temple, Inc. ("TST"). You claim Newsweek published defamatory statements about TST in the article titled "Orgies, Harassment, Fraud: Satanic Temple Rocked by Accusations, Lawsuit," (the "Article") and demand that Newsweek retract the Article and issue a correction. Newsweek respectfully disagrees, and declines your demand.

    As you may know, defamation requires a provably false statement of fact about a person, published with the requisite degree of fault, which causes damage to the person's reputation. *New York Times v. Sullivan,* 376 U.S. 254, 288 (1964). Here, a significant number of the comments to which you object to are not statements of fact, and thus do not give rise to a claim for defamation. For example, the statements that TST "has plenty of its own skeletons," that Judge Richard A. Jones issued a "withering" opinion, and that TST is a "has-been" are the kind of rhetorical hyperbole courts have consistently recognized as incapable of defamatory meaning. *See Phantom Touring, Inc. v. Affiliated Publications*, 953 F.2d 724, 727 (1st Cir. 1992) (collecting cases). Similarly, comments that "TST has driven off its best people," that TST has made structural charges "apparently in an effort to appear more like a mainstream church," and that the lawsuit against the former members of the Washington state chapter (the "Lawsuit") has "devolved to a meritless SLAPP lawsuit" are statements of opinion that cannot be proven false.[1]

---

[1] Moreover, your contention that the defendants in the Lawsuit would have filed an anti-SLAPP motion if the Lawsuit "was even arguably a SLAPP" is baseless. The Washington State anti-SLAPP statute was struck down as unconstitutional in 2015. *Davis v. Cox*, 351 P.3d 862 (Wash. 2015). The current version of the statute did not go in to effect until July 25, 2021, months after the district court dismissed TST's defamation claim with prejudice. *See* WA ST 4.105.010.

*See Zappin v. NYP Holdings Inc.*, 769 Fed.Appx. 5, 9 (2d. Cir. 2019) ("[S]tatements that are "pure opinion" are protected by the First Amendment and are not actionable as defamation.").

In addition, reporting that "items critical of TST" have appeared on a chapter's Facebook page, and allegedly misstating the title of one of the pages does not subject TST to the type of reputational damage required to state a claim for defamation. *See Yohe v. Nugent*, 321 F.3d 35, 41 (1st Cir. 2003) (even if false, statements that do not hold plaintiff "up to contempt, hatred, scorn, or ridicule, or tend to impair his standing in the community" are not defamatory). Lastly, your client can have no claim based on statements that concern unnamed members of TST, or are directed to Lucien Greaves and not to your client.[2] *See Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006) (unless the challenged statement is "of and concerning the plaintiff," no cause of action will lie); *Provisional Gov't Republic of New Afrika v. American Broad. Cos.*, 609 F. Supp. 104, 108 (D.D.C. 1985) ("Allegations of defamation by an organization and its members are not interchangeable.").

To the extent the Article states actual facts, those facts are not materially false. *See Masson v. New Yorker Magazine, Inc.,* 501 U.S. 496, 517 (1991) ("[A] statement is not considered false unless it 'would have a different effect on the mind of the reader from that which the pleaded truth would have produced.'") (citation omitted). The Article reports on TST's civil lawsuit against former members of its Washington State chapter, and summarizes the legal arguments from both parties, as well as a recent court ruling. It provides a brief background on other legal disputes TST has been involved in, including its complaint against Twitter. The Article also discusses the dispute over TST's brand, references former members' claims about why they left TST, and extensively quotes Mr. Greaves, on behalf of TST.[3] The Article never states that "TST is simultaneously 'inept' and 'rudderless," yet also so totalitarian that no dissenters are allowed," as you contend; nor is a court is required to accept a plaintiff's interpretation of a publication. *See, e.g., Lott v. Levitt,* 556 F.3d 564, 569 (7th Cir. 2009) (court need not take plaintiff's "interpretation of the allegedly defamatory words at face value"); *Finley v. Kelly,* 384 F.Supp. 3d 898, 907 (M.D. Tenn. 2019) ("courts are not bound to the plaintiff's interpretation of the allegedly defamatory material, and if the words 'do not reasonably have the meaning plaintiff ascribes to them, the court must disregard' plaintiff's interpretation").[4]

---

[2] There is also no cognizable claim based on the Article's identification of Lucien Greaves, whose role in TST and pseudonym are disclosed to the public on Wikipedia.

[3] Your contention that Newsweek did not provide TST a fair opportunity to comment is meritless. As you are aware, Julia Duin conducted two lengthy phone interviews and exchanged multiple e-mails with both you and Lucien Greaves. Both you and Mr. Greaves are quoted extensively in the Article.

[4] The Article's headline is also not defamatory because it accurately summarizes the content of the Article. *See Test Masters Educational Services, Inc. v. NYP Holdings, Inc.*, 603 F.Supp.2d 584, 589 (S.D.N.Y.,2009) ("An article's headline need only be a 'fair index' of the 'substantially accurate' material included in the article.").

Furthermore, the Article's reporting on legal proceedings involving TST is protected by the fair report privilege. *See* N.Y. Civ. Rights Law § 74 ("A civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding . . . "). Under the privilege "'minor inaccuracies' do not render an otherwise substantially true article defamatory." *Zappin v. NYP Holdings Inc.*, 769 F. App'x 5, 9 (2d Cir. 2019); *Glantz v. Cook United, Inc.*, 499 F. Supp. 710, 716 (E.D.N.Y. 1979). First, it has been widely reported that TST filed a formal complaint against Twitter with the Massachusetts Commission Against Discrimination. *See, e.g.,* https://www.nbcnews.com/news/us-news/satanic-temple-claims-it-s-having-devil-time-twitter-n878561. Thus, reporting that TST "sued" Twitter is substantially accurate. *See Holy Spirit Ass'n for Unification of World Christianity v. New York Times Co.*, 49 N.Y.2d 63, 68, 399 N.E.2d 1185, 1187 (N.Y. 1979) (A fair report should not be "parsed and dissected on the basis of precise denotative meanings which may literally, although not contextually, be ascribed to the words used."). Second, the Article accurately stated that the Lawsuit involved a claim for fraud (i.e., violation of the Computer Fraud and Abuse Act), included defendants' legal arguments and the fact that they denied the claims against them, and summarized the court's order dismissing the original complaint (which was based, in part, on its holding that TST's defamation claim was not actionable because of the doctrine of ecclesiastical abstention and that TST wrongly identified a "post-domain path" as a "domain name"). *See United Federation of Churches, LLC v. Johnson*, 2:20-cv-00509-RAJ, dkt. No. 20 (W.D. Wash. Feb. 26, 2021). Thus, these statements are all protected as fair and true reports on an official proceeding. The remaining details you claim are inaccurate (such as indicating Mr. Greaves was temporarily suspended from Twitter, or misstating the name of a TST Facebook page) are the kind of legally insignificant details that do not undermine the fair report privilege. *See Zappin*, 769 F.App'x at 10 (fair report privilege still applied to article that misstated the job plaintiff was fired from because the mistake did "not substantially undermine the article's overall accuracy").

Finally, as a public figure, your client would be unable to demonstrate that any factual statements in the Article were published with actual malice. Contrary to your assertion, allegations of an "improper purpose in publishing the article" do not satisfy the actual malice standard. *See Church of Scientology Intern. v. Behar*, 238 F.3d 168, 174 (2d Cir. 2001) ("Despite its name, the actual malice standard does not measure malice in the sense of ill will or animosity, but instead the speaker's subjective doubts about the truth of the publication."). As outlined above, the Article is supported by official documents and multiple sources, and Newsweek has no doubt as to the veracity of its reporting.

                                                Very truly yours,

                                                Cameron Stracher