# Reiss Sheppe LLP

ATTORNEYS AT LAW

MATTHEW SHEPPE
STEPHEN FRIEDMAN
AMIR KORNBLUM
DORAN GOLUBTCHIK

HOWARD R. REISS – RETIRED SENIOR COUNSEL

ERIC J. VARDI

MIRIAM AZIZI (not yet admitted)

425 MADISON AVENUE, FLOOR 19
NEW YORK, NEW YORK 10017
TELEPHONE: (212) 753-2424
FAX: (212) 753-3829

May 24, 2022

**BY ECF**

Hon. Mary Kay Vyskocil
Southern District of New York
500 Pearl St., Room 2230
New York, NY  10007

      Re: *TST v. Newsweek and Duin* (22-cv-1343) – response to pre-motion to dismiss letter

Dear Judge Vyskocil:

We represent Plaintiff The Satanic Temple, Inc. ("TST") and write in response to Defendants' May 19, 2022 letter request for a pre-motion conference concerning their proposed motion to dismiss (the "Letter"). This Court has personal jurisdiction over Julia Duin and the complaint has adequately stated a claim for defamation.

### 1: Ms. Duin transmitted 13 articles into New York for *Newsweek* to publish.

Ms. Duin's objection to personal jurisdiction should be resolved before the merits. *Herod's Stone Design v. Mediterranean Shipping Co. S.A.*, 434 F. Supp. 3d 142, 152 (S.D.N.Y. 2020). As the plaintiff, TST must prove the Court's jurisdiction. *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 728 (2d Cir. 2012). Personal jurisdiction requires: (1) proper service; (2) a statutory basis; and (3) the exercise would not offend due process. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59–60 (2d Cir. 2012).

*First*, service was proper as both Defendants waived service. ECF Dkt Nos. 8 and 9. *Second*, the statutory basis for jurisdiction is CPLR § 302(a)(1) (jurisdiction lies where a defendant "transacts any business within the state or contracts anywhere to supply goods or services in the state.") New York courts have held that when a defendant drafts a defamatory letter elsewhere and either distributes it in New York or authorizes its distribution in New York, jurisdiction is proper under CPLR § 302(a)(1). *Sovik v. Healing Network*, 244 A.D.2d 985, 987, 665 N.Y.S.2d 997, 999 (4th Dep't 1997) *citing Kreutter v. McFadden Oil Corp.*, 71 NY2d 460, 467, 470-471 (N.Y. 1988). Ms. Duin published the article, and 12 more, "utilizing publication resources in New York," meaning she "transacted business" in New York by demonstrating "active involvement and personal control in New York over the writing and distribution of the allegedly defamatory statement." Complaint ¶ 10; CPLR § 302(a)(1); *id;* Newsweek's list of articles, authored by Ms. Duin available at https://www.newsweek.com/authors/julia-duin (last visited May 24, 2022).

Hon. Mary Kay Vyskocil
May 24, 2022
Page 2 of 4

Ms. Duin should have "reasonably anticipated" that the litigation over this article would occur in New York. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). This was not the *National Enquirer* making these false and heinous allegations, it was *Newsweek*. The same *Newsweek* which enjoys a reputation for "accurate, independent, ethical and responsible journalism," and boasts "More than 1 in 5 Americans read us." Complaint ¶ 7. Anonymous claims peddled by biased sources, until now disregarded by anyone who made inquiry, were suddenly believable because the claims were published in *Newsweek*. If Ms. Duin had confined this article to her personal blog in Washington, TST would not have brought suit. But because she had it published in *Newsweek*, she reasonably should have expected that the ensuing litigation would take place where she published the article.

*Third*, the exercise of jurisdiction here would not offend due process, as Ms. Duin "purposefully availed herself of the privilege of conducting activities within the forum State." *IdeaVillage Prod. Corp. v. A1559749699-1*, 2022 WL 204214, at *2 (S.D.N.Y. Jan. 24, 2022). A defendant will "purposefully avail" itself in any forum it carries on "part of its general business." *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 779–80 (1984). A CPLR § 302(a)(1) "transaction" is defined in lock-step with the due process test. *See Trachtenberg v. Failedmessiah.com*, 43 F. Supp. 3d 198, 202 (E.D.N.Y. 2014). As noted, part of Ms. Duin's general business is to publish articles in New York. Due process is satisfied for the same reason the statute applies.

The Letter erroneously relies on *Trachtenberg,* 43 F. Supp. 3d at 202. There, the publisher was a Minnesota website which, as "an out-of-state media outlet," could not have reasonably anticipated being called to New York to defend its article. *Id.* If Ms. Duin had published the article on her personal blog, *Trachtenberg* would be on point. But she had the article published in New York.

If the Court is still unsure, it should order jurisdictional discovery about the Defendants' relationship, any of their other dealings, and the allocation of editorial control. If Newsweek had editorial control over the article, that would strengthen the claim to jurisdiction. *See Legros v. Irving*, 38 A.D.2d 53 (1971). These issues are also ripe for discovery because of Defendants' competing claim that Ms. Duin is an independent contractor, whereas the Complaint pleads that Ms. Duin is an employee. Compl. ¶ 8. That determination is made on the totality of the circumstances surrounding Defendants' relationship, and depends heavily on the allocation of power to control. *Frankel v. Bally, Inc.*, 987 F.2d 86, 89 (2d Cir. 1993).

If the Court finds it has no jurisdiction, it should not dismiss the case but instead order a change of venue to the District of Massachusetts. 28 U.S.C. § 1631. As the Plaintiff's domicile state, Massachusetts has specific jurisdiction over the defamation Defendants. G.L. c. 223A, § 3(c); *Walker v. Adams*, 2016 Mass. App. Div. 143 (Dist. Ct. 2016).

**2: Defendants charged TST with financial fraud and fraud on the courts.**

The complaint adequately pleads a defamation claim. This lawsuit arises from a hit piece, written by Ms. Duin and published by Newsweek. While the Letter correctly points out that some of the article reports on the *Johnson* case in Washington, the bulk of the article – about which the Letter is silent or inaccurate – falsely accuses TST of financial fraud, public fraud, fraudulent litigation tactics, harassment of former members, and sexual deviancy and thus is defamatory *per se*. *Meloff v. New York Life Ins. Co.*, 240 F.3d 138, 145 (2d Cir. 2001).

Hon. Mary Kay Vyskocil
May 24, 2022
Page 3 of 4

The Letter errantly denies that the article falsely charges TST with financial corruption in connection with the Twitter dispute. The article quotes Haley Fuller (aka "Salome DeMeur"), as claiming to have asked TST's director "why he was going to sue Twitter like it was a personal vendetta, but use TST money to do so." ECF Dkt. No. 1-1 at 18 (cleaned up). And it is no nitpick to point out that the Twitter dispute was a mediation, not a lawsuit. A reasonable reader will know that a lawsuit costs thousands of dollars. Because the article mischaracterized the dispute as a "lawsuit," a reasonable reader would misbelieve that "thousands of dollars" of TST's money was misused by a TST director to pursue a "personal vendetta." In fact, no TST money was spent, and the conflict leading to the Twitter dispute significantly affected TST. Complaint ¶¶ 23-27, 32-35. The article is defamatory *per se* because it falsely accuses TST's leadership of embezzlement. *Meloff*, 240 F.3d at 145. Later, the article bolsters its false claim of financial fraud by implying that TST did something to merit a complaint for "attorneys general to audit TST," which relies on the common knowledge that attorneys general investigate financial fraud by charities. ECF Dkt. No. 1-1 at 19 (cleaned up). This is a defamation by implication of undisclosed facts. *Elias v. Rolling Stone LLC*, 872 F.3d 97, 109 (2d Cir. 2017); *Doe #1 v. Syracuse Univ.*, 468 F. Supp. 3d 489, 511 (N.D.N.Y. 2020).

The article did not "fairly" report on the *Johnson* case. In *Johnson*, the complaint was dismissed because of a legal issue, that a particular federal statute does not apply to a Facebook page. Complaint ¶ 58. But the article falsely claims the complaint was dismissed on a factual issue, that "plaintiffs got their facts wrong." ECF Dkt. No. 1-1 at 14. The article even falsely quoted the Washington Judge as "saying" so. Id. Relatedly, the article earlier suggests that TST's religious reproductive rights litigation is nothing more than "political theatre," because "It's not clear whether TST actually practices abortion as a religious ritual." ECF Dkt. No. 1-1 at 7. A reasonable reader of the article would read these two verifiably-false statements of fact and would misbelieve that "TST has filed at least two lawsuits, both of which were predicated on knowingly-false representations of facts, just for political theatre." When Newsweek and Ms. Duin created a false public concern that funds donated to TST might be wasted on fraudulent litigation because TST has filed at least two fraudulent lawsuits before, they "defamed" TST. *Fairstein v. Netflix, Inc.*, 553 F. Supp. 3d 48, 63 (S.D.N.Y. 2021).

Defendants both have the requisite culpability. TST is a private figure. Complaint ¶ 15, 82-85. Defendants bear the burden to prove the opposite. *Coleman v. Grand*, No. 18CV5663ENVRLM, 2021 WL 768167, at *5 (E.D.N.Y. Feb. 26, 2021). As a private figure, TST need only show negligence, not actual malice. *Fairstein*, 553 F. Supp. 3d. at 63.

But the complaint still pleads actual malice. Defendants intentionally relied on anonymous and unreliable sources. Complaint ¶¶ 86-90; *Biro v. Conde Nast*, 807 F.3d 541, 546 (2d Cir. 2015). They intentionally relied on anonymous and unreliable sources, even though their own journalistic standards (the Editorial Guidelines) publicly forbid it. Complaint ¶¶ 97-99; *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667–68 (1989). Defendants published this article despite that it required a total of six material departures from their own journalistic standards. Complaint ¶¶ 101-105, 111-116; *id.* Defendants published this article in this way because they wanted to broadcast a pre-conceived narrative, one rooted in political or religious bias, more than they cared about the truth. Complaint ¶¶ 2, 91-93; *See Palin v. New York Times Co.*, 940 F.3d 804, 813 (2d Cir. 2019). And they consciously ignored two takedown demands, each of which notified them of particular falsehoods in the article. ECF Dkt. Nos. 1-5, 1-6, and 1-9; *Kehoe v. New York Trib.*, 229 A.D. 220, 225, 241 N.Y.S. 676, 681 (App. Div. 1930) (a retraction could have negated actual malice).

Hon. Mary Kay Vyskocil
May 24, 2022
Page 4 of 4

We look forward to addressing this matter at a conference before Your Honor.

                                              Respectfully submitted,


                                              Matthew Sheppe
                                              *Counsel for Plaintiff*

Of counsel:

    Matthew Kezhaya
    KEZHAYA LAW PLC
    300 N. Washington Ave, #300
    Minneapolis, Minnesota 55401
    Tel: (479) 431-6112
    Email: matt@kezhaya.law

cc:    C. Stracher, Esq. (Defendants' counsel by ECF and E-Mail)