UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x
                                                        :

THE SATANIC TEMPLE, INC.,                :

                                       :

                            Plaintiff,     :  Case No. 1:22-cv-01343-MKV

v.                                     :

                                       :

NEWSWEEK MAGAZINE LLC and     :
JULIA DUIN                     :

                                       :

                            Defendants.    :

                                       :

------------------------------------------------------------------------ x

# DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS

Cameron Stracher
Sara C. Tesoriero
CAMERON STRACHER, PLLC
51 Astor Place, 9th Floor
New York, NY 10003
Tel: 646.992.3850
Fax: 646.992.4241
cam@stracherlaw.com
sara@stracherlaw.com

*Attorneys for Defendants*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. iii

PRELIMINARY STATEMENT ............................................................................................1

BACKGROUND ....................................................................................................................2

A.      The Parties ..............................................................................................................2

B.      The Washington Lawsuit .........................................................................................2

C.      The Article ...............................................................................................................3

D.      Plaintiff's Complaint...............................................................................................4

ARGUMENT .........................................................................................................................5

I.      PLAINTIFF'S BURDEN TO PLAUSIBLY PLEAD A VALID CLAIM ........................4

II.     PLAINTIFF HAS FAILED TO PLAUSIBLY PLEAD A CLAIM FOR
        DEFAMATION ...........................................................................................................5

        A.  Plaintiff's Summation that "The Article falsely charges TST with
            financial corruption" Fails to State a Claim..........................................................6

            1.   Plaintiff Fails to State a Claim for Defamation by Implication .........................6

            2.   The Statements At Issue Are Not Defamatory ..................................................8

            3.   The Statements At Issue Are Protected as "Fair Report" ................................9

            4.   The Statements At Issue Are Not Actionable Under the Doctrine of
                 Ecclesiastical Abstention ................................................................................10

        B.  Plaintiff's Summation that "The Article Falsely Claims that TST
            Defrauds the Courts" Fails to State a Claim .........................................................11

            1.   Plaintiff Fails to State a Claim for Defamation By Implication .....................11

            2.   The Statement At Issue Is Protected Opinion..................................................11

            3.   The Statement At Issue Is Not Actionable Under the Doctrine of
                 Ecclesiastical Abstention ................................................................................12

        C.  Plaintiff's Summation that "The Article Falsely Claims that TST Harasses
            Dissenters" Fails to State a Claim........................................................................13

      1.  Plaintiff Fails to State a Claim for Defamation By Implication ......................13

      2.  The Statements At Issue Are Not Defamatory .................................................13

D.  Plaintiff's Summation that "The Article Falsely Reports on a Legal Proceeding" Fails to State a Claim .................................................................15

      1.  Plaintiff Fails to Stat a Claim for Defamation By Implication .......................15

      2.  The Statements At Issue Are Protected By the Fair Report Privilege ...............................................................................................................15

      3.  The Statements at Issue Constitute Protected Opinion ...................................17

      4.  The Headline is a Fair Index of the Article and Therefore Not Actionable .......................................................................................................18

E.  Plaintiff's Contention that "The Article Falsely Charges TST with Sexual Misconduct" Fails as a Matter of Law ..........................................................19

F.  Plaintiff's Summation that "The Article Implies Other Unspeakably-Terrible Allegations" Fails to State a Claim .................................................19

III.    TST HAS FAILED TO PLAUSIBLE PLEAD ACTUAL MALICE ..............................21

  A.     TST is a Public Figure ........................................................................21

  B.     TST Has Not Plausibly Pleaded Actual Malice ....................................22

CONCLUSION.......................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Armstrong v. Simon & Schuster, Inc.*,
  85 N.Y.2d 373 (N.Y. 1995) .......................................................................5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..............................................................................5, 23

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..............................................................................5, 23

*Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*, 151 F.Supp.3d 287
  (E.D.N.Y. 2015), *aff'd*, 670 F. App'x 731 (2d Cir. 2016) ........................17

*Biro v. Conde Nast*,
  883 F.Supp.2d 441 (S.D.N.Y. 2012) ...............................................5, 8, 23

*Biro v. Conde Nast*, 963 F. Supp. 2d 255 (S.D.N.Y. 2013), *aff'd,*
  807 F.3d 541 (2d Cir. 2015), *and aff'd*, 622 F. App'x 67 (2d Cir. 2015) ...............................21

*Brimelow v. New York Times Co.*,
  2021 WL 4901969 (2d Cir. Oct. 21, 2021), *cert. denied sub nom.*
  *Brimelow v. The New York Times Co.*, 142 S. Ct. 1210 (2022) ..........................23, 24

*BYD Co. Ltd. v. VICE Media LLC*,
  531 F. Supp. 3d 810 (S.D.N.Y. 2021), *aff'd*, 2022 WL 598973
  (2d Cir. Mar. 1, 2022) .......................................................................18

*BYD Company Ltd. v. VICE Media LLC*,
  2022 WL 598973 (2d Cir. Mar. 1, 2022) ........................................9, 16

*Cardillo v. Doubleday & Co.*,
  366 F. Supp. 92 (S.D.N.Y. 1973) .......................................................5

*Chau v. Lewis*,
  771 F.3d 118 (2d Cir. 2014)........................................................12, 13, 17

*Church of Scientology Int'l v. Behar*,
  238 F.3d 168 (2d Cir. 2001)........................................................21, 22, 24

*Church of Scientology of California v. Siegelman*,
  475 F.Supp. 950 (S.D.N.Y. 1979) ..............................................9, 14, 22

*Contemporary Mission, Inc. v. New York Times Co.*,
    842 F.2d 612 (2d Cir. 1988)..................................................................................22

*Friends of Animals, Inc. v. Associated Fur Mfrs., Inc.*,
    46 N.Y.2d 1065 (N.Y. 1979) ................................................................................22

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974)..............................................................................................21

*Glantz v. Cook United, Inc.*,
    499 F. Supp. 710 (E.D.N.Y. 1979) .......................................................................16

*Gospel Spreading Church v. Johnson Pub. Co.*,
    454 F.2d 1050 (D.C. Cir. 1971) ............................................................................22

*Harte-Hanks Communications, Inc. v. Connaughton*,
    491 U.S. 657 (1989)) ............................................................................................24

*Holy Spirit Ass'n for Unification of World Christianity v. New York Times Co.*,
    49 N.Y.2d 63 (N.Y. 1979) ....................................................................................10

*Hyung Jin Moon v. Hak Ja Han Moon*,
    431 F.Supp.3d 394 (S.D.N.Y. 2019) ....................................................................11

*Idema v. Wager*,
    120 F.Supp.2d 361 (S.D.N.Y. 2000) ......................................................................7

*Karp v. Hill and Knowlton, Inc.*,
    631 F.Supp. 360, 363 (S.D.N.Y. 1986) ................................................................10

*Kavanagh v. Zwilling*,
    997 F. Supp. 2d 241 (S.D.N.Y.), *aff'd*, 578 F. App'x 24 (2d Cir. 2014) ...................10, 11, 20

*Kesner v. Dow Jones & Co., Inc.*,
    515 F. Supp. 3d 149 (S.D.N.Y. 2021), *appeal dismissed* (Apr. 16, 2021) ........................18, 19

*Kesselman v. The Rawlings Co., LLC*,
    668 F.Supp.2d 604 (S.D.N.Y. 2009) ......................................................................5

*Lee v. Bankers Tr. Co.*,
    166 F.3d 540 (2d Cir. 1999)...........................................................................14, 21

*Levin v. McPhee*,
    119 F.3d 189 (2d Cir. 1997)..................................................................................12

*Lindell v. Mail Media Inc.*,
    2021 WL 5910000 (S.D.N.Y. Dec. 10, 2021) ........................................................7

*Marom v. Pierot*, 2020 WL 6572509 (S.D.N.Y. Aug. 30, 2020), *report and
recommendation adopted*, 2020 WL 6565199 (S.D.N.Y. Nov. 9, 2020) .............................17

*McCafferty v. Newsweek Media Group, Ltd.*,
955 F.3d 352 (3d Cir. 2020)........................................................................8

*McDougal v. Fox News Network, LLC*,
489 F. Supp. 3d 174 (S.D.N.Y. 2020) ......................................................21, 23, 24

*Michel v. NYP Holdings, Inc.*,
816 F.3d 686 (11th Cir. 2016) ....................................................................23

*New York Times Co. v. Sullivan*,
376 U.S. 254 (1964)..................................................................................22

*Parneros v. Barnes & Noble, Inc.*,
2020 WL 5350531 (S.D.N.Y. Sept. 3, 2020)..................................................7

*Pisani v. Westchester Cnty. Health Care Corp.*,
424 F.Supp.2d 710 (S.D.N.Y. 2006) ...........................................................8

*Rapaport v. Barstool Sports, Inc.*,
2021 WL 1178240 (S.D.N.Y. Mar. 29, 2021) ...............................................9

*Rothman v. Gregor*,
220 F.3d 81 *(*2d Cir. 2000)........................................................................5

*Saleh v. New York Post*,
78 A.D. 3d 1149 (2d Dep't 2010)................................................................10

*Smith v. United Church Ministry, Inc.*,
212 A.D.2d 1038 (4th Dep't 1995)...........................................................14, 21

*St. Louis v. NYP Holdings, Inc.*,
2017 WL 887255 (N.Y. Cnty Feb. 6, 2017)).  ...............................................18

*Stepanov v. Dow Jones & Co.*,
120 A.D.3d 28 (1st Dep't 2014) .................................................................7

*United Fed'n of Churches v. Johnson*, 522 F.Supp.3d 842 (W.D. Wash. 2021),
*recons. denied*, 2022 WL 1093025 (W.D. Wash. 2022)................................. *passim*

*Van Buskirk v. The New York Times Co.*,
325 F.3d 87 (2d Cir. 2003)......................................................................8, 18

*Vinas v. Chubb Corp.*,
499 F.Supp.2d 427 (S.D.N.Y. 2007) .........................................................7, 8

*Zappin v. NYP Holdings Inc.*,
    769 F. App'x 5 (2d Cir. 2019) ..............................................................................10

**Statutes**

N.Y. Civ. Rights Law § 74 ..............................................................................9, 10, 18

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)..............................................................................1, 23

Defendants Newsweek Magazine LLC ("Newsweek") and Julia Duin ("Duin") (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss Plaintiff The Satanic Temple, Inc.'s complaint against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

This defamation case arises from a lawsuit brought by The Satanic Temple, Inc. ("Plaintiff" or "TST"), an "atheistic religious corporation," against several former members for their roles in protesting some of TST's activities. When Defendants reported on the controversy, TST sued them as well. The federal court in Washington dismissed Plaintiff's claims, however, and this Court should, too. Here, TST fails to plausibly plead a defamation claim against Defendants. Instead, Plaintiff twists the meaning of statements published by Defendants to create defamatory implications that are not reasonable and not actionable as a matter of law. In addition, many of the statements Plaintiff twists to create these alleged defamatory implications are not, themselves, defamatory, or are protected under the fair report privilege, or constitute non-actionable opinion, or are non-actionable under the ecclesiastical abstention doctrine, or some combination of all of the above. For these reasons, Plaintiff's Complaint should be dismissed.

Moreover, because Plaintiff is a public figure for purposes of this lawsuit, it must plausibly plead that Defendants acted with "actual malice." This it has failed to do. Instead, it pleads actual malice "buzzwords" and facts that go to negligence rather than actual malice. For this independent reason, Plaintiff's Complaint should be dismissed.

# BACKGROUND

### A.    The Parties

TST is an "atheistic religious corporation" headquartered in Massachusetts with chapters throughout the United States.  *See* Compl. ¶¶ 6, 43, 89, 90 (noting TST chapters in Washington, West-Florida, and Arizona.  TST appeals to the public for donations and to increase its membership, and actively advocates for the rights of its members by, among other things, engaging in legal actions.  *See id.* at ¶¶ 15, 28, 38, 39, 41, 50.  Its advocacy attracts attention, *id.* at ¶ 15, like the Article published by Defendants here.

Defendant Newsweek is a New York limited liability company that publishes the online news magazine *Newsweek* through its website at www.newsweek.com (the "Website").  *Id.* at ¶ 7.  Defendant Juila Duin is a journalist who resides in Washington State (together with Newsweek, the "Defendants").  *Id.* at ¶ 8.

### B.    The Washington Lawsuit

In 2020, TST filed a lawsuit against several former members of its Washington Chapter in the United States District Court for the Western District of Washington (the "Washington Lawsuit").[1]  *United Fed'n of Churches v. Johnson*, 522 F.Supp.3d 842 (W.D. Wash. 2021); *recons. denied*, 2022 WL 1093025 (W.D. Wash. 2022); Compl. ¶ 19.  TST sued the *Johnson* Defendants for defamation, violation of the Computer Fraud and Abuse Act, violation of the Anti-Cybersquatting Consumer Protection Act, and other claims arising from the alleged "hijack[ing]" of TST webpages.  *Johnson*, 522 F.Supp.3d at 850; *see also* Compl. ¶ 19.  Specifically, TST claimed that the *Johnson* Defendants defamed it by making public social

---

[1] The former member defendants are David Alan Johnson, Leah Fishbaugh, Mickey Meeham (aka Joshua Calavera), and Nathan Sullivan (collectively, the "*Johnson* Defendants").  Compl. Ex. 1 at 3–4.

media posts that "falsely ascribed extremist ideologies and affiliations to [TST]," including false affiliations with the "alt-right." *Johnson*, 522 F.Supp.3d at 855 (internal quotations omitted).

The *Johnson* Defendants moved to dismiss TST's complaint for failure to state a claim and the district court granted the motion. *Id.* at 856. Notably, the court held that the defamation claim "would require the Court or jury to delve into the tenets and beliefs of [TST] to determine whether or to what extent [TST's] practices or beliefs are in line with or oppose [the ideologies and affiliations in defendants' statements]," and therefore the defamation claim was barred by the doctrine of ecclesiastical abstention. *Id.* at 855. Additionally, regarding the Anti-Cybersquatting Consumer Protection Act claim, the court found that TST had failed to identify the correct domain name, which was fatal to their claim. *Id.* at 852. TST filed a motion for reconsideration, which the Court also denied, *see United Fed'n of Churches, LLC v. Johnson*, 2022 WL 1093025 (W.D. Wash. Apr. 12, 2022), and has since filed an amended complaint and litigation is ongoing.

### C.     The Article

On October 29, 2021, Newsweek published an article on the Website written by co-defendant Julia Duin titled "Orgies, Harassment, Fraud: Satanic Temple Rocked by Accusations, Lawsuit" (the "Article"). Compl. Ex. 1. The Article begins by asking, "Can you defame a religion, especially one that doesn't believe in God, Satan, or the supernatural?" *Id.* It reports that "The answer to that question could cost four former members of The Satanic Temple (TST) more than $140,000 in damages, including 'reputation losses,' in a civil lawsuit that has dragged on for more than a year and a half." *Id.*

The Article then sets forth the claims in the Washington Lawsuit, provides some background on TST's founding and history, and describes the involvement of each defendant in

the organization. *Id.* The Article also outlines other recent legal disputes involving TST, reports on complaints other former members have made about TST practices, and includes responses from Lucien Greaves, TST's co-founder, and Matthew Kezhaya, TST's general counsel. *Id.* Finally, the Article details the holding of the federal court that dismissed Plaintiff's claims, notes that "TST's brand is still under debate in Seattle," and concludes with comments from both sides in the Washington Lawsuit on the relative merits of their positions. *Id.*

**D.    Plaintiff's Complaint**

TST brings the instant lawsuit against Defendants for one count of libel based on six false and defamatory summations that TST divines from twenty-two statements actually published in the Article.[2] Specifically, Plaintiff contends that the Article:  1) falsely charges it with financial fraud; 2) falsely claims that it "defrauds the courts;" 3) falsely claims that it harasses dissenters; 4) falsely "reports on a legal proceeding;" 5) falsely charges it with sexual misconduct; 6) implies other "unspeakably-terrible allegations."  Compl. §§ 1.1–1.6 (the "Summations").

Because none of the Summations or statements Plaintiff alleges are defamatory state a claim for defamation, Defendants now file this Motion to Dismiss Plaintiff's Complaint.

**ARGUMENT**

**I.**

**PLAINTIFF'S BURDEN TO PLAUSIBLY PLEAD A VALID CLAIM**

On a motion to dismiss under Rule 12(b)(6), a court must assess whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

---

[2] Plaintiff's one hundred and thirty paragraph Complaint is not a beacon of clarity, and by undersigned counsel's best calculation there are twenty-two statements that form the basis for Plaintiff's six summations, some of which Plaintiff appears to contend are also independently defamatory, others of which Plaintiff appears to contend are defamatory by implication.

550 U.S. 544, 570 (2007)).  It is plaintiff's burden to show "more than a sheer possibility that

[defendants have] acted unlawfully."  *Iqbal*, 556 U.S. at 678.  In a defamation case, as here, New

York's Court of Appeals has recognized the "'particular value' in resolving defamation claims at

the pleading stage, 'so as not to protract litigation through discovery and trial and thereby chill

the exercise of constitutionally protected freedoms.'"  *Biro v. Conde Nast*, 883 F.Supp.2d 441,

457 (S.D.N.Y. 2012) (quoting *Armstrong v. Simon & Schuster, Inc.*, 85 N.Y.2d 373, 379 (N.Y.

1995); *see also Cardillo v. Doubleday & Co.*, 366 F. Supp. 92, 94–95 (S.D.N.Y. 1973)

("[f]rivolous libel suits should be dismissed summarily to avoid the 'chilling effect' on free

speech that the requirement of an expensive and extensive defense would require") (citation

omitted), *aff'd*, 518 F.2d 638 (2d Cir. 1975).

On such a motion, a court may consider "any written instrument attached to [to the

complaint] as an exhibit or any statements or documents incorporated in it by reference."

*Rothman v. Gregor*, 220 F.3d 81, 88–89 (2d Cir. 2000); *see also Kesselman v. The Rawlings Co.,

LLC*, 668 F.Supp.2d 604, 607 (S.D.N.Y. 2009) (in adjudicating motion to dismiss, Court may

consider documents referred to and relied upon in complaint).  Here, TST's defamation claim

should be dismissed because it is apparent from the face of the Complaint and from the exhibits

attached to the Complaint, as well as from public records, that TST has not, and cannot, plausibly

plead a claim upon which any relief can be granted.

## II.
## PLAINTIFF HAS FAILED TO PLAUSIBLY PLEAD A CLAIM FOR DEFAMATION

The six Summations that Plaintiff divines from statements actually published in the

Article fail to state a claim because those Summations cannot reasonably be interpreted as

Plaintiff claims; the actual statements in the Article are not defamatory as a matter of law; the

statements are protected under the "fair report privilege;" and/or the statements are not

actionable under the doctrine of ecclesiastical abstention.

## A.  Plaintiff's Summation that "The Article falsely charges TST with financial corruption" Fails to State a Claim

### 1.  Plaintiff Fails to State a Claim for Defamation by Implication.

TST has not—and cannot—show that the Article expressly accuses TST of financial

corruption.  Instead, TST asks the Court to find that six statements in the Article somehow imply

TST is financially corrupt.  Those statements are:

- In 2018, TST sued Twitter for temporarily suspending the account of co-founder Lucien Greaves.  Compl. ¶ 23.

- He [Jinx Strange, aka Paul Millirons] soon left the group, then was leaked material about "leaders posing happily with major alt-right media figures," he wrote.  *Id.* at ¶ 28 (bracketed material in original).

- Accounts of sexual abuse being covered up in ways that were more than anecdotal.  Dozens of people kicked out for asking for financial records from this alleged-non-profit organization. *Id.* at ¶ 29.

- Salome DeMeur, a pseudonym for a former member based in Pensacola, Fla., said she got sidelined after asking Greaves why "he was going to sue Twitter like it was personal vendetta, but then using TST money to do so." *Id.* at ¶ 32.

- The Satanic Temple Recently made some significant structural changes, apparently in an effort to appear more like a mainstream church. *Id.* at ¶ 36.

These statements cannot support a claim for defamation by implication.

To state a claim for defamation by implication, a plaintiff "must make a rigorous

showing" that the challenged publication "as a whole can be reasonably read both to impart a

defamatory inference and to affirmatively suggest that the author intended or endorsed the

inference." *Lindell v. Mail Media Inc.*, 2021 WL 5910000, at *6 (S.D.N.Y. Dec. 10, 2021)

(quoting *Stepanov v. Dow Jones & Co.*, 120 A.D.3d 28, 37 (1st Dep't 2014)); *see also Parneros*

*v. Barnes & Noble, Inc.*, 2020 WL 5350531, at *6 (S.D.N.Y. Sept. 3, 2020) (same).  Whether a statement is capable of the defamatory implication alleged by plaintiff is a matter of law for the court to determine.  *Idema v. Wager*, 120 F.Supp.2d 361, 368 (S.D.N.Y. 2000).  Here, TST's contention that the Article creates the false implication that TST is financially corrupt is not actionable because the statements TST relies on cannot reasonably be read to impart that allegedly false implication, and nothing in the Article suggests that Defendants intended or endorsed that defamatory inference.

First, no reasonable reading of the statements TST relies on imply that TST is financially corrupt.  Indeed, TST does not argue that any of the statements directly implicate TST in financial corruption, but rather that the statements imply that TST misrepresents its organizational purposes or mis-spends organizational funds, which in turn implies TST collects money from its supporters under false pretenses, which amounts to financial corruption.  *See* Compl. ¶¶ 28–31, 35, 38.  These levels of attenuation undermine TST's assertion that an inference of financial corruption is reasonable.  *See Vinas v. Chubb Corp.*, 499 F.Supp.2d 427, 436 (S.D.N.Y. 2007) ("[T]he levels of attenuation within [defendant's] purported 'implication' cast doubt on the 'reasonable' inferences [plaintiff] argues should be drawn from [defendant's] statements.").  For this reason alone, Plaintiff's contention is unreasonable.  *See, e.g. Vinas*, 499 F.Supp.2d at 436 (rejecting defamation by implication claim that an accountant was "no good" and "too close" to a client implied that the accountant was "cooking the books" for the client); *Pisani v. Westchester Cnty. Health Care Corp.*, 424 F.Supp.2d 710, 717 (S.D.N.Y. 2006) (rejecting defamation by implication claim that defendant's reference to announcement of a settlement in a civil action for Medicare fraud against plaintiff's former employer implicated plaintiff in the fraudulent behavior).

Second, Plaintiff has failed to identify any facts that suggest Defendants intended or endorsed the defamatory implication that TST is financially corrupt.  *See Biro,* 883 F.Supp.2d at 466 (to state a defamation by implication claim, plaintiff must show "the author intends or endorses the inference").  For this independent reason, Plaintiff has failed to state a defamation by implication claim.  *See, e.g. id.* at 470 (holding that plaintiff failed to state a defamation by implication claim where, even if the alleged inferences were reasonable, nothing suggested defendants intended or endorsed the implication); *Vinas,* 499 F.Supp.2d at 437 (same).

## 2.     The Statements At Issue Are Not Defamatory.

In addition to the unreasonableness of TST's interpretations, the statements Plaintiff claims relate to the allegation of financial corruptness are not, on their face, defamatory.  A defamatory statement is one that "exposes an individual to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or induces an evil opinion of one in the minds of right-thinking persons, and deprives one of confidence and friendly intercourse in society." *Van Buskirk v. The New York Times Co.*, 325 F.3d 87, 90 (2d Cir. 2003).  Here, it is not defamatory to state that someone sued Twitter, or was leaked material. Nor is it defamatory to report that a leader posed with "alt-right" figures. *See McCafferty v. Newsweek Media Group, Ltd.*, 955 F.3d 352, 358–59 (3d Cir. 2020) ("Whether [plaintiff] speaks for the 'hard right' is 'incapable of defamatory meaning' because it just describes [plaintiff's] 'political philosophy.'") (internal citation omitted).  Or to report that an institution was making an effort to appear more like a mainstream church. *See Church of Scientology of California v. Siegelman*, 475 F.Supp. 950, 955 n. 13 (S.D.N.Y. 1979) (statements about Scientology being a "bizarre folklore" and a "tour de force of science fiction" and referring to Scientology practice as a "direct assault on human feeling" were not actionable).  Or even that the leaders of an

institution were hypocrites.  *See Rapaport v. Barstool Sports, Inc.*, 2021 WL 1178240, at *13 (S.D.N.Y. Mar. 29, 2021) (holding that statements calling plaintiff a "racist," "fraud," "hack," and a "liar" were "subjective evaluations of [plaintiff] that are incapable of being objectively proven true or false").

> ### 3.       The Statements At Issue Are Protected as "Fair Report"

To the extent TST's defamation by implication claim is premised on Defendants' reporting about TST's legal action against Twitter, the actual statements in the Article are protected by the fair report privilege.  The fair report privilege provides that a "civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding."  N.Y. Civ. Rights Law § 74.  "To be 'fair and true,' the account need only be 'substantially accurate.'" *BYD Company Ltd. v. VICE Media LLC*, 2022 WL 598973, at *1 (2d Cir. Mar. 1, 2022) (citation omitted).  "A report is 'substantially accurate' if, despite minor inaccuracies, it does not produce a different effect on a reader than would a report containing the precise truth."  *Id.* (citation omitted).  Whether the fair report privilege applies to a publication is a question of law for the Court.  *Karp v. Hill and Knowlton, Inc.*, 631 F.Supp. 360, 363 (S.D.N.Y. 1986).

Here, TST contends that it did not "sue" Twitter, but "invited an administrative mediation process through the Massachusetts Commission Against Discrimination."  Compl. ¶ 24.  This is precisely the type of technical parsing of words that the fair report privilege precludes.  *See Holy Spirit Ass'n for Unification of World Christianity v. New York Times Co.*, 49 N.Y.2d 63, 68 (N.Y. 1979) ("When determining whether an article constitutes a 'fair and true' report, the language used therein should not be dissected and analyzed with a lexicographer's precision.").  Similarly, TST's contention that Mr. Greaves's Twitter account was permanently banned, not "temporarily

suspended," Compl. ¶ 25, is a "minor inaccurac[y]" that does not "render [the] otherwise substantially true article defamatory." *Zappin v. NYP Holdings Inc.*, 769 F. App'x 5, 9 (2d Cir. 2019); *see also id.* (finding that error in reporting that plaintiff was fired by the wrong law firm did not undermine the publication's fair report protection); *Saleh v. New York Post*, 78 A.D. 3d 1149, 1152 (2d Dep't 2010) (affirming dismissal of libel claim against newspaper where "the inaccuracies cited by the plaintiff were not so egregious as to remove the article from the protection of Civil Rights Law §74").

### 4.   The Statements At Issue Are Not Actionable Under the Doctrine of Ecclesiastical Abstention.

The statements that TST leaders happily posed with "alt-right" figures and that TST had made efforts to appear more like a mainstream church are not actionable under the doctrine of ecclesiastical abstention.  Where a court would have to "examine and weigh competing views of church doctrine" in order to determine the truth of a defendants' statements, "the result is entanglement 'in a matter of ecclesiastical concern' that is barred by the First Amendment." *Kavanagh v. Zwilling*, 997 F. Supp. 2d 241, 250 (S.D.N.Y.), *aff'd*, 578 F. App'x 24 (2d Cir. 2014) (internal citation omitted); *see also Hyung Jin Moon v. Hak Ja Han Moon*, 431 F.Supp.3d 394, 413 (S.D.N.Y. 2019) (holding that plaintiff's defamation claim must be dismissed where it would require the court to "pass upon the truth or falsity of plaintiff's . . . purported religious standing").

As the district court in *Johnson* held, determining whether it is false to associate TST with the "alt-right" would "require the Court or jury to define beliefs held by [TST]," and would therefore violate the First Amendment.  *See Johnson*, 522 F. Supp. 3d at 855–56 (citing *Hyung Jin Moon*, 431 F. Supp. 3d at 413 and *Kavanagh*, 997 F. Supp. 2d 250).  And deciding whether recent changes made by TST were "in an effort to appear more like a mainstream church" would

require a similar, constitutionally-prohibited analysis.  Thus, these statements cannot support

Plaintiff's defamation claim.

**B.**     **Plaintiff's Summation that "The Article Falsely Claims that TST
          Defrauds the Courts" Fails to State a Claim**

     **1.**     **Plaintiff Fails to State a Claim for Defamation By Implication.**

TST does not contend that the Article expressly states that TST defrauds the courts.

Instead, TST asserts that the following statement creates this defamatory implication:

- (It's not clear whether TST actually practices abortion as a religious ritual;
   the claim may be a legal tactic or political theatre.).  Compl. ¶ 39.

Once again, TST fails to make the required "rigorous showing" to state a claim for defamation

by implication.  *See supra* II.A.1 (outlining requirement for defamation by implication claim that

plaintiff make a rigorous showing that statement can be reasonably read to impart alleged

defamatory meaning).  Simply questioning the basis for TST's religious rituals does not

reasonably imply that TST "defrauds the courts."  And TST again fails to plead that Defendants

intended that defamatory implication.  *See id.* (outlining requirement for defamation by

implication claim that defendant intend the alleged defamatory meaning).

     **2.**     **The Statement At Issue Is Protected Opinion.**

The statement questioning whether TST practices abortion as a religious ritual also

constitutes a non-actionable opinion.  *See Chau v. Lewis*, 771 F.3d 118, 128 (2d Cir. 2014)

("New York law protects derogatory statements which may be categorized as 'opinion' as

opposed to 'fact.'").  An absolutely privileged statement of opinion is one that "is accompanied

by a recitation of the facts upon which it is based or does not imply that it is based on

undisclosed facts."  *Id.* at 129. "Determining whether a statement is an allegation of fact or mere

opinion is a legal question for the court."  *Id.* at 128.  In making this assessment, a court should

examine the "full context of the communication in which the statement appears" and consider

"customs and conventions that could signal to readers . . . [that the statement] is likely to be

opinion, not fact." *Id.* at 129 (internal quotations omitted).  Moreover, "[w]hen the defendant's

statements, read in context, are readily understood as conjecture, hypothesis, or speculation, this

signals the reader that what is said is opinion, and not fact." *Levin v. McPhee*, 119 F.3d 189, 197

(2d Cir. 1997).

When viewed in the context of the Article, readers would understand that this statement

is an expression of opinion, not fact.  First, the statement is offset from the Article's reporting on

TST's recent challenge to an abortion law by parentheses—a common signal to indicate a

statement is distinct from the communication preceding it.  *See* Compl. Ex 1 at 7. Second, the

statement is mere speculation as indicated by the author's use of "[i]t's not clear" and "may be."

*Id.*; *see also Levin*, 119 F. 3d at 197.  Finally, the statement follows a recitation of the relevant

facts regarding TST's challenge to abortion legislation and does not imply additional,

undisclosed facts. *See Chau*, 771 F. 3d at 129.

### 3.    The Statement At Issue Is Not Actionable Under the Doctrine of Ecclesiastical Abstention.

Even if the above statement could be construed as asserting a fact regarding TST's

practice of abortion as a religious ritual, which it cannot, it is not actionable because it would

require the Court to determine the truth of a statement about TST's religious doctrine, which, as

set forth above, is barred by the First Amendment.  *See supra* II.A.4.

**C.      Plaintiff's Summation that "The Article Falsely Claims that TST Harasses Dissenters" Fails to State a Claim.**

**1.      Plaintiff Fails to State a Claim for Defamation By Implication.**

TST contends that the following statement creates the defamatory implication that TST harasses dissenters:

- Bit by bit, items critical of TST showed up on its Seattle chapter's Facebook page.  Then in March 2020, according to the lawsuit, the defendants went rogue.  Compl. ¶ 42.

According to Plaintiff, this statement "falsely implies that 'items critical of TST' had something to do with the removal of *Johnson* defendants from their positions on the [TST] advisory council."  *Id.* at ¶ 44.  But there is nothing in this statement that suggests it was the *Johnson* Defendants' posting of criticism of TST that led to their removal from the TST advisory council. Indeed, there is no mention of the advisory council or defendants' positions on it, at all.  Thus, TST fails to make the required "rigorous showing" to state a claim for defamation by implication.  *See supra* II.A.1 (outlining requirement for defamation by implication claim that plaintiff make a rigorous showing that statement at issue can reasonably be read to impart alleged defamatory meaning).  And TST again fails to plead that Defendants intended that defamatory implication.  *See id.* (outlining requirement for defamation by implication claim that defendant intend the alleged defamatory meaning).

**2.      The Statements At Issue Are Not Defamatory.**

Plaintiff also claims the following statements support the Summation that it harasses dissenters, and are false and defamatory:

- Meanwhile some members wondered why an organization like TST would go after four Seattleites with very modest means while it had bigger fish to fry elsewhere.  *Id.* at ¶ 45.

- "After leaving, it was basically Scientology-lite," she [Fuller aka ("Salome DeMeur")] told *Newsweek* in an email. "People were told not to talk to us. Members were trying to break up my relationship with my boyfriend. Several people were legally threatened. I know quite a few people who have refused to speak out at all because they fear legal action from TST." *Id.* at ¶ 48 (bracketed material in original).

- Once she [Fuller aka ("Salome DeMeur")] became known as a dissenter, she said, members of TST's national council threatened to out her to the Marine Corps, her employers, despite the Corps already being aware of DeMeur's religious activities. *Id.* at ¶ 51 (bracketed material in original).

But none of these statements are, on their face, defamatory. First, questioning why TST "would go after four Seattleites with very modest means while it had bigger fish to fry elsewhere" is too vague to expose TST to the type of "ridicule" required for defamation. *See Lee v. Bankers Tr. Co.*, 166 F.3d 540, 547 (2d Cir. 1999) (implication that plaintiff was suspected of "some vague wrongdoing" did not constitute defamation); *Smith v. United Church Ministry, Inc.*, 212 A.D.2d 1038, 1039 (4th Dep't 1995) (reference to "an indirect complaint about [plaintiff's] behavior" was too vague to give rise to an action for defamation).

Second, calling TST "Scientology-lite," and reporting that TST dissenters were subjected to Scientology-like threats of being sued or "outed," does not give rise to the type of reputational harm required for a defamation claim. *See Siegelman,* 475 F.Supp. at 955 n. 14, 955–56 (allegations that Church engaged in "psychological devastation, economic exploitation, and personal and legal harassment of former members and journalists" were not defamatory because statements did not "go beyond what one would expect to find in a frank discussion of a controversial religious movement, which is a public figure, and thus none of these statements may be the basis for an action in defamation").

**D.      Plaintiff's Summation that "The Article Falsely Reports on
a Legal Proceeding" Fails to State a Claim.**

**1.      Plaintiff Fails to State a Claim for Defamation By Implication.**

TST does not identify anything defamatory about Defendants' allegedly false reporting

on a legal proceeding.  Instead, TST claims that the following statements, which it contends are

false, create the defamatory implication that TST engages in abusive litigation practices:

- The *Johnson* defendants "have spent $80,000 defending themselves in
court this past year."  *Id.* at ¶ 66.

- [Joshua] Calvera [aka Mickey Meeham, one of the *Johnson* defendants]
has since declared bankruptcy.  *Id.* at ¶ 69 (bracketed material in original).

Once again, TST fails to make the rigorous that these statements can reasonably be read both to

impart a defamatory meaning and to affirmatively suggest that Defendants intended that

meaning.  *See supra* II.A.1 (outlining legal requirements for a defamation by implication claim).

The fact that the *Johnson* defendants have incurred substantial costs because of the Washington

Lawsuit, as could be true of any defendant in a civil litigation, does not imply that that TST's

litigation practices are abusive.  Moreover, given the costs of civil litigation, there is nothing

particularly abusive in four defendants having spent $80,000 to defend themselves.  TST also

fails to plead that Defendants intended that defamatory implication, as required to state a claim.

*See id.* (outlining requirement for defamation by implication claim that defendant intend the

alleged defamatory meaning).

**2.      The Statements At Issue Are Protected By the Fair Report Privilege.**

Plaintiff also contends that Defendants have defamed it by falsely (and inaccurately)

reporting on proceedings in the Washington Lawsuit.  The statements about which Plaintiff

complains, however, are protected by the fair report privilege.  Those statements are:

- In a withering 14-page judgment, U.S. District Judge Richard A. Jones
dismissed the lawsuit on Feb. 26, 2021, saying the plaintiffs got their facts

wrong on the actual domain name of the Facebook page and that other claims made by TST were "implausible." *Id.* at ¶ 57

- "It was tossed out because they [TST] claim to be a religion and you are allowed to criticize religions," Johnson said. "They like to say they are a business when it comes to competitor organizations forming or when someone is using their intellectual property. Otherwise, they claim to be a religion." *Id.* at ¶ 61.

- The defendants say the case has devolved into a meritless S.L.A.P.P. (Strategic Lawsuit Against Public Participation) lawsuit as a way to bankrupt them for speaking out. *Id.* at ¶ 68.

The fair report privilege protects substantially accurate accounts of judicial or other official proceedings. *See supra* II.A.3. Contrary to Plaintiff's assertion, *see* Compl. ¶ 58, the *Johnson* court dismissed TST's Anti-Cybersquatting Consumer Protection Act claim after finding Plaintiff failed to identify the proper domain name of the relevant Facebook page. *Johnson*, 522 F. Supp. 3d at 852. Moreover, in dismissing Plaintiff's complaint, the court held that TST failed to state a claim to relief that was "plausible on its face." *Id.* at 847. Thus, in layman's terms, the court found Plaintiff's claims "implausible." *See BYD Company Ltd.*, 2022 WL 598973 at *1 ("A report is 'substantially accurate' if, despite minor inaccuracies, it does not produce a different effect on a reader than would a report containing the precise truth.") (citation omitted); *Glantz v. Cook United, Inc.*, 499 F. Supp. 710, 716 (E.D.N.Y. 1979) (defendant's failure to define "malice" in their report on state proceedings did not remove communication at issue from protection of the fair report privilege).

Finally, TST's status as a religious organization was central to the court's dismissal of its defamation claim. *See Johnson*, 522 F. Supp. 3d at 855–56 (holding that the doctrine of ecclesiastical abstention applied to TST's defamation claim and dismissing claim for that reason); Compl. ¶¶ 61–64. Thus, it is substantially accurate to report that the case was dismissed because "you are allowed to criticize religion."

### 3.     The Statements at Issue Constitute Protected Opinion

In addition, it is not defamatory to describe the court's opinion in *Johnson* as "withering"
because that is the type of rhetoric courts have found to be incapable of defamatory meaning.
*See Marom v. Pierot*, 2020 WL 6572509, at *4 (S.D.N.Y. Aug. 30, 2020), *report and
recommendation adopted*, 2020 WL 6565199 (S.D.N.Y. Nov. 9, 2020) ("[S]tatements that
express opinions or hyperbole, rather than facts, do not constitute actionable defamation."); *see
also Chau*, 771 F. 3d at 129 (epithets such as "sucker" and "fool" are "hyperbole and therefore
not actionable opinion"); *Marom*, 2020 WL 6572509 at *11 (referring to plaintiff's home as a
"nightmare" was non-actionable opinion or hyperbole).

Similarly, reporting that the *Johnson* Defendants believe the Washington Lawsuit is "a
way to bankrupt them for speaking out" is not a statement of fact, but an expression of opinion
by the *Johnson* Defendants.  "[W]here circumstances surrounding an allegedly defamatory
statement indicate that the person making the statement has a special interest in the matter, courts
have routinely held that a reasonable observer would understand such a statement to be one of
opinion, rather than fact."  *Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*, 151 F.Supp.3d
287, 296 (E.D.N.Y. 2015), *aff'd*, 670 F. App'x 731 (2d Cir. 2016).  The Article provides readers
with the circumstances surrounding the Washington Lawsuit and the necessary information to
understand that the defendants have a "special interest in the matter."  Thus, the statement
regarding the *Johnson* Defendants' belief that the Washington Lawsuit is an attempt to bankrupt
them would be understood by readers as opinion, not fact.[3]

---

[3] TST assertion that the Article claims the "lawsuit is a way to bankrupt them [the
*Johnson* Defendants] for speaking out" also takes the statement out of context.  Compl. ¶ 68.
The full quote correctly attributes this opinion to the *Johnson* Defendants, and provides the
reader with the relevant context to determine the potential bias of the speaker.  *See* Compl. Ex. 1

4.       **The Headline is a Fair Index of the Article and Therefore Not Actionable.**

The headline of the Article is not actionable as defamation because it is "a 'fair index' of the 'substantially accurate' material included in the article." *BYD Co. Ltd. v. VICE Media LLC*, 531 F. Supp. 3d 810, 819 (S.D.N.Y. 2021), *aff'd*, 2022 WL 598973 (2d Cir. Mar. 1, 2022) (internal citation omitted).  "[E]ven headlines that are 'unfortunate, sensationalist and drafted simply to garner attention' are not actionable if they are a 'fair index of the underlying article.'" *Id.* at 819–20 (citing *St. Louis v. NYP Holdings, Inc.*, 2017 WL 887255, at *2 (N.Y. Cnty Feb. 6, 2017)).  Whether "a headline is a fair index of the body of the article is a question of law." *Id.* at 820 (internal citation omitted).

Here, the headline reads: "Orgies, Harassment, Fraud: Satanic Temple Rocked by Accusations, Lawsuit."  Compl. Ex. 1.  This is a fair index of the content of the Article.  As the headline suggests, the Article reports on both accusations against TST, and an ongoing lawsuit, and reviews allegations concerning orgies, harassment, and fraud.  *See gen. id.*  Moreover, the Article clearly notes that TST is the plaintiff in the Washington Lawsuit, not the defendant,[4]  and differentiates between allegations in the Washington Lawsuit and claims former TST members have made unrelated to that litigation.  *See, e.g.* Compl. Ex. 1 at 7 ("The lawsuit against the Seattle members (*The United Federation of Churches, LLC v. Johnson et al.*) has been comparatively under wraps. Filed April 3, 2020, in the U.S. District Court for Western Washington, the plaintiff used its business name to represent TST.");  *id.* at 17 (identifying claims

---

at 19; *Van Buskirk*, 325 F.3d at 90 ("[T]he court is not to read the allegedly libelous statements alone, but must read them as the average reader would against the whole apparent scope and intent of the writing.") (internal quotations omitted).

[4] For this reason, the Article headline is also protected by the fair report privilege. *Kesner v. Dow Jones & Co., Inc.*, 515 F. Supp. 3d 149, 177 (S.D.N.Y. 2021), *appeal dismissed* (Apr. 16, 2021) (a headline that is a "fair and true headnote of the statement published" is also protected under the fair report privilege) (citing N.Y. Civ. Rights Law. § 74).

that TST approved of orgies as allegations by a "past member of an *Arizona* chapter") (emphasis

added). Thus, as a matter of law, the fair index privilege applies.  *See, e.g. Kesner*, 515 F. Supp.

3d at 176 (holding fair index privilege applied to headline "The Lawyer at the Center of the SEC

Pump-and-Dump Case" and rejecting argument that use of "center" implied plaintiff committed

worse acts).

> **E.    Plaintiff's Contention that "The Article Falsely Charges TST with Sexual Misconduct" Fails as a Matter of Law.**

Plaintiff claims that the following statements accuse it of sexual misconduct:

- While digging up facts for their defense, they've [the *Johnson* Defendants] run into other aggrieved Satanists around the county who have a litany of complaints about the organization, including allegations of sexually deviant gatherings . . . [including] orgies. . . ." Compl. ¶ 72 (brackted materials in original).

- Referencing an allegation that TST approves of "official orgies." *Id.*

Even if the above statements could be construed as asserting that Satanists engage in

orgies and other "deviant" activities, the statements are not actionable because it would require

the Court to determine the truth of statement about TST's religious doctrines, which, as set forth

above, is barred by the First Amendment.  *See supra* II.A.4.

> **F.    Plaintiff's Summation that "The Article Implies Other Unspeakably-Terrible Allegations Fails to State a Claim.**

TST asserts that three statements in the Article create the defamatory implication that

TST has committed unidentified "terrible" acts worthy of legal action:

- Of all the defendants, Johnson is the one who spent the most time digging into TST's background. "Every time I think I've hit the bottom, there's another terrible thing comes out," he said. "People send us things we can't talk about because we can't substantiate them." Compl. ¶ 76.

- I [Johnson] can't really get press coverage, get attorneys general to audit [TST] but what I can do is work. I can find everything public that I

possibly can; tie it together as best I can and hope that someone looks at it and picks it up." *Id.* at ¶ 78 (bracketed material in original).

•   They continue to post their findings about TST on a website. "We would appreciate any support you can offer," they write in a concluding statement, "as we struggle to survive this pursuit of justice in the worst year of our lives so far." *Id.* at ¶ 81.

As with its previous arguments, this Summation fails to support a defamation by implication claim. *See supra* II.A.1 (outlining legal requirements for a defamation by implication claim).

First, these statements cannot reasonably be read to imply TST commits other unnamed "terrible" acts. *See id.* Such an implication is undermined by the plain language of the first statement, which clearly notes that Mr. Johnson is referring to allegations he *cannot* substantiate. Compl. Ex. 1 at 15; *see Kavanagh*, 997 F. Supp. 2d at 255 (dismissing defamation by implication claim where "[d]efendants' statement, on its face, belie[d] [p]laintiff's claim of innuendo"). Similarly, the statement that Mr. Johnson "*can't* . . . get attorneys general to audit [TST]" belies TST's claim that the Article implies TST has engaged in acts that justify legal action by a State's attorney general. Compl. Ex. 1 at 19 (emphasis added). Finally, indicating that the *Johnson* Defendants are "struggl[ing]" does not refer to or reasonably imply undisclosed "terrible" acts by TST.

Even if these statements did imply that TST was engaged in some unidentified terrible acts, such an implication is too vague to amount to actionable defamation. *See Lee*, 166 F.3d at 547 (implication that plaintiff was suspected of "some vague wrongdoing" did not constitute defamation); *Smith*, 212 A.D.2d at 1039 (reference to "an indirect complaint about [plaintiff's] behavior" was too vague to give rise to an action for defamation). And TST again fails to plead that Defendants intended that defamatory implication. *See supra* II.A.1 (outlining requirement for defamation by implication claim that defendant intend the alleged defamatory meaning).

20

## III.
## <u>TST HAS FAILED TO PLAUSIBLE PLEAD ACTUAL MALICE</u>

Because Plaintiff is a public figure, it must plausibly plead that Defendants acted with "actual malice." *See Church of Scientology Int'l v. Behar*, 238 F.3d 168, 173–74 (2d Cir. 2001). This is has failed to do. For this independent reason, therefore, its Complaint should be dismissed.

### A.      **TST is a Public Figure.**

TST is a public figure for purposes of this lawsuit. "Whether or not a person or an organization is a public figure is a question of law for the court to decide." *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 270 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015), *and aff'd*, 622 F. App'x 67 (2d Cir. 2015). In *Gertz v. Robert Welch, Inc.*, the Supreme Court defined the ways in which a plaintiff could become a public figure, and noted that "commonly, those classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." 418 U.S. 323, 345 (1974). In other words, plaintiffs "who have 'assumed roles of especial prominence in the affairs of society' and who have 'invited attention and comment' are generally considered public figures." *McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174, 185 (S.D.N.Y. 2020) (Vyskocil, J.) (citing *Gertz*, 418 U.S. at 345). TST cannot seriously contend that it does not "invite attention and comment." In its Complaint, TST has alleged that it actively advocates for the rights of its members by, among other things, engaging in legal actions, that its advocacy "tends to attract attention," and that it appeals to the public for donations and to increase its membership. *See* Compl. ¶¶ 15, 28, 38, 39, 41, 50, 56, 71.

Courts have routinely held that plaintiffs engaging in similar activities are public figures for the purposes of defamation actions. *See Contemporary Mission, Inc. v. New York Times Co.*,

842 F.2d 612, 620–21 (2d Cir. 1988) (individual members of Church who sought media attention and had been involved in several other lawsuits were public figures required to establish that defendants published defamatory statements with knowledge of falsity or reckless disregard for falsity); *Siegelman*, 475 F. Supp. at 954 (Church of Scientology was public figure where it had "taken affirmative steps to attract public attention, and actively [sought] new members and financial contributions from the general public"); *Friends of Animals, Inc. v. Associated Fur Mfrs., Inc.*, 46 N.Y.2d 1065, 1067 (N.Y. 1979) (organization dedicated to the humane treatment of animals was a public figure); *Gospel Spreading Church v. Johnson Pub. Co.*, 454 F.2d 1050, 1051 (D.C. Cir. 1971) (the Gospel Spreading Church was a public figure "[a]s an established church with substantial congregations [that] seeks to play 'an influential role in ordering society'"). Accordingly, given the prominent public role they assume by their own admission, TST is a public figure that must plead actual malice to state a claim for defamation here.

## B.   TST Has Not Plausibly Pleaded Actual Malice.

To state a claim for defamation, "a public figure plaintiff must prove that an allegedly libelous statement was made with actual malice, that is, made with knowledge that it was false or with reckless disregard of whether it was false or not." *Behar*, 238 F.3d at 173–74 (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964)). To withstand a motion to dismiss, a public figure plaintiff must plead facts sufficient to render the alleged existence of actual malice "plausible on its face." *Twombly*, 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 679 ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."); *McDougal*, 489 F. Supp. 3d at 181 (Actual malice "must be plausibly alleged by providing facts to demonstrate a defendant's disregard for the truthfulness of its statements."). Courts in the Second Circuit and elsewhere have routinely dismissed defamation claims as a matter of law for failure to plausibly

plead actual malice.  *See, e.g., Brimelow v. New York Times Co.*, 2021 WL 4901969, at \*1 (2d

Cir. Oct. 21, 2021), *cert. denied sub nom. Brimelow v. The New York Times Co.*, 142 S. Ct. 1210

(2022) (affirming 12(b)(6) dismissal of defamation claim when plaintiff failed to adequately

allege actual malice); *McDougal*, 489 F. Supp. 3d at 187–88 (granting motion to dismiss

defamation claim where plaintiff failed to adequately allege actual malice); *Biro*, 963 F. Supp. 2d

at 286–88 (granting judgment on pleadings in libel claim for failure to plead plausible factual

allegations supporting actual malice allegations); *see also Michel v. NYP Holdings, Inc.*, 816

F.3d 686, 702 (11th Cir. 2016) ("[A]fter *Iqbal* and *Twombly,* every circuit that has considered the

matter has applied the *Iqbal/Twombly* standard and held that a defamation suit may be dismissed

for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a

reasonable inference of actual malice.").

Here, TST's rote recital of actual malice "buzzwords" falls woefully short of satisfying

its pleading burden.  For example, TST alleges, without citing supporting facts, that Defendants

"outright lied" or "knew their statements . . . were false."  Compl. ¶¶ 120, 122.  But TST's legal

conclusions are insufficient to plead actual malice.  *See Biro*, 963 F. Supp. 2d at 279–80

("[P]leading actual-malice buzzwords is simply not enough to nudge a case into discovery.")

(internal citation omitted).

Moreover, TST's allegations that Newsweek "ignored its Editorial Guidelines when it

published the [A]rticle," Compl. ¶ 7; *see also id.* at ¶¶ 100, 115, and that Newsweek "does not

employ fact-checkers," *id.* at ¶ 108, fail to plausibly plead subjective awareness of falsity, as

required by the actual malice standard.  *See Brimelow*, 2021 WL 4901969 at \*3 ("[A] public

figure plaintiff must prove *more than* an extreme departure from professional standards and . . . a

newspaper's motive in publishing a story cannot provide a sufficient basis for finding actual

malice.") (emphasis in original) (citing *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 665 (1989)).[5]

Similarly, Defendant's alleged failure to further investigate the allegedly defamatory claims made in light of Mr. Greaves denials does not constitute actual malice.  *See Harte-Hanks Commc'ns, Inc*, 491 U.S. at 688 ("[F]ailure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard."); *id.* at 691 n. 37 (("[T]he press need not accept denials, however vehement; such denials are so commonplace in the world of polemical charge and countercharge that, in themselves, they hardly alert the conscientious reporter to the likelihood of error.") (internal citations omitted).[6]  Accordingly, TST has failed to plead actual malice and, for this independent reason, the Complaint should be dismissed.

---

[5] TST's conclusory assertion that Defendants shared a "personal bias against TST" also does not support a plausible claim of actual malice.  *See* Compl. ¶¶ 98–99; *McDougal*, 489 F. Supp. 3d at 185 ("[A]llegation about improper political or personal biases do not establish actual malice without additional facts to suggest the speaker acted pursuant to that bias.").

[6] *See also Behar*, 238 F.3d at 174 ("[A]ctual malice is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing, but by whether there is sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.") (internal quotations omitted); *Brimelow*, 2021 WL 4901969, at *3 (("[I]t is well settled that denials without more do not support a plausible claim of actual malice."); *McDougal*, 489 F. Supp. 3d at 185 ("A plaintiff cannot, for example, allege merely that the speaker was negligent in failing to uncover falsity or that he should have investigated his claims further before speaking.").

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Complaint should be dismissed in its entirety with prejudice.

Dated:   July 15, 2022                     Respectfully submitted,


/s/*Cameron Stracher*
Cameron Stracher
Sara C. Tesoriero
CAMERON STRACHER, PLLC
51 Astor Place, 9th Floor
New York, NY 10003
Tel: 646.992.3850
Fax: 646.992.4241
cam@stracherlaw.com
sara@stracherlaw.com

*Attorneys for Defendants*

25

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2022, I caused a true copy of the foregoing to be served on all counsel of record via ECF.


/s/ *Sara C. Tesoriero*
Sara C. Tesoriero, Esq.