UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x
:
THE SATANIC TEMPLE, INC.,                                                :
                                                                         :
                                   Plaintiff,                            :  Case No. 1:22-cv-01343-MKV
v.                                                                       :
                                                                         :
NEWSWEEK MAGAZINE LLC and                                                :
JULIA DUIN                                                               :
                                                                         :
                                   Defendants.                           :
                                                                         :
------------------------------------------------------------------------ x

# REPLY MEMORANDUM OF LAW IN SUPPORT
# OF DEFENDANTS' MOTION TO DISMISS

In its Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Opp."), Plaintiff The Satanic Temple, Inc. ("Plaintiff" or "TST") does not claim that any statement published by Defendants is defamatory on its face. Instead, in its attempt to state a defamation claim, TST continues to invent statements Defendants have not published, and to draw attenuated and unreasonable inferences about statements Defendants have published. In addition, Plaintiff fails to directly address Defendants' arguments that the statements published in the Article are not actionable under the doctrine of ecclesiastical abstention and/or protected by the fair report privilege. Finally, Plaintiff's contention that Defendants have not "proved" that it is a public figure who must plausibly plead actual malice, ignores its own allegations in this case and its long record of advocacy on the issues addressed in the Article that form the basis for its claims here.

For all these reasons, as set forth more fully below and in its opening memorandum of law ("Mem."), Plaintiff's Complaint should be dismissed.

1

I.  **PLAINTIFF FAILS TO STATE A CLAIM FOR DEFAMATION BY IMPLICATION.**

TST does not dispute that to state a claim for defamation by implication, a plaintiff must make a rigorous showing that the allegedly defamatory statements "as a whole can be reasonably read both to impart a defamatory inference and to affirmatively suggest that the author intended or endorsed that inference." *Stepanov v. Dow Jones & Co.,* 120 A.D.3d 28, 37 (1st Dep't 2014). Yet, far from making this showing in its Opposition, Plaintiff twists new meanings from the statements that Defendants actually published. Thus, for example, Plaintiff now claims that the Article can "only be read to mean that TST's co-founder is an embezzler," Opp. at 5, that TST "conceals this embezzlement by ousting anyone who investigates the claim," *id.,* that "TST has secret dealings with the alt-right," *id.* at 8, and that TST has committed "perjury." *Id.* at 14.

To support these implications, Plaintiff not only presents unsupported asides about religion and society, *see* Opp. §§ 2.2.1 & 2.5.1, and piles inference upon inference, but misrepresents the statements published by Defendants. For example, Plaintiff claims that the Article charges "that 'TST money' was expended to pursue [co-founder] Greaves's 'personal vendetta,'" Opp. at 10, and that the Article presents this "'personal vendetta' claim as one of the 'facts' discovered by the *Johnson* defendants." *Id.* at 6. But the Article never charges TST with using its funds to "pursue Greaves's 'personal vendetta,'" and never reports that this "personal vendetta" was "one of the 'facts' discovered by the *Johnson* defendants."[1] Instead, the Article accurately reports that "Salome DeMeur, a pseudonym for a former member based in Pensacola, Fla., said she got sidelined after asking Greaves why 'he was going to sue Twitter like it was

---

[1] Plaintiff's indiscriminate and misleading use of quotation marks also creates the misperception that Defendants used the word "fact" to describe Greaves' use of TST funds for a "personal vendetta," which they did not.

personal vendetta, but then using TST money to do so." Compl. Ex. 1.  The Article could not be clearer that:  1) the "personal vendetta" charge was made by a former TST member, not Defendants; 2) the use of TST funds to sue Twitter was never presented in the Article as "one of the 'facts' discovered by the *Johnson* defendants." *See also* Mem. at 6-8.  Plaintiff also conveniently omits that the Article quotes Greaves explaining that attorney Mark Randazza represented TST in the Twitter lawsuit *pro bono,* which contradicts Plaintiff's contention that the Article charges TST with using its own funds for Greaves's personal vendetta.  *See* Compl. Ex. 1 ("'There were people upset that we accepted the pro bono work of Mark Randazza; in that the optics were wrong and that we were sympathetic to the alt right to use him,' Greaves told *Newsweek.*  'But we couldn't turn down pro-bono help.'").[2]

      Plaintiff also does not seriously challenge Defendants' argument that the Complaint fails to plausibly plead that Defendants intended or endorsed any of the alleged defamatory implications.  *See* Mem. at 6-8.  Instead, Plaintiff argues it has satisfied its burden as to the Defedants' "'Accusations' of Fraud'" because the Article "links" the "'personal vendetta' claim" to the "'facts' discovered by the *Johnson* defendants." Opp. at 6.  But, as noted above, the Article never reports that the use of TST funds was discovered as a "fact" by the *Johnson* defendants.  Moreover, the Article includes Greaves's statement that attorney Randazza represented TST in the Twitter lawsuit *pro bono.*  Thus, there is no merit to Plaintiff's claim that Defendants intended or endorsed the implication that it committed fraud.  *See Kesner v. Dow Jones & Co.,* 515 F.Supp.3d 149, 173 (dismissing defamation by implication claim where article

---

[2] Plaintiff's contentions that the Article charges it with concealing embezzlement, having secret dealings with the alt-right, and committing perjury are addressed in Defendants' Memorandum of Law and will not be repeated here.  *See* Mem. at 6-12, 15-19.

included plaintiff's refutation of allegedly defamatory statements), *appeal dismissed* (Apr. 16, 2021).

Similarly, Plaintiff's contention that the Article "endorses the defamatory charge that TST conceals embezzlement by ousting the 'dozens of members' for investigating the purported embezzlement," Opp. at 6, ignores the Article's publication of Greaves's response to the charge that former TST members were kicked out of the organization when they for financial records: "'We get this litany of senseless disparaging claims against us that says we're a religious group acting in a nefarious manner,' he said. 'They call us a cult, which doesn't stand up to scrutiny either.'" Compl. Ex. 1. Thus, there is no merit to Plaintiff's contention that the Article "present[s] only one side of the story."[3]  Opp. at 6.

## II.  THE STATEMENTS AT ISSUE ARE NOT ACTIONABLE UNDER THE DOCTRINE OF ECCLESIASTICAL ABSTENTION.

Plaintiff makes the sweeping and incorrect assertion that Defendants contend it is defamation proof. Opp. at 1; *see also id* at 4 (arguing that Defendants contend TST "is prohibited from recovery for defamation solely because TST's ideology 'doesn't believe in God, Satan, or the supernatural.'"). To the contrary, Defendants contend that certain allegedly defamatory statements would require the Court to determine the truth about TST's religious doctrine, which is barred by the First Amendment. *See* Mem. at 10-11. As the court in *United Federation of Churches v. Johnson* held, determining whether it is defamatory to claim that Plaintiff is affiliated with neo-Nazis and the "alt-right" would "require judicial interference into ecclesiastical affairs," in violation of the First Amendment. 522 F. Supp. 3d 842, 855 (W.D. Wash. 2021) (internal quotation marks omitted). So, too, Plaintiff's claims that it is defamatory

---

[3] Plaintiff also ignores the fact that the Article devotes eleven paragraphs to statements by Greaves and TST's attorney, Matthew Kezhaya. *See* Compl. Ex. 1.

to state that it's not clear "whether TST actually practices abortion as a religious ritual," Compl. ¶ 39, that it engages in "sexually deviant gatherings . . . [including] orgies," *id.*, and that it approves of "official orgies." *Id.; see also* Mem. at 11, 19.

Plaintiff argues that the doctrine of ecclesiastical abstention does not apply to its claims here because those claims "can be resolved by disregarding religion." The federal court in Washington rejected Plaintiff's argument, however, because evaluating Plaintiff's defamation claims would require an evaluation of TST's beliefs, and then a determination as to whether the allegedly defamatory statements truthfully reported those beliefs. *See United Federation of Churches, LLC v. Johnson,* 2022 WL 1093015, at *2-3 (W.D Wash., April 12, 2022) (rejecting Plaintiff's contention, on motion for reconsideration, "that the court can resolve the dispute based on 'purely secular rules' by treating [it] like it would any other organization.'") (brackets in original); *see also* Mem. at 10-11, 19.  This Court should reject the same argument here.

## III.    THE STATEMENTS AT ISSUE ARE PROTECTED AS 'FAIR REPORT'

Plaintiff contends that Defendants have lost the benefit of the fair report privilege because "Duin did not give TST an opportunity to present its side of the 'debate,' instead preferring to present only the charge of embezzlement." Opp. at 7.  As an initial matter, "a person need not report both sides of a disputed litigation to be entitled to the fair report privilege." *Sheindlin v. Brady,* 2022 WL 1063678, at *16 (S.D.N.Y. April 7, 2022).  More important, Defendants have not argued that any "charge of embezzlement" was protected by the fair report privilege.  Rather, Defendants argued that the statement that Plaintiff "sued" Twitter when, in fact, Plaintiff "invited an administrative mediation process through the Massachusetts Commission Against Discrimination," Compl. ¶ 24, was protected by the fair report privilege. Mem. at 9-10.  Thus, Plaintiff's argument on this point is meaningless.

Plaintiff also contends that Defendants lost the fair report privilege by "failing to report on the subsequent proceedings" in the *Johnson* lawsuit. Opp. at 15. Leaving aside TST's dubious contention that "subsequent proceedings have vindicated TST's claims," Opp. at 15, the decision cited by Plaintiff was published six months *after* the Article was published. *See United Federation of Churches, LLC v. Johnson,* 2022 WL 1128919 (W.D. Wash. April 15, 2022). Plaintiff provides no support for the proposition that the fair report privilege may be lost in light of subsequent proceedings, and Defendants are aware of none. *See Martin v. Hearst,* 777 F.3d 546, 552 (2d Cir. 2015) (defendant's alleged failure to update article after plaintiff's arrest was expunged did not state a defamation claim because the article was accurate at the time of publication).

## IV. PLAINTIFF HAS FAILED TO PLAUSIBLY PLEAD ACTUAL MALICE

Plaintiff contends that it is not a public figure, and does not have to plead and prove that Defendants acted with actual malice. On the face of its own pleadings, however, TST easily qualifies as a public figure that must plead and prove actual malice under the relevant constitutional standard.

### A. TST is a Public Figure.

Plaintiff does not dispute that whether an organization is a public figure is a matter of law for the court to decide. *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 270 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015), *and aff'd*, 622 F. App'x 67 (2d Cir. 2015). Plaintiff contends, however, that Defendants have failed to provide "any show of proof to substantiate the classification." Opp. at 22. It is settled law, however, that when a plaintiff's status "can be determined based upon the pleadings alone, the Court may deem a plaintiff a public figure at the

6

motion to dismiss stage." *Biro,* 963 F. Supp. 2d at 263 (*citing* James v. Gannett Co., Inc., 353 N.E.2d 834, 839 (N.Y. 1976)).

Here, Plaintiff cannot seriously dispute that it is either a general purpose public figure or, at a minimum, a limited purpose public figure. On the face of its pleadings and other legal filings, it is clear that TST has: 1) invited public attention to its views in order to influence others; 2) voluntarily injected itself into a public controversy that is related to the subject of this litigation; 3) assumed a position of prominence in the controversy, 4) by its activism maintained regular and continued access to the media.[4]  *See Lerman v. Flynt Distrib. Co., Inc.,* 745 F.2d 123, 136-37 (2d Cir. 1984) (setting forth four-part limited purpose public figure test).

As TST itself has acknowledged: "TST advocates for the religious rights of its membership, and must sometimes take legal action to protect those rights. For example, TST has brought litigation over its members being excluded from 'all-inclusive' governmental displays of religion and religious exemptions to laws that burden the membership's ideology." Compl. ¶ 15. *see also id.* (acknowledging that TST's advocacy "tends to attract attention").[5]  Indeed, TST has been involved in numerous reported cases advocating for its religious beliefs and viewpoints.

---

[4] According to Judge Sack, the "access to media" inquiry should be considered "[o]f secondary importance' " in the limited purpose public figure analysis. Sack, *Sack on Defamation,* at § 5:3:3, 5–27.

[5] *See also* Bryce K. Hurst, *The Devil Is In The Trademark: A Discussion of The Satanic Temple v. Netflix*, 20 RUTGERS JRNL OF LAW & RELIGION 219, 223 ("The Satanic Temple is also a very politically conscious organization engaged in activism ranging from advocating for the abolishment of corporeal punishment in schools, to challenging state abortion restrictions as violative of the sincere religious beliefs of doctors and women who belong to the Temple.") (citations omitted); Kara Loewenthell, *The Satanic Temple, Scott Walker, and Contraception: A Partial Account of Hobby Lobby's Implication for State Law*, 9 HARVARD LAW & POLICY REV. 89, 115 (noting the Satanic Temple's campaign purporting to allow women to "opt out" of the requirement of "informed consent" abortion regulations following the Supreme Court's decision in *Burwell v. Hobby Lobby Stores, Inc.,* 573 U.S. 682 (2014)).

*See, e.g., Satanic Temple v. Parson,* 735 Fed. Appx. 900 (8th Cir. 2018); *Satanic Temple. v. City of Belle Plaine, Minn.,* 475 F. Supp. 3d 950 (D. Minn. 2020); *Satanic Temple, Inc. v. City of Scottsdale,* 423 F. Supp. 3d 766 (D. Ariz. 2019); *Cave v. Thurston,* 2021 WL 4936185 (Oct. 22, 2021 E.D. Ark.); *Satanic Temple, Inc. v. City of Boston, MA,* 2021 WL 3079868 (D. Mass. 2012); *United Federation of Churches v. Netflix, et al.,* 2018 WL 5839467 (S.D.N.Y. 2018).[6]

The controversy over TST's beliefs and viewpoints is the subject of TST's lawsuit against its former members, and that controversy forms the basis for Defendants' reporting in the Article and Plaintiff's claims in this lawsuit. Thus, TST undoubtedly qualifies as a public figure for purposes of the issues raised in this lawsuit.

**B.    TST Has Not Plausibly Pleaded Actual Malice.**

TST's contention that Defendants' alleged departure from "their own journalistic standards" satisfies its burden to plausibly plead actual malice is simply incorrect as a matter of law. *See Brimelow v. New York Times Co.*, 2021 WL 4901969, at *3 (2d Cir. Oct. 21, 2021), *cert. denied sub nom. Brimelow v. The New York Times Co.*, 142 S. Ct. 1210 (2022) ("[A] public figure plaintiff must prove *more than* an extreme departure from professional standards") (emphasis added); *see also* Mem. at 23-24. So, too, is Plaintiff's contention that Defendants' alleged "pre-conceived narrative," "rooted in political or religious bias," demonstrates actual malice. *See McDougal*, 489 F. Supp. 3d at 185 (citations omitted); *see also* Mem. at 24.

Although Plaintiff argues that Defendants acted with actual malice because they relied on anonymous and unreliable sources, *see* Opp. at 24, Plaintiff does not, in fact, plead that Defendants relied on any anonymous sources, nor does Plaintiff plead that Defendants were

---

[6] On a Rule 12(b)(6) motion, the Court may take judicial notice of information contained in prior lawsuits without regard for the truth of their contents. *Staehr v. Hartford Financial Services Group, Inc.,* 547 F.3d 406, 425 (2d Cir. 2008).

subjectively aware that its sources were unreliable. The mere allegation that Defendants' sources were unreliable fails to plausibly plead that Defendants *knew* the sources were unreliable. *See BYD Company Ltd. v. VICE Media LLC,* 531 F. Supp. 3d 810, 826 (S.D.N.Y. 2021) (allegations that defendant relied on unreliable sources failed to plausibly plead actual malice where, even drawing all inferences in plaintiff's favor, allegations "did not come close to plausibly alleging that anyone at VICE was 'subjectively aware that the source was unreliable.'") (citation omitted); *Margolies v. Rudolph,* 2022 WL 2062460, at *7 (E.D.N.Y. 2022) (allegation that defendant failed to assess credibility of sources failed to plausibly plead actual malice because it did "not provide any facts on which to infer that [defendant] made the [allegedly defamatory] Facebook Post" either with knowledge of falsity or in reckless disregard of falsity).

        Finally, Plaintiff's contention that Defendants' refusal to take down the Article or publish a retraction is evidence of actual malice, relying on a case from ninety-two years ago, *see* Opp. at 24-25 (citing *Kehoe New York Trib.,* 229 A.D. 220, 225 (1st Dept. 1930)), ignores the Supreme Court's teaching in *New York Times v. Sullivan,* that a failure to retract is "not adequate evidence of malice for constitutional purposes." 376 U.S. 254, 286 (1964); *see also Biro v. Conde Nast,* 963 F.Supp.2d 255, 287 (SDNY 2013) ("[T]he decision not to retract is, in and of itself, insufficient to establish by clear and convincing evidence that a defendant acted with actual malice."); *Kahl v. Bureau of National Affairs, Inc.,* 856 F.3d 106, 118 (D.C. Cir. 2017) (failure to retract does not demonstrate actual malice because it does not prove a wrongful state of knowledge at the time of initial publication).

## **CONCLUSION**

For the foregoing reasons, as well as those set forth in their opening memorandum of law, Plaintiff's Complaint should be dismissed in its entirety with prejudice.

Dated:   August 29, 2022                    Respectfully submitted,


/s/*Cameron Stracher*
Cameron Stracher
Sara C. Tesoriero
CAMERON STRACHER, PLLC
51 Astor Place, 9th Floor
New York, NY 10003
Tel: 646.992.3850
Fax: 646.992.4241
cam@stracherlaw.com
sara@stracherlaw.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

      I hereby certify that on August 29, 2022, I caused a true copy of the foregoing to be served on all counsel of record via ECF.

                                                    /s/ *Cameron Stracher*
                                                    Cameron Stracher