USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/8/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE SATANIC TEMPLE, INC.,

                Plaintiff,

      -against-

NEWSWEEK MAGAZINE LLC and JULIA DUIN,

                Defendants.

1:22-cv-1343 (MKV)

**OPINION AND ORDER**

MARY KAY VYSKOCIL, United States District Judge:

The Satanic Temple, Inc. ("The Satanic Temple" or "Plaintiff") filed this defamation case against Newsweek Magazine LLC ("Newsweek") and Julia Duin (together, "Defendants") in connection with numerous statements contained in an article titled "Orgies, Harassment, Fraud: Satanic Temple Rocked by Accusations, Lawsuit." Defendant Duin moves to dismiss the claim against her for lack of personal jurisdiction, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, and separately moved with Newsweek to dismiss the action for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6). For the reasons that follow, the jurisdictional motion is granted, while the merits motion is granted in part and denied in part.

**BACKGROUND[1]**

The Satanic Temple is a religious organization which "venerates (but does not worship) the biblical adversary as a promethean icon against tyranny." [ECF No. 1] ("Compl.") ¶ 12. The organizational mission of The Satanic Temple is to propagate its Seven Tenets, which it does by

---

[1] When determining whether to dismiss a case for failure to state a claim, the Court must accept as true all well-pleaded factual allegations in the Complaint and draw all reasonable inferences in the plaintiff's favor. *See Faber b. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). Furthermore, "[a] complaint is deemed to include any written instrument attached to it as an exhibit." *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004). The following facts, alleged in the Complaint and its attached exhibits [ECF No. 1., Exs. 1-10], are thus assumed to be true for the purposes of this motion.

engaging in various charitable activities, holding weekly services, having a structured ministry program, providing a sobriety program, and offering after-school childcare.  Compl. ¶ 14.

The Satanic Temple also brings plenty of lawsuits.  Many of these lawsuits purport to protect the religious rights of the organization's members and tend, as a corollary, to capture public attention.  Compl. ¶ 15.  But these are not the only headline-grabbing suits that Plaintiff has brought.  As relevant to this case, Plaintiff also brought a defamation suit in the Western District of Washington against several of its former members, who ascribed extremist ideologies and affiliations to the organization.  Compl. ¶ 19; *see also United Fed'n of Churches v. Johnson*, 522 F. Supp. 3d 842 (W.D. Wash. 2021) (the "*Johnson* Case").  After the defamation claims from that suit were dismissed, Newsweek published an article on its website titled "Orgies, Harassment, Fraud: Satanic Temple Rocked by Accusations, Lawsuit."  Compl. Ex. 1 (the "Article").

The Article, which was written by Julia Duin, discusses not only the claims involved in the *Johnson* Case, but also new accusations leveled against The Satanic Temple.  Compl. Ex. 1. As the Article's title suggests, these accusations concern, among other things, a pattern of sexual deviancy and abuse, as well as a history of harassing dissenters.  Compl. Ex. 1.

The Satanic Temple brought this libel lawsuit against Defendants alleging that numerous statements contained in the Article were independently defamatory or defamatory by implication. Defendant Duin moved to dismiss the claim against her for lack of personal jurisdiction, pursuant to Rule 12(b)(2) [ECF Nos. 16, 17], and Defendants both moved to dismiss the action for failure to state a claim, pursuant to Rule 12(b)(6) [ECF Nos. 19, 20].[2]

---

[2] The Satanic Temple filed an opposition to the jurisdiction motion [ECF No. 22] ("Pl. Juris. Br."), and an opposition to the merits motion [ECF No. 21] ("Pl. Br.").  Duin filed a reply for her motion [ECF No. 25] ("Duin Reply"), and Defendants filed a reply for their joint motion [ECF No. 26] ("Defs. Reply").

## LEGAL STANDARDS

To survive a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff must make a *prima facie* showing that the Court has personal jurisdiction over the defendant.  *See Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006).  "In evaluating whether the requisite showing has been made," the Court must "construe the pleadings and any supporting materials in the light most favorable" to the plaintiff. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

## DISCUSSION

### I.    JURISDICTION

Duin moved to dismiss for lack of personal jurisdiction.  When responding to a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden to make a *prima facie* showing that the court has jurisdiction over the defendant.  *See Thomas*, 470 F.3d at 495. Personal jurisdiction over a non-resident defendant in a diversity action is governed by the law of the state in which the federal district court sits, which, in this case, is New York.  *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994).

New York's long-arm statute provides for general and specific personal jurisdiction.[3] Pursuant to that long-arm statute, a court may exercise specific jurisdiction over a non-domiciliary that "in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." New York Civil Practice Law and Rules ("CPLR") Section 302(a)(1).[4] Specific jurisdiction over the non-domiciliary also requires that the cause of action arise from the enumerated acts. *See Biro v. Nast*, No. 11-cv-4442, 2012 WL 3262770, at *9 (S.D.N.Y. Aug. 10, 2012). With respect to the "transacting business" part of the analysis, courts look to "the totality of the defendant's activities within the forum." *Sterling Nat'l Bank & Trust Co. of N.Y. v. Fidelity Mortg. Inv'rs*, 510 F.2d 870, 873-74 (2d Cir. 1975).

In defamation cases, New York courts construe "transacts any business within the state" more narrowly than in other types of litigation. *Best Vans Lines, Inc. v. Walker*, 490 F.3d 239, 248 (2d Cir. 2007). The Second Circuit has explained that "the single act of uttering a defamation, no matter how loudly, is not a transact[ion of] business that may provide the foundation for personal jurisdiction." *Id.* (internal quotation marks omitted) (alteration in original). Something "more than the distribution of a libelous statement must be made within the state to establish long-arm jurisdiction over the person distributing it." *Id.* at 249. Courts have considered the requirement that the Defendant do "something more" to be satisfied "when at least part of the defamatory content was created, researched, written, developed, or produced in New York." *Goldfarb v. Channel One Russia*, 442 F. Supp. 3d 649, 662 (S.D.N.Y. 2020) (collecting cases).

---

[3] Plaintiff does not contend that Duin is subject to general personal jurisdiction.

[4] The parties agree that CPLR Section 302(a)(1) applies in this case. CPLR Sections 302(a)(2) and 302(a)(3) do not apply because they explicitly exclude defamation claims.

Here, Plaintiff has not sufficiently identified an utterance, much less "something more," to establish personal jurisdiction over Duin.  Plaintiff admits that the Article refers to conduct that took place outside of New York and does not contend that Duin conducted any research in New York, interviewed any sources in New York, or otherwise drafted any portion of the Article in New York.  Specific jurisdiction considers the totality of the defendant's activity in the forum, but Plaintiff has failed to allege that Duin has engaged in *any* activity in the forum.  Rather, Plaintiff argues that Duin is subject to personal jurisdiction in New York because she allegedly is employed by Newsweek, which is a New York company.  Plaintiff has failed, however, to provide any reasoning or case law to support that conclusion.

The two cases on which Plaintiff principally relies are entirely inapposite.  In the first case, *Goldfarb*, the court found that the defendant, a Russian television company, was subject to personal jurisdiction in New York because it operated a studio in Manhattan, conducted an interview with Plaintiff pertaining to the claims in that case at that New York studio, and distributed its programing throughout Manhattan.  422 F. Supp. 3d at 658.  And even with those alleged New York contacts, the Court (while refusing to dismiss) deemed the jurisdictional inquiry "*a close case.*"  *Id.* at 662 (emphasis added).  And in the second case, *Sovik v. Healing Network*, 244 A.D.2d 985 (4th Dep't 1997), the Fourth Department concluded that an allegedly defamatory letter sent by the defendants could provide a basis for personal jurisdiction where the defendants had "drafted the letter and either distributed or authorized the distribution of the letter in the Buffalo area," thereby demonstrating the defendants' "active involvement and personal control [in New York] over the writing and distribution of the allegedly defamatory statement."  *Id.* at 987.  That is a far cry from what is alleged in this case.

Plaintiff argues that the Court should grant it jurisdictional discovery before determining that it lacks personal jurisdiction over Defendant Duin.  The purpose of such discovery, as set out by Plaintiff, would be to determine the true relationship between Duin and Newsweek, given that the Complaint alleges that she is an employee (Compl. ¶ 10), while Duin filed a declaration in support of her motion to dismiss attesting that she is an independent contractor (ECF No. 18 ¶ 3).  But that factual dispute need not be resolved because, for the reasons discussed above, the Court would lack jurisdiction regardless of Duin's employment status.

Finally, Plaintiff argues that if the Court decides it does not have jurisdiction, it should transfer the case to the District of Massachusetts, which, according to Plaintiff, would have jurisdiction over both defendants.  Plaintiff does not explain the basis for this assertion, but it presumably rests on the allegation that Plaintiff is incorporated in the state of Massachusetts. Plaintiff has cited no authority, however, for the proposition that Massachusetts has personal jurisdiction over a defendant in a defamation case so long as the allegedly defamed party is incorporated in that state.  Because the facts raised in Plaintiff's motion demonstrate that Plaintiff has "at best, a questionable basis for personal jurisdiction" in Massachusetts, the Court concludes that "the interests of justice favor dismissal rather than transfer."  *In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, 257 F. Supp. 2d 648, 651 (S.D.N.Y. 2003).

## II.    MERITS

The Court begins it analysis by considering whether Plaintiff qualifies as a public figure such that it must satisfy the heightened burden of plausibly pleading that Defendants acted with "actual malice."  *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 173-74 (2d Cir. 2001).  The Court then proceeds to the allegedly defamatory statements.

### A.  Public Figure

"Whether or not a person or an organization is a public figure is a question of law for the court to decide."  *Church of Scientology Int'l v. Eli Lilly & Co.*, 778 F. Supp. 661 n.3 (S.D.N.Y. 1991).  "Where the question whether a plaintiff is a public figure can be determined based upon the pleadings alone, the Court may deem a plaintiff a public figure at the motion to dismiss stage."  *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 270 (S.D.N.Y. 2013).  A determination of this sort is not easily made at such an early stage, however, given that defendant bears the burden of proof on this score.  *See Krauss v. Globe Int'l, Inc.*, 251 A.D.2d 191, (1st Dep't 1998).

There are two types of public figures: general and limited purpose public figures. General purpose public figures are those who "occupy positions of such persuasive power and influence that they are deemed public figures for all purposes," and must therefore meet the actual malice standard for all libel claims.  *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 324 (1974).  To qualify, the person or organization must be a "'household name' on a national scale." *Biro*, 963 F. Supp. 2d at 270 n.8.  Defendants contend in one sentence of their reply brief that Plaintiff is a general public figure.  But they offer no arguments regarding Plaintiff's status that would justify such a conclusion: there is no discussion of how many members Plaintiff has or how much national attention it has garnered.  "The Satanic Temple" may be a catchy name, but the Court cannot conclude (at least at this stage) that it has achieved "household" status.

The question thus turns on whether Plaintiff is a limited purpose public figure.  For a plaintiff to be a limited purpose public figure, "[a] defendant must show the plaintiff has: (1) successfully invited public attention to [its] views in an effort to influence others prior to the incident that is the subject of litigation; (2) voluntarily injected [itself] into a public controversy related to the subject of the litigation; (3) assumed a position of prominence in the public

controversy; and (4) maintained regular and continuing access to the media." *Lerman v. Flynt Distrib. Co.*, 745 F.2d 123, 136-37 (2d Cir. 1984). It is not enough that the individual or organization has become "involved in or associated with a matter that attracts public attention." *Gottwald v. Sebert*, 193 A.D.3d 573, 148 N.Y.S.3d 37, 44 (1st Dep't 2021).

Defendants falter at the first step. The thrust of their limited purpose public figure argument stems from a single paragraph in the Complaint, which provides that Plaintiff "advocates for the religious rights of its membership, and must sometimes take legal action to protect those rights. For example, [The Satanic Temple] has brought litigation over its members being excluded from 'all-inclusive' governmental displays of religion and religious exemptions to laws that burden the membership's ideology." Compl. ¶ 15. Defendants contend that this activity is sufficient to make Plaintiff a limited purpose public figure because the "advocacy tends to attract attention." Compl. ¶ 15.

But attention alone is not enough. Plaintiff must have "*invited* public attention to [its] views *in an effort to influence others*." *Lerman*, 745 F.2d at 136. There is no record evidence, at least at this stage, to suggest that such an invitation had been extended. Defendants offer no evidence to show that Plaintiff "openly invited media attention," by "issuing press releases, making public statements [or] addressing 'open letters.'" *Contemp. Mission, Inc. v. New York Times Co.*, 842 F.2d 612, 618 (2d Cir. 1988). So far as the Complaint alleges, Plaintiff initiated lawsuits for the sole purpose of protecting the religious rights of its members, *not* to influence the minds of others. One does not voluntarily inject itself into a public controversy simply by filing a lawsuit to vindicate its rights, even if doing so incidentally attracts public attention. *See Time, Inc. v. Firestone*, 424 U.S. 448, 965 (1976) (holding that a prominent socialite involved in

a heavily publicized divorce action was not a public figure since such publicity had been involuntarily obtained as a byproduct of the divorce proceedings).

Finally, Defendants suggest that Plaintiff is a public figure because it solicits donations to increase its membership. But even assuming that would be sufficient for Plaintiff to qualify as a public figure, the Complaint does not state the source of the donations, nor does it explain the sort of things for which the donations are used. Plaintiff offers a variety of services to its members, including a sobriety program and after-school childcare, which could be funded by donations. That donations may be solicited for such purposes does not mean that Plaintiff has thrust itself into a public controversy. An opposite conclusion would effectively render all religions (and many non-profits) *per se* public figures. Such a rule would sweep too broadly.

### B. Defamation Claim

"Defamation, consisting of the twin torts of libel and slander, is the invasion of the interest in a reputation and good name." *Albert v. Loksen*, 239 F.3d 256, 265 (2d Cir. 2001) (internal quotation marks omitted). Spoken defamatory words are generally considered slander, while written defamatory words are libel. *Id.* at 265. This is a libel case.

Under New York law, a defamation claim must allege (1) a false statement, (2) which was published without privilege or authorization to a third party, (3) through fault amounting to at least negligence on the part of the publisher, (4) that either caused special harm or constitutes defamation per se. *See Kamchi v. Weissman*, 125 A.D.3d 142, 157 (2d Dep't 2014) (internal quotation marks omitted). "Since falsity is a necessary element of a defamation cause of action and only facts are capable of being proven false, it follows that only statements alleging facts can properly be the subject of a defamation action." *Gross v. New York Times Co.*, 82 N.Y.2d 146, 152-53 (1993) (internal quotation marks omitted). Thus, "expressions of an opinion 'false or

not, libelous or not, are constitutionally protected and may not be the subject of private damages actions." *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 286 (1986).

But literally true statements are not immune from suit.  Under New York law, a plaintiff may bring a defamation-by-implication claim which involves "false suggestions, impressions and implications arising from otherwise truthful statements." *Armstrong v. Simon & Schuster, Inc.*, 85 N.Y.2d 373, 381 (1995).  To succeed on such a claim, "the plaintiff must make a rigorous showing" that the challenged publication "as a whole can be reasonably read both to impart a defamatory inference and to affirmatively suggest that the author intended or endorsed the inference." *Stepanov v. Dow Jones & Co.*, 120 A.D.3d 28, 37 (1st Dep't 2014)).  This is an "objective" standard, which "asks whether the plain language of the communication itself suggests that an inference was intended or endorsed." *Id*.  Generally, a claim for defamation by implication must be based on a "misleading omission[] or false suggestion." *Krepps v. Reiner*, 588 F. Supp. 2d 471, 483 (S.D.N.Y. 2008) (quoting *Oluwo v. Hallum*, 16 Misc.3d 1139(A), 851 N.Y.S.2d 59 (Table), 2007 WL 2701286, at *3 (Sup. Ct. Kings Cnty. Aug. 31, 2007)); *see also Silverman v. Clark*, 35 A.D.3d 1, 16, 822 N.Y.S.2d 9, 20-21 (2006) (noting that a claim of defamation by implication "is generally characterized . . . by misleading omissions and false suggestions").

Plaintiff argues that it was defamed by numerous statements contained in the Article. Some statements are alleged to be demonstrably false and expressly defamatory; others are alleged to be substantially true but defamatory by implication.[5]  Regardless of the nature of the

---

[5] Defamation by implication is different from a claim of defamation *per quod*.  "While defamation by implication addresses a situation where the false statement is contained not in the statement's literal wording but rather its innuendo, defamation *per quod* occurs when a statement is actionable despite its apparent truth in light of extrinsic facts known to the audience." *Henry v. Fox News Network LLC*, No. 21-cv-7299, 2022 WL 4356730, at *5 (S.D.N.Y. Sept. 20, 2022).  The Complaint styles its single count as one for "Libel *per se* and Libel *per quod*," but it

allegation, "[w]hether particular words are defamatory presents a legal question to be resolved by the court[s] in the first instance." *Aronson v. Wiersma*, 65 N.Y.2d 592, 593 (1985).  The Court must thus address each of the allegedly defamatory statements.  So far as the Court can tell, there appear to be twenty-two such statements, which can be grouped into seven discrete groups.[6]

### *1) Financial Fraud*

Plaintiff argues that the article was defamatory in implying that Plaintiff engaged in a pattern of embezzlement, which it concealed by ousting anyone who investigated a claim of wrongdoing.  Such fraudulent activity was allegedly implied through the following statements:

- "In 2018, [The Satanic Temple] sued Twitter for temporarily suspending the account of co-founder Lucien Greaves."  Compl. ¶ 23.

- "Dozens of people" have been "kicked out for asking for financial records from this alleged-non-profit organization."  Compl. ¶ 29.

- A former member was "sidelined after asking Greaves why 'he was going to sue Twitter like it was a personal vendetta, but then using [The Satanic Temple's] money to do so.'"  Compl. ¶ 32.

Plaintiff contends that these statements suffer from minor inaccuracies.  For example, Plaintiff alleges that Twitter did not "temporarily" suspend Greaves, but rather permanently banned him.  Compl. ¶ 25.  This inaccuracy allegedly defamed Plaintiff by implication because a permanent ban would justify legal action to a reasonable reader, while a temporary suspension would not.  Compl. ¶ 25.  The Complaint also alleges that a reasonable reader would assume that the suit against Twitter cost Plaintiff a lot of money, when in reality the matter was handled pro bono and no money was expended.  Compl. ¶ 24.  Plaintiff contends that this error and omission,

---

seems to misuse the latter term, and instead pleads a claim for libel by implication.  The Court will thus interpret the Complaint as bringing a claim of libel by implication.

[6] The Court only addresses statements alleged to be defamatory in the Complaint, and not any statements raised for the first time in Plaintiff's opposition to the motion to dismiss.

when combined with the statement that Plaintiff has booted inquiring members, suggest that The Satanic Temple "is nothing more than a veneer of a charitable organization, whose purpose is in reality to enrich its directors with donations solicited through public fraud."  Pl. Br. at 7.

This an unjustifiable leap.  Nothing about the Article's reference to Twitter even remotely suggests that Plaintiff has been engaging in fraudulent financial dealings.  The same might not be said about the statement that dozens of people had been kicked out of The Satanic Temple for asking for financial records, which does raise some red flags.  But Plaintiff does not allege that the latter statement is false, or that any relevant information has been omitted.[7]  There is nothing defamatory about accurately reporting signs of smoke even if there is no proof of fire.

### 2) Sexual Misconduct and Abuse

Plaintiff next alleges that the Article falsely accuses the organization of sexual deviancy and sexual abuse with the following statements:

- "While digging up facts for their defense, they've [the *Johnson* defendants] run into other aggrieved Satanists around the country who have a litany of complaints about the organization, including allegations of sexually deviant gatherings that, according to one . . . memo, allow for 'orgies, BDSM, fetish balls . . . ritual flogging, live ritual sex, burlesque show."  Compl. Ex. 1 at 4.

- Referencing an allegation that The Satanic Temple approved of "official orgies" in a memorandum it circulated to its members.  Compl. ¶ 72.

- A former member, in explaining why he left The Satanic Temple, referenced "[a]ccounts of sexual abuse being covered up in ways that were more than anecdotal."  Compl. ¶ 75.

The statements can be placed in two subgroups: one concerning sexual deviancy and the other concerning sexual abuse.  The claims regarding sexual deviancy are not defamatory.  They

---

[7] Plaintiff states in its letter to Newsweek demanding a retraction that there is no truth to the claim that anyone was kicked out of The Satanic Temple for asking for financial disclosures.  *See* Compl. Ex. 5 at 8.  But nothing so categorical is contained in the Complaint, which states that Plaintiff "has never engaged in any form of financial fraud or retaliation against members for inquiring into allegations of financial fraud."  Compl. ¶ 31.  But the Article does not claim that the Plaintiff removed members who inquired into financial fraud—only members who asked for financial records.  There are reasons to ask for financial records other than for fraud investigations.

reference complaints or allegations of sexual activities discussed in a memorandum that Plaintiff supposedly circulated to its members.  Plaintiff does not dispute that this memorandum exists.  In fact, the Article quotes the Co-Founder of The Satanic Temple as stating that no sexual activities were compulsory and that "[t]he guidelines are merely meant to set parameters in which if these things are incorporated into any TST [The Satanic Temple] events, they are done in a way that is safe, sane, and consensual, and that nobody feels uncomfortable or coerced."  Compl. Ex 1 at 18. Whatever a reasonable reader might assume about an organization that circulates a memorandum of this sort, Plaintiff fails to plausibly allege anything false or defamatory about the balanced reporting on this issue.

Reports of sexual abuse are different.  Plaintiff flatly denies that any sexual abuse has occurred or that any abuse has been covered up.  But the Article did not mention this denial, to the extent it had been expressed before publication, nor did the Article explain whether any comment on the allegation of abuse had been solicited.  (The denial referenced above, which states that no sexual activities were compulsory, was clearly in reference to a separate allegation that appeared several paragraphs below in the Article.)  Instead, the Article merely recounts the serious accusation and then moves to the next topic.  Rather than try to justify this allegedly defamatory statement, Defendants bury it in their brief, seemingly hoping it will go unnoticed. But the Court cannot overlook this statement, which is plausibly defamatory and which must survive the motion to dismiss.

13

### 3) *Misrepresenting Legal proceeding*

Plaintiff alleges that the Article defamed it by misrepresenting the nature of the *Johnson*

Case to make it appear that the organization engaged in frivolous litigation.  In support of this

claim, Plaintiff points to the following statements:

- "Orgies, Harassment, Fraud: Satanic Temple Rocked by Accusations, Lawsuit."  Compl. Ex. 1 at 1.

- "In a withering 14-page judgment, U.S. District Judge Richard A. Jones dismissed the lawsuit on Feb. 26, 2021, saying the plaintiffs got their facts wrong on the actual domain name of the Facebook page and that other claims made by [The Satanic Temple] were 'implausible.'"  Compl. ¶ 57.

- "'It was tossed out because they [The Satanic Temple] claim to be a religion and you are allowed to criticize religions,' Johnson said.  'They like to say they are a business when it comes to competitor organizations forming or when someone is using their intellectual property.  Otherwise, they claim to be a religion.'"  Compl. ¶ 61.

Plaintiff chides this reporting for minor errors such as the fact that the *Johnson* opinion

never referred to the claims brought by The Satanic Temple as "implausible," despite the use of

quotation marks in the Article.  Plaintiff claims this error, coupled with other

mischaracterizations (such as describing the opinion as "withering"), was defamatory in that it

implies that The Satanic Temple spends its money on frivolous lawsuits, which might frustrate

future donations. Compl. ¶ 60.

This is a stretch.  The Article was reporting on an opinion in federal court dismissing the

defamation claims brought by The Satanic Temple.  And while nobody likes losing, or having

that loss detailed in a popular publication, there was nothing materially misleading about the

reporting of the loss.  Indeed, the standard for dismissal of a claim under the Federal Rules of

Civil Procedure is does it plausibly allege facts that give rise to a claim.  To the extent that a

scrupulous donor infers from the reporting that Plaintiff wastes its money on frivolous suits,

there is nothing to suggest that Defendants either "intended or endorsed the inference."

*Stepanov*, 120 A.D.3d at 37.  Finally, Plaintiff asserts that the title of the Article (*i.e.*, the first statement) is defamatory because it falsely suggests that The Satanic Temple had been sued, when, in reality, it was the one that brought the suit.  But any reasonable reader who got past the headline would quickly learn what happened, to the extent there was any confusion at the outset.

### 4)  Fraudulent Lawsuit

Plaintiff claims that the Article was defamatory in its implication that the organization defrauds the courts.  Specifically, Plaintiff points to a parenthetical included in the Article, which followed a discussion of Plaintiff's religious reproductive rights litigation against Texas, in which Plaintiff argued that it practices abortion as a religious ritual.  The parenthetical stated: "(It's not clear whether [The Satanic Temple] actually practices abortion as a religious ritual; the claim may be a legal tactic or political theatre.)"  Compl. ¶ 39.  According to Plaintiff, the statement suggested that The Satanic Temple defrauds courts by filings lawsuits predicated on misrepresenting its religious practices.

The relevant parenthetical constitutes a non-actionable opinion.  *See Chau v. Lewis*, 771 F.3d 118, 128 (2d Cir. 2014) ("New York law protects derogatory statements which may be categorized as 'opinion' as opposed to 'fact.'") (citation omitted).  This much is shown by the use of parenthesis, which signals that the statement is distinct from the factual reporting that preceded it.  The speculative nature of the statement is also made evident by the use of the phrases "[i]t's not clear" and "may be."  In sum, this parenthetical presents a clear expression of opinion rather than fact and a claim predicated on it must be dismissed.  *See Sabratek Corp. v. Keyser*, No. 99-cv-8589, 2000 WL 42529, at *6 (S.D.N.Y. Apr. 19, 2000) ("When the defendant's statements, read in context, are readily understood as conjecture, hypothesis, or

speculation, this signals the reader that what is said is opinion, not fact." (citing *Gross v. New York Times Co.*, 82 N.Y.2d 146, 152-53 (1993)).

### 5) Defrauding the Public

Plaintiff further alleges that the Article defamed it by implying through the following statements that Plaintiff defrauds the public about its organizational purpose:

- "[A former member] soon left the group, then was leaked material about 'leaders posing happily with major alt-right media figures,' he wrote."  Compl. ¶ 28.

- "The Satanic Temple recently made some significant structural changes, apparently in an effort to appear more like a mainstream church."  Compl. ¶ 36.

Plaintiff alleges that the first statement "is part of a repeated and provably-false assertion that [The Satanic Temple] is secretly affiliated with the alt-right, which is a provably-false charge that [The Satanic Temple] defrauds the public about its organization purposes."  Compl. ¶ 28.  Plaintiff similarly alleges that the second statement is false, and that it is defamatory because "it charges [The Satanic Temple] with fraud to the public about its organizational function and purposes."  Compl. ¶¶ 37-38.

The statements are not defamatory.  It is a long leap to claim that these two statements imply that Plaintiff was defrauding the public about its organizational purposes.  It is a longer leap to suggest that this implication was intended and endorsed by the author of the Article.  If Plaintiff did not want to be associated with the alt-right, the best course of action would be to avoid posing with alt-right media figures.  The reporting of such an interaction (the occurrence of which Plaintiff does not dispute) is not defamatory merely because it will disappoint some of Plaintiff's donors.  And while the second statement is prefaced with a supposed fact, regarding some significant structural changes, Plaintiff takes issue with only the second part of statement,

which is clearly a nonactionable opinion (as indicated by use of the word "apparently").  Once again, opinions are not defamatory.

### 6)  Harassing Dissenters

Plaintiff contends that the following statements create the defamatory implication that The Satanic Temple harassed dissenters by bringing the *Johnson* lawsuit:

- "Bit by bit, items critical of [The Satanic Temple] showed up on its Seattle chapter's Facebook page.  Then in March 2020, according to the lawsuit, the defendants went rogue."  Compl. ¶ 42.

- "Meanwhile some members wondered why an organization like [The Satanic Temple] would go after four Seattleites with very modest means while it had bigger fish to fry elsewhere."  Compl. ¶ 45.

- The *Johnson* defendants have "spent $80,000 defending themselves in court this past year."  Compl. ¶ 66.

- "The defendants say the case has devolved into a meritless S.LA.P.P. (Strategic Lawsuit Against Public Participation) lawsuit as a way to bankrupt them for speaking out."  Compl. Ex. 1 at 19; *see also* Compl. ¶ 68.

- One of the *Johnson* defendants "has since declared bankruptcy."  Compl. ¶ 69.

There is nothing impliedly defamatory about these statements.  The Article was reporting on a lawsuit and lawsuits cost money.  That the *Johnson* defendants had spent money defending themselves is not demonstrably false and implies nothing untoward.  It is possible that a reader might connect these statements to the Article's description of why the defamation claims were tossed and conclude that The Satanic Temple brought the lawsuit solely to harass dissenters.  But Plaintiff fails to plead that Defendants intended or endorsed that implication, which is fatal to its claim.

Other statements in this category present a closer call.  Specifically, Plaintiff alleges that the following statements suggest that it harasses dissenters as a general practice:

- "'After leaving, it was basically Scientology-lite,' **[a former member] told** *Newsweek* in an email.  'People were told not to talk to us.  Members were trying to break up my relationship with my boyfriend.  Several people were legally threatened.  I know quite a few people who have refused to speak out at all because they fear legal action from [The Satanic Temple].'"  Compl. ¶ 48 (emphasis added).

- "Once she [a former member] became known as a dissenter, **she said**, members of [The Satanic Temple's] national council threatened to out her to the Marine Corps, her employer, despite the Corps already being aware of [her] religious activities."  Compl. ¶ 51 (emphasis added).

Plaintiff argues that it never harassed dissenters in the described manner and that the statements are defamatory because they "invite[] the public to conclude that [The Satanic Temple] has a practice of harassing dissenters, which diminishes the likelihood of the public joining [The Satanic Temple] or donating to [The Satanic Temple]."  Compl. ¶ 50.

Defendants counter that calling Plaintiff "Scientology-lite" and reporting that dissenters claim they were subjected to Scientology-like threats of being sued or "outed" does not give rise to the type of reputational harm required for a defamation claim.  In support of this argument, Defendants cite *Church of Scientology of California v. Siegelman*, 475 F. Supp. 950 (S.D.N.Y. 1979), which found that allegations that the Church of Scientology engaged in "psychological devastation, economic exploitation, and personal and legal harassment of former members and journalists" were not defamatory because the statement did not "go beyond what one would expect to find in a frank discussion of a controversial religious movement, which is a public figure, and thus none of these statements may be the basis for an action in defamation."  *Id.* at 955-56 & n.14.

It is not clear that such reasoning carries over to this case, which concerns a less well known religion that has not yet been subject to much public controversy.  In any event, while the inference that can be drawn from the above statements is clear—Plaintiff harasses dissenters—it is not evident that Defendants have endorsed that inference.

18

Critically, these are not accusations or factual statements by Newsweek or Duin. They, as reflected with the bolded portions of the statements, are a recounting of what was previously said to Duin. It is true that "merely reporting what another has said . . . does not insulate a reporter from liability for defamation." *BYD Co. Ltd. v. VICE Media LLC*, 531 F. Supp.3d 810, 824 (S.D.N.Y. 2021) (internal quotation marks omitted). However, a reporter *can be* insulated from liability depending on how the information is presented. *See id.* Specifically, courts have held that a statement contained in an article is not defamatory if the article attributes the statement to a source; makes clear that it is a mere allegation; and prints a denial of the allegation, to the extent one has been made. *See, e.g.*, *Kesner v Dow Jones & Co., Inc.*, 515 F. Supp. 3d 149, 173 (S.D.N.Y. 2021) (finding that author did not endorse an implication when the Article attributed it to another source and told the other side of the story).

Here, the Article expressly attributes the accusations to former members of The Satanic Temple. And, rather than adopt the accusations as its own, the Article supplied the other side of the story: "'We get this litany of senseless disparaging claims against us that says we're a religious group acting in a nefarious manner,' [Greaves] said. 'They call us a cult, which doesn't stand up to scrutiny either. . . . I don't think there is anything incredibly cult-like in what we do.'" Compl. Ex. 1 at 17. This sort of balanced reporting (which is in contrast to the treatment of the sexual abuse accusation discussed above) precludes a finding of defamation.

### 7) Other "Terrible" Acts

Finally, Plaintiff identifies three statements in the Article that allegedly create the defamatory implication that The Satanic Temple has committed unidentified "terrible" acts worthy of legal action:

- "Of all the defendants, Johnson is the one who has spent the most time digging into [The Satanic Temple's] background. 'Every time I think I've hit the bottom, there's another

terrible thing comes out,' he said.  'People send us things we can't talk about because we can't substantiate them.'"  Compl. ¶ 76.

- "'I [Johnson] can't really get press coverage, get attorneys general to audit [The Satanic Temple] but what I can do is work.  I can find everything public that I possibly can; tie it together as best as I can and hope that someone looks at it and picks it up.'"  Compl. ¶ 78.

- "They [the *Johnson* defendants] continue to post their findings about [The Satanic Temple] on a website.  'We would appreciate any support you can offer,' they write in a concluding statement, 'as we struggle to survive this pursuit of justice in the worst year of our lives so far.'"  Compl. ¶ 81.

Plaintiff argues that these statements are defamatory because they invite the reader to use its imagination to think what other terrible things it has done and because they imply that The Satanic Temple has done something to justify an audit by a State attorney general.  This proves too much.  The first two statements clearly note the things that Johnson *cannot* do: he *cannot* substantiate the "terrible" things he has heard; he *cannot* get press coverage; and he *cannot* get attorneys general to audit The Satanic Temple.  This all serves to undermine any suggestion that something "terrible" has happened.  Finally, indicating that the *Johnson* defendants are "sruggl[ing]" does not reasonably imply undisclosed "terrible" acts.

## CONCLUSION

As set forth herein, Defendant Duin's motion to dismiss for lack of personal jurisdiction is granted, while Defendants' motion to dismiss for failure to state a claim is granted in part and denied in part.  Plaintiff's request for oral argument is denied.  [ECF No. 24].

The Clerk of Court respectfully is requested to close the Motions at ECF Nos. 16 and 19.

**SO ORDERED.**

**Date:  March 8, 2023**
**New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**