LAW OFFICES OF
**CAMERON STRACHER**
MEDIA AND ENTERTAINMENT LAW
51 ASTOR PLACE
NEW YORK, NY 10003
(646) 992-3850
CAM@STRACHERLAW.COM

ADMITTED IN:
NEW YORK
CONNECTICUT

WWW.STRACHERLAW.COM

August 16, 2023

**BY ECF**

The Honorable May Kay Vyskocil
United States District Court
Southern District of New York
500 Pearl Street, Room 2230
New York, NY 10007

    Re:   *The Satanic Temple, Inc. v. Newsweek Digital, LLC* **(22-cv-1343)**
            **Second Joint Discovery Letter**

Dear Judge Vyskocil:

    Pursuant to Local Rule 37.2 and Individual Civil Rule 3(D), Plaintiff The Satanic Temple, Inc. ("The Satanic Temple") and Defendant Newsweek Digital, LLC ("Newsweek") submit this joint letter requesting an informal discovery conference. Because the issue raised in this letter relates to the dispute outlined in the Joint Discovery Letter filed on August 2, 2023 (ECF 39), which has been referred to Magistrate Judge Sarah Cave, the parties believe it can be resolved at the same hearing before Magistrate Judge Cave, scheduled for August 28, 2023, and therefore request that the Court refer this dispute to Magistrate Judge Cave as well for resolution on the same date.

**Background**

    The Satanic Temple has served subpoenas for the deposition of four individuals who were sources for the article at issue in this case (the "Article"), and who are also defendants in an ongoing legal dispute with the Satanic Temple in Washington State. The parties disagree on the appropriate scope of questioning of those individuals at their depositions, and Newsweek seeks a protective order limiting the scope of those depositions.

**Defendant's Position**

    As the Court is aware, it dismissed twenty-one of twenty-two statements Plaintiff claimed were defamatory in the Article. Newsweek maintains that the third-party depositions should be limited to questions related to sole remaining allegedly defamatory statement in the Article: "Accounts of sexual abuse being covered up in ways that were more than anecdotal" (the "Article Statement"). Plaintiff's expressed intent to question the third-party deponents on

sweeping topics unrelated to the Article Statement (including, for example, income they received after the Article was published) are not relevant to "any party's claim or defense" and not "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Indeed, it appears that Plaintiff hopes to use this proceeding to seek improper discovery from the deponents who are defendants in a different legal action brought by Plaintiff in Washington State.

To the extent The Satanic Temple argues it is entitled to broader questioning to demonstrate Newsweek's biased reporting, allegations of "bias" are only relevant if they relate to the allegedly defamatory statement at issue. *See Palin v. New York Times Company*, 940 F.3d 804, 815 (2d Cir. 2019) (plaintiff's alleged bias made him "more likely than the average editor-in-chief" to know the falsity of the relevant statements); *McDougal v. Fox News Network, LLC*, 489 F.Supp.3d 174, 186 (S.D.N.Y. 2020) (actual malice requires demonstrating that "the speaker of defamatory statements possessed an editorial and political advocacy background sufficient to suggest he published the statements with deliberate or reckless disregard for their truth").

Questioning on topics unrelated to the Article Statement would also run afoul of Newsweek's qualified privilege under the New York Shield Law by seeking the disclosure of "unpublished news obtained or prepared by a journalist . . . in the course of gathering or obtaining news." CPLR § 79-h(c). The Satanic Temple has not, and cannot, demonstrate that information from sources for the Article unrelated to the Article Statement "(i) is highly material and relevant; [and] (ii) is critical or necessary to the maintenance of a party's claim, defense or proof of an issue material thereto" as required under New York law because the Article Statement is the only remaining basis for its defamation claim. *Id.*

Thus, Newsweek seeks a protective order limiting deposition questioning to the deponents' knowledge of sexual abuse allegations within The Satanic Temple, and their discussion of that topic with the reporter or Newsweek.

**Plaintiff's Position**

TST is entitled to inquire into all matters relevant to the subject action, including impeachment of the witnesses. 8A *Fed. Prac. & Proc. Civ.* § 2113 (3d ed.) ("anything relevant to the subject matter of the action"); 8 *Fed. Prac. & Proc. Civ.* § 2015 (3d ed.) (matters useful for impeachment). Not just as to the falsity of the Article Statement, as Newsweek would have it, but also as to all communications between the deponents and any agent of Newsweek. Those communications are expected to shed light on the complete absence of reliability in the deponents' assertions of covered-up sexual abuse. E.g., reliance on anonymous complaints in violation of Newsweek's Editorial Guidelines. This falls within the scope of discovery because it tends to prove common law malice (necessary to obtain punitive damages) and likewise tends to prove actual malice (useful to negate Newsweek's First Amendment defense). *See Biro v. Conde Nast*, 807 F.3d 541, 546 (2d Cir. 2015); *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667–68 (1989). Similarly, the communications are expected to reveal an intent to publish a pre-conceived narrative, one rooted in political or religious bias, which outweighed an intent to publish the truth. *Palin v. New York Times Co.*, 940 F.3d 804, 813 (2d Cir. 2019). Again, this tends to prove common law malice and actual malice.

Further, TST is entitled to inquire into the sum of money the deponents received because of the article. That tends to prove the economic value of the article and therefore sheds light on reputational harm to TST. *See* 2 *Law of Defamation* § 9:31 (2d ed.) (citing Anderson, *Reputation, Compensation, and Proof*, 25 Wm. & Mary L. Rev. 747, 765 (1984)). More particularly, the reputational harm is an inverse of donations received because of the article: that they donated to a competitor of TST suggests they would have otherwise donated to a different Satanic cause. The same proof may be useful in demonstrating that third parties believed the Article Statement to be true, which is an aggravating factor in damages. 2 *Law of Defamation* § 9:56 (2d ed.) (citing *Bishop v. New York Times Co.*, 233 N.Y. 446, 135 N.E. 845 (1922)).

Unaddressed by Defendant's position statement is TST's intent to inquire into how the witnesses have used the article to support their false narrative of sexual abuse occurring within TST. This is also discoverable as it tends to prove that the Article Statement has actually harmed TST's public image. 2 *Law of Defamation* § 9:33 (2d ed.) (citing Anderson, *Reputation, Compensation, and Proof*, 25 Wm. & Mary L. Rev. 747, 756–57 (1984); Smolla, *Let the Author Beware: The Rejuvenation of the American Law of Libel*, 132 U. Pa. L. Rev. 1, 20, 21 (1983)).

Regarding Newsweek's assertion of New York's Shield Law, it is unclear that New York law applies. As I understand the facts, the only reporter who gathered the statements to be inquired into is Duin—who this Court found to operate wholly outside of New York's jurisdiction. Because no Newsweek reporter collected the statements to be inquired into, it appears to be a question of Washington law whether the statements are the subject of any privilege. As the proponent of the claim to privilege, Newsweek bears the burden to show both (1) that Newsweek has standing to preclude me from inquiring into the information sought; and (2) that the information is protected by a particular claim of privilege. *E.g. A.I.A. Holdings, S.A. v. Lehman Bros.*, No. 97 CIV. 4978(LMM)(HB, 2002 WL 31385824, at *5 (S.D.N.Y. Oct. 21, 2002) ("the proponent of the privilege ultimately bears the burden of proving all essential facts necessary to sustain a claim of privilege"). But Newsweek has provided no information to sustain the essential facts of confidentiality or the contours of the claim of privilege. In effect, Newsweek is asserting an absolute privilege in a libel case, which is "neither required nor authorized" by the First Amendment, and which "would substantially enhance the burden of proving actual malice." *Desai v. Hersh*, 954 F.2d 1408, 1412 (7th Cir. 1992) (citing *Herbert v. Lando*, 441 U.S. 153, 170, 99 S.Ct. 1635, 1645, 60 L.Ed.2d 115 (1979)).

Failing that, if the Court finds that New York's Shield Law does apply, the information sought is plainly within the exception. As addressed above, the statements made between the witnesses and Duin are expected to show an intent to publish a pre-conceived narrative irrespective of the truth of the matters asserted. This is "highly relevant and material" to TST's assertion of punitive damages (by showing common law malice) and to TST's assertion of liability (by showing actual malice). Further, the information is "critical" because the statements are not otherwise available. TST sought the same information from Newsweek, and the same has been withheld.

In light of the discovery extension, the parties have suspended the depositions in hopes of a more orderly discovery process. The Court's attention to this matter is greatly appreciated.

Respectfully submitted,

| | |
|---|---|
| CROWN LAW | CAMERON STRACHER, PLLC |
| | |
| /s/ *Matt Kezhaya* | /s/ *Cameron Stracher* |
| Matt Kezhaya | Cameron Stracher |
| 150 S. Fifth Street, Suite 1850 | Sara C. Tesoriero |
| Minneapolis, MN 55402 | 51 Astor Place, 9th Floor |
| Tel: (479) 431-6112 | New York, NY 10003 |
| matt@crown.law | Tel: (646) 992.3850 |
| | Fax: (646) 992.4241 |
| | cam@stracherlaw.com |
| REISS SHEPPE LLP | sara@stracherlaw.com |
| Matthew Sheppe | |
| 425 Madison Ave., 19th Floor | *Attorneys for Newsweek Magazine, LLC* |
| New York, NY 10017 | |
| Tel: (212) 753-2424 | |
| Fax: (347) 348-0731 | |
| msheppe@reisssheppe.com | |

*Attorneys for Plaintiff*