# EXHIBIT E

The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

UNITED FEDERATION OF CHURCHES,
LLC d/b/a THE SATANIC TEMPLE,

              Plaintiff,

      v.

DAVID ALAN JOHNSON, an individual;
LEAH FISHBAUGH, an individual; MICKEY
MEEHAM, an individual; and NATHAN
SULLIVAN, an individual,

              Defendants.

No. 2:20-cv-00509-RAJ

**DEFENDANTS' OPPOSITION
TO PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION**

NOTED ON MOTION
CALENDAR:
December 16, 2022

ARÊTE LAW GROUP
1218 THIRD AVE, STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

## I.      INTRODUCTION

As this Court is aware from pleadings and briefings over the last two and a half years, this case arises from a dispute between a religious organization, Plaintiff United Federation of Churches, LLC d/b/a The Satanic Temple ("The Satanic Temple" or "TST"), and four of its former members, Defendants, regarding TST's displeasure with Defendants' critical views about TST's tenets and practices. TST's Motion for Preliminary Injunction ("Motion") is part of its ongoing attempt to silence Defendants. As with many of TST's claims against Defendants that have been dismissed as a matter law, this Motion, too, lacks all merit. TST has not shown, and cannot show, the required elements for the extraordinary remedy of a preliminary injunction. For example, it cannot show that it will succeed on the merits of its common law claims that Defendants have wrongfully converted a Facebook page (the "Memes Page"[1]). Far to the contrary, TST expressly told Defendants over two and a half years ago that they could have and use the Memes Page "free and clear and we've [TST] no desire to claim it." Despite being fully aware of this fatal exculpatory evidence, TST does not even mention it in its Motion.

TST also can't show that it will suffer irreparable harm in the absence of preliminary relief. Not only did TST give Defendants express permission to have and use the Memes Page "free and clear," it waited for over **two and a half years** to bring this Motion, during which time it has been fully aware of Defendants' ongoing use of the Memes Page. This delay alone proves false any claim of imminent or irreparable harm. Moreover, TST does not assert any conversion-based damages for the alleged conversion of the Memes Page. Instead, it attempts improperly to relitigate its dismissed defamation claim by arguing that it is damaged by the content being posted on the Memes Page and in other social media.

The true purpose of TST's meritless Motion (filed the night before Thanksgiving after a two and a half year wait) is to harass Defendants and drive up their legal fees. TST knows the Defendants have limited resources to litigate this dispute and, as its attorney has publicly stated,

---

[1] In the Motion and its pleadings, TST refers to the Memes Page as the "Allies page."

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
No. 2:20-cv-00509-RAJ – Page 1



ARÊTE LAW GROUP
1218 THIRD AVE, STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

TST is using this litigation with the hope that the attorneys' fees in this case "**squeeze[] every last penny from you living corpses**" [referring to Defendants]. Declaration of David Johnson in Opposition to Plaintiff's Motion for Preliminary Injunction ("Johnson Decl.") ¶ 18 & Ex. 6 (emphasis added). More recently, just days before filing this Motion, TST's attorney again publicly acknowledged using this litigation for the purpose of harassing Defendants, stating in a public Tweet:

> **Are these fuckwits still talking about me?** Grow up and file an answer so I can get at your financial records. **I'm coming for you.** Tell the judge on me again, I double dare you.

*Id.* ¶ 20 & Ex. 8 (emphases added).[2] Given TST's own blatant, public statements of an improper purpose, it is impossible to conclude other than that TST is improperly using this litigation to harass Defendants until they are bled dry through legal fees.

Finally, this Motion is improper because Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (Dkt. No. 33) is currently pending. The Court should first determine if it will retain jurisdiction over this case before deciding whether it will issue an injunction.

For these reasons and the reasons set forth below, The Satanic Temple's Motion must be denied.

## II.     FACTS

### A.     Procedural History

The crux of this lawsuit is TST's unhappiness with Defendants for posting critical comments about TST's tenets and practices on various social media. TST has filed three complaints in this case. In its original Complaint, TST asserted federal question jurisdiction arising from federal claims and supplemental jurisdiction over state law claims, including claims for defamation, conversion, and tortious interference. Complaint (Dkt. No. 1). This Court granted

---

[2] The comment about "[t]ell the judge on me again" appears to be a reference to the fact that in its Reply in Support of Motion to Dismiss Defendants previously alerted the Court to TST's public statement of improper purpose through Mr. Kezhaya's statement regarding "squeez[ing] every last penny from you living corpses." Defendants' Reply in Support of Motion to Dismiss (Dkt. No. 37) at 1, 6, 12.



Defendants' motion to dismiss TST's Complaint for failure to state a claim upon which relief can be granted, dismissing all claims with leave to amend except for TST's defamation claim, which was dismissed with prejudice. Order Granting Motion to Dismiss (Dkt. No. 20). TST moved for reconsideration of the Court's dismissal of the defamation claim. Motion for Reconsideration (Dkt. No. 21). This Court denied that motion, reaffirming the dismissal of TST's defamation claim. Order Denying Motion for Reconsideration (Dkt. No. 30).

TST then filed a First Amended Complaint, which re-asserted certain federal claims and included three state law claims. First Amended Complaint (Dkt. No. 22). Following a pre-motion to dismiss conference, the parties stipulated to permitting TST to amend its complaint yet again, which this Court approved. *See* Stipulated Motion for Leave to File Second Amended Complaint (Dkt. No. 24); Minute Order (Dkt. No. 25). TST filed its Second Amended Complaint ("SAC") in May of 2021. *See* SAC (Dkt. No. 26). In its SAC, TST re-asserted certain federal claims and sought supplemental jurisdiction over its state law claims, including a state common law claim for conversion/trespass to chattels. *Id.* Defendants successfully moved to dismiss the remaining federal claims. Order Granting in Part and Denying in Part Defendants' Motion to Dismiss Second Amended Complaint (Dkt. No. 31).

Because the operative complaint is now devoid of any claims under federal law and a sufficient amount is not in controversy to invoke diversity jurisdiction, on May 13, 2022, Defendants moved to dismiss the SAC for lack of subject matter jurisdiction, asking the Court to dismiss TST's remaining state law claims without prejudice and permitting TST to renew those claims (should it wish) against Defendants in King County Superior Court.[3] Dkt. No. 33. The Motion to Dismiss for Lack of Subject Matter Jurisdiction is still pending.

---

[3] Because the Court granted leave to file an amended complaint as to certain of the dismissed federal claims, *see* Dkt. No. 31 at 32-33, which TST did not do within the permitted time, Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction was timely under LCR 12(a)(1).

ARÊTE LAW GROUP
1218 THIRD AVE, STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

**B.      Facts Relating to the Memes Page**

      **1.      Creation of the Memes Page**

      In November of 2019, TST-WA's Chapter Head (Leah Garvais, who goes by the name Siri Sanguine) and TST-WA's Media Liaison, Paul Case (who goes by the name Tarkus Claypool), expelled a TST member and Co-Chapter Head who had been leading an informal group called the South Sound Satanists. Johnson Decl. ¶ 4. The South Sound Satanists were an unofficial TST group that did not have official chapter status. *Id.* ¶ 5. The South Sound Satanists, led by the expelled member, used both a Facebook page and Facebook group that was originally called "South Sound Satanists: Friends of TST." *Id.* The South Sound Satanists page was largely inactive. *Id.* ¶ 7. For the period of July 2019 through November 2019, there were only three public posts on the page. *Id.* After the expulsion of the member who ran the page, from November 11 through December 24, 2019, there were no posts at all. *Id.* From November to December of 2019, TST-WA discussed what might be done with the page. *Id.*

      On December 21, 2019, Chapter Head Garvais/Siri Sanguine added Defendants David Johnson, Leah Fishbaugh, and Mickey Meehan (known at the time as Lenore Calavera) as editors of the South Sound Satanists page. *Id.* ¶ 8.  The plan was to turn the largely abandoned page into a "memes page," focusing on short-form humor and provocative images, rather than use the page as a community. *Id.* The page was intended to include funny "memes" from places like Twitter and Tumblr. *Id.* It was supposed to be tonally comedic, light, and ironic. *Id.* On January 1, 2020, Garvais/Siri Sanguine changed the roles of Defendants Johnson and Meehan/Lenore Calavera to "admin" status, which gave them complete ability to manage the Memes Page, including deciding who else to add or remove as admins. *Id.* ¶ 9. Defendants Johnson and Meehan have been admins of the page ever since. *Id.* ¶ 16.

      Around that same time, Garvais/Siri Sanguine accidentally renamed the South Sound Page to "TST WA Allies." This change was a mistake. *Id.* ¶ 10. The change was supposed to take place on a related Facebook *group* called the South Sound Satanists Group, which facilitated semi-

ARÊTE LAW GROUP
1218 THIRD AVE, STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

private communications among people who were interested in TST but did not want to be members. *Id.* Facebook *pages* are different than Facebook *groups*. A Facebook *page* can be accessed by anyone in the public with a Facebook profile. *Id.* A Facebook *group* is used more for building communities among those who share a common interest, such as employees or church members. Unlike pages, groups can be set to private or semi-private.[4] *Id.* The plan at the time was for the South Sound Satanists Facebook *Group,* which facilitated semi-private conversations, to be turned into a place for people interested in supporting the local chapter's work without becoming members themselves. *Id.* The Facebook *group* that had been associated with the South Sound Satanists for their own organizing and socializing was scrubbed of identifying information (such as addresses for meeting up to work on crafts), and was opened to applications from non-chapter members. *Id.* ¶ 11. This Facebook group was re-named "The Satanic Temple - Washington State (Allies)" on January 1, 2020. *Id.* However, on the same date, Garvais/Siri Sanguine mistakenly renamed the South Sound Satanists *page* (the Memes Page) to "TST WA Allies." *Id.* Because Facebook does not allow a name to be changed again too soon after a prior name change, the mistake could not immediately be fixed. *Id.* However, at this same time, the page's username/url was changed to be "facebook.com/queersatanicmemes" and the future intent was to change the name of the Memes Page to something relating to the url, aligning the page with its new "meme" content. *Id.*

On March 12, 2020, Chapter Head Leah Garvais/Siri Sanguine sent an email to the TST-WA membership that stated that TST-WA had been investigating a complaint made by a member (not the Defendants). Declaration of Nathan Sullivan in Opposition to Motion for Preliminary Injunction ("Sullivan Decl.") ¶ 7. To the Defendants' shock, the email accused them and others of having been involved in an alleged coalition ostensibly intended to attack and undermine TST-WA's leadership. *Id.* The email announced Leah Garvais/Siri Sanguine's decision to address the

---

[4] These differences are explained by Facebook in a short Facebook Help Center post called "Differences between Profiles, Pages and Groups on Facebook," available at https://www.facebook.com/help/337881706729661.



issue by dissolving the advisory committee (upon which the Defendants served) and replace it with a smaller, handpicked group. *Id.* In another email, Leah Garvais/Siri Sanguine reiterated her plan to dissolve the existing advisory committee and create a smaller Strategy Council. *Id.* ¶ 8.

On March 14, 2020 at 5:31pm, Garvais/Siri berated Defendant Mickey Meehan/Lenore Calavera for his social media work (that he had been providing on a voluntary and complimentary basis) and was critical of the content he was posting on the Memes Page. *Id.* ¶ 9; Johnson Decl. ¶ 13 & Ex. 1. Meehan/Lenore Calavera then removed Garvais/Siri Sanguine and Case/Tarkus Claypool as admins from the Memes Page. Johnson Decl. ¶ 13 & Ex. 2. Afterward Meehan changed the name of the Memes Page to "Evergreen Memes for Queer Satanic Fiends." *Id.* ¶ 13 & Ex. 3. In an email at 7:48 pm that same day, Garvais/Siri Sanguine accused Meehan/Lenore Calavera of having "stolen" the former South Sound Facebook page. *Id.* ¶ 13 & Ex. 4. At 7:59 pm, Meehan/Lenore Calavera posted at the top of the Memes Page "This page is no longer affiliated with The Satanic Temple" and explained the reasons why it was no longer so affiliated. *Id.* ¶ 13 & Ex. 3.

That night, at 9:09 pm, <u>after</u> Meehan/Lenore Calavera had changed the Memes Page's name and posted the statement that the page was no longer affiliated with TST, TST-WA's Media Liaison, Case/Tarkus Claypool, sent Meehan/Lenore Calavera an email with the subject line "Evergreen Memes for Queer Satanic Fiends" in which Case/Tarkus Claypool told Meehan/Lenore Calavera that TST had no interest in claiming the page and that Defendants could have and use the page "free and clear:"

> Hi Lenore,
>
> I saw that you made some changes to the TST WA State Allies FB group. **I just wanted to let you know that it's yours free and clear and we've no desire to claim it.** You and ADJ built it and have done a great job doing so. I'm confident you'll both continue doing awesome work.
>
> Sorry the way things panned out, and I do mean all of it. I wish you and your family well, and respect your need to fight the fight your way.
>
> Rock on,

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
No. 2:20-cv-00509-RAJ – Page 6



ARÊTE LAW GROUP
1218 THIRD AVE, STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

Tarkus Claypool
Media Liaison, The Satanic Temple of Washington
(he/him)

Sullivan Decl. ¶ 10 & Ex. 1; Johnson Decl. ¶ 14 & Ex. 5 (emphasis added).

The next day, in a March 15, 2020 online town hall meeting via Zoom, Media Liaison Case/Tarkus Claypool again publicly reiterated in front of TST-WA members, including TST-Chapter Head, Garvais/Sanguine, that TST-WA had no interest in claiming the Memes Page:

> I do want to say that **we're not going to, you know, ask Lenore to give the page back in any way.** I wish them well, and I hope that they continue growing that and make it a great success. Because they're going to fight their fight, their way. And so, let them do what they want to, and I wish them well, because both Lenore and ADJ [Johnson] did a wonderful job in the roles that they had. It just wasn't within the TST guidelines that we are beholden to. So I want to give them due credit, and just you know, wish them well with what they're going to plan to do with it in the future.

Sullivan Decl. ¶ 14; Johnson Decl. ¶ 15; Declaration of Jeremy Roller in Opposition to Motion for Preliminary Injunction ("Roller Decl.") Ex. 1 at time stamp 1:20:35.

Since Case/Tarkus Claypool's clear statements that TST-WA had no interest in the Memes Page and that Defendants could use it "free and clear," no one from TST asked Defendants to give TST control of the Memes Page. Sullivan Decl. ¶ 16; Johnson Decl. ¶ 16. Similarly, Defendants are not aware of TST ever asking Facebook to remove Defendants as admins from the Memes Page. Johnson Decl. ¶ 16.

In June of 2022, after Defendants filed their Motion to Dismiss the SAC, TST's attorney suddenly threatened to file a TRO application seeking control of the Memes Page, requesting for the first time that Defendants give TST administrative control of the Memes Page. *Id.* ¶ 16; Roller Decl. Ex. 2. In response to TST's threatened TRO, Defendants' attorney shared with TST's attorney Case/Claypool's March 14, 2020 email relinquishing any interest in the Memes Page and giving Defendants permission to use the Page "free and clear." Roller Decl. ¶ 3 & Ex. 2. TST did not file the TRO application. However, despite being aware of clear evidence defeating their claim,

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
No. 2:20-cv-00509-RAJ – Page 7

ARÊTE LAW GROUP
1218 THIRD AVE, STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

TST has now inexplicably[5] filed its current Motion, in which it neglects to inform the Court of the key evidence that is fatal to its claim – *i.e.*, that TST expressly gave Defendants permission to use the Meme Page "free and clear."

**C.    TST's Attorney Has Publicly Stated His Intent to Use This Litigation to Harass Defendants.**

The reason that TST has brought its Motion despite the lack of any merit is to harass Defendants. On May 26, 2022, TST's lead counsel, Matt Kezhaya, publicly stated his improper motivation for pursuing this litigation against Defendants—referring to Defendants as "morons" and "pathetic" and stating his hope that they incur an unsustainable amount of attorneys' fees in defending against this matter. Johnson Decl. ¶ 18 & Ex. 6. ("I hope he [Defendants' attorney] squeezes every last penny from you living corpses, and anyone that gives you the time of day."). More recently, on November 16, 2022, TST's counsel again expressed improper motives against Defendants through a public Tweet, suggesting that this case is driven from a sense of vengeance rather than legitimate legal grounds:

> Are these fuckwits still talking about me? Grow up and file an answer so I can get at your financial records. I'm coming for you. Tell the judge on me again, I double dare you.

Johnson Decl. ¶ 19 & Ex. 8. Just days after posting this public taunt, TST followed through on the threat and filed the Motion the night before Thanksgiving, Wednesday, November 23, 2022.

### III.    ARGUMENT

**A.    TST's Pseudonymous Declaration Should Not Be Considered.**

Defendants object to TST's use of a pseudonymous declaration. In support of its Motion, TST submits only one declaration from an unidentified person in Canada using the pseudonym "Rachel Chambliss." Chambliss Declaration ¶¶ 1-2. This "person" states that she/he/they is using

---

[5] At the time TST filed this lawsuit, the Memes Page had only about 500 followers. Johnson Decl. ¶ 16. Since TST told Defendants it had no interest in the Memes Page and that they could use it "free and clear", the Memes Page has grown to approximately 24,000 followers. *Id.* In addition to harassing Defendants, it is likely that this growth is the reason TST has suddenly reversed course regarding the Memes Page and is now bringing this Motion in yet another attempt to silence the Defendants after its defamation claim failed.

---

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
No. 2:20-cv-00509-RAJ – Page 8



ARÊTE LAW GROUP
1218 THIRD AVE, STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

the pseudonym due to a general reluctance to be publicly affiliated with TST. *Id.* ¶ 2 ("I am submitting this affidavit under a pseudonym to protect myself from harassment due to my employment and membership with The Satanic Temple ('TST')."). Only in "rare circumstances" may witnesses testify anonymously. *Doe v. Los Angeles Unified Sch. Dist.*, No. 216CV00305CASJEMX, 2017 WL 797152, at *9 (C.D. Cal. Feb. 27, 2017) ("Absent extraordinary circumstances, witnesses do not testify anonymously under our system of laws.") (quoting *Diamond Pleasanton Enter., Inc. v. City of Pleasanton*, No. 12-CV-00254-WHO, 2015 WL 74946, at *1 (N.D. Cal. Jan. 5, 2015)). Such rare circumstances are not present here. TST has not sought a protective order to keep its witness's name under seal, nor has TST filed any document identifying the signer of the supporting declaration. 28 U.S.C. § 1746 requires that unsworn declarations be signed by the declarant under penalty of perjury. Without any record whatsoever of a witness's identity or their signature, a declarant cannot be held to their statements under "penalty of perjury." *Id.* Because TST has not obtained permission or otherwise shown cause for filing a pseudonymous declaration, the Court should decline to consider the defective declaration offered in support of TST's Motion.

**B.    Injunction Standards**

   **1.    Preliminary Injunction Standard**

   "The basic function of a preliminary injunction is to preserve the status quo pending a determination of the action on the merits." *Muckleshoot Indian Tribe v. Hall*, 698 F. Supp. 1504, 1508–09 (W.D. Wash. 1988). A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008). "A party seeking a preliminary injunction must meet one of two variants of the same standard." *Zest Anchors, LLC v. Geryon Ventures, LLC*, No. 22-CV-230 TWR (NLS), 2022 WL 2811646, at *7 (S.D. Cal. July 18, 2022) (quoting *Ramos v. Wolf*, 975 F.3d 872, 887 (9th Cir. 2020)). Under the original standard, plaintiffs seeking a preliminary injunction must establish that: (1) they are likely to succeed on the

ARÊTE LAW GROUP
1218 THIRD AVE, STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Id.* (citing *Winter*, 555 U.S. at 20). "The Ninth Circuit employs an alternative 'serious questions' standard, also known as the 'sliding scale' variant of the *Winter* standard." *Id.* (citing *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011)). Under the alternative standard, the court weighs the preliminary injunction factors on a sliding scale, such that where there are only serious questions going to the merits—that is, less than a likelihood of success on the merits—a preliminary injunction may still issue so long as the balance of hardships tips sharply in the plaintiff's favor and the other two factors are satisfied. *Id.* at 887–88. In other words, a preliminary injunction may be granted where the moving party demonstrates either (1) a combination of probable success on the merits *and* the possibility of irreparable injury or (2) the existence of serious questions going to the merits *and* that the balance of hardships tips sharply in its favor. *Grocery Outlet Inc. v. Albertson's Inc.*, 497 F.3d 949, 951 (9th Cir. 2007).

## 2. Mandatory Injunction Standard

A mandatory injunction is one that goes beyond simply maintaining the status quo and orders a party to take action pending the determination of the case on its merits. *Doe v. Snyder*, 28 F.4th 103, 111 (9th Cir. 2022). The standard for issuing a mandatory preliminary injunction is high. "In general, mandatory injunctions 'are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages.'" *Id.* (quoting *Marlyn Nutraceuticals v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (2009)). Because mandatory injunctions go beyond maintaining the status quo, they are particularly disfavored unless the law clearly favors the moving party. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).



**C.   TST Falls far Short of Meeting the Requirements for a Preliminary Injunction for the Memes Page**

**1.   TST is Seeking a Mandatory Preliminary Injunction**

As set forth above, a preliminary injunction seeks to protect the status quo between the parties, while a mandatory injunction seeks an order requiring a party to take action pending a determination on the merits. The relief that TST seeks here is mandatory. The status quo vis-à-vis the Memes Page is that Defendants have been admins for the Memes Page since January of 2020, months before this litigation began. Johnson Decl. ¶ 16. Defendants have remained admins for the page since then – throughout the last two and a half years of this litigation. *Id.* Preserving the status quo means allowing Defendants to *remain in control* of the Memes Page while this case is litigated. What TST seeks is the opposite. Through its Motion, TST asks the Court for a mandatory injunction requiring Defendants to give control of the Memes Page to TST. Because TST is seeking a mandatory injunction, the Court must apply a higher level of scrutiny to this disfavored remedy. As discussed below, TST falls far short of meeting the requirements for showing that this extraordinary and disfavored remedy is appropriate. Even if the requested injunctive relief is not deemed mandatory, TST still fails to come close to meeting the requirements for a preliminary injunction.

**2.   TST Cannot Show It is Likely to Succeed on the Merits**

TST's Motion is based on its state common law claims for conversion and trespass to chattels, stemming from the false allegations that Defendants have intentionally and wrongfully dispossessed TST of its property. Motion at 5. Specifically, TST alleges in its Motion that Defendants wrongfully dispossessed TST of the Memes Page. *Id.* at 5-7. TST has not, and cannot, establish that it will succeed on this claim. To the contrary, the evidence, of which TST is fully aware, establishes the opposite.

To succeed on a claim for conversion, a plaintiff must establish: (1) willful interference with chattel belonging to the plaintiff, (2) by either taking or unlawful retention, (3) thereby depriving the owner of possession. *See Judkins v. Sadler-Mac Neil*, 61 Wn.2d 1, 3, 376 P.2d 837

---

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
No. 2:20-cv-00509-RAJ – Page 11



ARÊTE LAW GROUP
1218 THIRD AVE, STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

(1962). Similarly, trespass to chattels requires showing the intentional dispossession of chattels. Restatement (Second) of Torts § 217. At the core of both these related claims is the requirement for proving the <u>wrongful</u> use or interference with the property. If a defendant has permission or other lawful reason for retaining or using property, the claim fails. *See, e.g.*, *Revolutionar, Inc. v. Gravity Jack, Inc.*, 13 Wn. App. 2d 1044 (2020) (unpublished; cited as persuasive authority) (because defendants had permission to use the software code and platform at issue the conversion claim failed). Stated yet another way, "[i]n order to constitute conversion, nonconsent to the possession and disposition of the property by the defendant is indispensable." 90 C.J.S. Trover and Conversion § 6; *see also* Restatement (Second) of Torts § 272 ("One who is entitled to the immediate possession of a chattel is not liable to another for dispossessing him of it.").

In this case, TST cannot show that Defendants have wrongfully used or interfered with property owned by TST. First, TST provides **no evidence** that it is the owner of or has any rights to the Memes Page. The one pseudonymous declaration submitted in support of the Motion (which should not be considered) offers no evidence that TST has any legal right to the Memes Page. The pseudonymous declarant offers one conclusory assertion that the Memes Page is "TST's Facebook page," but offers no factual support for that assumption. Tellingly, TST provides no explanation as to why, if TST felt it had the legal right to control the Memes Page, it never sought the page through Facebook over two and a half years ago, when Defendant Meehan changed its name and posted that the page was not affiliated with TST. TST had an avenue available to it through Facebook (the owner of the Page) to remove Defendants as the administrators if TST felt it was the rightful party to control it. But TST does not allege that it even attempted that step. Instead, TST simply points to one offhand statement that Defendant Sullivan made in a Facebook post in which he says that they "stole" the page from TST. However, as Defendant Sullivan explains, the comment was meant to be glib because at that point TST had already relinquished any interest in the Memes Page and had told Defendants they could use it "free and clear." Sullivan Decl. ¶ 15.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
No. 2:20-cv-00509-RAJ – Page 12

ARÊTE LAW GROUP
1218 THIRD AVE, STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

In short, there is no credible evidence (or any evidence at all), that TST is the rightful party to control the Memes Page.

On the other hand, through the contemporaneously filed declarations, Defendants have provided proof that they <u>do</u> have the right to control the Memes Page. TST expressly acknowledged that right when its Media Liaison, Paul Case/Tarkus Claypool, told Defendant Meehan he could use the page "free and clear" and when Case/Claypool reiterated TST's relinquishment of any interest in the town hall meeting. Johnson Decl. ¶ 14 & Ex. 5; Sullivan Decl. ¶ 10 & Ex. 1. TST has acted consistently with these statements by never asking Facebook to remove Defendants as administrators from the Memes Page as TST did for another Facebook page that was at issue in this suit.[6] Nor did TST ever ask Defendants to give it control of the Memes Page until well over two years after bringing this lawsuit.

When made aware of the evidence that TST relinquished any interest in the Memes Page, TST's counsel suggested that TST's Media Liaison lacked the authority to speak on TST-WA's behalf. Roller Decl. Ex. 2. However, TST-WA itself has represented to its members that TST-WA's Chapter Head and Media Liaison have authority to run TST-WA. Sullivan Decl. ¶ 2; Johnson Decl. ¶ 3. Indeed, even in its SAC, TST refers to its Media Liaison, Paul Case/Tarkus Claypool, as a TST representative.[7] At the very most, TST's argument could potentially create an issue of fact (although a very weak one). But such an issue of fact would not help TST establish its clear legal right to the Memes Page or Defendants' wrongful use of the Memes Page as required to support a mandatory injunction, or even a preliminary injunction.

---

[6] *See* SAC ¶ 4, in which TST describes how it worked through Facebook to obtain the administrative control of TST's Washington Chapter Facebook Page.

[7] The individual who sent Defendant Mickey Meehan (a/k/a "Lenore Calavera") the March 15, 2020 email was known as "Tarkus Claypool." Sullivan Decl. ¶¶ 3, 10. Upon information and belief, the individual's name for government documents is Paul M. Case. *Id.* ¶ 3. In its SAC, TST refers to Tarkus Claypool as its Media Liaison and states that it was Tarkus Claypool who sought the return of the Washington Chapter Facebook Page on TST's behalf. SAC ¶ 53. Thus, TST itself has held out Tarkus Claypool as its agent.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
No. 2:20-cv-00509-RAJ – Page 13

ARÊTE LAW GROUP
1218 THIRD AVE, STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

3. **TST Fails to Show It Will Suffer Irreparable Harm.**

TST's Motion should also be denied because it has not made a showing of irreparable harm if the preliminary injunction is not granted. First, TST's delay of over **two and a half years** weighs heavily against finding the type of irreparable harm required for a preliminary injunction. "A preliminary injunction is sought upon the theory that there is an urgent need for speedy action to protect the plaintiff's rights. By sleeping on its rights a plaintiff demonstrates the lack of need for speedy action ...." *Lydo Enterprises, Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213–14 (9th Cir. 1984) (quoting *Gillette Co. v. Ed Pinaud, Inc.*, 178 F. Supp. 618, 622 (S.D.N.Y. 1959)). Thus, while not always dispositive by itself, a long delay in seeking a preliminary injunction (with the delay usually measured in weeks and months) weighs very heavily against the plaintiff. *See, e.g.*, *Valeo Intellectual Prop., Inc. v. Data Depth Corp.*, 368 F. Supp. 2d 1121, 1128 (W.D. Wash. 2005) ("A three-month delay in seeking injunctive relief is inconsistent with [the plaintiff's] insistence that it faces irreparable harm."); *Barton & Assocs. Inc. v. Trainor*, No. CV-20-01560-PHX-SPL, 2020 WL 6081496, at *6 (D. Ariz. Oct. 15, 2020) (denying preliminary injunction where plaintiff waited three weeks after filing the complaint before seeking preliminary injunction); *Tough Traveler, Ltd. v. Outbound Products*, 60 F.3d 964, 969 (2d Cir. 1995) (reversing grant of preliminary injunction where plaintiff delayed four months from filing suit before moving for preliminary injunction); *Citibank N.A. v. Citytrust*, 756 F.2d 273 (2d Cir.1985) (reversing grant of preliminary injunction where plaintiff delayed ten weeks after receiving actual notice of infringement before filing suit and several weeks further before moving for preliminary injunction). Here the delay is extreme – over two and a half years. Given the long delay, it is clear that TST is not facing irreparable harm if the injunction is not issued.

Second, even apart from the long delay, TST has made no showing of irreparable harm. To establish irreparable harm, TST must do more than merely allege it, it must "*demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief.*" *Valeo*, 368 F. Supp. 2d at 1128 (quoting *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988)

ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

(emphasis in original)). Even the case upon which TST relies clearly makes this point. In *Herb Reed Enterprises, LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013), cited in TST's Motion at 7, the court reversed a preliminary injunction because the evidence upon which the injunction was based was conclusory and unsupported. *Id.* ("Marshak asserts that the district court abused its discretion by relying on 'unsupported and conclusory statements regarding harm [HRE] *might* suffer.' We agree."). The court admonished the district court that conclusory allegations of harm to business reputation or goodwill are not enough:

> Evidence of loss of control over business reputation and damage to goodwill could constitute irreparable harm. . . . Here, however, the court's pronouncements are grounded in platitudes rather than evidence, and relate neither to whether "irreparable injury is *likely* in the absence of an injunction," . . . nor to whether legal remedies, such as money damages, are inadequate in this case. It may be that HRE could establish the likelihood of irreparable harm. But missing from this record is any such evidence.
> . . . .
> *Those seeking injunctive relief must proffer evidence sufficient to establish a likelihood of irreparable harm.*

*Id.* at 1250-51 (internal citations omitted) (emphasis in last sentence added).

In this case, as in *Herb Reed Enterprises*, TST offers nothing more than conclusory allegations of harm to goodwill and reputation. Even if the supporting pseudonymous declaration is considered (which it should not be), the unknown declarant provides only vague, conclusory, unsupported statements, with no actual evidence of any harm. While the pseudonymous declarant states in a conclusory fashion that he/she/they has firsthand knowledge of the harm TST has suffered (¶ 6), the declarant stops there and neglects to provide any details at all of evidence of such harm – *e.g.*, no statistics or proof about lost membership or a decline in donations or profits. Nothing. Similarly, in the Motion itself, TST simply makes vague, conclusory allegations that TST has been harmed without citing to any supporting evidence. Motion at 7 (stating in a conclusory manner that TST has lost current and potential members and public goodwill without providing any evidence). Lacking <u>any</u> evidence of harm, TST clearly cannot meet its burden of establishing irreparable harm.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
No. 2:20-cv-00509-RAJ – Page 15

ARÊTE LAW GROUP
1218 THIRD AVE, STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

Third, TST's Motion shows that its true purpose is not to address alleged damages for alleged lost property, but rather to use its state law conversion and trespass claims to try yet again to relitigate its dismissed defamation claim and to try to prevent its former members from making critical statements about TST's tenets and practices. Not only is the Motion devoid of any evidence of actual harm stemming from the allegedly converted Memes Page, but its conclusory allegations focus on the fact that Defendants make critical statements about TST on many <u>different</u> social media platforms. Motion at 6 (complaining that Defendants post critical content on other social media platforms); Pseudonymous Decl. ¶ 5 ("Comments by and about Defendants are prolific on those areas of social media where TST is discussed. One cannot view content about TST on social media sites without encountering posts by Queer Satanic, or posts that share their talking points. Those talking points are then shared by other social media users."); ¶ 12 ("Defendants, operating under the name QueerSatanic, insert themselves into conversations about TST on Reddit and disparage TST."). These are not complaints about damages caused by the loss of property, but are simply complaints that Defendants are critical of TST. TST's Motion should be recognized for what it is – a backdoor and improper attempt to revive its dismissed defamation claim – and should be denied on this basis as well.

### 4. The Balance of Equities Favors Defendants, not TST

In addition to failing to show likelihood of success or irreparable harm, TST also fails to show that equities favor it. TST argues that this element is met because Defendants' conduct is "illegal." Yet, as discussed above, TST falls far short of establishing it will succeed on the merits of its conversion/trespass to chattels claims and thus cannot show that Defendants engaged in "illegal" conduct. Further, where the plaintiff falls well short of showing that the Defendants are wrongfully using a Facebook page, public policy will not be served by requiring Defendants to give up control before liability has been established. This is especially so when the plaintiff has waited over two and a half years to seek an injunction – thus demonstrating the lack of any immediate harm while the dispute is resolved.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
No. 2:20-cv-00509-RAJ – Page 16

ARÊTE LAW GROUP
1218 THIRD AVE, STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

While TST has failed to show any equitable grounds favoring a mandatory injunction, Defendants have clear equitable grounds for maintaining administration of the page. TST expressly represented to Defendants that they could use the Memes Page "free and clear." TST then acted consistently with that statement by not seeking the return of the Memes Page for over two years. Defendants relied on those statements to freely use the Memes Page. If TST were allowed to now contradict its own express statements and actions, Defendants would be inequitably harmed, not TST. Principles of equity and estoppel demand that TST not be permitted to do so.

### 5. TST's True Motive for Bringing this Motion is to Harass Defendants

Finally, as part of the equitable considerations in deciding whether to issue a preliminary injunction, the Court should take heed of evidence that shows that TST's true motive for bringing its Motion is not to address any imminent harm, but rather to harass Defendants.

On May 26, 2022, TST's counsel publicly expressed the motivation for pursuing this litigation against Defendants—referring to Defendants as "**morons**," "**pathetic**," and "**living corpses**" and stating his hope that they incur an unsustainable amount of attorneys' fees defending against this matter. Johnson Decl. ¶ 18 & Ex. 6. ("I hope he [Defendants' attorney] squeezes every last penny from you living corpses, and anyone that gives you the time of day.") (emphasis added). More recently, TST's counsel again expressed improper motives against Defendants through a public Tweet, suggesting that this case is driven more from a sense of vengeance than legitimate legal grounds:

> **Are these fuckwits still talking about me?** Grow up and file an answer so I can get at your financial records. **I'm coming for you.** Tell the judge on me again, I double dare you.

Johnson Decl. ¶ 20 & Ex. 8 (emphases added). Just a week after posting this public taunt, TST's counsel followed through on his threat to "com[e] for you" and filed the Motion the night before Thanksgiving, Wednesday, November 23, 2022. In addition to obviously being timed to impact Defendants' holiday, the substance of the fatally defective, slapdash Motion shows that it is not intended as a legitimate attempt to seek a preliminary injunction. The Motion includes only one,

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
No. 2:20-cv-00509-RAJ – Page 17

ARÊTE LAW GROUP
1218 THIRD AVE, STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

vague declaration from a pseudonymous person that does not include basic, necessary facts to succeed on a request for a preliminary injunction, such as evidence that TST has any legal right to the Memes Page. The Motion also neglects to inform the Court of the most critical evidence that is fatal to the Motion – that TST represented to Defendants over two and a half years ago that they could use the Memes Page "free and clear" and that TST had no interest in it. The Motion does not even attempt to address any harm from the alleged loss of converted property, but rather is a blatant attempt to relitigate the dismissed defamation claim in an attempt to silence Defendants' religious views, which are critical of TST's tenets and practices. The Motion is really nothing more than a hollow shell, devoid of any valid grounds. But TST knows that even meritless motions require a response. TST also knows that Defendants are individuals with limited financial means for whom this lawsuit presents a true financial hardship. TST should not be allowed to continue leveraging its disproportionate power to harass Defendants to try to intimidate them into refraining from expressing their beliefs regarding TST.

Given this demonstrated bad faith and improper purpose, this Court would be justified in exercising its inherent power to sanction this contemptable conduct. *See Fisk v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001) (discussing a court's inherent power to sanction "for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose").

**D.** **TST Fails to Allege any Facts or Provide any Argument Regarding "Documents"**

In the introduction to the Motion (Motion at 2), TST makes one vague reference to "business documents." However, nowhere else in either the Motion or the pseudonymous supporting declaration does TST provide any facts regarding any such documents. Nor does TST mention the "business documents" in the argument section or provide any grounds at all for obtaining a preliminary injunction as to the unidentified documents. Lacking any factual or legal

1    support whatsoever for obtaining a preliminary injunction as to undefined "business documents,"

2    TST's Motion as to the documents must fail.[8]

3    **E.    TST Should Be Required to Post a Bond**

4            Although TST must not prevail on its request for a preliminary injunction given the

5    complete lack of factual or legal grounds, in the unlikely event an injunction is issued TST should

6    be required to post a bond pursuant to Rule 65(c). Rule 65(c) requires the moving party to post a

7    security bond to protect the adverse party from damages caused by a wrongfully granted

8    injunction and to deter frivolous claims. *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d

9    797, 804 (3d Cir. 1989). Although attorneys' fees in setting aside a wrongfully issued injunction

10   are not normally part of the damages included by the bond, the Court has inherent power to

11   determine if attorneys' fees may be proper in light of bad faith conduct. *Chambers v. NASCO, Inc.*,

12   501 U.S. 32, 45–46, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991) (observing that court has inherent

13   power to assess attorney's fees "when a party has acted in bad faith, vexatiously, wantonly or for

14   oppressive reasons"); *Adams v. Gissell*, No. CV 20-11366-PBS, 2022 WL 2387881, at *2 (D.

15   Mass. Apr. 19, 2022), *report and recommendation adopted*, No. CV 20-11366-PBS, 2022 WL

16   16702407 (D. Mass. Aug. 24, 2022) ("It is beyond serious dispute that a district court may use

17   its inherent powers to  assess attorneys' fees against  a  party  that  has  'acted  in  bad  faith,

18   vexatiously, wantonly, or for oppressive reasons.'") (quoting *Pan Am Grain Mfg. Co. v. P.R. Ports

19   *Auth.*, 295 F.3d 108, 117 (1st Cir. 2002)). Given the repeated public statements made by TST's

20   counsel indicating that this litigation and this Motion are brought in bad faith for the purpose of

21   harassing Defendants and trying to "squeeze every last penny from you [Defendants] living

22   corpses," it would be appropriate for the Court to exercise its inherent powers to require a

23   substantial bond to cover Defendants' attorneys' fees and costs in seeking to undo a wrongfully

24

25   _____

26   [8] Because TST has not included any facts at all regarding documents, Defendants are unable to
     even guess what the alleged documents are. TST should not be allowed to improperly blindside
     Defendants by including new facts and allegations in a reply brief, to which Defendants will not
     be able to respond.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
No. 2:20-cv-00509-RAJ – Page 19



ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

issued injunction.[9]

## IV.     CONCLUSION

The Satanic Temple cannot meet any of the elements of a preliminary injunction. The purpose of The Satanic Temple's Motion is to harass and attempt to silence Defendants, driving up their legal fees for purely vindictive reasons. The Satanic Temple's Motion must be denied.

DATED: December 12, 2022.

**ARETE LAW GROUP PLLC**

By: */s/ Jeremy Roller*
Jeremy E. Roller, WSBA No. 32021
1218 Third Avenue, Suite 2100
Seattle, WA 98101
Phone:  (206) 428-3250
Fax:  (206) 428-3251
jroller@aretelaw.com

*Attorneys for Defendants David Alan Johnson, Leah Fishbaugh, Mickey Meehan, and Nathan Sullivan*

---

[9] The Court may take judicial notice of the fact that TST, through the same counsel, has been sanctioned in other federal district courts for bad faith litigation tactics, establishing a pattern and practice of using such tactics. *See, e.g.*, *Satanic Temple, Inc. v. City of Belle Plaine, MN*, No. 21-CV-0336 (WMW/JFD), 2022 WL 1639514, at *2 (D. Minn. May 24, 2022) (upholding sanctions against TST for bad faith litigation tactics in filing a second complaint after the court had clearly dismissed the claims in the first complaint); *Satanic Temple, Inc. v. City of Bos., MA*, No. 21-CV-10102-AK, 2022 WL 1028925, at *6 (D. Mass. Apr. 6, 2022) (sanctioning TST for abusive subpoena practices). In the *City of Boston* case, the court rebuked TST's attorney for his unabashedly improper litigation philosophy:

> Independent of a potential deponent's profession or media exposure, it is in exceptionally bad faith to intentionally notice a deposition for a date and time when a party knows the deponent will be unavailable or greatly inconvenienced. In his explanatory letter to the Court, Plaintiff's counsel states that he, as an attorney, has "a sworn duty to do anything short of breaking the law to see to it that my client's goals are recognized." [Dkt. 38 at 2]. Yet this is not the case. Rules such as the Massachusetts Rules of Professional Conduct (and other states' equivalents), various ethics rules and guidelines, and the Rules of Civil Procedure govern attorney and litigant conduct in all sorts of ways that reach beyond conduct that is simply illegal—and they do so precisely to prevent the type of abuse of process Plaintiff's counsel has employed here.

*Id.* at *6; *see also* Johnson Decl. ¶ 19 n.5 & Ex. 9.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
No. 2:20-cv-00509-RAJ – Page 20



ARÊTE LAW GROUP
1218 THIRD AVE, STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**CERTIFICATE OF SERVICE**

I, Janet Fischer, certify that on December 12, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, thereby sending a notification of such filing to the following parties:

**LYBECK PEDREIRA & JUSTUS, PLLC**

Benjamin Justus
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA 98040
ben@lpjustus.com

☐ E-mail
☐ U.S. Mail
☒ E-filing

**KEZHAYA LAW PLC**

Matthew A. Kezhaya
1202 NE McClain Rd
Bentonville, AR 72712
matt@kezhaya.law

☐ E-mail
☐ U.S. Mail
☒ E-filing

Dated this 12th day of December, 2022, at Seattle, Washington.

/s/ Janet Fischer
Janet Fischer
Paralegal

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
No. 2:20-cv-00509-RAJ – Page 21

ARÊTE LAW GROUP
1218 THIRD AVE, STE 2100
SEATTLE, WA 98101
O: (206) 428-3250