ADMITTED IN:
NEW YORK
CONNECTICUT

LAW OFFICES OF
**CAMERON STRACHER**
MEDIA AND ENTERTAINMENT LAW
51 ASTOR PLACE
NEW YORK, NY 10003
———
(646) 992-3850
CAM@STRACHERLAW.COM

WWW.STRACHERLAW.COM

December 5, 2023

**BY ECF**

The Honorable Sarah L. Cave
United States District Court
Southern District of New York
500 Pearl Street, Room 1670
New York, NY 10007

    Re:    *The Satanic Temple, Inc. v. Newsweek Digital, LLC* **(22-cv-1343)**

Dear Judge Cave:

    Pursuant to this Court's order entered on November 30, 2023 (ECF 78) (the "Order"), Defendant Newsweek Digital, LLC ("Newsweek") and non-party Julia Duin submit this letter in response to Plaintiff's letter-motion (ECF 77) ("Motion" or "Mot.").

    **1.**     **Julia Duin Responded Fully to Plaintiff's Questions at Her Deposition.**
Although Plaintiff contends Ms. Duin "refus[ed] to testify without a basis in privilege or other adequate excuse," Mot. at 2, Ms. Duin answered all the questions posed to her at her deposition. Specifically:

    (a)     <u>Ms. Duin answered Plaintiff's hypothetical question about whether she would be comfortable publishing claims that the Satanic Temple kills children</u>:[1]

> Q:    Would you have felt comfortable publishing a claim that TST kills children?
> MS. TESORIERO:  Objection to form.
> A:    No.
> Q:    Why Not?
> [. . .]
> A:    Where do you start on this one? Because it's obviously not true [. . .] no one has told me that TST is killing children.
> Q:    Hypothetically, if the same sources told you that TST kills children, would you have felt comfortable publishing that claim?
> MS. TESORIERO:  Objection to form.
> A:    I would have asked them to prove that. I would have asked them to offer some – okay. I would have asked them to prove it. Prove that TST was killing children.

---

[1] Plaintiff also fails to specify how Ms. Duin's response to this hypothetical question goes to the alleged actual malice of defendant Newsweek, particularly where such testimony would be inadmissible at trial. Fed. R. Evid. 602 (witness may testify to matters about which she has personal knowledge).

> [. . .]
> Q: What delineates the difference between hearing the rumor "TST kills children" versus hearing the rumor "TST engages in sexual abuse and cover-up," such that you would ask for explanatory details about the former but not the latter?
> A: Well, there's already been people talking to me about TST having multiple instances of sexual abuse, harassment. I mean [. . .] once again, as I'm saying for the third or fourth time now, there have been multiple reports among disgruntled, if you like the word, former members, of sexual abuse / harassment slash by – whether it's from Scott or from the Seattle members or from Jinx . . . .

Duin Depo Tr. 183:25–184:21; 186:10–23.

(b) <u>Ms. Duin answered questions about whether she reviewed any documents in preparation for her deposition.</u>  *See* Duin Depo Tr. 7:1–10:12 (indicating she reviewed the Article, emails, and notes to counsel).

(c) <u>Ms. Duin answered questions about how much she was paid by Newsweek.</u>  *See* Duin Depo Tr. 67:10.

(d) <u>Ms. Duin answered questions about whether this lawsuit had anything to do with her layoff.</u>  *See* Duin Depo Tr. 77:18–20 ("Q: Did the lawsuit have anything to do with you being laid off?  A: No.").

(e) <u>Ms. Duin offered multiple explanations in response to Plaintiff's lengthy questioning about why she believed Halloween could be associated with Satanism.</u>  *See id.* at 53:18–55:15; 82:1–15; 83:20–86:17.

(f) <u>Ms. Duin testified that she believed Lucien Greaves's general denial regarding allegations against The Satanic Temple responded to the statement made by Jinx Strange about accusations of sexual abuse and cover-up within the Satanic Temple:</u>

> Q: Did you ask [Lucien Greaves] specifically about Jinx Strange's comment?
> A: No. I did not ask him about Jinx Strange's comment.
> Q: Why not?
> A: Why not? I didn't – I felt I had asked Lucien plenty of questions. And right below that [in the Article], I had a quote from Lucien that basically denied all these accusations.
> Q: Did you confront Lucien Greaves with the allegation that there are accounts of sexual abuse and cover-up within The Satanic Temple?
> MS. TESORIERO: Objection. Asked and answered.
> A: Did I confront him?· Did I confront him? Trying to remember.· I don't believe I did.
> [. . .]
> Q: Well, seeing as how you didn't mention Jinx Strange or the allegations to Lucien Greaves, I find it very difficult to understand how Lucien Greaves's comment could have any pertinence to Jinx Strange's allegations.
> [. . .]
> MS. TESORIERO: Are you asking her a question?
> MR. KEZHAYA: I'm asking her to explain what she's – where she's coming from with her testimony.

      MS. TESORIERO:  Objection.  Asked and answered.
A:      The way – the way I constructed the article is that the – okay. Jinx had – Jinx had several things to say about the organization, the alt-right, the sexual abuse, the finances. And I had Lucien giving a general denial about – a general denial. I did not feel he – Lucien's general statement had to address every single thing specifically.

[. . .]

      In [a] newspaper article [. . .] You can have a person's quotes. You can have another person's quotes underneath them. They don't have to necessarily be, you know, like directly – like, you talked to person A, and then you directly talked to person B right afterwards. [. . . ] So if I have a quote from Lucien that applies to various accusations that people make to The Satanic Temple, I have the right to put that in under a Jinx quote no matter when Lucien said it.

Duin Depo Tr. 123:15–124:5; 125:25–126:24; 128:20–129:7.[2]  *See also Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991) ("a deliberate alteration of the words uttered by a plaintiff" does not constitute actual malice "unless the alteration results in a material change in the meaning conveyed by the statement").

      (g)    <u>Ms. Duin testified that the Article Statement was not a factual accusation</u>.  *See* Duin Depo Tr. 134:23–135:1 ("I found [Jinx Strange] inherently plausible.  [B]ut it was a claim. . . . I personally am not accusing TST of anything.").

      (h)    <u>Ms. Duin testified that counsel for Newsweek was copied on emails Plaintiff was asking her about</u>.  *See* Duin Depo Tr. 141:3–13, 142:4–16.

      (i)    <u>As outlined above, Ms. Duin answered numerous questions about whether she asked Mr. Greaves about the Article Statement.</u>  *See*, *supra,* 1(f).

      **2.**    **Plaintiff May Not Re-Open the Deposition of Julia Duin**.  Not only did Ms. Duin answer all the questions posed to her, she has now provided a copy of the Kevin Jones email at issue.  Plaintiff's failure to serve a document subpoena on Ms. Duin until her deposition concluded, however, is not a basis to re-open the deposition.  Moreover, prior to her deposition, Newsweek produced three emails between Mr. Jones and Ms. Duin, and Plaintiff examined Ms. Duin extensively about Mr. Jones.  *See* Duin Depo Tr. at 37:13–38:15, 42:1–5.  Finally, this Court lacks jurisdiction over Ms. Duin because her residence is the Western District of Washington.  *See* Fed. R. Civ. P. 45(d) (responsibility for enforcing Rule 45 subpoenas vests in the court for the district where compliance is required); *see also* ECF 27 (Order dismissing Ms. Duin for lack of personal jurisdiction).[3]

---

[2] Plaintiff's counsel proceeded to ask Ms. Duin the same question several more times, *see* Duin Depo Tr. 178:24–25, 179:13–14, ultimately badgering and demeaning her when she expressed that she had already answered his question.  *See id.* at 181:1–182:3 ("Q: Julia, you're not going to stutter for three hours").

[3] For similar reasons, Plaintiff's request for sanctions is improper because Ms. Duin has not violated an order of this Court.  *See 24 Hour Fitness U.S.A., Inc. v. 24/7 Tribeca Fitness, L.L.C.*, 2006 WL 1881763, at *2 (S.D.N.Y. Jul. 6, 2006) ("[I]n order to impose sanctions on the nonparty, violation of a court order is generally required in addition to the failure to comply with the subpoena."); *see also* Fed. R. Civ. P. 45(g) ("The *court for the district where compliance is required*--and also, *after a motion is transferred*, the issuing court--may hold in contempt a person . . . .") (emphasis added).

For the foregoing reasons, Newsweek and non-party Julia Duin respectfully request that this Court deny Plaintiff's request to reopen the deposition of Ms. Duin and deny Plaintiff's request for sanctions against Ms. Duin.

Respectfully submitted,

CAMERON STRACHER, PLLC

/s/ *Cameron Stracher*
Cameron Stracher
Sara C. Tesoriero
51 Astor Place, 9th Floor
New York, NY 10003
Tel: (646) 992.3850
Fax: (646) 992.4241
cam@stracherlaw.com
sara@stracherlaw.com

*Attorneys for Newsweek Digital, LLC*
and *Julia Duin*

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2023, I caused a true copy of the foregoing to be served on all counsel of record via ECF.

/s/ *Cameron Stracher*
Cameron Stracher