UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
                                           :

THE SATANIC TEMPLE, INC.,               :
                                           :
                       Plaintiff,     :  Case No. 1:22-cv-01343-MKV
v.                                       :
                                         :
NEWSWEEK DIGITAL, LLC          :
                                         :
                       Defendant.   :
                                         :
                                         :
------------------------------------------------------------------- x


**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**


Cameron Stracher
Sara C. Tesoriero
CAMERON STRACHER, PLLC
51 Astor Place, 9th Floor
New York, NY 10003
Tel: 646.992.3850
Fax: 646.992.4241
cam@stracherlaw.com
sara@stracherlaw.com

*Attorneys for Defendant*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................... 1

BACKGROUND ...................................................................................................................... 3

    A.    Plaintiff ................................................................................................................ 3

    B.    The Washington Lawsuit ...................................................................................... 3

    C.    Julia Duin ............................................................................................................ 4

    D.    The Article .......................................................................................................... 4

        1.    Researching the Article ............................................................................. 4

        2.    Writing the Article. ................................................................................... 7

        3.    Editing the Article. .................................................................................... 8

        4.    Additional Support for the Article Statement. ........................................... 9

    E.    The Lawsuit ....................................................................................................... 12

ARGUMENT ......................................................................................................................... 12

    I.    THE SATANIC TEMPLE CANNOT MEET ITS BURDEN OF PROVING THAT THE ARTICLE STATEMENT IS SUBSTANTIALLY FALSE. ............ 14

    II.    THE SATANIC TEMPLE CANNOT MEET ITS BURDEN OF PROVING NEWSWEEK PUBLISHED THE ARTICLE STATEMENT WITH ACTUAL MALICE. ........................................................................................................... 17

CONCLUSION ...................................................................................................................... 21

ii

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Apex Oil Co. v. DiMauro*, 1990 WL 124588 (S.D.N.Y. Aug. 21, 1990) ..................................... 16

*Brimelow v. New York Times Co.*, 2021 WL 4901969  (2d Cir. Oct. 21, 2021).......................... 19

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .................................................................... 12, 13

*Church of Scientology Int'l v. Behar*, 238 F.3d 168 (2d Cir. 2001).................................. 19, 20, 21

*Coleman v. Grand*, 523 F. Supp. 3d 244 (E.D.N.Y. 2021)........................................................... 18

*Dunlop-McCullen v. Rogers*, 2002 WL 1205029 (S.D.N.Y. Feb. 21, 2002)................... 12, 13, 18

*Goenaga v. Mar. of Dimes Birth Defects Found.*, 51 F.3d 14 (2d Cir. 1995) ............................. 13

*Goodman v. Bouzy*, 2023 WL 3296203 (S.D.N.Y. May 8, 2023), *report and
    recommendation adopted*, 2023 WL 4235851 (S.D.N.Y. June 28, 2023)............................. 16

*Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657 (1989) ..................................... 2, 18

*HLT Existing Franchise Holding LLC v. Worcester Hosp. Grp. LLC*, 994 F. Supp.
    2d 520, (S.D.N.Y. 2014) ...................................................................................................... 15

*Kesner v. Buhl*, 590 F. Supp. 3d 680 (S.D.N.Y. 2022) ............................................... 13, 17, 18, 21

*Kesner v. Dow Jones & Co., Inc.*, 2023 WL 4072929 (2d Cir. June 20, 2023).......................... 13

*Leidig v. BuzzFeed, Inc.*, 371 F. Supp. 3d 134 (S.D.N.Y.), *aff'd*, 788 F. App'x 76
    (2d Cir. 2019)............................................................................................................... 14, 15

*Lindberg v. Dow Jones & Co., Inc.*, 2021 WL 3605621 (S.D.N.Y. Aug. 11, 2021).................. 18

*Loeb v. New Times Commc'ns Corp.*, 497 F. Supp. 85 (S.D.N.Y. 1980).................................... 21

*Masson v. New Yorker Mag., Inc.*, 501 U.S. 496 (1991) ...................................................... 14, 18

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).................................. 13

*Palin v. New York Times Co.*, 588 F.Supp.3d 375 (S.D.N.Y. 2022); .......................................... 14

*Perez v. Harbor Freight Tools*, 698 F. App'x 627 (2d Cir. 2017)................................................ 12

*St. Amant v. Thompson*, 390 U.S. 727 (1968)................................................................................ 21

iii

*Stern v. Cosby*, 645 F.Supp.2d 258 (S.D.N.Y. 2009) ............................................................ 19, 20

*Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236 (2d Cir. 2017) .............. 13, 14

*Tzougrakis v. Cyveillance, Inc.*, 145 F.Supp.2d 325 (S.D.N.Y. 2001) ........................................ 19

*Watson v. NY Doe 1*, 2023 WL 6540662 (S.D.N.Y. Oct. 6, 2023) ............................................... 18

**Statutes**

N.Y. CPLR § 76-a ............................................................................................................................ 17

N.Y. CPLR § 76-a(1)(a) .................................................................................................................. 18

N.Y. CPLR § 76-a(1)(d) .................................................................................................................. 18

N.Y. CPLR § 76-a(2) ....................................................................................................................... 18

**Rules**

Fed. R. Civ. P. 56(a) ....................................................................................................................... 12

Defendant Newsweek Digital, LLC ("Newsweek" or "Defendant") respectfully submits this memorandum of law in support of its motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

This defamation case arises from Newsweek's publication of an article about a lawsuit in Washington State between The Satanic Temple, Inc. ("Plaintiff," or "The Satanic Temple") and four of its former members (the "Article"). Although The Satanic Temple claimed in its Complaint that twenty-two statements in the Article were defamatory, the Court subsequently held that twenty-one of the twenty-two statements were not actionable. ECF 27. The only remaining statement is a quote from a former member explaining that he ceased his involvement with The Satanic Temple after hearing about "[a]ccounts of sexual abuse being covered up in ways that were more than anecdotal" (the "Article Statement"). Because the documents and testimony elicited in discovery demonstrate that The Satanic Temple cannot meet its burden of demonstrating by clear and convincing evidence that the Article Statement is substantially false, and that Newsweek published it with actual malice, summary judgment should be granted and Plaintiff's remaining claim dismissed.

First, The Satanic Temple cannot prove that the Article Statement is substantially false because, in context, the Statement merely reflects the experience of one former member, the truth of which the former member has confirmed in discovery. Moreover, even divorced from its context, Plaintiff cannot demonstrate it is substantially false that there were rumors of sexual abuse within The Satanic Temple being covered up because four former members confirmed that they heard about claims of sexual abuse being covered up, another former member wrote a long article about her experiences of sexual abuse that The Satanic Temple admittedly did not

1

investigate, members of one chapter of The Satanic Temple accused Plaintiff of covering up accusations of sexual assault, and several former members also recounted on social media their experiences of sexual abuse that they claim were met with inaction or retaliation.  Finally, Plaintiff has admitted that a member of another chapter of The Satanic Temple reported that someone in leadership had made unwanted advances toward her and discussed his genitals, and that she was frustrated by Plaintiff's inaction, members of another chapter were removed from the chapter when they complained about allegations of sexual assault against another member, and one of the former members involved in litigation with The Satanic Temple testified that he was expelled from the Washington Chapter because he was a witness to a sexual harassment complaint.  Plaintiff has also admitted that prior to 2020 it lacked a formal process for reporting complaints, and therefore it could not possibly determine whether and how complaints of sexual abuse were handled prior to that time.

Second, New York law requires Plaintiff to prove that Newsweek published the Article Statement with actual malice – i.e., with knowledge of falsity or reckless disregard for falsity. An alleged failure to investigate, or even "an extreme departure from professional standards," does not satisfy the actual malice standard.  *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 665 (1989).  Moreover, the relevant inquiry under the actual malice standard is Newsweek's "state of mind" – not the state of mind of the author of the allegedly defamatory publication.  Here, there is no evidence – and Plaintiff can point to none – that Newsweek entertained serious doubts about the truth of the Article Statement.  Rather, Newsweek relied on the reputation and experience of Julia Duin, a veteran religion reporter, and had no reason to doubt the accuracy of her reporting.  Duin, herself, believed the Article Statement to be

2

"inherently plausible," found the former member to be a reliable source, and heard similar allegations from other sources.

Thus, because The Satanic Temple cannot satisfy its burden of demonstrating by clear and convincing evidence that the Article Statement is substantially false, and because it cannot prove actual malice, Plaintiff's claim should be dismissed and Newsweek's motion for summary judgment should be granted.

## BACKGROUND

### A.   Plaintiff

Plaintiff The Satanic Temple is an "atheistic religious corporation" with chapters throughout the United States.  Defendant's Rule 56.1 Statement of Undisputed Material Facts ("Rule 56.1 Stmt.") ¶ 1.  It "engages in various charitable activities" and "advocates for the religious rights of its membership" through litigation, among other forms of advocacy.  *Id.* ¶ 3.[1] It promotes its activities and advocacy through the issuance of press releases to numerous media outlets in order to make the public aware of those activities and advocacy, which include the promotion of specific political initiatives.  *Id.* ¶¶ 4–7.  It also advertises its initiatives through the use of billboards, *id.* ¶ 9, and its co-founder, Lucien Greaves, has done multiple interviews to discuss The Satanic Temple with Tucker Carlson, on Fox News Radio, and with Chris Hayes, on MSNBC.  *Id.* ¶ 10.

### B.    The Washington Lawsuit

In 2020, The Satanic Temple sued several former members of its Washington Chapter for defamation and "cyberpiracy" in the United States District Court for the Western District of

---

[1] "A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding."  *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985).

Washington (the "Washington Lawsuit").  Rule 56.1 Stmt. ¶ 13.  The defendants in the

Washington Lawsuit are former members David Alan Johnson, Leah Fishbaugh, Mickey

Meeham (a/k/a Joshua Calavera), and Nathan Sullivan.  *Id.* ¶ 14.  After leaving The Satanic

Temple, they formed a group called Queer Satanic, which operates a social media account under

the handle @QueerSatanic.  *Id.* ¶¶ 14–15.

### C.   Julia Duin

Julia Duin is a freelance journalist who focuses on religion reporting and worked for

Newsweek as an independent contractor from September 1, 2021 until February 2023.  *Id.* ¶ 18.

Duin has been a journalist for over forty-five years, and has received multiple awards for her

reporting, including awards from the Religion News Writers Association, the Associated Press,

and the Religion Communicators Council.  *Id.* ¶¶ 19–20.  She has served as a visiting journalism

professor at the University of Alaska at Fairbanks, a visiting professor at Union University, an

adjunct professor at the University of Maryland, and an adjunct professor at Patrick Henry

University.  *Id.* ¶ 22.  Duin has also published six books about religion, and has a master's

degree in religious studies from Trinity Episcopal School for Ministry.  *Id.* ¶¶ 21, 23.

### D.   The Article

#### 1.   Researching the Article

After the defamation claims were dismissed by the district court in the Washington

Lawsuit, Duin received an email from Kevin Jones, a journalist with the Catholic News Agency,

stating that former members of The Satanic Temple had told him about The Satanic Temple's

alleged use of "defamation lawsuits . . . to harass internal critics."  Rule 56.1 Stmt. ¶ 16.  Jones's

email also stated that former members had told him about "allegations of [The Satanic Temple]

leadership sexually exploiting members or failing to respond to harassment/sexual assault

allegations against chapter heads."  *Id.* ¶ 17.  Following this lead, Duin reached out to the

4

members of Queer Satanic and communicated with them via their @queersatanic social media accounts and in person. *Id.* ¶ 24.

Although the focus of the Article was the Washington Lawsuit, *id.* ¶ 48, during Duin's research she learned that "there [were] multiple reports among . . . former members [of The Satanic Temple], of sexual abuse/harassment." *Id.* ¶ 37. Nathan Sullivan told Duin that the Queer Satanic members had been removed from the Washington Chapter because they were witnesses to an ethics complaint, and that the ethics complaint involved the mismanagement of a sexual harassment claim within the Washington Chapter. *Id.* ¶ 25. Sullivan also sent Duin social media posts between a member of The Satanic Temple and The Satanic Temple's leadership, in which the member claimed that she was removed from groups within The Satanic Temple after publicly criticizing the behavior of Satanic Temple leaders for, among other things, making inappropriate sexual comments. *Id.* ¶ 26. Johnson confirmed to Duin that he had also been a witness to a sexual harassment complaint within The Satanic Temple. *Id.* ¶ 27.

Duin also emailed Scott Malphas and Jinx Strange (a/k/a Paul Millirons), other former members of The Satanic Temple, and asked both of them if they would "mind telling [her] what chapter you were part of . . . , when you left [The Satanic Temple] and why." *Id.* ¶¶ 28, 31. Duin did not mention sexual abuse in either email. *Id.* ¶¶ 22, 25. Malphas responded to Duin's email that he would be "happy to share [his] experience with her," and further stated:

> There was an account of sexual assault, and the response was "we are looking into it," then never followup [*sic*]. One individual was in charge of on-boarding new chapters . . . turns out they were using their authority to coerce potential chapter leaders into having sex. That person was protected by the national council and executive leadership, for months . . . until they finally "stepped down" and the allegations of statutory rape were never addressed.
> [. . .]
> The nail in the coffin for me was when I found out that the national council had been reviewing and approving official events that included orgies. [. . .] Well, shortly after the first celebration, national council released "sex-positive

guidelines." It was clear that this was in response to the complaints of sexual assault; an effort to shed responsibility."

*Id.* ¶ 30.

Strange wrote a lengthy response to Duin, in which he stated that he had heard "concerning" stories from other members of The Satanic Temple, and that:

> A lot of times those things were anecdotal or unsupported, but sometimes they were very concerning. Screenshots or images of things and connections I hadn't seen before. Leaders posing happily with major alt-right media figures. Accounts of sexual abuse being covered up in ways that were more than anecdotal. Dozens of people kicked out for asking for financial records from this alleged-non-profit organization.

*Id.* ¶ 33. At his deposition, Strange testified that by "sexual abuse" he meant "unwanted sexual advances or contact." *Id.* ¶ 34. He further testified that he left The Satanic Temple after hearing accounts of sexual abuse and "observ[ing] behavior on social media by people [he] understood to be leaders in [The Satanic Temple]," which appeared to be efforts to cover up those kinds of allegations. *Id.* ¶ 35. He said he observed behavior that he "would not consider to be ethical or responsible . . . in response to these sort of [sexual abuse] allegations" and that "lent more credibility to those claims." *Id.* ¶ 36.

At her deposition, Duin testified that she "found what [Strange] said to be inherently plausible" because it was consistent with other statements made by members of Queer Satanic and by Malphas. *Id.* ¶ 38. She also testified that she found the sources who told her about allegations of sexual abuse within The Satanic Temple credible because they were "true believers" when they were part of The Satanic Temple, but had observed things within the organization concerning enough to make them leave. *See id.* ¶ 39 ("Because [Scott Malphas] was a true believer when he came in, and so was Jinx. And they were all true believers, and they

saw stuff they didn't like, and they left.  They all . . . wanted to believe.  They all came in, and they believed in the organization, and they left not believing in it.").

Duin also interviewed Lucien Greaves, spokesperson and co-founder of The Satanic Temple as part of her research.  *Id.* ¶ 40.  During Duin's communications with Greaves, Greaves generally denied claims against The Satanic Temple.  *Id.* ¶ 41.  Duin asked Greaves about Malphas's complaints that The Satanic Temple's national council had been "approving official events that included orgies." *Id.* ¶ 42.  In response, Greaves stated that "[n]o events are compulsory to continued membership within [The Satanic Temple]." *Id.* ¶ 43.  Duin did not ask Greaves about Strange's statement regarding accounts of sexual abuse because she felt Greaves's general denial of allegations against The Satanic Temple, and his response to questions about "official orgies," was a "fair rebuttal" to Strange's statement as well.  *Id.* ¶ 44.[2]

> 2. <u>Writing the Article.</u>

Julia Duin wrote the Article.  It begins:

> Can you defame a religion, especially one that doesn't believe in God, Satan or the supernatural?
>
> The answer to that question could cost four former members of The Satanic Temple (TST) more than $140,000 in damages, including "reputation losses," in a civil lawsuit that has dragged on for more than a year and a half.

Rule 56.1 Stmt. ¶ 49.  The Article then sets forth the claims in the Washington Lawsuit, provides some background on The Satanic Temple's founding and history, and describes the involvement of each defendant in the organization.  *Id.* ¶ 50.  The Article also outlines other recent legal

---

[2] As part of her research, Duin also interviewed Matt Kezhaya, The Satanic Temple's general counsel, and, at Greaves's suggestion, Dr. Joseph Laycock, the author of *Speak of the Devil: How The Satanic Temple is Changing the Way We Talk about Religion*.  *Id.* ¶¶ 45–47.

disputes involving The Satanic Temple, reports on complaints other former members have made about The Satanic Temple's practices, and includes responses from Greaves and Kezhaya.  *Id.*

As background, and as part of the reporting on other complaints made by other former members, the Article includes Jinx Strange's quote that he ceased his involvement with The Satanic Temple after he heard "[a]ccounts of sexual abuse being covered up in ways that were more than anecdotal" (the "Article Statement").  *Id.* ¶ 51.  Duin testified that, while she found the Article Statement "inherently plausible," she did not intend to accuse The Satanic Temple of any wrongdoing by including the Article Statement in the Article.  *Id.* ¶ 52.  Rather, Duin included the Article Statement "[b]ecause it gave a general view of the various controversies surrounding The Satanic Temple," and she wanted to acknowledge Strange's "perception of what The Satanic Temple was about.  What he thought, what his experience was, what he was hearing from other people."  *Id.* ¶¶ 53–54.

Two paragraphs after the Article Statement, the Article includes Greaves's statement that he considers complaints about The Satanic Temple "old news" and that, "We get this litany of senseless disparaging claims against us that says we're a religious group acting in a nefarious manner."  *Id.* ¶ 55.  Duin put Greaves's general denial about claims made against The Satanic Temple after the Article Statement because she believed Greaves's denial applied to the "various accusations" made against The Satanic Temple, including the Article Statement.  *Id.* ¶ 56.

### 3.   Editing the Article.

Nancy Cooper, Newsweek's editor-in-chief, edited the Article before it was published by Newsweek.  Rule 56.1 Stmt. ¶¶ 57–58, 70.  Cooper was not familiar with The Satanic Temple prior to hearing Duin's pitch for the Article, but she had "faith in [Duin's] reporting" and saw no evidence Duin was biased in her reporting on The Satanic Temple.  *Id.* ¶¶ 59–60, 66.  Indeed, Newsweek hired Duin as a religion reported because "[s]he was an experienced religion

reporter," who had "won [ ] awards," and was "interested in the topic and knew about it." *Id.* ¶ 61.  Regarding Duin's experience, Cooper recalled that Duin "clearly knew what she was talking about. She was an experienced reporter . . . [S]he had been a reporter for other news outlets and covered religion for them." *Id.* ¶ 62.

According to Cooper, Duin typically did not provide her with the notes for her articles because, in Cooper's opinion, Duin "is a very experienced senior person who was hired to be on this [religion] beat who knows this beat, and I [Cooper] don't re-report stories [because] [t]hat's not an editor's role." *Id.* ¶ 65.  Newsweek generally relied on Duin to fact check her articles. *Id.* ¶¶ 63, 65.  Indeed, Duin represented to Cooper that she had "fact-checked this [Article] until [her] eyes were bleary." *Id.* ¶ 64; *see also id.* ("Whew . . . have factchecked until I am buggy-eyed.").

Cooper understood the Article Statement to be a report of something people were talking about, and not a legal allegation or an accusation of guilt. *Id.* ¶ 67.  In that respect, she believed the Article Statement to be true, and believes that Newsweek did not intend to, and did not, defame The Satanic Temple by publishing the Article Statement. *Id.* ¶¶ 68–69.

### 4. Additional Support for the Article Statement.

Testimonial and documentary evidence further support the Article Statement. Specifically, Strange recalled that: 1) a member of the Washington Chapter was removed from the chapter after the member came forward with an allegation of sexual abuse; 2) a female member of the Austin Chapter who made an allegation of sexual abuse, "possibly along with other supporters," was removed from the chapter; and, 3) a friend of Strange's confided in him that she had been sexually abused at a Satanic Temple party.  Rule 56.1 Stmt. ¶ 71.

Similarly, David Johnson testified that he knew of a former member who left because the member was "made to feel uncomfortable by a much older member" but it "was non-addressed

for months." *Id.* ¶ 72.  Johnson also recalled that a member of the Austin Chapter claimed she was sexually assaulted by a chapter head. *Id.* ¶ 73.  Johnson further testified that Satanic Temple members had spoken about feeling uncomfortable because a co-owner of The Satanic Temple had solicited nudes for a holiday called "Lupercalia." *Id.* ¶ 74.

In addition, former Satanic Temple member Jex Blackmore publicly accused The Satanic Temple of failing to address sexually abusive behavior in a 2018 article published on Medium. *Id.* ¶¶ 76–77.  Specifically, she claimed to have "witnessed male members of the organization exploit their position and influence to behave inappropriately and disrespectfully towards women" and that she personally "experienced harassment and abuse from members who have now left the organization." *Id.* ¶ 77; *see also* ¶ 78 (Dr. Laycock's book, *Speak of the Devil*, references Blackmore's article and states that, "[Blackmore] reported experiencing harassment and abuse while in [The Satanic Temple]").  The Satanic Temple was aware of Blackmore's claims but did not investigate them. *Id.* ¶ 92.  There are also numerous social media posts in which individuals purporting to be former members of The Satanic Temple have publicly recounted experiences of sexual abuse within The Satanic Temple and expressed their frustration with how such complaints were handled. *Id.* ¶ 87.

The Satanic Temple has also admitted that there have been several direct accusations of sexual abuse by or against members of The Satanic Temple. *Id.* ¶¶ 79–85.  For example, The Satanic Temple admitted that a former member of the San Jose Chapter complained that a member of the leadership team made unwanted advances towards her, which included discussing his genitals. *Id.* ¶¶ 80–81.  The Satanic Temple acknowledged that the accuser was unhappy with how her complaint was handled, which "led to some frustration [for The Satanic Temple]

10

because . . . you never want to tell somebody who is filing a complaint like not to . . . but at the same time sometimes looking in to things takes time." *Id.* ¶ 82.

The Satanic Temple also admitted that head of the Austin Chapter was accused of sexually assaulting another member, and other members accused The Satanic Temple of "covering up" the incident. *Id.* ¶¶ 83–84. According to The Satanic Temple, a friend of the victim told The Satanic Temple National Council about the alleged assault, and the National Council encouraged the victim to report the incident to the police. *Id.* ¶¶ 84–85. In the following months, the victim's friends became unhappy with The Satanic Temple's lack of a further response to the allegations, and "threatened to go public . . . with the claim that [The Satanic Temple] was covering up these accusations." *Id.* ¶ 85. Following these threats, the alleged perpetrator "stepped down" from his leadership position. *Id.* ¶¶ 84–86. However, the alleged victim and her friends continued to raise the issue at Chapter meetings, and were removed from the Austin Chapter as a result. *Id.* ¶ 86.

In addition to The Satanic Temple's admission, Nathan Sullivan testified that his removal from the Washington Chapter was an effort to cover up a sexual harassment complaint:

> My expulsion from [The Satanic Temple] was a part of . . . covering up the ethics complaint where the [sexual] harassment was an underpinning factor. The chapter head at the time explicitly said that the—the reason for my removal was because I was a witness to that e-mail [complaint].

*Id.* ¶ 75.

Finally, although The Satanic Temple was formed in or around 2013, it lacked a formal process for handling complaints until 2020, including complaints involving sexual abuse. *Id.* ¶¶ 2, 88–91. Thus, there were complaints prior to 2020 that were not formally addressed. *Id.* ¶ 91.

11

### E.   The Lawsuit

The Satanic Temple originally brought this lawsuit against Duin and Newsweek alleging that twenty-two statements in the Article were defamatory.  ECF 1.  Duin moved to dismiss the claim against her for lack of personal jurisdiction, and both Duin and Newsweek moved to dismiss the action for failure to state a claim.  ECF 17; ECF 20.  The Court granted Duin's motion, holding that it lacked jurisdiction over her, and granted, in part, Newsweek's motion, holding that twenty-one of twenty-two allegedly defamatory statements were not actionable.  ECF 27.  The Court held that the one remaining statement, the Article Statement, was "plausibly defamatory" and survived the motion to dismiss.  *Id.* at 13.  Following the close of discovery, and pursuant to the Court's Scheduling Order entered on April 17, 2024, Newsweek now files its Motion for Summary Judgment.

### ARGUMENT

A motion for summary judgment must be granted where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Perez v. Harbor Freight Tools*, 698 F. App'x 627, 628 (2d Cir. 2017) (quoting Fed. R. Civ. P. 56(a)).  Once the moving party meets its initial burden of demonstrating "the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), "the opposing party must come forward with specific facts showing that there is a genuine issue for trial by a showing sufficient to establish the existence of every element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Dunlop-McCullen v. Rogers*, 2002 WL 1205029, at *6 (S.D.N.Y. Feb. 21, 2002) (internal citations omitted).  Although factual inferences are drawn in favor of the non-moving party, a motion for summary judgment cannot be defeated by evidence that is "conclusory, speculative,

or not significantly probative." *Dunlop-McCullen*, 2002 WL 1205029, at *6; *see also Goenaga v. Mar. of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (recognizing that party opposing summary judgment cannot rely only on argument that movant's witnesses are not credible). If the opposing party cannot make the required showing after adequate time for discovery, then "the plain language of Rule 56(c) mandates the entry of summary judgment." *Celotex Corp.*, 477 U.S. at 322; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'").

In order to prevail on a defamation claim, a plaintiff must prove that the statement it challenges is "substantially false" and was made with the requisite fault. *See Kesner v. Dow Jones & Co., Inc.*, 2023 WL 4072929, at *1 (2d Cir. June 20, 2023) (setting out required elements of a defamation claim); *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 242 (2d Cir. 2017) ("To satisfy the falsity element of a defamation claim, plaintiff must allege that the complained of statement is 'substantially false.'") (quotations omitted). Under New York law, in cases involving speech on a matter of public concern the plaintiff must prove actual malice on the part of the publisher. *See Kesner v. Buhl*, 590 F. Supp. 3d 680, 693 (S.D.N.Y. 2022) (noting that courts have "uniformly found" that the actual malice standard under New York's anti-strategic litigation against public participation ("anti-SLAPP") statute applies to diversity actions) (citing cases). Here, Plaintiff cannot meet its burden for at least two, independent reasons: 1) The Satanic Temple cannot prove that the Article Statement is substantially false; and 2) The Satanic Temple cannot prove that Newsweek published the Article Statement with actual malice.

I.    **THE SATANIC TEMPLE CANNOT MEET ITS BURDEN OF PROVING THAT
      THE ARTICLE STATEMENT IS SUBSTANTIALLY FALSE.**

The Satanic Temple bears the burden of proving that the Article Statement is

"substantially false."  *See, supra, Tannerite Sports, LLC*, 864 F.3d at 242; *Leidig v. BuzzFeed,*

*Inc.*, 371 F. Supp. 3d 134, 143 (S.D.N.Y.), *aff'd*, 788 F. App'x 76 (2d Cir. 2019) ("Despite truth

often being framed as a defense to [defamation], the burden of proving the falsity of a statement

rests with the plaintiff.").  Substantial falsity must be proven by clear and convincing evidence.

*Palin v. New York Times Co.*, 588 F.Supp.3d 375, 399 (S.D.N.Y. 2022); *see also Leidig*, 371 F.

Supp. 3d at 144 ("Although such bland cryptic claims of falsity supported by the credibility of a

witness might be sufficient to establish a proposition in other civil cases, the First Amendment

demands more.") (citation omitted).

"[W]here the substance, the gist, or the sting of a statement is true, it cannot be libelous."

*Leidig*, 371 F. Supp. 3d at 143 (quotations omitted); *see also Masson v. New Yorker Mag., Inc.*,

501 U.S. 496, 517 (1991) ("[T]he statement is not considered false unless it would have a

different effect on the mind of the reader from that which the pleaded truth would have

produced.") (quotations omitted).  In reviewing the statement, a court "must give the disputed

language a fair reading in the context of the publication as a whole and construe it as the

intended readership would."  *Leidig*, 371 F. Supp. 3d at 143 (citation omitted).

Here, no matter how the Article Statement is read, no reasonable jury could find by clear

and convincing evidence that the Article Statement is substantially false.  First, when read in

context, the Article Statement merely asserts that a former member of The Satanic Temple, Jinx

Strange, was no longer involved with The Satanic Temple in part because he heard about

accounts of sexual abuse being covered up.  Rule 56.1 Stmt. ¶ 51.  In fact, Strange confirmed

that hearing of such allegations was one reason he left The Satanic Temple.  *Id.* ¶¶ 35–36.  Thus,

given Strange's testimony, Plaintiff cannot prove that the Article Statement is substantially false. *See Leidig*, 371 F. Supp. 3d at 146 (finding plaintiff failed to show statement in an article was false where "[t]he most straightforward reading" of the statement was "simply as a summary of [another outlet's] findings" and the plaintiff could not demonstrate that the summary of the findings was inaccurate, regardless of the truth of the underlying findings).

Second, even when divorced from its context, it is substantially true that within The Satanic Temple members had heard "[a]ccounts of sexual abuse being covered up in ways that were more than anecdotal."  The Satanic Temple admitted that members of the Austin Chapter threatened to "go public" with the claim that The Satanic Temple was "covering up" accusations of sexual assault against a Chapter Head.[3]  Rule 56.1 Stmt. ¶ 85.  Sullivan, Johnson, and Strange testified that they had heard of claims of sexual abuse within The Satanic Temple resulting in the accuser, witnesses, or supporters being removed from their chapters.  *Id.* ¶¶ 71–75.  Scott Malphas told Duin of "an account of sexual assault" that was not followed up on.  *Id.* ¶ 30.  Jex Blackmore wrote about her experiences of sexual abuse when she was in The Satanic Temple in her Medium article, and The Satanic Temple admits it did not investigate her claims.  *Id.* ¶¶ 77, 91.  Several social media posts by former members of The Satanic Temple also publicly recount experiences of sexual abuse within The Satanic Temple and claim that these accounts were met with inaction or retaliation against the victim.[4]  *Id.* ¶¶ 26, 87.  Based on this evidence, The

---

[3] The statements made by Gregory Stevens as the 30(b)(6) deposition representative for The Satanic Temple are opposing party statements and therefore admissible evidence.  F.R.E. 801(d)(2).

[4] These statements are not inadmissible hearsay because Newsweek does not submit them for the truth of the allegations they make – i.e., whether sexual abuse, in fact, occurred and was covered up – but, rather, to establish that such claims were made and that former members of The Satanic Temple were aware of them.  *See HLT Existing Franchise Holding LLC v. Worcester Hosp. Grp. LLC*, 994 F. Supp. 2d 520, 535 (S.D.N.Y. 2014) (guest surveys regarding

Satanic Temple cannot demonstrate that it is substantially false that there were rumors of sexual abuse within The Satanic Temple being covered up. *See Goodman v. Bouzy*, 2023 WL 3296203 at *10 (S.D.N.Y. May 8, 2023), *report and recommendation adopted*, 2023 WL 4235851 (S.D.N.Y. June 28, 2023) (statement that defendant "was aware of allegations" that plaintiff had raped someone was substantially true where record demonstrated such rumors in fact existed).

*Goodman* is instructive in this regard. In *Goodman*, plaintiff alleged that defendants published defamatory social media posts claiming he had been accused of rape. *Id.* at *2. However, in a recorded phone call, plaintiff had referenced the "false claims" of rape made against him. *Id.* at *10. In determining whether plaintiff had adequately alleged falsity, the court found that "[defendant] did not allege that [plaintiff] raped someone; [defendant] stated only that he was *aware of allegations* that [plaintiff] had raped someone." *Id.* (emphasis in original). In light of that distinction, the court held that the phone conversation demonstrated that there were, in fact, rumors that plaintiff had raped someone, and it dismissed plaintiff's defamation claim on substantial truth grounds. *Id.*

Finally, even accepting Plaintiff's flawed interpretation of the Article Statement, Plaintiff cannot prove by clear and convincing evidence that it is substantially false that allegations of sexual abuse within The Satanic Temple were covered up. Plaintiff has admitted that there have been several accusations of sexual abuse against members of The Satanic Temple and that the accuser was unhappy with how The Satanic Temple handled the complaints. Rule 56.1 Stmt. ¶¶ 79–86. A member of the San Jose Chapter reported that someone in leadership had made

---

room cleanliness were non-hearsay where they were not offered for the truth of whether the rooms were clean, but rather to establish that guests had reported that the rooms were not clean); *Apex Oil Co. v. DiMauro*, 1990 WL 124588, at *3 (S.D.N.Y. Aug. 21, 1990) ("[E]vidence that rumors or false reports *were disseminated* is not hearsay when they are not offered for the truth of the rumors but for the fact that rumors were spread.") (emphasis in original).

unwanted advances toward her and discussed his genitals, and she was frustrated by the inaction

on the part of The Satanic Temple. *Id.* ¶¶ 80–82.  In the Austin Chapter, members accused The

Satanic Temple of covering up a sexual assault claim against a Chapter Head, and those

members and the alleged victim were removed from the Chapter when they continued to raise

the issue after the Chapter Head had voluntarily stepped down. *Id.*  ¶¶ 83–86.  In addition,

Nathan Sullivan testified that his expulsion from the Washington Chapter constituted a cover up

because he was removed after becoming a witness to a sexual harassment complaint. *Id.* ¶ 75.

Finally, Plaintiff has admitted that prior to 2020 it lacked a formal process for reporting

complaints, and therefore it could not possibly determine whether and how complaints of sexual

abuse were handled prior to that time. *Id.* ¶¶ 89–91.

Thus, because Plaintiff cannot satisfy its burden of demonstrating that the Article

Statement is substantially false, its defamation claim should be dismissed.

## II.    THE SATANIC TEMPLE CANNOT MEET ITS BURDEN OF PROVING NEWSWEEK PUBLISHED THE ARTICLE STATEMENT WITH ACTUAL MALICE.

Plaintiff also cannot prove that Newsweek acted with actual malice in publishing the

Article Statement.  Courts have "uniformly found" that the actual malice standard applies to

diversity actions under New York's "anti-SLAPP" statute, N.Y. CPLR § 76-a.  *Kesner*, 590 F.

Supp. 3d at 693 (collecting cases). [5]  Under the anti-SLAPP statute, the actual malice standard

---

[5] Even if the anti-SLAPP statute did not apply, Newsweek maintains that the actual malice standard still applies because The Satanic Temple is a public figure.  *See Lerman v. Flynt Distrib. Co.*, 745 F.2d 123, 136–37 (2d Cir. 1984) (a plaintiff is a limited purpose public figure where he "(1) successfully invited public attention to his views in an effort to influence others prior to the incident that is the subject of litigation; (2) voluntarily injected himself into a public controversy related to the subject of the litigation; (3) assumed a position of prominence in the public controversy; and (4)  maintained regular and continuing access to the media."); Rule 56.1 Stmt. ¶¶ 3–10.

applies to communications "in connection with an issue of public interest." N.Y. CPLR § 76-a(1)(a). The term "public interest" is to "be construed broadly and shall mean any subject other than a purely private matter." N.Y. CPLR § 76-a(1)(d); *see also Kesner*, 590 F. Supp. at 693 ("Matters of 'public concern' include matters of political, social, or other concern to the community, even those that do not affect the general population.") (quotations omitted); *Lindberg v. Dow Jones & Co., Inc.*, 2021 WL 3605621, at *8 (S.D.N.Y. Aug. 11, 2021) ("[C]ases where the subject matter was not a matter of legitimate public concern are extremely rare.") (citation omitted). Here, there can be no doubt that the Article Statement involves matters of public concern. *See Watson v. NY Doe 1*, 2023 WL 6540662, at *3 (S.D.N.Y. Oct. 6, 2023) ("[C]ourts have found Facebook and LinkedIn posts accusing an individual of sexual assault to be communications concerning an issue of public interest.") (internal marks omitted); *Coleman v. Grand*, 523 F. Supp. 3d 244, 259 (E.D.N.Y. 2021) (finding that issues of "sexual impropriety and power dynamics in [a given] industry, as in others, were indisputably an issue of public interest").

"Actual malice" requires a plaintiff to establish by clear and convincing evidence that the communication on which the action was based "was made with knowledge of its falsity or with reckless disregard of whether it was false." N.Y. CPLR § 76-a(2). As this court has recognized, "[p]roving actual malice is a heavy burden." *Dunlop-McCullen*, 2002 WL 1205029 at *7. Showing that the defendant was negligent in publishing a statement is not sufficient; a plaintiff must demonstrate that the author "in fact entertained serious doubts as to the truth of his publication or acted with a high degree of awareness of probable falsity." *Masson*, 501 U.S. at 510 (internal mark omitted). Moreover, even "an extreme departure from professional standards . . . cannot provide a sufficient basis for finding actual malice." *Connaughton*, 491 U.S. at 665;

*see also Brimelow v. New York Times Co.*, 2021 WL 4901969 at *3 (2d Cir. Oct. 21, 2021)

("plaintiff must prove *more than* an extreme departure from professional standards . . . [to]

provide a sufficient basis for finding actual malice") (emphasis in original); *Church of*

*Scientology Int'l v. Behar*, 238 F.3d 168, 174 (2d Cir. 2001) ("[A]ctual malice is not measured

by whether a reasonably prudent man would have published, or would have investigated before

publishing, but by whether there is sufficient evidence to permit the conclusion that the

defendant in fact entertained serious doubts as to the truth of his publication.") (quotations

omitted).

     Here, the relevant inquiry is whether Newsweek knew the Article Statement was false or

recklessly disregarded the truth.  *See Stern v. Cosby*, 645 F.Supp.2d 258, 284–85 (S.D.N.Y.

2009) (dismissing defamation claims against publisher where plaintiff offered evidence that the

author, but not the publisher, acted with actual malice).  New York law is clear that a publisher is

"permitted to rely on an author's reputation and experience" and "has no independent duty to

investigate an author's story unless the publisher has actual, subjective doubts as to the accuracy

of the story."  *Stern*, 645 F.Supp.2d at 284; *see also Tzougrakis v. Cyveillance, Inc.*, 145

F.Supp.2d 325, 332 (S.D.N.Y. 2001) (defendant magazine was entitled to rely on "a trusted

reporter's, representations without rechecking her assertions or retracing her sources").

     Nancy Cooper, who was responsible for editing the Article for Newsweek, testified that

she trusted Duin's reporting, relied on Duin's experience as a reporter and representations that

she had fact-checked the Article, and had no reason to doubt the accuracy of the Article or the

truth of the Article Statement.  Rule 56.1 Stmt. ¶¶ 58, 60, 63–66, 68.  Duin has been a journalist

for over forty-five years, has received multiple awards for her reporting, has been a journalism

professor at multiple universities, has published six books about religion, and has a master's

degree in religious studies.  *Id.* ¶¶ 19–23.   Newsweek hired Duin because of her established religion reporting experience and relied on Duin's experience in editing her Articles.  *Id.* ¶¶ 61–65.  There is no evidence, and Plaintiff can point to none, that Newsweek in fact entertained serious doubts as to the truth of the Article Statement.  Accordingly, The Satanic Temple cannot prove that Newsweek published the Article Statement with actual malice.  *See Stern*, 645 F.Supp.2d at 284–86 (granting defendant publisher's motion for summary judgment where there was "no evidence that anyone at [publisher] had any actual, subjective doubt as to any of [the author's] reporting").[6]

Even if Duin's state of mind could be imputed to Newsweek, The Satanic Temple cannot show that Duin acted with actual malice, either.  Duin was told by four separate sources, without Duin having asked about sexual abuse within The Satanic Temple, that they were aware of accounts of sexual abuse being covered up by The Satanic Temple.[7]  Rule 56.1 Stmt. ¶¶ 25–33, 37; *see also Church of Scientology Int'l*, 238 F.3d at 174 (corroboration of claims by multiple sources undermined allegations of actual malice).  Duin testified that she found the Article Statement to be "inherently plausible" because Strange's statement was consistent with the other sources.  *Id.* ¶ 38.  She also found all the sources who mentioned accounts of sexual abuse to be credible, based on her observation that they were "all true believers" when they joined The

---

[6] Although the actual malice standard applies to Plaintiff's defamation claim, for the same reasons set forth above Plaintiff cannot satisfy New York's "gross irresponsibility" standard.  *See Isaly v. Boston Globe Media Partners, LLC*, 2022 WL 121283, at *2 (2d Cir., Jan. 13, 2022) (plaintiff could not establish gross irresponsibility where "publisher [was] entitled to rely on the research of an established writer").

[7] Newsweek offers these statements for their effect on Duin's state of mind in writing the Article Statement, not for the truth of the matter asserted.  *See* FRE 801(c); *Smith v. City of New York*, 2016 WL 5793410, at *4 (S.D.N.Y. Sept. 30, 2016), *aff'd*, 697 F. App'x 88 (2d Cir. 2017) ("A statement is admissible non-hearsay when it is offered as evidence of the effect of a statement on the listener, the knowledge motivating his actions, or his state of mind at the relevant point in time.")

Satanic Temple, but left "not believing" in the organization based on what they observed.  *Id.* ¶ 39.

Duin's decision not to ask Greaves about the Article Statement does not amount to actual malice where, as here, she did not doubt the accuracy of the statement.  *See Kesner*, 590 F. Supp. 3d at 696 ("[T]he operative question is whether a defendant failed to investigate in the face of 'actual, subjective doubts as to the accuracy of the story.'"); *Loeb v. New Times Commc'ns Corp.*, 497 F. Supp. 85, 93 (S.D.N.Y. 1980) ("failure to verify statements with the plaintiff . . . do[es] not amount to reckless disregard of the truth") (citing *St. Amant v. Thompson*, 390 U.S. 727, 730 (1968)).  Moreover, the Article includes Greaves's statement that he considers complaints about The Satanic Temple "old news" and that, "We get this litany of senseless disparaging claims against us that says we're a religious group acting in a nefarious manner."  *Id.* ¶ 55.  Duin put Greaves's general denial about claims made against The Satanic Temple after the Article Statement because she believed Greaves's denial applied to the "various accusations" made against The Satanic Temple, including the Article Statement.  *Id.* ¶ 56. She also felt that Greaves's responses to questions about "official orgies" was a "fair rebuttal" to the Article statement as well.  *Id.* ¶ 44.

In short, there is no evidence – let alone clear and convincing evidence – that Newsweek (or Duin) published the Article Statement with knowledge of its alleged falsity or reckless disregard for falsity, and on that independent basis Plaintiff's claim should be dismissed.

## CONCLUSION

For each of the foregoing reasons, Newsweek's motion for summary judgment should be granted, and Plaintiff's Complaint should be dismissed in its entirety with prejudice.

Dated:   May 17, 2024                    Respectfully submitted,

                                         /s/*Cameron Stracher*
                                         Cameron Stracher
                                         Sara C. Tesoriero
                                         CAMERON STRACHER, PLLC
                                         51 Astor Place, 9th Floor
                                         New York, NY 10003
                                         Tel: 646.992.3850
                                         Fax: 646.992.4241
                                         cam@stracherlaw.com
                                         sara@stracherlaw.com

                                         *Attorneys for Defendant*


### CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2024, I caused a true copy of the foregoing to be served

on all counsel of record via ECF.


                                         /s/ *Sara C. Tesoriero*
                                         Sara C. Tesoriero, Esq.

22