# EXHIBIT 4



Moburg Reporting
33400 9th Ave. South, Suite 207
Federal Way, WA 98003
(206) 622-3110
www.MoburgReporting.com

```
                                                          Page 6
 1      A.   To my recollection, he is the one that
 2  quote is attributed to.
 3      Q.   Okay.  And to put a finer point on it, Jinx
 4  Strange is a pseudonym; correct?
 5      A.   As far as I'm aware, yes.
 6      Q.   Did you personally put Julia Duin in touch
 7  with Jinx Strange?
 8      A.   Yes.
 9      Q.   Okay.  Was that done in writing or was that
10  done orally?
11      A.   To my recollection, it was done in writing.
12      Q.   Okay.  How was this writing transmitted?
13      A.   To my recollection, over -- a direct
14  message over Twitter, now X.
15      Q.   Was this message conveyed through the
16  QueerSatanic Twitter handle?
17      A.   I believe so.
18      Q.   And to be clear, it was not transmitted
19  through a personal Twitter handle of yours; correct?
20      A.   Correct.
21      Q.   The statement at issue asserts covered up
22  sexual abuse.  How would you define sexual abuse?
23           MS. TESORIERO:  Objection to form.
24      Q.   Unless told otherwise, please answer the
25  question.
```



```
                                                        Page 15
 1      A.   Correct.
 2      Q.   The perpetrator of the sexual harassment,
 3   did you talk to that person?
 4      A.   About those events, no.
 5      Q.   In March of 2020, I recall from earlier
 6   testimony that the subject of the sexual harassment
 7   was not a member; is that correct?
 8      A.   Correct.
 9      Q.   Was -- well, let's just establish it.  Was
10   John Milton the pseudonym of the perpetrator of the
11   sexual harassment alleged?
12      A.   Yes.
13      Q.   Was John Milton a member in March of 2020?
14      A.   I do not believe so, no.
15      Q.   Going back to your definition of sexual
16   abuse, have you personally seen any sexual abuse
17   occurring within The Satanic Temple?
18      A.   No.
19      Q.   Have you personally received -- strike
20   that.
21           Have you personally seen any cover-up of
22   sexual abuse within The Satanic Temple?
23           MS. TESORIERO:  Objection to form.
24      A.   Indirectly.
25      Q.   No.  Directly.  I'm asking you directly.
```



```
                                                      Page 16
 1   Have you personally seen it?
 2            MS. TESORIERO:  Objection to form.
 3       A.   My expulsion to TST was a part of that --
 4   of covering up the ethics complaint where the
 5   harassment was an underpinning factor.  The chapter
 6   head at the time explicitly said that the -- the
 7   reason for my removal was because I was a witness to
 8   that e-mail.
 9       Q.   Okay.  Now, the e-mail was an ethics
10   complaint that took place between two and three years
11   after the subject of the sexual harassment; correct?
12       A.   Mm-hmm.
13       Q.   Were you involved, in any way, in the
14   investigation of the alleged sexual harassment?
15       A.   No.
16       Q.   Did the sexual harassment ever result in a
17   complaint itself?
18            MS. TESORIERO:  Objection to form.
19       A.   To my recollection, no.
20       Q.   Who was the chapter head at the time of the
21   alleged sexual harassment?
22       A.   Lilith Starr.
23       Q.   Who was the chapter head at the time of
24   March of 2020?
25       A.   Leah Garvais, a/k/a Siri Sanguine.
```



```
                                                              Page 21
 1   the other members.  And then I believe Sanguine showed
 2   up towards the end, like afterward.  Like I said, I
 3   was not party to the argument, and I didn't read it
 4   especially closely.
 5        Q.   So after this argument, there was an e-mail
 6   in March of 2020 of which you were a witness; is that
 7   correct?
 8        A.   Yes.
 9        Q.   Okay.  Why were you a witness on this
10   ethics complaint?
11        A.   Wylie and I are friends, and they trusted
12   me with knowledge of the existence of the complaint
13   alongside a couple of their other friends.
14        Q.   Who were the couple of other friends?
15        A.   The other defendants.  There was -- to my
16   recollection, there was another member named Joe.  If
17   there were -- if there was anyone else, I do not
18   remember.
19        Q.   Your earlier testimony is that you were a
20   witness on this ethics complaints because you and
21   Wylie are friends; correct?
22        A.   Yes.
23        Q.   Were you vouching for Wylie's position on
24   the matter at any point?
25        A.   No.
```



```
 1      Q.    What was Wylie's position?
 2      A.    I do not recall the substance of the
 3   complaint, and like I said, I was not there for the
 4   argument itself.
 5      Q.    And to confirm my recollection, you don't
 6   recall the substance of the argument either.  Is that
 7   also correct?
 8      A.    Not the -- not substantively.  I was not --
 9   like, I wasn't there for it, and I did not read it
10   closely.
11      Q.    Okay.  Did you tell Julia Duin about the
12   argument?
13      A.    To my recollection, yes, because that and
14   the ensuing complaint catalyzed my removal from TST.
15            MR. KEZHAYA:  I'm going to play a portion
16   of the clip that we've mentioned earlier.  This is
17   Newsweek 390 starting from the beginning.
18            (Tape played.)
19      Q.    Your earlier testimony that you told Julia
20   Duin about the argument, is this what you're referring
21   to?  This is you telling her about the argument, or
22   was this later in the clip?
23      A.    I'm sorry.  Could you repeat that question?
24      Q.    Earlier you testified that you told Julia
25   Duin about the argument; correct?
```



```
 1        A.    Mm-hmm.
 2        Q.    What we just listened to here, is that you
 3   telling her about the argument, or do I need to keep
 4   playing?
 5        A.    Could you replay that clip?
 6        Q.    Yes.  Do you want me to rewind 10 seconds
 7   or more than 10 seconds?
 8        A.    10, 15.
 9        Q.    I can only do it in increments, so let's go
10   back 10, and tell me if this is not earlier enough.
11              (Tape played.)
12              Is that sufficient?
13        A.    Yes.  So restate the question that is --
14        Q.    The question posed is was this -- within
15   the meaning of your earlier testimony, is this you
16   telling Julia Duin about the argument?
17              MR. ROLLER:  Object to form, but you can
18   answer.
19        A.    Yes.  That is telling -- that's me telling
20   Julia about the complaint that was -- that was filed
21   in the wake of that argument.
22        Q.    Okay.  There's about three and a half
23   minutes more in this clip.  Do I need to go further
24   into the clip, or is this the only part of relevance
25   to that testimony?
```

