# Exhibit 40

Excerpts of deposition of David Alan Johnson
(November 17, 2023)

In the Matter Of:

# THE SATANIC TEMPLE

vs

# NEWSWEEK DIGITAL

## DAVID JOHNSON

November 17, 2023



Moburg Reporting
33400 9th Ave. South, Suite 207
Federal Way, WA 98003
(206) 622-3110
www.MoburgReporting.com

```
 1                UNITED STATES DISTRICT COURT

 2                SOUTHERN DISTRICT OF NEW YORK

 3   ----------------------------------------------------
                                              )
 4   THE SATANIC TEMPLE, INC.,                )
                                              )
 5              Plaintiff,                    )
                                              )
 6        vs.                                 )NO. 1:22-CV-01343-MKV
                                              )
 7   NEWSWEEK DIGITAL, LLC,                   )
                                              )
 8              Defendant.                    )
                                              )
 9   ----------------------------------------------------

10        Videotaped Deposition Upon Oral Examination

11                          of

12                  DAVID ALAN JOHNSON

13   ----------------------------------------------------

14            Friday, November 17, 2023

15                    9:36 a.m.

16            7900 Southeast 28th Street

17            Mercer Island, Washington

18

19

20

21

22

23

24   Cheryl Macdonald, CRR, RMR
     Court Reporter
25   License No. 2498
```

COPY

```
                                                     Page 2                                                        Page 4
 1           A P P E A R A N C E S                          1       THE VIDEOGRAPHER:  Good morning.  We are
 2                                                          2   now on the record.  This is the deposition of David
 3   FOR THE PLAINTIFF:                                     3   Alan Johnson.  This deposition is being recorded this
 4            MATT KEZHAYA                                  4   17th day of November 2023, and the time is now 9:36
              SONIA KEZHAYA
 5            Attorneys at Law                              5   a.m.  Counsel and all present, please identify
              KEZHAYA LAW PLC                               6   yourselves for the record, and then the witness may be
 6            150 South Fifth Street                        7   sworn in.
              Suite 1850                                    8       MR. KEZHAYA:  This is Matt Kezhaya.  I'm
 7            Minneapolis, Minnesota 55402
              matt@kezhaya.law                              9   joined by Sonia Kezhaya.  Appearing on behalf of the
 8            sonia@kezhaya.law                            10   plaintiff.
 9                                                         11       MS. TESORIERO:  Sara Tesoriero on behalf of
     FOR THE DEFENDANT:                                    12   defendant Newsweek.
10
              SARA TESORIERO                               13       MR. ROLLER:  Jeremy Roller for nonparty
11            Attorney at Law                              14   witness David Alan Johnson.
              STRACHER LAW                                 15   DAVID JOHNSON,  the witness herein, having been
12            51 Astor Place                                          placed under oath by the
              9th Floor
13            New York, New York 10003                     16         Certified Court Reporter,
              sara@stracherlaw.com                                    deposed and said as follows:
14                                                         17
15   FOR THE WITNESS:                                      18            EXAMINATION
16            JEREMY E. ROLLER
              Attorney at Law                              19   BY MR. KEZHAYA:
17            ARETE LAW GROUP                              20    Q.   Please state your full name for the record.
              1218 Third Avenue                            21    A.   David Alan Johnson.
18            Suite 2100                                   22    Q.   David, are you familiar with the Newsweek
              Seattle, Washington 98101
19            roller@aretelaw.com                          23   article for which we are here today?
20                                                         24    A.   I am.
     THE COURT REPORTER and VIDEOGRAPHER:                  25    Q.   Do you understand the sole remaining
21
              CHERYL MACDONALD
22            KALIA HENDRICKS
              MOBURG REPORTING
23            33400 9th Avenue South
              Suite 207
24            Federal Way, Washington 98003
              info@moburgreporting.com
25
```

```
                                                     Page 3                                                        Page 5
 1              I N D E X                                   1   statement that is at issue in this article -- go
 2                                                          2   ahead.
 3   EXAMINATION                                 PAGE       3    A.   I am not sure.
 4   BY MR. KEZHAYA:   ..........................   4       4    Q.   Let's -- we are not going to be introducing
 5   BY MS. TESORIERO:  ........................  23        5   any paper exhibits, or at least we're not anticipating
 6                                                          6   doing so.  Give me just a second to find it.
 7   EXHIBITS MARKED                              PAGE      7       MR. ROLLER:  Can I just put something on
 8   (No exhibits marked.)                                  8   the record that I think is going to be
 9                                                          9   noncontroversial?  I read the protective order that's
10                                                         10   in place in this case, and we do anticipate reviewing
11                                                         11   the transcript for confidentiality designations, and
12                                                         12   ask that it be kept confidential until that review is
13                                                         13   completed.
14                                                         14       MR. KEZHAYA:  Yes.  There's a 14-day period
15                                                         15   after the transcript comes out.  No objection.
16                                                         16       MS. TESORIERO:  No objection.
17                                                         17    Q.   All right.  So throughout the course of
18                                                         18   this deposition, I'm going to refer to the subject
19                                                         19   article as the Newsweek article that we're here for
20                                                         20   today, and I'm going to periodically refer to the
21                                                         21   "article statement."  The statement is as follows:
22                                                         22       "Accounts of sexual abuse being covered up
23                                                         23   in ways that were more than anecdotal."
24                                                         24       Will you agree with me that that's what the
25                                                         25   article statement is?
```



Page 6

1    MR. ROLLER: Object to the form of the
2 question, but you can answer.
3    A.  If you read it just now, I guess that's
4 what it says.
5    Q.  Okay. But in terms of what you understand
6 that when I say "article statement," that's what the
7 article statement is; right?
8    A.  Sure.
9    Q.  You did not write the article statement;
10 correct?
11   A.  Correct.
12   Q.  Jinx Strange wrote that article statement.
13 Also correct?
14       MS. TESORIERO: Object to the form.
15   A.  I'm not sure. I thought this was about the
16 Newsweek article.
17   Q.  Yes. So the quote that I quoted from is
18 from the Newsweek article, but nestled within the
19 Newsweek article is a quote of Jinx Strange. Do you
20 recall that?
21   A.  I recall that Jinx Strange was quoted, but
22 I don't recall what part of it he said versus someone
23 else.
24   Q.  Okay. Do you know whether Jinx Strange is
25 a pseudonym?

Page 7

1    A.  I believe that's a pseudonym, yes.
2    Q.  Do you know where Jinx Strange is?
3    A.  I am not sure, no.
4    Q.  Beyond the e-mail address that Julia Duin
5 e-mailed, do you have any contact information --
6        MR. ROLLER: Object to the form of the
7 question, but you can answer.
8    Q.  -- for Jinx Strange?
9    A.  I'm not sure. I may have a way to contact
10 Jinx Strange.
11   Q.  How would you go about contacting Jinx
12 Strange if not through e-mail?
13   A.  I could Facebook message him. I think
14 that's probably what I would do.
15   Q.  Do you have a phone number for Jinx
16 Strange?
17   A.  I do not.
18   Q.  Do you have a residential address for Jinx
19 Strange?
20   A.  I do not.
21   Q.  Do you have a work address for Jinx
22 Strange?
23   A.  I do not.
24   Q.  Returning your attention back to the
25 article statement, at issue is an allegation that

Page 8

1 TST engages in sexual abuse and cover-up. How would
2 you define sexual abuse?
3        MS. TESORIERO: Objection to form.
4        MR. ROLLER: Same objection. You can
5 answer.
6    A.  I guess I would define it as things like
7 sexual assault, things like inappropriate sexual
8 relationships. I'm not sure. I don't really define
9 terms like that.
10   Q.  When you say "inappropriate sexual
11 relationships," does that, in your mind, carry a
12 connotation of criminal activity?
13       MS. TESORIERO: Objection to form.
14       MR. ROLLER: Can we just have an
15 understanding that an objection by Sara or me is an
16 objection of both?
17       MR. KEZHAYA: Yes. Y'all don't have to
18 both -- do we want to take a break?
19       MR. ROLLER: No.
20   Q.  The question posed is whether, in your
21 mind, an inappropriate sexual relationship connotes
22 criminal activity.
23   A.  I would say, not necessarily.
24   Q.  How about cover-up? How would you define
25 cover-up?

Page 9

1        MS. TESORIERO: Objection to form.
2    A.  Within the context of The Satanic Temple?
3    Q.  Correct. More particularly within the
4 context of the statement, so also nested therein
5 within the context of TST.
6        MR. ROLLER: Object to the form. You can
7 answer.
8    A.  I would say things like hearing about
9 something that happens, and choosing not to address
10 the root problem but to address the complaint, and to
11 make the -- to treat the complaints as more of an
12 issue than any underlying sexual abuse or harassment.
13   Q.  Would removing the offending member exclude
14 a cover-up?
15       MR. ROLLER: Object to the form.
16   A.  Sir, could you restate the question?
17   Q.  So within the context of this statement,
18 there is sexual abuse and cover-up. That's the
19 allegation. If the offending member or the person
20 about whom the complaint is made is no longer a member
21 of TST, is that a cover-up in your opinion?
22       MS. TESORIERO: Objection.
23       MR. ROLLER: Objection to form.
24   A.  I think it would depend on the
25 circumstances, especially if a person was removed far



Page 10

1 after a complaint was made. It could be incidental.
2 They could be removed for some other reason besides
3 that.
4   Q.   So if they were removed because of the
5 complaint, though, then that's not a cover-up, in your
6 opinion; is that correct?
7       MS. TESORIERO: Objection to form.
8   A.   I think it depends on the particulars of
9 the situation.
10  Q.   Okay. Have you personally witnessed any
11 sexual abuse within The Satanic Temple?
12  A.   I have not.
13  Q.   You gave an interview to Julia Duin at some
14 point previously; is that correct?
15  A.   That is correct.
16  Q.   During that interview you indicated --
17 well, let's back up. I believe during that interview
18 you indicated that you were a witness to a sexual
19 harassment complaint. Do you recall that?
20  A.   That sounds correct, yes.
21  Q.   And when I say "I believe," I'm not sure if
22 it was you or if it was someone else. So unpacking it
23 slightly, did you indicate to Julia Duin that you were
24 a witness to a sexual harassment complaint?
25  A.   I believe that is correct, yes.

Page 11

1   Q.   Okay. In your definition of sexual abuse,
2 whatever the sexual harassment complaint was, was that
3 sexual abuse?
4   A.   I don't know that I feel qualified to say.
5   Q.   Okay. Well, what was the sexual harassment
6 complaint?
7   A.   There was a former member of the local
8 TST group who had been, from my understanding,
9 repeatedly made to feel uncomfortable by a much older
10 member. I think -- I think this was in a period of
11 2017 to 2018. So it was before I was a member. They
12 left because it was nonaddressed for months, and then
13 I found out about it in 2020.
14  Q.   Let's unpack that slightly. You indicated
15 that you were a listed witness on a complaint;
16 correct?
17      MR. ROLLER: Object to the form. I think
18 it misstates prior testimony.
19  Q.   Let me rephrase. You indicated to Duin
20 that you were a listed witness on a sexual harassment
21 complaint; correct?
22  A.   I'm not -- I'm not sure. There was a
23 complaint by a person who was no longer a member. We
24 found out about it in 2020, and then that was brought
25 up. That's when I was made aware of it.

Page 12

1   Q.   You say when "that was brought up." What
2 was brought up?
3   A.   In 2020, when the former member, who was
4 unhappy about the way their sexual harassment had been
5 treated, talked publicly about it, as their
6 unhappiness with their treatment in the organization.
7   Q.   Was this a written complaint or an
8 unwritten complaint?
9   A.   I believe it was a Facebook post.
10  Q.   So this was -- backing up slightly, are you
11 familiar with the concept of National Council or
12 International Council?
13  A.   Within the context of The Satanic Temple?
14  Q.   Correct.
15  A.   My understanding is that the National
16 Council and International Council were a leadership
17 committee directly below Doug Misicko and Cevin
18 Soling, the executive committee.
19  Q.   But the question posed is whether you're
20 familiar with them in the first place. So that's a
21 yes, correct?
22  A.   If what I just said was accurate, then yes.
23  Q.   Within your understanding, did
24 International Council or National Council investigate
25 matters of claims of sexual harassment?

Page 13

1       MS. TESORIERO: Objection to form.
2       MR. ROLLER: Object to form.
3   A.   Sorry. Could you restate the question?
4   Q.   In your understanding, did national -- I'm
5 just going to call it the National Council. In your
6 understanding, did National Council investigate claims
7 of sexual harassment?
8   A.   I am not sure. I have heard that that's
9 so.
10  Q.   Okay. But you lack personal knowledge;
11 correct?
12  A.   That's correct.
13  Q.   Okay. Do you have any personal knowledge
14 whether the person who claimed sexual harassment ever
15 raised a complaint to national council?
16  A.   I do not know that, no.
17  Q.   You indicated that you were a witness. I'm
18 having trouble understanding how you are a witness in
19 this complaint.
20      MR. ROLLER: Object to the form.
21  Q.   Please help me understand that. You
22 indicated to Duin, "We were a witness", correct?
23  A.   I'm not sure what the -- that's what we
24 said. If that's what the transcript is, then that's
25 what we said.



Page 18
1  A.  I did not witness the sexual harassment
2  before I was a member, that's correct.
3  Q.  And have you seen any other sexual abuse of
4  any sort within The Satanic Temple?
5      MS. TESORIERO:  Objection to form.
6  A.  When you say that, do you mean have I
7  witnessed with my own eyes?
8  Q.  Correct, yeah.  You personally.
9  A.  No, I don't believe so.
10 Q.  Okay.  So any knowledge you have would be
11 based on hearsay; is that correct?
12     MR. ROLLER:  Object to the form.
13 A.  Knowledge I have comes from other people
14 who experienced things, yes.
15 Q.  And the information that you received from
16 other people who experienced things, did they give you
17 this information under penalty of perjury?
18     MS. TESORIERO:  Objection to form.
19 A.  No.
20 Q.  This complaint in 2020, did you raise any
21 criminal complaints on the matter?
22 A.  I did not.
23 Q.  To your knowledge, were any criminal
24 complaints ever raised?
25 A.  To my knowledge, no.

Page 19
1  Q.  To your knowledge, were there ever any
2  criminal charges on the matter?
3  A.  To my knowledge, no.
4      MR. KEZHAYA:  I think we're at a good place
5  to take a break.
6      THE VIDEOGRAPHER:  We're now going off the
7  record.  The time is now 9:56 a.m.
8      (Recess.)
9      THE VIDEOGRAPHER:  We are now back on the
10 record.  The time is now 10:02 a.m.
11 Q.  Do you recall the name of the person about
12 whom this 2017 sexual harassment claim was raised?
13 A.  I believe I know their pseudonym.
14 Q.  What is their pseudonym?
15 A.  Dice Marlow.
16 Q.  How do I spell Dice?
17 A.  D-I-C-E, and then Marlow, I believe, is
18 M-A-R-L-O-W.
19 Q.  Do you recall the name or pseudonym of the
20 person who allegedly sexually harassed Dice Marlow?
21 A.  To my recollection, the pseudonym was John
22 Milton.
23 Q.  Do you know whether John Milton, as of
24 2020, was still a member of TST Washington?
25 A.  To my knowledge he was not.

Page 20
1  Q.  So to be more particular, you personally
2  know that he was not a member of TST Washington in
3  2020; correct?
4      MR. ROLLER:  Object to the form, but you
5  can answer.
6  A.  That's a somewhat complicated question
7  because membership was not kept up in a particularly
8  organized way.  So, to my knowledge, he was not a
9  member anymore.
10 Q.  But I'm trying to ascertain -- you say to
11 your knowledge, meaning you affirmatively know that he
12 was not; is that correct?
13 A.  I do not know that he was not.
14 Q.  Okay.
15 A.  Yeah.
16 Q.  And how do you know that or -- strike that.
17     What would constitute him being a member or
18 not a member of TST Washington, in your opinion?
19 A.  In my mind?
20 Q.  Mm-hmm.
21 A.  There were lists of people who were
22 members.  However, those lists were not up to date.
23 So sometimes people who were supposedly expelled were
24 not actually, like, officially expelled, if that makes
25 sense.

Page 21
1  Q.  Yeah, meaning their name was not struck
2  from some list; correct?
3  A.  No.  There were lists of active members and
4  supposedly expelled members, but this was not kept up
5  to date in any sort of accurate way, in my experience
6  with the organization.
7  Q.  Did TST Washington have in-person events?
8  A.  They did, yes.
9  Q.  If John Milton showed up at one of those
10 in-person events, would he have been removed?
11 A.  I am not sure.
12 Q.  Would he have been welcomed?
13 A.  I am not sure.
14 Q.  Did you ever tell Duin that you personally
15 witnessed any form of sexual abuse?
16 A.  Not to my knowledge, no.
17 Q.  Did you ever tell Duin that you personally
18 witnessed any form of cover-up?
19 A.  Not to my recollection, no.
20 Q.  Did Duin ever ask you for any clarifying
21 details as to the ethics complaint?
22     MS. TESORIERO:  Objection to form.
23 A.  Not to my recollection, but if you have the
24 interview, then that would -- that should say that.
25 Q.  So, in other words, if it's not in the

Page 34
1  questions.
2        THE VIDEOGRAPHER:  We are now going off the
3  record.  This marks the end of the deposition of David
4  Alan Johnson.  The time is now 10:27 a.m.
5        THE REPORTER:  Signature?
6        MR. ROLLING:  Yes.  We want to read it.
7        MR. KEZHAYA:  We'll need the transcript.
8        MS. TESORIERO:  Copy, please.
9        (Deposition concluded at 10:27 a.m.)

Page 35
1              C E R T I F I C A T E
3  STATE OF WASHINGTON    )
4                         ) ss.
5  COUNTY OF KING         )
7     I, the undersigned Washington Certified Court
8  Reporter, pursuant to RCW 5.28.010, authorized to
9  administer oaths and affirmations in and for the State
10 of Washington, do hereby certify:
11    That the annexed and foregoing deposition
12 consisting of Page 1 through 34 was taken
13 stenographically before me and reduced to a typed
14 format under my direction;
15    I further certify that according to CR 30(e) the
16 witness was given the opportunity to examine, read and
17 sign after the same was transcribed, unless indicated
18 in the record that the review was waived;
19    I further certify that all objections made at the
20 time of said examination to my qualifications or the
21 manner of taking the deposition, or to the conduct of
22 any party, have been noted by me upon said deposition;
23    I further certify that I am not a relative or
24 employee of any such attorney or counsel, and that I
25 am not financially interested in said action or the

Page 36
1  outcome thereof;
2     I further certify that the witness before
3  examination was by me duly sworn to testify to the
4  truth, the whole truth, and nothing but the truth;
5     I further certify that the deposition, as
6  transcribed, is a full, true and correct transcript of
7  the testimony, including questions and answers, and
8  all objections, motions, and exceptions of counsel
9  made and taken at the time of foregoing examination
10 and was prepared pursuant to Washington Administrative
11 Code 308-14-135, the transcript preparation format
12 guideline;
13    I further certify that I am sealing the
14 deposition in an envelope with the title of the above
15 cause and the name of the witness visible, and I am
16 delivering the same to the appropriate authority;
18    IN WITNESS WHEREOF, I have hereunto set my hand,
19 and affixed my official seal this 30th day of
20 NOvember 2023.
21         _____
22         Cheryl Macdonald, CCR
23         Washington State Certified
24         Court Reporter
25         License No. 2498

Page 37
1              D E C L A R A T I O N
5     I declare under penalty of perjury that I
6  have read my within deposition, and the same is true
7  and accurate, save and except for changes and/or
8  corrections, if any, as indicated by me on the
9  correction sheet hereof.
12            _____
13            DAVID ALAN JOHNSON
19    Dated this_____day of_____,
20 2023.
25 CHERYL MACDONALD, Court Reporter



Page 38

```
 1
    MOBURG REPORTING
 2  COURT REPORTERS & LEGAL VIDEO
    33400 9th Avenue South
 3  Suite 207
    Federal Way, WA 98003
 4  206-622-3110
 5  _____
    PLEASE MAKE ALL CHANGES OR CORRECTIONS ON THIS SHEET,
 6  SHOWING PAGE, LINE, AND REASON, IF ANY.  SIGN THIS
    SHEET, SIGN THE ACCOMPANYING SIGNATURE SHEET AND
 7  RETURN AS PER INSTRUCTIONS IN COVER LETTER.
 8  _____
    PAGE     LINE     CORRECTION AND REASON
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23              _____
                    (SIGNATURE)
24
25
    REPORTER: CHERYL MACDONALD
```

Page 39

```
 1
                   MOBURG REPORTING
 2           Court Reporters & Legal Video
           33400 9th Avenue South, Suite 207
 3              Federal Way, WA 98003
            (206) 622-3110  FAX (206) 343-2272
 4          E-mail: info@moburgreporting.com
 5
 6  TO:   Jeremy E. Roller           November 30, 2023
          Arete Law Group
 7        1218 3rd Avenue
          Suite 2100
 8        Seattle, WA 98101
 9
    IN RE:  The Satanic Temple v. Newsweek
10
    DEPOSITION(S) OF: David Alan Johnson
11
    DATE OF DEPOSITION: November 17, 2023
12
13  A copy of the deposition transcript of the above-named
    is provided via E-transcript.  Please have the
14  deponent read the deposition, sign the correction
    sheet and declaration.  The signed correction sheet
15  and declaration should then, within 30 (thirty) days,
    be forwarded to:
16
                     CHERYL MACDONALD
17
                  33400 9th Ave. So.  #207
18
                  Federal Way, Washington 98003
19
    who will then enclose them in the original transcript,
20  seal it, and forward it to Mr. Kezhaya for retention
    until the time of trial.
21
         If you have any questions, feel free to contact
22  me at the number listed above.
23  Sincerely,
24
    CHERYL MACDONALD, CCR
25
    CC: S. Tesoriero    M. Kezhaya
```

Page 40

```
 1
         Certification of Court Rule and WAC Compliance
 2
              The Satanic Temple v. Newsweek
 3
       I, VALERIE SEATON, am an authorized representative of
 4  MOBURG REPORTING and do hereby, under penalty of perjury,
    certify that Moburg Reporting and all court reporters
 5  providing services in the above-captioned case on MOBURG
    REPORTING'S behalf will fully comply with all applicable
 6  rules and regulations governing the provision of court
    reporting services, including, where applicable,
 7  Washington Superior Court Rule 28(c)-(e) and WAC
    308-14-130(1).*
 8
                                       11/30/23
 9  _____    _____
    Valerie L. Seaton                   Date
10  President
    Moburg Reporting
11
12     *28(c)  Disqualification for Interest.  No deposition
    shall be taken before a person who is a relative or
13  employee or attorney or counsel of any of the parties, or
    is a relative or employee of such attorney or counsel, or
14  is financially interested in the action.
    28(d)  Equal Terms Required.  Any arrangement concerning
15  court reporting services or fees in a case shall be
    offered to all parties on equal terms.  This rule applies
16  to any arrangement or agreement between the person before
    whom a deposition is taken or a court reporting firm,
17  consortium, or other organization providing a court
    reporter, and any party or any person arranging or paying
18  for court reporting services in the case, including any
    attorney, law firm, person or entity with a financial
19  interest in the outcome of the litigation, or person or
    entity paying for court reporting services in the case.
20  28(e)  Final Certification of the Transcript.  The court
    reporter reporting a deposition shall not certify the
21  deposition transcript until after he or she has reviewed
    the final version of the formatted transcript.  A court
22  reporting firm, consortium, or other organization
    transmitting a court reporter's certified transcript
23  shall not alter the format, layout, or content of the
    transcript after it has been certified.
24     *308-14-130(1)  Offer arrangements on a case
    concerning court reporting services or fees to all parties
25  on equal terms.
```

