UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x

THE SATANIC TEMPLE, INC.,

                           Plaintiff,

v.

NEWSWEEK DIGITAL, LLC

                           Defendant.

:
:
:
:
:
:
:
:
:
:
:
:

Case No. 1:22-cv-01343-MKV

------------------------------------------------------------------------ x

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Cameron Stracher
Sara C. Tesoriero
CAMERON STRACHER, PLLC
51 Astor Place, 9th Floor
New York, NY 10003
Tel: 646.992.3850
Fax: 646.992.4241
cam@stracherlaw.com
sara@stracherlaw.com

*Attorneys for Defendant*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................. 1

COUNTERSTATEMENT OF FACTS ................................................. 1

    A.    Plaintiff ................................................. 1

    B.    The Washington Lawsuit ................................................. 2

    C.    Julia Duin ................................................. 3

    D.    The Article ................................................. 3

ARGUMENT ................................................. 10

    I.    THE SATANIC TEMPLE CANNOT MEET ITS BURDEN OF PROVING THE ARTICLE STATEMENT IS SUBSTANTIALLY FALSE. ................ 12

        A.    The Satanic Temple Bears the Burden of Proving Falsity. ............ 12

        B.    Plaintiff Cannot Prove that the Article Statement Is Substantially False. 13

    II.    THE SATANIC TEMPLE CANNOT SATISFY ITS BURDEN OF DEMONSTRATING THAT NEWSWEEK ACTED WITH ACTUAL MALICE. ................................................. 18

        A.    The Actual Malice Standard Applies. .......................... 18

        B.    Plaintiff Cannot Show That Newsweek Published The Article Statement With Actual Malice. ................................ 19

CONCLUSION ................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Apex Oil Co. v. DiMauro*, 1990 WL 124588 (S.D.N.Y. Aug. 21, 1990) ..................................... 15

*Bauer v. Baud*, 2023 WL 2307413 (S.D.N.Y. Mar. 1, 2023) ..................................................... 17

*Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523 (2d Cir. 1985) ................................. 2

*Ben Hamida v. Gonzales*, 478 F.3d 734 (6th Cir. 2007)............................................................ 16

*Biro v. Conde Nast*, 883 F. Supp. 2d 441 (S.D.N.Y. 2012)........................................................ 13

*Brimelow v. New York Times Co.*, 2021 WL 4901969 (2d Cir. Oct. 21, 2021)..................... 21, 24

*Buckley v. Littell*, 539 F.2d 882 (2d Cir. 1976)............................................................................ 24

*Carroll v. Trump*, 685 F. Supp. 3d 267 (S.D.N.Y.), *aff'd in part*, 88 F.4th 418 (2d
    Cir. 2023) ................................................................................................................................ 17

*Celle v. Filipino Rep. Enterprises Inc.*, 209 F.3d 163 (2d Cir. 2000)............................. 12, 13, 16

*Chapadeau v. Utica Observer-Dispatch*, 38 N.Y.2d 196 (N.Y. 1975)........................................ 20

*Church of Scientology Int'l v. Behar*, 238 F.3d 168 (2d Cir. 2001)............................................ 22

*Coleman v. Grand*, 523 F. Supp. 3d 244 (E.D.N.Y. 2021)......................................................... 19

*Dunlop-McCullen v. Rogers*, 2002 WL 1205029 (S.D.N.Y. Feb. 21, 2002)............................... 20

*Goodman v. Bouzy*, 2023 WL 3296203 (S.D.N.Y. May 8, 2023), *report and
    recommendation adopted*, 2023 WL 4235851 (S.D.N.Y. June 28, 2023)............................. 15

*Gummo v. Vill. of Depew, N.Y.*, 75 F.3d 98 (2d Cir. 1996) ......................................................... 11

*Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657 (1989).......................................... 21

*HLT Existing Franchise Holding LLC v. Worcester Hosp. Grp. LLC*, 994 F. Supp.
    2d 520 (S.D.N.Y. 2014)......................................................................................................... 15

*Huggins v. Moore*, 94 N.Y.2d 296 (N.Y. 1999) .......................................................................... 19

*Isaly v. Boston Globe Media Partners LLC*, 2020 WL 5659430, (S.D.N.Y., 2020) .................. 20

*Karpinski v. Union Leader Corp.*, 2019 WL 3203144 (D.N.H. Jul. 16, 2019) ........................... 16

*Kesner v. Buhl*, 590 F. Supp. 3d 680 (S.D.N.Y. 2022) ...................................................... 11, 18, 22

*Kesner v. Dow Jones & Co., Inc.*, 2023 WL 4072929 (2d Cir. Jun. 20, 2023) ............................ 11

*Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92 (2d Cir. 2000) ............................................ 18

*Krauss v. Globe Int'l, Inc.*, 251 A.D.2d 191 (1st Dept. 1998) ...................................................... 19

*Leidig v. BuzzFeed, Inc.*, 371 F. Supp. 3d 134 (S.D.N.Y.), *aff'd*, 788 F. App'x 76
    (2d Cir. 2019) ............................................................................................................. 12, 13, 14

*Leidig v. BuzzFeed, Inc*., 788 F. App'x 76 (2d Cir. 2019) ........................................................... 12

*Lerman v. Flynt Distrib. Co.*, 745 F.2d 123 (2d Cir. 1984) .......................................................... 18

*Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287 (D.C.Cir. 1988) ................................... 12

*Lindberg v. Dow Jones & Co., Inc.*, 2021 WL 3605621 (S.D.N.Y. Aug. 11, 2021) .................... 19

*Loeb v. New Times Commc'ns Corp.*, 497 F. Supp. 85 (S.D.N.Y. 1980) ............................... 22, 23

*Masson v. New Yorker Mag., Inc.*, 501 U.S. 496 (1991) ........................................................ 13, 20

*McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174 (S.D.N.Y. 2020) ........................... 24

*Olivet Univ. v. Newsweek Digital LLC*, 2024 WL 1892563 (S.D.N.Y. Apr. 30,
    2024) ...................................................................................................................................... 12, 17

*Palin v. New York Times Co.*, 482 F. Supp. 3d 208 (S.D.N.Y.), *modified*, 510 F.
    Supp. 3d 21 (S.D.N.Y. 2020) ............................................................................................... 11, 20

*Palin v. New York Times Co.*, 588 F. Supp. 3d 375 (S.D.N.Y.), *reconsideration
    denied*, 604 F. Supp. 3d 208 (S.D.N.Y. 2022) ................................................................... 11, 24

*Palin v. New York Times Co.*, 940 F.3d 804 (2d Cir. 2019) ........................................................ 24

*Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767 (1986) .................................................. 12

*Prince v. Intercept*, 2023 WL 4492413 (S.D.N.Y. July 12, 2023) ........................................ 22, 24

*St. Amant v. Thompson*, 390 U.S. 727 (1968) .............................................................................. 23

*Stern v. Cosby*, 645 F.Supp. 2d 258 (S.D.N.Y. 2009) ............................................................ 20, 21

*Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236 (2d Cir. 2017) ......... 11, 12, 13

iv

*Time, Inc. v. Firestone*, 424 U.S. 448 (1976).................................................................. 19

*Tzougrakis v. Cyveillance, Inc.*, 145 F.Supp.2d 325 (S.D.N.Y. 2001) ......................... 21

*Watson v. NY Doe 1*, 2023 WL 6540662 (S.D.N.Y. Oct. 6, 2023)................................. 19

**Statutes**

N.Y. CPLR § 76-a............................................................................................................ 18

N.Y. CPLR § 76-a(1)(a).................................................................................................. 18

N.Y. CPLR § 76-a(1)(d).................................................................................................. 18

N.Y. CPLR § 76-a(2)....................................................................................................... 20

**Other Authorities**

Gavin Keene, Preserving VAWA's "Nonreport" Option, 93 Wash. L. Rev. 1089
(2018)........................................................................................................................... 17

Sexual Abuse, American Psychological Association (2023), *available at*
https://dictionary.apa.org/sexual-abuse.......................................................................... 17

**Rules**

F.R.E. 801(d)(2)............................................................................................................... 14

Defendant Newsweek Digital, LLC ("Newsweek" or "Defendant") respectfully submits this memorandum of law in opposition to Plaintiff's motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

This defamation case arises from Newsweek's publication of an article about a lawsuit in Washington State between The Satanic Temple, Inc. ("Plaintiff," or "The Satanic Temple") and four of its former members (the "Article"). After the Court granted, in part, Newsweek's motion to dismiss, the only remaining allegedly defamatory statement is a quote from a former member explaining that he ceased his involvement with The Satanic Temple after hearing about "[a]ccounts of sexual abuse being covered up in ways that were more than anecdotal" (the "Article Statement"). Both parties have moved for summary judgment, and for the same reasons that the Court should grant Newsweek's motion, it should deny Plaintiff's motion. Specifically, and as set forth more fully below, the documents and testimony elicited in discovery establish that The Satanic Temple cannot meet its burden of demonstrating by clear and convincing evidence that the Article Statement is substantially false, nor can it satisfy its burden – required under New York's anti-SLAPP statute – of demonstrating that the Article Statement was published with actual malice.

## COUNTERSTATEMENT OF FACTS[1]

### A.    Plaintiff

Plaintiff The Satanic Temple is an "atheistic religious corporation" with chapters throughout the United States. Defendant's Response to Plaintiff's Rule 56.1 Statement and

---

[1] Plaintiff's contention that the Court should deem the statements in its proposed Rule 56.1 statement uncontroverted is meritless. Both parties filed pre-motion letters requesting a conference on their proposed motion for summary judgment. ECF 93 & 95. Prior to the

1

Counter-Statement of Undisputed Material Facts ("Rule 56.1 Resp.") ¶¶ 1, 137.  It "engages in various charitable activities" and "advocates for the religious rights of its membership" through litigation, among other forms of advocacy.  *Id.* ¶ 139.[2]  It promotes its activities and advocacy through the issuance of press releases to numerous media outlets in order to make the public aware of those activities and advocacy, which include the promotion of specific political initiatives.  *Id.* ¶¶ 140–43.  It also advertises its initiatives through the use of billboards, *id.* ¶ 145, and its co-founder, Lucien Greaves, has done multiple interviews to discuss The Satanic Temple with Tucker Carlson, on Fox News Radio, and with Chris Hayes, on MSNBC.  *Id.* ¶ 146.

### B.      The Washington Lawsuit

In 2020, The Satanic Temple sued several former members of its Washington Chapter for defamation and "cyberpiracy" in the United States District Court for the Western District of Washington (the "Washington Lawsuit").  Rule 56.1 Resp. ¶ 147.  The defendants in the Washington Lawsuit are former members David Alan Johnson, Leah Fishbaugh, Mickey Meeham (a/k/a Joshua Calavera), and Nathan Sullivan.  *Id.* ¶ 148.  After leaving The Satanic

---

deadline for the opposing party to respond to the pre-motion letters, the Court issued its Order granting leave to file the motions for summary judgment and setting forth the briefing schedule. ECF 96. Because the purpose of premotion letters is to obtain permission to proceed with briefing, the need to file responses to the proposed Rule 56.1 statements was mooted by the Order. Moreover, Plaintiff's contention that Newsweek's position on the substantial truth of the Article Statement is a "mystery" is undermined by Newsweek's premotion letter and proposed Rule 56.1 Statement (ECF 93), and by Newsweek's Motion for Summary Judgment and filed Rule 56.1 Statement (ECF 99 and 100). Finally, if The Satanic Temple were somehow prejudiced by the lack of a response to its draft Rule 56.1 statement, it should have raised the issue in good faith with counsel for Newsweek or the Court, which it did not do. Thus, Plaintiff's request to consider its proposed Rule 56.1 statement uncontroverted should be disregarded.

[2] "A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding."  *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985).

Temple, they formed a group called Queer Satanic, which operates a social media account under the handle @QueerSatanic.  *Id.* ¶¶ 148–49.

### C.   <u>Julia Duin</u>

Julia Duin is a freelance journalist who focuses on religion reporting and worked for Newsweek as an independent contractor from September 1, 2021 until February 2023.  *Id.* ¶ 151.  Duin has been a journalist for over forty-five years, and has received multiple awards for her reporting, including awards from the Religion News Writers Association, the Associated Press, and the Religion Communicators Council.  *Id.* ¶¶ 152–53.  She has served as a visiting journalism professor at the University of Alaska at Fairbanks, a visiting professor at Union University, an adjunct professor at the University of Maryland, and an adjunct professor at Patrick Henry University.  *Id.* ¶ 155.  Duin has also published six books about religion, and has a master's degree in religious studies from Trinity Episcopal School for Ministry.  *Id.* ¶¶ 154, 156.[3]

### D.   <u>The Article</u>

#### 1.   <u>Researching the Article</u>

After the defamation claims were dismissed by the district court in the Washington Lawsuit, Duin received an email from Kevin Jones, a journalist with the Catholic News Agency, stating that former members of The Satanic Temple had told him about The Satanic Temple's alleged use of "defamation lawsuits . . . to harass internal critics."  Rule 56.1 Resp. ¶ 150.  Jones's email also stated that former members had told him about "allegations of [The

---

[3] Although Duin wrote articles on satanism prior to the founding of The Satanic Temple, Rule 56.1 Resp. ¶ 35, she was not familiar with The Satanic Temple before she began her research for the Article beyond references to The Satanic Temple in two articles she reviewed in her work on media critique pieces, which she wrote in 2016 and 2018.  *Id.* ¶ 42.

Satanic Temple] leadership sexually exploiting members or failing to respond to harassment/sexual assault allegations against chapter heads." *Id.* ¶ 46. Following this lead, Duin reached out to the members of Queer Satanic and communicated with them via their @queersatanic social media accounts and in person. *Id.* ¶ 157.

Although the focus of the Article was the Washington Lawsuit, *id.* ¶ 8, during Duin's research she learned that "there [were] multiple reports among . . . former members [of The Satanic Temple], of sexual abuse/harassment." *Id.* ¶ 87. Nathan Sullivan told Duin that the Queer Satanic members had been removed from the Washington Chapter because they were witnesses to an ethics complaint, and that the ethics complaint involved the mismanagement of a sexual harassment claim within the Washington Chapter. *Id.* ¶ 158, 195. Sullivan also sent Duin social media posts between a member of The Satanic Temple and The Satanic Temple's leadership, in which the member claimed that she was removed from groups within The Satanic Temple after publicly criticizing the behavior of Satanic Temple leaders for, among other things, making inappropriate sexual comments. *Id.* ¶ 159. Johnson confirmed to Duin that he had also been a witness to a sexual harassment complaint within The Satanic Temple. *Id.* ¶ 160.

Duin also emailed Scott Malphas and Jinx Strange (a/k/a Paul Millirons), other former members of The Satanic Temple, and asked both of them if they would "mind telling [her] what chapter you were part of . . . , when you left [The Satanic Temple] and why." *Id.* ¶¶ 161, 164. Duin did not mention sexual abuse in either email. *Id.* ¶¶ 162, 165. Malphas responded to Duin's email that he would be "happy to share [his] experience with her," and further stated:

> There was an account of sexual assault, and the response was "we are looking into it," then never followup [*sic*]. One individual was in charge of on-boarding new chapters . . . turns out they were using their authority to coerce potential chapter leaders into having sex. That person was protected by the national council and executive leadership, for months . . . until they finally "stepped down" and the allegations of statutory rape were never addressed.

[. . .]
The nail in the coffin for me was when I found out that the national council had been reviewing and approving official events that included orgies. [. . .] Well, shortly after the first celebration, national council released "sex-positive guidelines." It was clear that this was in response to the complaints of sexual assault; an effort to shed responsibility.

*Id.* ¶ 163.

Strange wrote a lengthy response to Duin, in which he stated that he had heard

"concerning" stories from other members of The Satanic Temple, and that:

A lot of times those things were anecdotal or unsupported, but sometimes they were very concerning. Screenshots or images of things and connections I hadn't seen before. Leaders posing happily with major alt-right media figures. Accounts of sexual abuse being covered up in ways that were more than anecdotal. Dozens of people kicked out for asking for financial records from this alleged-non-profit organization.

*Id.* ¶ 166. At his deposition, Strange testified that by "sexual abuse" he meant "unwanted

sexual advances or contact." *Id.* ¶ 78. He further testified that he left The Satanic Temple after

hearing accounts of sexual abuse and "observ[ing] behavior on social media by people [he]

understood to be leaders in [The Satanic Temple]," which appeared to be efforts to cover up

those kinds of allegations. *Id.* ¶ 167. He said he observed behavior that he "would not consider

to be ethical or responsible . . . in response to these sort of [sexual abuse] allegations" and that

"lent more credibility to those claims." *Id.* ¶ 96.

At her deposition, Duin testified that she "found what [Strange] said to be inherently

plausible" because it was consistent with other statements made by members of Queer Satanic

and by Malphas. *Id.* ¶ 97. She also testified that she found the sources who told her about

allegations of sexual abuse within The Satanic Temple credible because they were "true

believers" when they were part of The Satanic Temple, but had observed things within the

organization concerning enough to make them leave. *See id.* ¶ 168 ("Because [Scott Malphas]

was a true believer when he came in, and so was Jinx.  And they were all true believers, and they saw stuff they didn't like, and they left.  They all . . . wanted to believe.  They all came in, and they believed in the organization, and they left not believing in it.").

Duin also interviewed Lucien Greaves, spokesperson and co-founder of The Satanic Temple as part of her research.  Rule 56.1 Resp. ¶ 169.  During Duin's communications with Greaves, Greaves generally denied claims against The Satanic Temple.  *Id.* ¶ 170.  Duin asked Greaves about Malphas's complaints that The Satanic Temple's national council had been "approving official events that included orgies." *Id.* ¶ 171.  In response, Greaves stated that "[n]o events are compulsory to continued membership within [The Satanic Temple]."  *Id.* ¶ 172. Duin did not ask Greaves about Strange's statement regarding accounts of sexual abuse because she felt Greaves's general denial of allegations against The Satanic Temple, and his response to questions about "official orgies," was a "fair rebuttal" to Strange's statement as well.  *Id.* ¶ 83.[4]

## 2.   Writing the Article.

Julia Duin wrote the Article.  Rule 56.1 Resp. ¶ 11.  It begins:

> Can you defame a religion, especially one that doesn't believe in God, Satan or the supernatural?
>
> The answer to that question could cost four former members of The Satanic Temple (TST) more than $140,000 in damages, including "reputation losses," in a civil lawsuit that has dragged on for more than a year and a half.

*Id.* ¶ 174.  The Article then sets forth the claims in the Washington Lawsuit, provides some background on The Satanic Temple's founding and history, and describes the involvement of each defendant in the organization.  *Id.* ¶ 175.  The Article also outlines other recent legal

---

[4] As part of her research, Duin also interviewed Matt Kezhaya, The Satanic Temple's general counsel, and, at Greaves's suggestion, Dr. Joseph Laycock, the author of *Speak of the Devil: How The Satanic Temple is Changing the Way We Talk about Religion*.  Rule 56.1 Resp. ¶¶ 84, 173.

disputes involving The Satanic Temple, reports on complaints other former members have made about The Satanic Temple's practices, and includes responses from Greaves and Kezhaya. *Id.*

As background, and as part of the reporting on other complaints made by other former members, the Article includes Jinx Strange's quote that he ceased his involvement with The Satanic Temple after he heard "[a]ccounts of sexual abuse being covered up in ways that were more than anecdotal." *Id.* ¶ 176. Duin testified that, while she found the Article Statement "inherently plausible," she did not intend to accuse The Satanic Temple of any wrongdoing by including the Article Statement in the Article. *Id.* ¶ 177. Rather, Duin included the Article Statement "[b]ecause it gave a general view of the various controversies surrounding The Satanic Temple," and she wanted to acknowledge Strange's "perception of what The Satanic Temple was about. What he thought, what his experience was, what he was hearing from other people." *Id.* ¶¶ 178–79.

Two paragraphs after the Article Statement, the Article includes Greaves's statement that he considers complaints about The Satanic Temple "old news" and that, "We get this litany of senseless disparaging claims against us that says we're a religious group acting in a nefarious manner." *Id.* ¶ 180. Duin put Greaves's general denial about claims made against The Satanic Temple after the Article Statement because she believed Greaves's denial applied to the "various accusations" made against The Satanic Temple, including the Article Statement. *Id.* ¶ 181.

### 3.     Editing the Article.

Nancy Cooper, Newsweek's editor-in-chief, edited the Article before it was published by Newsweek. Rule 56.1 Resp. ¶¶ 12, 25. Cooper was not familiar with The Satanic Temple prior to hearing Duin's pitch for the Article, but she had "faith in [Duin's] reporting" and saw no evidence Duin was biased in her reporting on The Satanic Temple. *Id.* ¶¶ 120, 136, 187.

Indeed, Newsweek hired Duin as a religion reported because "[s]he was an experienced religion reporter," who had "won [ ] awards," and was "interested in the topic and knew about it." *Id.* ¶ 182.  Regarding Duin's experience, Cooper recalled that Duin "clearly knew what she was talking about. She was an experienced reporter . . . [S]he had been a reporter for other news outlets and covered religion for them." *Id.* ¶ 183.

According to Cooper, Duin typically did not provide her with the notes for her articles because, in Cooper's opinion, Duin "is a very experienced senior person who was hired to be on this [religion] beat who knows this beat, and I [Cooper] don't re-report stories [because] [t]hat's not an editor's role." *Id.* ¶ 186.  Newsweek generally relied on Duin to fact check her articles. *Id.* ¶¶ 184, 186.  Indeed, Duin represented to Cooper that she had "fact-checked this [Article] until [her] eyes were bleary." *Id.* ¶ 185; *see also id.* ("Whew . . . have fact-checked until I am buggy-eyed.").

Cooper understood the Article Statement to be a report of something people were talking about, and not a legal allegation or an accusation of guilt. *Id.* ¶ 188.  In that respect, she believed the Article Statement to be true, and believes that Newsweek did not intend to, and did not, defame The Satanic Temple by publishing the Article Statement. *Id.* ¶¶ 189–90.

4. <u>Additional Support for the Article Statement.</u>

Testimonial and documentary evidence further support the Article Statement. Specifically, Strange recalled that: 1) a member of the Washington Chapter was removed from the chapter after the member came forward with an allegation of sexual abuse; 2) a female member of the Austin Chapter who made an allegation of sexual abuse, "possibly along with other supporters," was removed from the chapter; and, 3) a friend of Strange's confided in him that she had been sexually abused at a Satanic Temple party.  Rule 56.1 Resp. ¶ 191.

8

Similarly, David Johnson testified that he knew of a former member who left because the member was "made to feel uncomfortable by a much older member" but it "was non-addressed for months." *Id.* ¶ 192. Johnson also recalled that a member of the Austin Chapter claimed she was sexually assaulted by a chapter head. *Id.* ¶ 193. Johnson further testified that Satanic Temple members had spoken about feeling uncomfortable because a co-owner of The Satanic Temple had solicited nudes for a holiday called "Lupercalia." *Id.* ¶ 194.

In addition, former Satanic Temple member Jex Blackmore publicly accused The Satanic Temple of failing to address sexually abusive behavior in a 2018 article published on Medium. *Id.* ¶¶ 196–97. Specifically, she claimed to have "witnessed male members of the organization exploit their position and influence to behave inappropriately and disrespectfully towards women" and that she personally "experienced harassment and abuse from members who have now left the organization." *Id.* ¶ 197; *see also* ¶¶ 100, 104 (Dr. Laycock's book, *Speak of the Devil*, references Blackmore's article and states that, "[Blackmore] reported experiencing harassment and abuse while in [The Satanic Temple]"). The Satanic Temple was aware of Blackmore's claims but did not investigate them. *Id.* ¶¶ 99, 211. There are also numerous social media posts in which individuals purporting to be former members of The Satanic Temple have publicly recounted experiences of sexual abuse within The Satanic Temple and expressed their frustration with how such complaints were handled. *Id.* ¶¶ 159, 206.

The Satanic Temple has also admitted that there have been several direct accusations of sexual abuse by or against members of The Satanic Temple. *Id.* ¶¶ 198–203. For example, The Satanic Temple admitted that a former member of the San Jose Chapter complained that a member of the leadership team made unwanted advances towards her, which included discussing his genitals. *Id.* ¶¶ 199–200. The Satanic Temple acknowledged that the accuser

was unhappy with how her complaint was handled, which "led to some frustration [for The Satanic Temple] because . . . you never want to tell somebody who is filing a complaint like not to . . . but at the same time sometimes looking in to things takes time." *Id.* ¶ 201.

The Satanic Temple also admitted that head of the Austin Chapter was accused of sexually assaulting another member, and other members accused The Satanic Temple of "covering up" the incident. *Id.* ¶¶ 202–204. The victim's friends became unhappy with The Satanic Temple's lack of a further response to the allegations, and "threatened to go public . . . with the claim that [The Satanic Temple] was covering up these accusations." *Id.* ¶ 204. Following these threats, the alleged perpetrator "stepped down" from his leadership position. *Id.* ¶¶ 203–205. However, the alleged victim and her friends continued to raise the issue at Chapter meetings, and were removed from the Austin Chapter as a result. *Id.* ¶ 205.

In addition to The Satanic Temple's admission, Nathan Sullivan testified that his removal from the Washington Chapter was an effort to cover up a sexual harassment complaint:

> My expulsion from [The Satanic Temple] was a part of . . . covering up the ethics complaint where the [sexual] harassment was an underpinning factor. The chapter head at the time explicitly said that the—the reason for my removal was because I was a witness to that e-mail [complaint].

*Id.* ¶ 195.

Finally, although The Satanic Temple was formed in or around 2013, it lacked a formal process for handling complaints until 2020, including complaints involving sexual abuse. *Id.* ¶¶ 138, 208–209. Thus, there were complaints prior to 2020 that were not formally addressed. *Id.* ¶ 210.

## ARGUMENT

In ruling on a motion for summary judgment a court "must view the evidence in the light most favorable to the party opposing summary judgment and must draw all permissible

10

inferences . . . in favor of that party." *Gummo v. Vill. of Depew, N.Y.*, 75 F.3d 98, 107 (2d Cir. 1996). Where there is any evidence in the record on the issue on which summary judgment is sought "from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." *Id*; *see also Palin v. New York Times Co.*, 482 F. Supp. 3d 208, 214 (S.D.N.Y.), *modified*, 510 F. Supp. 3d 21 (S.D.N.Y. 2020) (quoting same).

In order to prevail on a defamation claim, a plaintiff must prove that the statement it challenges is "substantially false" and was made with the requisite degree of fault. *See Kesner v. Dow Jones & Co., Inc.*, 2023 WL 4072929, at *1 (2d Cir. Jun. 20, 2023) (setting out required elements of a defamation claim); *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 242 (2d Cir. 2017) ("To satisfy the falsity element of a defamation claim, plaintiff must allege that the complained of statement is 'substantially false.") (quotations omitted). Under New York law, in cases involving speech on a matter of public concern the plaintiff must prove actual malice on the part of the publisher. *See Kesner v. Buhl*, 590 F. Supp. 3d 680, 693 (S.D.N.Y. 2022) (noting that courts have "uniformly found" that the actual malice standard under New York's anti-strategic litigation against public participation ("anti-SLAPP") statute applies to diversity actions) (citing cases). Both "falsity and actual malice must be proven by clear and convincing evidence." *Palin v. New York Times Co.*, 588 F. Supp. 3d 375, 399 (S.D.N.Y.), *reconsideration denied*, 604 F. Supp. 3d 208 (S.D.N.Y. 2022). Here, Plaintiff has not met its burden, and its motion for partial summary judgment should be denied for two independent reasons: 1) The Satanic cannot prove that the Article Statement is substantially false; and 2) The Satanic Temple cannot prove that Newsweek published the Article Statement with actual malice.

## I.   THE SATANIC TEMPLE CANNOT MEET ITS BURDEN OF PROVING THE ARTICLE STATEMENT IS SUBSTANTIALLY FALSE.

### A.   The Satanic Temple Bears the Burden of Proving Falsity.

The Satanic Temple bears the burden of proving that the Article Statement is "substantially false."  *See, supra, Tannerite Sports, LLC*, 864 F.3d at 242; *Leidig v. BuzzFeed, Inc.*, 371 F. Supp. 3d 134, 143 (S.D.N.Y.), *aff'd*, 788 F. App'x 76 (2d Cir. 2019) ("Despite truth often being framed as a defense to [defamation], the burden of proving the falsity of a statement rests with the plaintiff."); *Olivet Univ. v. Newsweek Digital LLC*, 2024 WL 1892563, at *4 (S.D.N.Y. Apr. 30, 2024) (same).  In its motion, Plaintiff attempts to improperly shift its burden of proving falsity by generally denying the Article Statement, *see* Mem 9–10 (asserting that "[t]his general denial is sufficient on its own"), and then asserting that Newsweek cannot prove its truth.  *Id.* at 11 ("Newsweek has no competent evidence to support a truth defense.").  Not only does Plaintiff fail to cite any case law in support of its position, but a general denial is insufficient to satisfy a plaintiff's burden of proving falsity.  *See Leidig v. BuzzFeed, Inc.*, 788 F. App'x 76, 78 (2d Cir. 2019) ("While a bland cryptic claim of falsity supported by the credibility of a witness might be sufficient to establish a proposition in other civil cases, the First Amendment demands more.").  As the Second Circuit has cautioned:

> To accept such a colorless denial as sufficient proof would effectively shift plaintiffs' burden of establishing falsity onto media defendants to establish truth. This shift would impermissibly chill expression since "would-be critics . . . may be deterred from voicing their criticism, even though it is believed to be true and even though it is in fact true, because of doubt whether it can be proved in court or fear of the expense of having to do so."

*Celle v. Filipino Rep. Enterprises Inc.*, 209 F.3d 163, 188 (2d Cir. 2000) (quoting *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 772–73 (1986)); *see also Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1292 (D.C.Cir. 1988) ("Where the question of truth or falsity is a close one, a court should err on the side of non-actionability.").

Thus, on this ground alone Plaintiff's summary judgment motion should be denied because it cannot rely on a general claim that the Article Statement is false and then shift the burden to Newsweek to prove that the statement is true.

### B.   Plaintiff Cannot Prove that the Article Statement Is Substantially False.

In reviewing an allegedly defamatory statement "[t]he entire publication, as well as the circumstances of its issuance, must be considered in terms of its effect upon the ordinary reader." *Tannerite Sports, LLC*, 864 F.3d at 243; *see also Celle*, 209 F.3d 163 at 177 ("Challenged statements are not to be read in isolation, but must be perused as the average reader would against the whole apparent scope and intent of the writing."); *Leidig*, 371 F. Supp. 3d at 143 (A court "must give the disputed language a fair reading in the context of the publication as a whole and construe it as the intended readership would.") (citation omitted). Where a review of the challenged statement in its proper context demonstrates that "the substance, the gist, or the sting of a statement is true, it cannot be libelous." *Leidig*, 371 F. Supp. 3d at 143 (quotations omitted); *see also Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 517 (1991) ("[T]he statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced.") (quotations omitted).

Here, the Article Statement does not accuse The Satanic Temple of "sexually abus[ing] its membership and cover[ing] up the same," as Plaintiff contends.  Pl. Mem. 9; *see also, supra, Leidig*, 371 F. Supp. 3d at 143; *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 457 (S.D.N.Y. 2012) ("[A] court should not render statements actionable by giving them a strained or artificial construction.") (quotations omitted).  Rather, when read in context, the Article Statement merely asserts that a former member of The Satanic Temple, Jinx Strange, was no longer

13

involved with The Satanic Temple in part because he heard about accounts of sexual abuse

being covered up.  Rule 56.1 Resp. ¶ 176.  The Satanic Temple does not dispute that Strange

indicated such allegations were one reason he was no longer involved with The Satanic Temple,

nor can it, because Strange confirmed this fact at his deposition.  *Id.* ¶¶ 96, 167.  Thus, given

Strange's testimony, Plaintiff cannot prove that the Article Statement is substantially false.  *See*

*Leidig*, 371 F. Supp. 3d at 146 (finding plaintiff failed to show statement in an article was false

where "[t]he most straightforward reading" of the statement was "simply as a summary of

[another outlet's] findings" and the plaintiff could not demonstrate that the summary of the

findings was inaccurate, regardless of the truth of the underlying findings).

Moreover, The Satanic Temple admits that Strange's quote refers to "[a]ccounts of

sexual abuse being covered up," Rule 56.1 Resp. ¶ 76 (emphasis in original), and that the

Article Statement is about a "rumor."  *See, e.g.* Pl. Mem. 1 ("At issue is a single count of

defamation arising from a rumor . . . ."), 3 (referring to "[Jinx] Strange's rumor"), 4 (claiming

"Newsweek defamed the [Satanic] Temple when it published a rumor . . . .").  Thus, even if

interpreted more broadly, the Article Statement only conveys that former members have heard

rumors of sexual abuse claims being covered up by The Satanic Temple, which The Satanic

Temple cannot dispute.  First, The Satanic Temple has admitted that members of the Austin

Chapter threatened to "go public" with the claim that The Satanic Temple was "covering up"

accusations of sexual assault against a Chapter Head.[5]  Rule 56.1 Resp. ¶ 203.  Second,

Sullivan, Johnson, and Strange testified that they had heard of claims of sexual abuse within

The Satanic Temple resulting in the accuser, witnesses, or supporters being removed from their

---

[5] The statements made by Gregory Stevens as the 30(b)(6) deposition representative for
The Satanic Temple are opposing party statements and therefore admissible evidence.  F.R.E.
801(d)(2).

chapters.  *Id.* ¶¶ 191–195.  Third, Scott Malphas told Duin of "an account of sexual assault" that was not followed up on.  *Id.* ¶ 163.  Fourth, Jex Blackmore wrote about her experiences of sexual abuse when she was in The Satanic Temple in her Medium article, and The Satanic Temple admits it did not investigate her claims.  *Id.* ¶¶ 197, 211.  Fifth, several social media posts by former members of The Satanic Temple publicly recount experiences of sexual abuse within The Satanic Temple and claim that these accounts were met with inaction or retaliation against the victim.[6]  *Id.* ¶¶ 159, 206.  Based on this undisputed evidence, The Satanic Temple cannot demonstrate that it is substantially false that there were rumors of sexual abuse within The Satanic Temple being covered up.  *See Goodman v. Bouzy*, 2023 WL 3296203 at *10 (S.D.N.Y. May 8, 2023), *report and recommendation adopted*, 2023 WL 4235851 (S.D.N.Y. June 28, 2023) (statement that defendant "was aware of allegations" that plaintiff had raped someone was substantially true where record demonstrated such rumors in fact existed).

Finally, even if the Article Statement could be construed as directly accusing The Satanic Temple of covering up allegations of sexual abuse, Plaintiff has admitted that there have been several accusations of sexual abuse against members of The Satanic Temple and that the accuser was unhappy with how The Satanic Temple handled the complaints.  Rule 56.1 Resp. ¶¶ 199–205.  A member of the San Jose Chapter reported that someone in leadership had made

---

[6] These statements are not inadmissible hearsay because Newsweek does not submit them for the truth of the allegations they make – i.e., whether sexual abuse, in fact, occurred and was covered up – but, rather, to establish that such claims were made and that former members of The Satanic Temple were aware of them.  *See HLT Existing Franchise Holding LLC v. Worcester Hosp. Grp. LLC*, 994 F. Supp. 2d 520, 535 (S.D.N.Y. 2014) (guest surveys regarding room cleanliness were non-hearsay where they were not offered for the truth of whether the rooms were clean, but rather to establish that guests had reported that the rooms were not clean); *Apex Oil Co. v. DiMauro*, 1990 WL 124588, at *3 (S.D.N.Y. Aug. 21, 1990) ("[E]vidence that rumors or false reports *were disseminated* is not hearsay when they are not offered for the truth of the rumors but for the fact that rumors were spread.") (emphasis in original).

unwanted advances toward her and discussed his genitals, and she was frustrated by the inaction on the part of The Satanic Temple. *Id.* ¶¶ 200–01.  In the Austin Chapter, members accused The Satanic Temple of covering up a sexual assault claim against a Chapter Head, and those members and the alleged victim were removed from the Chapter when they continued to raise the issue after the Chapter Head had voluntarily stepped down. *Id.*  ¶¶ 202–05.  In addition, Nathan Sullivan testified that his expulsion from the Washington Chapter constituted a cover up because he was removed after becoming a witness to a sexual harassment complaint. *Id.* ¶ 195. Finally, the formal process for reporting complaints that Plaintiff points to was not established until 2020, and therefore, as Plaintiff has admitted, it could not possibly determine whether and how complaints of sexual abuse were handled prior to that time. *Id.* ¶¶ 208–10.

Plaintiff's attempt to prove falsity by narrowing the definition of "sexual abuse" misses the point.  First, The Satanic Temple has identified at least one instance of sexual assault, which fits squarely within its definition.  Rule 56.1 Resp. ¶¶ 202–04.  Second, in assessing an allegedly defamatory statement, "the words are to be construed not with the close precision expected from lawyers and judges but as they would be read and understood by the public to which they are addressed." *Celle*, 209 F.3d at 177.  Here, as courts have recognized, the average reader would not construe "sexual abuse" with the overly narrow and technical meaning Plaintiff imposes. *See Karpinski v. Union Leader Corp.*, 2019 WL 3203144, at *6 (D.N.H. Jul. 16, 2019) ("To an attorney, the difference between a violation of the California civil sexual assault statute and a state or federal claim of sexual harassment may seem obvious.  But to an ordinary citizen of 'common and reasonable understanding,' those terms have a less definite, and more overlain, meaning."); *Ben Hamida v. Gonzales*, 478 F.3d 734, 739 n.7 (6th Cir. 2007) (rejecting claim that witness was inconsistent by first alleging sexual abuse and later testifying

he was merely harassed because "he may have simply been confused by the difference between 'sexual abuse' and 'sexual harassment,' just as he was confused by the difference between 'sexual assault' and 'sexual harassment' with respect to police officers' conduct toward his mother"); *see also* Gavin Keene, Preserving VAWA's "Nonreport" Option, 93 Wash. L. Rev. 1089, 1093 & n.26 (2018) ("Public discourse, influenced by popular culture movements and media coverage, frequently conflates distinct forms of sexual misconduct.") (collecting sources).

Indeed, Sullivan, Johnson, and Strange all testified that they understood "sexual abuse" to include conduct such as "sexual harassment," "inappropriate sexual relationships," or "unwanted sexual advances."[7]  Rule 56.1 Resp.  ¶ 60.  Because the evidence shows that there have been multiple accounts of reports of sexual misconduct being covered up by The Satanic Temple, Plaintiff cannot show that the gist of the Article Statement is substantially false.  *See, e.g., Olivet*, 2024 WL 1892563, at *5 (statement that plaintiff had pleaded guilty to money laundering was substantially true where plaintiff in fact pleaded guilty to conspiracy to commit money laundering); *Carroll v. Trump*, 685 F. Supp. 3d 267, 277 (S.D.N.Y.), *aff'd in part*, 88 F.4th 418 (2d Cir. 2023) (granting motion to dismiss defamation counterclaim where defendant failed to plausibly allege that plaintiff's statement that defendant "raped" her was not substantially true where jury had found that defendant digitally penetrated plaintiff's vagina); *Bauer v. Baud*, 2023 WL 2307413, at *6 (S.D.N.Y. Mar. 1, 2023) (statement that plaintiff

---

[7] *See also* Sexual Abuse, American Psychological Association (2023), *available at* https://dictionary.apa.org/sexual-abuse (defining "sexual abuse" as "any nonconsensual or exploitive sexual behavior or activity imposed on an individual without their consent.").

"fractured L.H.'s skull as diagnosed by an initial CT scan" was substantially true where plaintiff

"caused L.H. facial trauma that a doctor initially diagnosed as symptoms of a skull fracture").

Thus, because Plaintiff cannot satisfy its burden of demonstrating that the Article

Statement is substantially false, its motion for partial summary judgment should be denied.

## II.   THE SATANIC TEMPLE CANNOT SATISFY ITS BURDEN OF DEMONSTRATING THAT NEWSWEEK ACTED WITH ACTUAL MALICE.

### A.   The Actual Malice Standard Applies.

Under New York's anti-SLAPP statute, the actual malice standard applies to

communications "in connection with an issue of public interest."  N.Y. CPLR § 76-a(1)(a); *see

also Kesner*, 590 F. Supp. 3d at 693 (courts have "uniformly found" that the actual malice

standard applies to diversity actions under New York's anti-SLAPP statute) (collecting cases).[8]

Here, contrary to Plaintiff's contention, Pl. Mem. 17–18, the Article Statement undoubtedly

involves a matter of public interest.  Under the anti-SLAPP statute, the term "public interest" is

to "be construed broadly and shall mean any subject other than a purely private matter."  N.Y.

CPLR § 76-a(1)(d); *see also Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 102 (2d Cir.

2000) ("In media cases, the scope of what is arguably within the sphere of public concern has

been held to be extraordinarily broad with great deference paid to what the publisher deems to

be of public interest.") (quotations omitted); *Kesner*, 590 F. Supp. at 693 ("Matters of 'public

concern' include matters of political, social, or other concern to the community, even those that

---

[8] Even if the anti-SLAPP statute did not apply, Newsweek maintains that the actual malice standard still applies because The Satanic Temple is a public figure.  *See Lerman v. Flynt Distrib. Co.*, 745 F.2d 123, 136–37 (2d Cir. 1984) (a plaintiff is a limited purpose public figure where he "(1) successfully invited public attention to his views in an effort to influence others prior to the incident that is the subject of litigation; (2) voluntarily injected himself into a public controversy related to the subject of the litigation; (3) assumed a position of prominence in the public controversy; and (4)  maintained regular and continuing access to the media."); Rule 56.1 Resp. ¶¶ 139–46.

do not affect the general population.") (quotations omitted); *Lindberg v. Dow Jones & Co., Inc.*, 2021 WL 3605621, at *8 (S.D.N.Y. Aug. 11, 2021) ("[C]ases where the subject matter was not a matter of legitimate public concern are extremely rare.") (citation omitted).

In asserting that the Article only involves an issue of private concern, Plaintiff ignores the language of the statute, and points to irrelevant case law.  The Article was not about private "marital difficulties."  *See* Pl. Mem. 17–18 (citing *Krauss v. Globe Int'l, Inc.*, 251 A.D.2d 191 (1st Dept. 1998) and *Time, Inc. v. Firestone*, 424 U.S. 448 (1976)).  As Plaintiff admits, the Article was about a public dispute between The Satanic Temple and its former members, and the Article Statement involves claims that allegations of sexual abuse have been covered-up, which are clearly issues of public concern.  *See Watson v. NY Doe 1*, 2023 WL 6540662, at *3 (S.D.N.Y. Oct. 6, 2023) ("[C]ourts have found Facebook and LinkedIn posts accusing an individual of sexual assault to be communications concerning an issue of public interest.") (internal marks omitted); *Coleman v. Grand*, 523 F. Supp. 3d 244, 259 (E.D.N.Y. 2021) (finding that issues of "sexual impropriety and power dynamics in [a given] industry, as in others, were indisputably an issue of public interest"); *see also Huggins v. Moore*, 94 N.Y.2d 296, 303 (N.Y. 1999) (absent clear abuse, "the courts will not second-guess editorial decisions as to what constitutes matters of genuine public concern").  Accordingly, because the Article Statement involves a matter of public interest, the actual malice standard applies.[9]

### B.    Plaintiff Cannot Show That Newsweek Published The Article Statement With Actual Malice.

"Actual malice" requires a plaintiff to establish by clear and convincing evidence that the communication on which the action was based "was made with knowledge of its falsity or

---

[9] Even if the actual malice standard did not apply, Plaintiff would be required to satisfy New York's "gross irresponsibility" standard.  *See Chapadeau v. Utica Observer-Dispatch*, 38

with reckless disregard of whether it was false."  N.Y. CPLR § 76-a(2); *see also Palin*, 482 F.

Supp. 3d at 214 ("[A] court ruling on a motion for summary judgment on actual malice "must

be guided by the New York Times 'clear and convincing' evidentiary standard in determining

whether a genuine issue of actual malice exists . . . .").  As this court has recognized, "[p]roving

actual malice is a heavy burden."  *Dunlop-McCullen v. Rogers*, 2002 WL 1205029, at *7

(S.D.N.Y. Feb. 21, 2002).  Showing that a defendant was negligent in publishing a statement is

not sufficient; a plaintiff must demonstrate that the author "in fact entertained serious doubts as

to the truth of his publication or acted with a high degree of awareness of probable falsity."

*Masson*, 501 U.S. at 510 (internal mark omitted).  Here, Plaintiff attempts to offer evidence

demonstrating that Newsweek failed to follow its editorial guidelines, and failed to thoroughly

investigate the claims in the Article Statement, but neither allegation, even if proven, establishes

actual malice.

 As an initial matter, Plaintiff's reliance on evidence regarding Duin's state of mind when

writing the Article Statement is irrelevant because the proper inquiry is whether Newsweek

knew the Article Statement was false or recklessly disregarded the truth.  *See Stern v. Cosby*,

645 F.Supp.2d 258, 284–85 (S.D.N.Y. 2009) (dismissing defamation claims against publisher

where plaintiff offered evidence that the author, but not the publisher, acted with actual malice).

New York law is clear that a publisher is "permitted to rely on an author's reputation and

experience" and "has no independent duty to investigate an author's story unless the publisher

has actual, subjective doubts as to the accuracy of the story."  *Stern*, 645 F.Supp.2d at 284; *see*

---

N.Y.2d 196, 199 (N.Y. 1975).  Because Plaintiff fails to offer any evidence in support of a
finding of gross irresponsibility, its motion should be denied under this standard as well.  *See
Isaly v. Boston Globe Media Partners LLC*, 2020 WL 5659430, at *5–8 (S.D.N.Y., 2020)
(dismissing defamation claim where private figure plaintiff failed to plead that defendant acted
in a grossly irresponsible manner).

*also Tzougrakis v. Cyveillance, Inc.*, 145 F.Supp.2d 325, 332 (S.D.N.Y. 2001) (defendant magazine was entitled to rely on "a trusted reporter's, representations without rechecking her assertions or retracing her sources").

Nancy Cooper, who was responsible for editing the Article for Newsweek, testified that she trusted Duin's reporting, relied on Duin's experience as a reporter and representations that she had fact-checked the Article, and had no reason to doubt the accuracy of the Article or the truth of the Article Statement.  Rule 56.1 Resp. ¶¶ 120, 184–87.  Duin has been a journalist for over forty-five years, has received multiple awards for her reporting, has been a journalism professor at multiple universities, has published six books about religion, and has a master's degree in religious studies.  *Id.* ¶¶ 152–56.  Newsweek hired Duin because of her established religion reporting experience and relied on Duin's experience in editing her articles.  *Id.* ¶¶ 182–86.  There is no evidence, and Plaintiff points to none, that Newsweek in fact entertained serious doubts as to the truth of the Article Statement.  Accordingly, The Satanic Temple cannot prove that Newsweek published the Article Statement with actual malice.  *See Stern*, 645 F.Supp.2d at 284–86 (plaintiff could not show that publisher acted with actual malice where there was "no evidence that anyone at [publisher] had any actual, subjective doubt as to any of [the author's] reporting").

Moreover, Plaintiff's reliance on Newsweek's Editorial Guidelines as the "yardstick" by which to measure actual malice is misplaced.  As the Supreme Court has advised, even "an extreme departure from professional standards . . . cannot provide a sufficient basis for finding actual malice."  *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 665 (1989); *see also Brimelow v. New York Times Co.*, 2021 WL 4901969, at *3 (2d Cir. Oct. 21, 2021) ("plaintiff must prove *more than* an extreme departure from professional standards . . . [to]

provide a sufficient basis for finding actual malice") (emphasis in original); *Prince v. Intercept*, 2023 WL 4492413, at *10 (S.D.N.Y. July 12, 2023) (same). Thus, to the extent Plaintiff argues that Newsweek failed to follow its Editorial Guidelines in publishing the Article, such claims are insufficient to establish actual malice.

In addition, even if Duin's state of mind could be imputed to Newsweek, The Satanic Temple's arguments that Duin failed to adequately investigate the Article Statement are insufficient to establish actual malice. In determining actual malice "the operative question is whether a defendant failed to investigate in the face of 'actual, subjective doubts as to the accuracy of the story.'" *Kesner*, 590 F. Supp. 3d at 696. Here, the evidence demonstrates that Duin did not doubt the truth of the Article Statement and had no reason to doubt it based on her research. Duin was told by four separate sources – without asking – that they were aware of accounts of sexual abuse being covered up by The Satanic Temple. [10] Rule 56.1 Resp. ¶¶ 87, 158–66; *see also Church of Scientology Int'l v. Behar*, 238 F.3d 168, 174 (2d Cir. 2001) (corroboration of claims by multiple sources undermined allegations of actual malice). Duin testified that she found the Article Statement to be "inherently plausible" because Strange's statement was consistent with the other sources. Rule 56.1 Resp. ¶ 87. Plaintiff's contention that Duin recklessly disregarded the truth by relying on "disgruntled former members" is without merit because she had no reason to believe they would provide false information. *See Loeb v. New Times Commc'ns Corp.*, 497 F. Supp. 85, 93 (S.D.N.Y. 1980) ("reliance upon

---

[10] Newsweek offers these statements for their effect on Duin's state of mind in writing the Article Statement, not for the truth of the matter asserted. *See* FRE 801(c); *Smith v. City of New York*, 2016 WL 5793410, at *4 (S.D.N.Y. Sept. 30, 2016), *aff'd*, 697 F. App'x 88 (2d Cir. 2017) ("A statement is admissible non-hearsay when it is offered as evidence of the effect of a statement on the listener, the knowledge motivating his actions, or his state of mind at the relevant point in time.").

some biased sources, in themselves, do not amount to reckless disregard of the truth") (citing *St. Amant v. Thompson*, 390 U.S. 727, 730 (1968)).  Indeed, Duin testified that she found all the sources who mentioned accounts of sexual abuse to be credible, based on her observation that they were "all true believers" when they joined The Satanic Temple, but left "not believing" in the organization based on what they observed.  Rule 56.1 Resp. ¶ 168; *see also Loeb*, 497 F. Supp. at 92–93 (authors' reliance on allegedly biased sources did not amount to reckless disregard for the truth where "there [was] no evidence that these sources, even if biased, would necessarily provide false information").

Duin's decision not to ask Greaves about the Article Statement also does not amount to actual malice where, as here, she did not doubt the accuracy of the statement.  *See Loeb*, 497 F. Supp. at 93 ("failure to verify statements with the plaintiff . . .  do[es] not amount to reckless disregard of the truth") (citing *St. Amant*, 390 U.S. at 730).  Moreover, the Article includes Greaves's statement that he considers complaints about The Satanic Temple "old news" and that, "We get this litany of senseless disparaging claims against us that says we're a religious group acting in a nefarious manner."  Rule 56.1 Resp. ¶ 180.  Duin put Greaves's general denial about claims made against The Satanic Temple after the Article Statement because she believed Greaves's denial applied to the "various accusations" made against The Satanic Temple, including the Article Statement.  *Id.* ¶ 181. She also felt that Greaves's responses to questions about "official orgies" was a "fair rebuttal" to the Article statement as well.  *Id.* ¶ 83. [11]

---

[11] There is also no evidence that Duin "consciously avoided" the truth by not asking Strange to send her the substantiating evidence referred to in his email. *See* Pl. Mem. 21.  In relying on *Sweeney v. Prisoners' Legal Servs. of New York, Inc.* Plaintiff failed to include the court's instruction that, "Absent some direct evidence that defendants . . . were aware that [the source's] complaint was probably false, they cannot be found to have harbored an intent to avoid the truth." 84 N.Y.2d 786, 793, 647 N.E.2d 101 (N.Y. 1995).  Here, Plaintiff has not, and

Finally, Plaintiff's claim that Duin included the Article Statement as part of a "pre-determined" narrative also does not support a finding of actual malice.  Allegations of an improper bias towards the plaintiff are not sufficient to demonstrate actual malice.  *Brimelow*, 2021 WL 4901969 at *3; *see also Buckley v. Littell*, 539 F.2d 882, 889 (2d Cir. 1976) ("Repeatedly the Court has said that ill will toward the plaintiff or bad motive, indeed, hatred, spite or desire to injure, are not the kind of 'malice' that the *New York Times Co. v. Sullivan* test comprehends.").  Rather, allegations of bias are relevant to a determination of actual malice "only in conjunction with an allegation that the speaker otherwise had knowledge of the falsity of [her] statements."  *McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174, 187 (S.D.N.Y. 2020) (citing *Palin v. New York Times Co.,* 940 F.3d 804, 814 (2d Cir. 2019)); *see also Palin*, 588 F. Supp. 3d at 405, n. 31 ("Even had Palin been able to elicit such evidence [of bias], . . . that would not have established actual malice.").  Here, Plaintiff grasps at Duin's prior writings (none of which were about The Satanic Temple), and Cooper's skepticism over a purported Satanic Temple ritual, but still cannot identify any evidence that Duin or anyone at Newsweek entertained doubts as to the truth of the Article Statement.[12]  *See, e.g. Prince*, 2023 WL 4492413, at *8 (plaintiff failed to allege actual malice where defendant's alleged "one sided" reporting on plaintiff had "no tendency to prove" the relevant statements were false and plaintiff did not point to evidence of "Defendants' knowledge of the falsity of their statements or Defendants' entertaining serious doubts as to the truth of the statements").

---

cannot, point to any evidence that Duin or Newsweek knew of that would indicate the Article Statement was false.  If anything, Strange's offer to provide substantiating evidence further justifies Duin's belief that he was credible.

[12] Plaintiff misrepresents Duin's article on satanism; the language regarding the role of sex within satanism is part of Duin's summary of the book the article is about, not an assertion of her own beliefs regarding satanic practices.  *See* Rule 56.1 Resp. ¶ 39.

In short, there is no evidence – let alone clear and convincing evidence – that Newsweek (or Duin) published the Article Statement with knowledge of its alleged falsity or reckless disregard for falsity, and on that independent basis Plaintiff's motion should be denied.

## **CONCLUSION**

For each of the foregoing reasons, Plaintiff's motion for partial summary judgment should be denied.

Dated:  May 31, 2024                     Respectfully submitted,

                                         /s/*Cameron Stracher*
                                         Cameron Stracher
                                         Sara C. Tesoriero
                                         CAMERON STRACHER, PLLC
                                         51 Astor Place, 9th Floor
                                         New York, NY 10003
                                         Tel: 646.992.3850
                                         Fax: 646.992.4241
                                         cam@stracherlaw.com
                                         sara@stracherlaw.com

                                         *Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 31, 2024, I caused a true copy of the foregoing to be served on all counsel of record via ECF.

/s/ *Sara C. Tesoriero*
Sara C. Tesoriero, Esq.