UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------- x

THE SATANIC TEMPLE, INC.,

         Plaintiff,

v.

NEWSWEEK DIGITAL, LLC

         Defendant.

--------------------------------------------------------------------- x

:
:
:
:
:
:
:
:
:
:
:
:

Case No. 1:22-cv-01343-MKV

## DEFENDANT'S RESPONSE TO PLAINTIFF'S RULE 56.1 STATEMENT AND COUNTER-STATEMENT OF UNDISPUTED MATERIAL FACTS

Defendant Newsweek Digital, LLC ("Defendant" or "Newsweek"), by and through undersigned counsel, respectfully submits this Response to Plaintiff's Statement of Undisputed Material Facts and Counter-Statement of Undisputed Material Facts pursuant to Local Rule 56.1.

1.  Plaintiff The Satanic Temple, Inc. is an atheistic religious corporation organized under the laws of Massachusetts with its principal place of business in Salem, MA. Compl. at ¶ 6.

**RESPONSE:**  Defendant admits the statements in Paragraph 1.

2.  Defendant Newsweek Digital LLC is a New York limited liability company whose membership consists of New York residents. Compl. at ¶ 7.

**RESPONSE:**  Defendant admits the statements in Paragraph 2.

3.  Newsweek Digital LLC holds the rights to publish *Newsweek.* Compl. at ¶7.

**RESPONSE:**  Defendant admits that it publishes the online news magazine *Newsweek* through its website at www.newsweek.com.  Compl. ¶¶ 1, 7.

4.      *Newsweek* is read by "more than one in five Americans." Cooper Depo. 56:2-8 (Exhibit 37).

**RESPONSE:**      Defendant admits the statements in Paragraph 4.

5.      Around 10 or 15 years ago, *Newsweek* was one of the "Big Three" newspapers. Cooper Depo. 55:10-22 (Exhibit 37).

**RESPONSE:**      Defendant objects to this statement because it is not material, or even relevant, to any claim or defense at issue in this litigation.  *See* F. R. Civ. P. 56; L.R. 56.1(a). Subject to this objection, Defendant states that approximately 15 to 20 years ago Newsweek was known as one of the "Big Three" news magazines.  ECF 110-1 (Deposition of Nancy Cooper, dated November 7, 2023 ("Cooper Depo."), 55:10–22).

6.      The "Big Three" were the biggest and most credible names in the news industry. Cooper Depo. 55:18-25 (Exhibit 37).

**RESPONSE:**      Defendant objects to this statement because it is not material, or even relevant, to any claim or defense at issue in this litigation.  *See* F. R. Civ. P. 56; L.R. 56.1(a). Subject to this objection, Defendant admits the statements in Paragraph 6.

7.      On October 29, 2021, Newsweek published the subject article: *Orgies, Harassment, Fraud: Satanic Temple Rocked by Accusations, Lawsuit*. Exhibit 1 (Compl. Ex. 1).

**RESPONSE:**      Defendant admits the statements in Paragraph 7.

8.      The article is about Plaintiff. Exhibit 1 (Compl. Ex. 1).

**RESPONSE:**      Defendant denies the statement in Paragraph 8 and because the focus of the article titled "Orgies, Harassment, Fraud: Satanic Temple Rocked by Accusations, Lawsuit" (the "Article") was the lawsuit filed by The Satanic Temple against several former members of its Washington Chapter in the United States District Court for the Western District

1

of Washington (the "Washington Lawsuit").  ECF 101-3 (Deposition of Julia Duin, dated

November 16, 2023 ("Duin Depo"), 99:21); ECF 101-13 (Cooper Depo. 189:20–190:7).

9.      Within the article is an accusation that The Satanic Temple engages in "sexual

abuse" being "covered up in ways that were more than anecdotal." Exhibit 1 (Compl. Ex. 1), at

16.

**RESPONSE:**      Defendant denies the statements in Paragraph 9 because it

misrepresents the content of the Article, which actually quoted a former member of The Satanic

Temple, Jinx Strange, who said that he left The Satanic Temple after hearing "[a]ccounts of

sexual abuse being covered up in ways that were more than anecdotal" (the "Article Statement").

Compl. Ex. 1; *see also* ECF 101-3 (Duin Depo. 134:23–135:1 (Duin testifying that she was not

accusing The Satanic Temple of any wrongdoing by including the Article Statement)); ECF 101-

13 (Cooper Depo. 209:5–14 (Cooper testifying that she understood that Article Statement to be a

report of claims people were making, not an accusation of legal guilt)).

10.      Nancy Cooper was one of the Newsweek employees who gave approval for Duin

to write the article. Duin Depo. at 151:8–22 (Exhibit 38).

**RESPONSE:**      Defendant admits the statements in Paragraph 10.

11.      Julia Duin wrote the article. Duin Depo. at 131:9 (Exhibit 38).

**RESPONSE:**      Defendant admits the statements in Paragraph 11.

12.      Nancy Cooper edited the article. Exhibit 2 (Cooper26); Exhibit 3 (Cooper37);

Cooper Depo. at 134:13-16, 189:17-22 (Exhibit 37).

**RESPONSE:**      Defendant admits the statements in Paragraph 12.

13.      Juliana Pignataro did not edit the article. Cooper Depo. at 158:22-25 (Exhibit 37).

**RESPONSE:**      Defendant admits the statements in Paragraph 13.

14.     Nancy Cooper edited the article because she is "a much more experienced editor." Cooper Depo. at 158:22-25 (Exhibit 37).

**RESPONSE:**     Defendant admits that one reason Cooper edited the Article was because she is a "more experienced editor" than Pignataro but denies that was the only reason. ECF 101-13 (Cooper Depo. 158:22–159:3).

15.     Nancy Cooper wrote the headline. Exhibit 4 (Cooper28); Exhibit 5 (Cooper31); Exhibit 6 (Cooper48); Cooper Depo. at 191:18-20 (Exhibit 37).

**RESPONSE:**     Defendant admits the statements in Paragraph 15.

16.     Nancy Cooper wrote the lede. Exhibit 6 (Cooper48); Cooper Depo. at 190:19-24 (Exhibit 37).

**RESPONSE:**     Defendant denies the allegations in Paragraph 16 because Cooper edited the lede, she did not independently write it.  ECF 101-14 (Cooper48); ECF 101-13 (Cooper Depo. 190:19–24).

17.     Beyond Julia Duin and Nancy Cooper, nobody else at Newsweek had any substantive involvement in the article. Duin Depo at 151:8-22 (Exhibit 38); see also Exhibit 2 (Cooper26), Exhibit 3 (Cooper37), and Cooper Depo. at 189:17-22 (Exhibit 37).

**RESPONSE:**     Defendant admits the statements in Paragraph 17.

18.     On September 1, 2021, Newsweek hired Julia Duin to serve as its religion editor and reporter. Duin Depo. at 25:22-26:9 (Exhibit 38); 48:2-5; Cooper Depo. at 71:18-21 (Exhibit 37).

**RESPONSE:**     Defendant admits that Duin began working for Newsweek as a religion reporter on September 1, 2021 but denies that she was hired as an editor. ECF 101-3 (Duin Depo. 29:3–4, 78:1–16).

19.     There is no evidence that the job was publicly posted. See Duin Depo. at 28:17-20

(Exhibit 38) (Duin doesn't know if it was).

**RESPONSE:**     Defendant objects to this statement because it is not material, or even

relevant, to any claim or defense at issue in this litigation.  *See* F. R. Civ. P. 56; L.R. 56.1(a).

Defendant also objects to this statement because it is not supported by any admissible evidence.

Fed. R. Civ. P. 56(c)(1)(A), 56(c)(2).

Subject to these objections, Defendant denies the statements in Paragraph 19 because

Cooper, Newsweek's 30(b)(6) deponent, recalled the job being publicly posted. ECF 110-1

(Cooper Depo. 71:15–21).

20.     Julia Duin learned of the job opportunity through a mutual acquaintance of Dayan

Candappa. Duin Depo. at 26:10-27:4 (Exhibit 38).

**RESPONSE:**     Defendant objects to this statement because it is not material, or even

relevant, to any claim or defense at issue in this litigation.  *See* F. R. Civ. P. 56; L.R. 56.1(a).

Subject to this objection, Defendant admits the statements in Paragraph 20.

21.     Julia Duin went about applying for the job through direct contact to Dayan

(Exhibit 38). Duin Depo. at 27:21-23.

**RESPONSE:**     Defendant objects to this statement because it is not material, or even

relevant, to any claim or defense at issue in this litigation.  *See* F. R. Civ. P. 56; L.R. 56.1(a).

Subject to this objection, Defendant admits the statements in Paragraph 21.

22.     Dayan Candappa is Newsweek's chief strategy and content officer. Cooper Depo.

at 148:18-19 (Exhibit 37).

**RESPONSE:**     Defendant admits the statements in Paragraph 22.

23.     Dayan Candappa reports directly to Newsweek's CEO, Dev Pragad. Cooper Depo. at 149:11-18(Exhibit 37).

**RESPONSE:**     Defendant admits the statements in Paragraph 23.

24.     So does Nancy Cooper. Cooper Depo. at 11:17-21 (Exhibit 37).

**RESPONSE:**     Defendant admits that Cooper reports to Dev Pragad.

25.     Nancy Cooper is Newsweek's global editor in chief. Cooper Depo. at 4:20-22 (Exhibit 37).

**RESPONSE:**     Defendant admits the statements in Paragraph 25.

26.     As global editor in chief, Nancy Cooper sets the standard for what Newsweek does or doesn't do. Cooper Depo. at 4:23-5:3 (Exhibit 37).

**RESPONSE:**     Defendant admits that Nancy Cooper is responsible for the editorial operations at Newsweek.  ECF 110-1 (Cooper Depo. 4:20–5:3).

27.     As global editor in chief, Nancy Cooper determines what is "newsworthy." Cooper Depo. at 4:22-5:12 (Exhibit 37).

**RESPONSE:**     Defendant denies the statements in Paragraph 27 because it misstates Cooper's testimony. *See* ECF 110-1 (Cooper Depo. 4:22–5:12 (testifying that, as Editor-in-Chief, Cooper's role included determining the "story today" i.e. the "newsworthy events of the day")).

28.     Julia Duin directly reported to Juliana Pignataro. Cooper Depo. at 97:19-23 (Exhibit 37); 149:3-7; Duin Depo. at 150:20-21 (Exhibit 38).

**RESPONSE:**     Defendant admits that Juliana Pignataro was Duin's direct supervisor but otherwise denies the statements in Paragraph 28 because Cooper was the editor for the

Article.  ECF 110-2 (Duin Depo. 150:20–21); ECF 101-13 (Cooper Depo. 155:17–19, 158:22–159:3).

29.     Juliana Pignataro is either the U.S. News Director or the U.S. Editor. Exhibit 7 (DUIN15-001) ("U.S. News Director"); and Cooper Depo. at 97:21-23 (Exhibit 37) (U.S. Editor).

**RESPONSE:**     Defendant objects to this statement because it is not material, or even relevant, to any claim or defense at issue in this litigation.  *See* F. R. Civ. P. 56; L.R. 56.1(a).

Subject to this objection, Defendant admits that Pignataro is a U.S. Editor with the title "U.S. News Director" and otherwise denies the statements in Paragraph 29. ECF 110-1 (Cooper Depo. 97:21–23); ECF 105-7 (DUIN15-001).

30.     While employed at Newsweek, Julia Duin regularly met with Juliana Pignataro, Nancy Cooper, and Dayan Candappa. Duin Depo. at 152:2-17 (Exhibit 38); Cooper Depo. at 73:2-6 (Exhibit 37); Exhibit 8 (NEWSWEEK442-443).

**RESPONSE:**     Defendant admits the statements in Paragraph 30.

31.     Julia Duin was a senior hire who, in Newsweek's estimation, did not need instruction on the basics of journalism. Cooper Depo. at 143:18-21 (Exhibit 37).

**RESPONSE:**     Defendant admits the statements in Paragraph 31.

32.     Prior to her hiring, Julia Duin had served as a professor of journalism, both on general topics and religion in particular. Duin Depo. at 183:5-9 (Exhibit 38).

**RESPONSE:**     Defendant admits the statements in Paragraph 32.

33.     Julia Duin has taught journalism at four colleges. Duin Depo. at 15:22-17:8 (Exhibit 38).

**RESPONSE:**     Defendant admits the statements in Paragraph 33.

34.     Julia Duin taught her students to hear directly from the religion before writing about them. Duin Depo. at 17:20-18:5 (Exhibit 38).

**RESPONSE:**     Defendant denies the statements in Paragraph 34 because Duin testified that her techniques for teaching religion reporting included "tell[ing] the students the basis of each religious group," having "a practitioner of that religion come in and [speak] . . . from their point of view," and having her students "visit a house of worship."  ECF 110-2 (Duin Depo. 17:16–25).

35.     During 1987-1989, Julia Duin wrote four articles about Satanism. Exhibit 9 (JDUIN 4-17).

**RESPONSE:**     Defendant admits that Duin wrote four articles about satanism in the 1980's but further states that the articles were about The Satanic Temple because it had not yet been founded. ECF 105-9 (JDUIN004-017); ECF 101-1 (Deposition of Lucien Greaves, dated November 6, 2023 ("Greaves Depo."), 6:23–7:2 (testifying that the Satanic Temple was founded in 2013 or 2014)).

36.     The years 1987-1989 were during the height of the Satanic Panic. Greaves Decl. ¶ 3.

**RESPONSE:**     Defendant objects to this statement because it is not material, or even relevant, to any claim or defense at issue in this litigation.  *See* F. R. Civ. P. 56; L.R. 56.1(a). Defendant also objects to this statement because it is hearsay and not supported by any admissible evidence. F.R.E. 801(c); Fed. R. Civ. P. 56(c)(1)(A), 56(c)(2).

Subject to these objections, Defendant lacks sufficient knowledge to form a belief as to the truth of the statements in Paragraph 36 and therefore denies them.

37.    The Satanic Panic was a moral panic which consisted of now-debunked conspiracy claims that a secret Satanic cabal was organizing ritual abuse – including ritual sexual abuse – on a global scale. Greaves Decl. ¶ 3; see also Greaves Depo. at 9:3-10:2 (Exhibit 39)

**RESPONSE:**    Defendant objects to this statement because it is not material, or even relevant, to any claim or defense at issue in this litigation.  *See* F. R. Civ. P. 56; L.R. 56.1(a). Defendant also objects to this statement because it is hearsay and not supported by any admissible evidence. F.R.E. 801(c); Fed. R. Civ. P. 56(c)(1)(A), 56(c)(2).

Subject to these objections, Defendant lacks sufficient knowledge to form a belief as to the truth of the statements in Paragraph 37 and therefore denies them.

38.    Through the Grey Faction Campaign, the Satanic Temple combats irrational moral panics, particularly as pertains to conspiratorial claims of Satanic ritual abuse. Greaves Decl. ¶ 3.

**RESPONSE:**    Defendant objects to this statement because it is not material, or even relevant, to any claim or defense at issue in this litigation.  *See* F. R. Civ. P. 56; L.R. 56.1(a).

Subject to this objection, Defendant lacks sufficient knowledge to form a belief as to the truth of the statements in Paragraph 38 and therefore denies them.

39.    Duin's 1989 article approvingly quotes Geraldo Rivera's forward to the book *Satanism in the United States: a phenomenon on the rise*. Exhibit 9 (JDUIN15).

**RESPONSE:**    Defendant objects to this statement because it is not material, or even relevant, to any claim or defense at issue in this litigation.  *See* F. R. Civ. P. 56; L.R. 56.1(a).

Subject to this objection, Defendant admits that Duin's 1989 article quotes from a forward by Geraldo Rivera to a book by Jerry Johnston but denies that the article endorses the quote. ECF 105-9 (JDUIN015).

40.     One year prior, in October 1988, Geraldo Rivera had a widely published two-hour exposé, entitled *Devil Worship: Exposing Satan's Underground*, in which he spread now-debunked claims of Satanic ritual abuse. Greaves Decl. ¶ 3.

**RESPONSE:**     Defendant objects to this statement because it is not material, or even relevant, to any claim or defense at issue in this litigation.  *See* F. R. Civ. P. 56; L.R. 56.1(a). Defendant also objects to this statement because it is hearsay and not supported by any admissible evidence. F.R.E. 801(c); Fed. R. Civ. P. 56(c)(1)(A), 56(c)(2).

Subject to these objections, Defendant lacks sufficient knowledge to form a belief as to the truth of the statements in Paragraph 40 and therefore denies them.

41.     In 1995, Geraldo Rivera famously retracted his endorsement of the claims he spread during the Satanic Panic. Greaves Decl. ¶ 3.

**RESPONSE:**     Defendant objects to this statement because it is not material, or even relevant, to any claim or defense at issue in this litigation.  *See* F. R. Civ. P. 56; L.R. 56.1(a). Defendant also objects to this statement because it is hearsay and not supported by any admissible evidence. F.R.E. 801(c); Fed. R. Civ. P. 56(c)(1)(A), 56(c)(2).

Subject to these objections, Defendant lacks sufficient knowledge to form a belief as to the truth of the statements in Paragraph 41 and therefore denies them.

42.     Prior to the article, Julia Duin wrote three articles about The Satanic Temple. Exhibits 10, 11, and 12 (Duin Depo. Exhibits 3, 4, and 5); see also Duin Depo. at 73:18-76:15 (Exhibit 38).

**RESPONSE:**     Defendant denies the statements in Paragraph 42 because the articles referenced therein were not about The Satanic Temple.  *See* ECF 110-2 (Duin Depo. 73:18–

76:18 (testifying that the articles included as Exhibit 3, 4, and 5 to the deposition were "media critique pieces" that were not about The Satanic Temple)); ECF 110-10, 110-11, 110-12.

43.     All were unfavorable portrayals of the organization. Ibid.

**RESPONSE:**     Defendant objects to this statement because it is not supported by any admissible evidence. Fed. R. Civ. P. 56(c)(1)(A), 56(c)(2).

Subject to these objections, Defendant denies the statement in Paragraph 43. *See* ECF 105-10, 105-11, 105-12.

44.     On September 29, 2021, the idea for this article was brought to Julia Duin by a reporter for the Catholic News Agency named Kevin J. Jones. Exhibit 13 (JDUIN002); see also Duin Depo. at 37:13-38:9 (Exhibit 38).

**RESPONSE:**     Defendant admits that the initial idea for the Article came from an email Duin received from Kevin Jones.

45.     In his email, the Catholic News Agency's reporter prefaced the idea with a disclaimer that he has written "somewhat critically of The Satanic Temple" and has not had time to "factcheck" certain claims raised by an ex-member. Exhibit 13 (JDUIN002).

**RESPONSE:**     Defendant denies the statements in paragraph 45 and directs the Court to the email at issue for the true and correct contents therein. *See* ECF 105-13 (JDUIN001–003).

46.     One of the unverified claims passed on by the Catholic News Agency's reporter was "some allegations of TST leadership sexually exploiting members or failing to respond to harassment / sex assault allegations against chapter heads." Exhibit 13 (JDUIN002).

**RESPONSE:**     Defendant admits that Jones's email to Duin stated, "Some allegations of [The Satanic Temple] leadership sexually exploiting members or failing to respond

to harassment/sex assault allegations against chapter heads" but otherwise denies the statements in Paragraph 46. ECF 105-13 (JDUIN002).

47.     On September 30, 2021 – one day after receiving the idea from Kevin J. Jones – Julia Duin pitched it to Juliana Pignataro. Exhibit 14 (NEWSWEEK025); see also Duin Depo. at 35:1-8 (Exhibit 38) and Exhibit 7 (DUIN15-001-002).

**RESPONSE:**     Defendant admits the statements in Paragraph 47.

48.     As pitched by Julia Duin, the article would be "Just in time for Halloween." Exhibit 7 (DUIN15-002); Duin Depo. at 53:1-5 (Exhibit 38).

**RESPONSE:**     Defendant denies the statements in Paragraph 48 because it is an incomplete quote that misrepresents Duin's pitch. Duin's pitch stated: "major rift in an organization called The Satanic Temple: Defamation lawsuits, anti-Semitic stuff, mismanagement of funds, NDAs being used to hide wrongdoing, sexual harassment, shell corporations, [and] harassment of internal critics." ECF 105-7 (DUIN015-002).

49.     Julia Duin identified Halloween as a major reason for pitching the article because she considers Halloween to be a Satanic holiday. Duin Depo. at 53:4-14 (Exhibit 38).

**RESPONSE:**     Defendant objects to this statement because it is not material, or even relevant, to any claim or defense at issue in this litigation.  *See* F. R. Civ. P. 56; L.R. 56.1(a).

Subject to this objection, Defendant admits the statements in Paragraph 49.

50.     As pitched by Julia Duin, the article would be about "NDAs being used to hide wrongdoing" and "sexual harassment." Duin Depo. at 35:1-8 (Exhibit 38).

**RESPONSE:**     Defendant denies the statements in Paragraph 50 because it is an incomplete quote that misrepresents Duin's pitch. Duin's pitch stated: "major rift in an organization called The Satanic Temple: Defamation lawsuits, anti-Semitic stuff,

mismanagement of funds, NDAs being used to hide wrongdoing, sexual harassment, shell corporations, [and] harassment of internal critics." ECF 105-7 (DUIN015-002).

51.    Juliana Pignataro indicated that she would be happy to discuss. Exhibit 7 (DUIN15-001).

**RESPONSE:**    Defendant objects to this statement because it is not material, or even relevant, to any claim or defense at issue in this litigation.  *See* F. R. Civ. P. 56; L.R. 56.1(a).

Subject to this objection, Defendant denies the statements in Paragraph 51 because Pignataro emailed Duin on October 25, 2021 and indicated she would be "[h]appy to discuss" several article ideas, including Duin's idea for the Article. ECF 105-7 (DUIN15-001).

52.    Nancy Cooper took special interest in the article. Cooper Depo. at 153:18-154:2 (Exhibit 37); Exhibit 15 (Cooper51).

**RESPONSE:**    Defendant denies the statements in Paragraph 52 because Cooper merely testified that she thought Duin's pitch for the Article would make a good story. ECF 110-1 (Cooper Depo. 153:18–154:2); ECF 105-15 (COOPER51).

53.    All three of Newsweek's senior management – Juliana Pignataro, Nancy Cooper, and Dayan Candappa– greenlit the article. Duin Depo. at 151:8-22 (Exhibit 38).

**RESPONSE:**    Defendant admits the statements in Paragraph 53.

54.    The article was greenlit within one week of the pitch. Duin Depo. 92:1–12 (Exhibit 38).

**RESPONSE:**    Defendant admits the statements in Paragraph 54.

55.     Newsweek publicly admonishes "all Newsweek journalists" to comply with the Editorial Guidelines and purport to set the "highest professional standards." Exhibit 16 (Compl. Ex. 3).

**RESPONSE:**     Defendant denies the statements in Paragraph 55 because the relevant portion of the Newsweek Editorial Guidelines reads: "We expect all Newsweek journalists to comply with these guidelines, but no memo could anticipate every contingency. It is your responsibility as a Newsweek journalist to hold yourself to the highest professional standards." ECF 105-16.

56.     Nancy Cooper wrote the Editorial Guidelines, as aided by either the chief of content or the chief content officer. Cooper Depo. at 206:10-13 (Exhibit 37).

**RESPONSE:**     Defendant admits the statements in Paragraph 56.

57.     The Editorial Guidelines require Newsweek journalists to "Reach out for comment and give parties time to respond," *especially* when "we are accusing a person or company of wrongdoing." Exhibit 16 (Compl. Ex. 3), at 2.

**RESPONSE:**     Defendant denies the statements in Paragraph 57 because the relevant portion of the Newsweek Editorial Guidelines reads: "Reach out for comment and give parties a time to respond . . . If we are accusing a person or company of wrongdoing, we must include fair comment." ECF 105-16.

58.     The Editorial Guidelines require that criminal charges be "specific" and "complete." Exhibit 16 (Compl. Ex. 3), at 2.

**RESPONSE:**     Defendant denies the statements in Paragraph 57 because the relevant portion of the Newsweek Editorial Guidelines reads: "When writing about criminal charges or allegations, be specific and complete." ECF 105-16.

59.     Covering up sexual abuse would be a "possibly criminal act." Cooper Depo.
186:21-187:10 and 187:10-22 (Exhibit 37).

**RESPONSE:**     Defendant objects to this statement because it is not material, or even
relevant, to any claim or defense at issue in this litigation.  *See* F. R. Civ. P. 56; L.R. 56.1(a).
Defendant also objects to this statement because it is not supported by any admissible evidence.
Fed. R. Civ. P. 56(c)(1)(A), 56(c)(2).

Subject to these objections, Defendant denies the statement in Paragraph 59 because it is
an inaccurate characterization of Cooper's response, calls for a legal conclusion, and lacks
context, foundation, and specificity.  ECF 110-1 (Cooper Depo. 186:24–187:10).

60.     Sexual abuse in the first place could also be a "criminal act." Cooper Depo.
187:23-188:6 (Exhibit 37).

**RESPONSE:**     Defendant objects to this statement because it is not material, or even
relevant, to any claim or defense at issue in this litigation.  *See* F. R. Civ. P. 56; L.R. 56.1(a).
Defendant also objects to this statement because it is not supported by any admissible evidence.
Fed. R. Civ. P. 56(c)(1)(A), 56(c)(2).

Subject to these objections, Defendant denies the statement in Paragraph 60 because it is
an inaccurate characterization of Cooper's response, calls for a legal conclusion, and lacks
context, foundation, and specificity.  ECF 110-1 (Cooper Depo. 187:11–188:6).  Defendant
further states that Nathan Sullivan, David Johnson, and Jinx Strange all testified that they
understood "sexual abuse" to include conduct such as "sexual harassment," "inappropriate sexual
relationships," or "unwanted sexual advances." Declaration of Sara Tesoriero, dated May 31,
2024 ("Tesoriero Decl."), Ex. 1 (Deposition of Nathan Sullivan, November 17, 2023 ("Sullivan
Depo."), 6:21–7:21); ECF 110-4 (Deposition of David Johnson, November 17, 2023 ("Johnson

Depo."), 7:24–8:23); ECF 101-11 (Deposition of Paul Millirons, December 7, 2023 ("Strange Depo."), 10:17–20).

61.     The article provides no details as to who was sexually abused. Cooper Depo. at 207:12-13 (Exhibit 37) (Q: "Who was sexually abused" A: "We don't know. Members.").

**RESPONSE:**     Defendant admits that the possible victims of sexual abuse are not identified in the Article, and otherwise denies the statements in Paragraph 61. Compl. Ex. 1.

62.     The article provides no details as to what amounts to sexual abuse. Cooper Depo. at 208:2-3 (Exhibit 37) (Q: "What was the sexual abuse?" A: "I don't know.".)

**RESPONSE:**     Defendant admits that the Article does not provide additional details of "sexual abuse" but otherwise denies the statements in Paragraph 62.  Compl. Ex. 1.

63.     The article provides no details as to what the cover-up entailed. Cooper Depo. at 207:14-16 (Exhibit 37) (Q: "What was entailed in the coverup?" A: "I don't know").

**RESPONSE:**     Defendant admits that the Article does not provide additional details regarding what Jinx Strange considered to be a cover-up, but otherwise denies the statements in Paragraph 63.  Compl. Ex. 1.

64.     The article provides no details as to who was involved in the cover-up. Cooper Depo. at 207:21-25 (Exhibit 37) (Q: "Who engaged in the coverup?" A: "I don't know").

**RESPONSE:**     Defendant admits that the Article does not identify individuals allegedly involved in the cover-ups referred to by Jinx Strange, but otherwise denies the statements in Paragraph 64.  Compl. Ex. 1

65.     The Editorial Guidelines require Newsweek journalists to use "credible" sources. Exhibit 16 (Compl. Ex. 3), at 3; see also Cooper Depo. at 205:11-206:5 (Exhibit 37).

**RESPONSE:**     Defendant admits the statements in Paragraph 65.

66.     Under the Editorial Guidelines, an accusation of covered-up sexual abuse should be fact-checked. Cooper Depo. at 38:20-25 (Exhibit 37).

**RESPONSE:**     Defendant denies the statements in Paragraph 66 because the cited testimony does not support the statements. *See* ECF 110-1 (Cooper Depo. 38:20–25 (Cooper agreeing that, in her experience, an accusation of a cover-up of sexual abuse is something that should be fact-checked)).

67.     Newsweek did not train Julia Duin on the Editorial Guidelines. Duin Depo. at 80:6-21 (Exhibit 38); see also Cooper Depo. at 142:22-143:17 and 143:18-21 (Exhibit 37).

**RESPONSE:**     Defendant denies the statement in paragraph 67 because it presumes the Editorial Guidelines are something that Newsweek uses to "train" employees or independent contractors, and because it presumes that an experienced journalist like Julia Duin would have to be "trained" about journalism.  ECF 110-1 (Cooper Depo. 142:18–25).

68.     About one week after the pitch, Julia Duin met with two *Johnson* defendants: David Alan Johnson and Nathan Sullivan. Duin Depo. at 92:9-93:19 (Exhibit 38).

**RESPONSE:**     Defendant admits that Duin met with David Alan Johnson and Nathan Sullivan in mid-October 2021, and otherwise denies the statements in Paragraph 68.  ECF 101-3 (Duin Depo. 91:16–21).

69.     The *Johnson* defendants were the "disgruntled former members" of The Satanic Temple she referenced in the pitch. Cooper52; Duin Depo. at 178:8-18 (Exhibit 38).

**RESPONSE:**     Defendant admits that Duin stated in an email that she was "having a ton of disgruntled members contact [her]" and that such former members were sources for the Article but otherwise denies the statements in Paragraph 69.  ECF 105-15 (COOPER52).

70.    The *Johnson* defendants never claimed to have any personal knowledge that The Satanic Temple engages in sexual abuse and cover-up. Johnson Depo. at 21:14-19 (Exhibit 40).

**RESPONSE:**    Defendant denies the statements in Paragraph 70 because David Johnson testified about three instances of allegations of sexual abuse he was aware of, ECF 101-8 (Johnson Depo. 10:23–11:13, 26:9–27:5), and Nathan Sullivan testified that "[his] expulsion from [The Satanic Temple] was a part of . . . covering up the ethics complaint where the [sexual] harassment was an underpinning factor," ECF 101-4 (Sullivan Depo. 16:3–8).

71.    After Julia Duin met with the Johnson defendants, Nathan Sullivan provided her the contact information for Jinx Strange. Sullivan Depo. at 6:6-17 (Exhibit 41).

**RESPONSE:**    Defendant admits the statements in Paragraph 71.

72.    Jinx Strange is a pseudonym. Strange Depo. at 8:22-24 (Exhibit 42); Johnson Depo. at 6:24-7:1 (Exhibit 40); Sullivan Depo. at 6:3-5 (Exhibit 41).

**RESPONSE:**    Defendant admits the statements in Paragraph 72.

73.    On October 24, 2021, upon Julia Duin's inquiry, Jinx Strange provided a three-page email with his comments about The Satanic Temple. Exhibit 17 (NEWSWEEK015-017).

**RESPONSE:**    Defendant admits the statements in Paragraph 73.

74.    Nowhere within Jinx Strange's email does he suggest that he, personally, suffered "sexual abuse being covered up in ways that were more than anecdotal." Exhibit 17 (NEWSWEEK015-017).

**RESPONSE:**     Defendant admits the statements in Paragraph 74.

75.    Jinx Strange never personally witnessed this sexual abuse. Strange Depo. at 11:19-21 (Exhibit 42).

**RESPONSE:**     Defendant admits the statements in Paragraph 75.

76.     Instead, he distanced himself from the accusation by including the words: "*Accounts of* sexual abuse being covered up in ways that were more than anecdotal." Exhibit 17 (NEWSWEEK016) (emphasis added).

**RESPONSE:**     Defendant denies the statements in Paragraph 76 because Strange stated that he had left The Satanic Temple after hearing "concerning" stories from other members, including "Accounts of sexual abuse being covered up in ways that were more than anecdotal." ECF 105-17 (NEWSWEEK016).

77.     From Jinx Strange's three-page email, Julia Duin selected the statement for inclusion in the article. Exhibit 18 (DUIN45-001) ("so much to choose from!").

**RESPONSE:**     Defendant denies the statements in Paragraph 77 because Duin included the Article Statement in the Article along with other quotes from Strange's October 24th email. Compl. Ex. 1; ECF 105-17 (NEWSWEEK015–017).

78.     Jinx Strange's understanding of "sexual abuse" was secondhand through people basically telling him something over the internet. Strange Depo. at 13:1-4 (Exhibit 42).

**RESPONSE:**     Defendant denies the statements in Paragraph 78 because Strange testified that by "sexual abuse" he meant "unwanted sexual advances or contact."  ECF 101-11 (Strange Depo. 10:17–20).

79.     Jinx Strange did not further explain to Julia Duin who suffered "sexual abuse." Duin Depo. at 99:3-9 (Exhibit 38).

**RESPONSE:**     Defendant admits the statements in Paragraph 79.

80.     Julia Duin did not ask any follow-up questions from Jinx Strange about who was "sexually abused" or what was entailed in the "cover up." Duin Depo. at 99:3-17 (Exhibit 38).

**RESPONSE:**     Defendant admits that Julia Duin did not ask Jinx Strange any additional questions about sexual abuse or cover ups.

81.     On October 25, 2021, one day after receiving Jinx Strange's email, Julia Duin talked to Lucien Greaves. Exhibit 19 (Compl. Ex. 9); see also Duin Depo. at 110:12-17 and 111:2-4 (Exhibit 38).

**RESPONSE:**     Defendant admits the statements in Paragraph 81.

82.     On October 26, 2021, Julia Duin followed up with various questions unrelated to the claim of "sexual abuse being cover-up in ways that were more than anecdotal." Exhibit 19 (Compl. Ex. 9).

**RESPONSE:**     Defendant denies the statements in Paragraph 82 because Duin continued to email Greaves with additional questions following her initial interview with him on October 25, 2021, including questions regarding a complaint that The Satanic Temple's national council had been "approving official events that included orgies." ECF 101-12 (NEWSWEEK027).

83.     Julia Duin never asked Lucien Greaves about the accusation of sexual abuse or cover up. Duin Depo. at 123:10-18 and 123:24-124:5 (Exhibit 38).

**RESPONSE:**     Defendant admits that Duin did not ask Greaves about Strange's statement regarding accounts of sexual abuse because she felt Greaves's general denial of allegations against The Satanic Temple, and his response to questions about "official orgies," was a "fair rebuttal" to Strange's statement as well, and otherwise denies the statements in Paragraph 83.  ECF 101-3 (Duin Depo. 125:19–21, 127:5–18).

84.     On October 27, 2021, Julia Duin talked to Dr. Joe Laycock. Laycock Decl. ¶ 11.

**RESPONSE:**     Defendant admits the statements in Paragraph 84.

85.     Julia Duin considered Dr. Layock the "unofficial biographer" of The Satanic Temple. Duin Depo. at 103:8-9 (Exhibit 38).

**RESPONSE:**     Defendant admits the statements in Paragraph 85.

86.     Julia Duin did not ask Dr. Laycock about sexual abuse or cover up. Laycock Decl. ¶ 15.; see also Duin Depo. at 136:9-13 (Exhibit 38).

**RESPONSE:**     Defendant admits the statements in Paragraph 86.

87.     Julia Duin did not ask "anyone on the face of the planet what sexual abuse and cover-up means" in context of the article statement. Duin Depo. at 136:9-13 (Exhibit 38).

**RESPONSE:**     Defendant denies the statements in Paragraph 87 because it takes Duin's statement out of context and disregards her repeated testimony that the Article Statement was corroborated by multiple sources.  *See* ECF 101-3 (Duin Depo. 121:23–123:9 (testifying she "found what [Strange] said to be inherently plausible" because it was consistent with other statements made by members); 186:19–23 (testifying that "there [were] multiple reports among . . . former members [of The Satanic Temple], of sexual abuse/harassment")).

88.     Julia Duin did not talk to a single individual who claimed to have been subjected to sexual abuse or coverup. Duin Depo. at 173:18-174:3 (Exhibit 38).

**RESPONSE:**     Defendant denies the statements in Paragraph 88 because Duin spoke with Sullivan, who claims his removal from The Satanic Temple constituted a cover-up of a sexual abuse claim.  ECF 101-4 (Sullivan Depo. 16:3–8).

89.     In Julia Duin's view, this article was not an investigation into sexual abuse. Duin Depo. at 99:8-17 (Exhibit 38).

**RESPONSE:**     Defendant admits the statements in Paragraph 89.

90.     Once Julia Duin "realized how much stuff was out there" she had to "limit it to the Seattle story mostly." Exhibit 20 (NEWSWEEK 465).

**RESPONSE:**     Defendant admits the statements in Paragraph 90.

91.     But this limitation on the scope of the article did not stop Julia Duin from including some "delicious quotes near the bottom from members in other parts of the country." Exhibit 20 (NEWSWEEK 465).

**RESPONSE:**     Defendant denies the statements in Paragraph 91 because the cited document does not indicate that Duin included quotes in spite of the Article's focus.  ECF 105-20 (NEWSWEEK465).

92.     Jinx Strange is in Wisconsin, not Seattle. Duin Depo. at 193:5-9 (Exhibit 38).

**RESPONSE:**     Defendant objects to this statement because it is not material, or even relevant, to any claim or defense at issue in this litigation.  *See* F. R. Civ. P. 56; L.R. 56.1(a).

Subject to this objection, Defendant admits the statements in Paragraph 92.

93.     Had Strange accused The Satanic Temple of child murder, it would have occurred to Julia Duin to ask follow-up questions. Duin Depo. at 183:25-184:21 (Exhibit 38).

**RESPONSE:**     Defendant objects to this statement because it is not material, or even relevant, to any claim or defense at issue in this litigation.  *See* F. R. Civ. P. 56; L.R. 56.1(a). Defendant also objects to this statement because it is not supported by any admissible evidence. Fed. R. Civ. P. 56(c)(1)(A), 56(c)(2).

Subject to these objections, Defendant denies the statements in Paragraph 93 because it misstates the cited testimony. ECF 110-2 (Duin Depo. 183:25–184:21).

94.     Newsweek has identified a total of six witnesses upon whose testimony it intends to rely to prove "Allegations of sexual abuse within The Satanic Temple and the response, or lack thereof, to those claims by members of The Satanic Temple." Exhibit 21 (Defendant's Revised Initial Disclosures), at 2.

**RESPONSE:**     Defendant admits that it identified six individuals in its initial disclosures as likely to have discoverable information regarding allegations of sexual abuse within The Satanic Temple and the response, or lack thereof, to those claims, and otherwise denies the allegations in Paragraph 94.  ECF 105-21 (Defendant's Revised Initial Disclosures, 2).

95.     Those six people are: Jinx Strange, David Alan Johnson, Nathan Sullivan, Dr. Joseph Laycock, Lucien Greaves, and Matthew Kezhaya. Exhibit 21 (Defendant's Revised Initial Disclosures), at 2.

**RESPONSE:**     Defendant admits that the six people listed in Paragraph 95 are identified in Defendant's Initial Disclosures and otherwise denies the allegations in Paragraph 95.  ECF 105-21 (Defendant's Revised Initial Disclosures, 2).

96.     Jinx Strange has no personal knowledge of sexual abuse or cover-up. Strange Depo. at 11:16-18 (Exhibit 42).

**RESPONSE:**     Defendant denies the statements in Paragraph 96 because Strange testified regarding three instances of sexual abuse within The Satanic Temple that he had knowledge of, ECF 101-11 (Strange Depo. 25:1–16), and Strange also testified that he had observed behavior that he "would not consider to be ethical or responsible . . . in response to

these sort of [sexual abuse] allegations" and that "lent more credibility to those claims" *id.* 14:13–18.

97.     David Alan Johnson has no personal knowledge of sexual abuse or cover-up. Johnson Depo. at 18:3-14, 21:14-19, 13:4-16, 10:10-12 (Exhibit 40).

**RESPONSE:**     Defendant denies the statements in Paragraph 97 because Johnson testified about three instances of allegations of sexual abuse he was aware of.  ECF 101-8 (Johnson Depo. 10:23–11:13, 26:9–27:5).

98.     Nathan Sullivan has no personal knowledge of sexual abuse or cover-up. Sullivan Depo. at 10:14-22, 14:15-15:4, 15:15-24 (Exhibit 41).

**RESPONSE:**     Defendant denies the statements in Paragraph 98 because Sullivan testified that "[his] expulsion from [The Satanic Temple] was a part of . . . covering up the ethics complaint where the [sexual] harassment was an underpinning factor," ECF 101-4 (Sullivan Depo. 16:3–8).

99.     Lucien Greaves has no personal knowledge of sexual abuse or cover-up. Greaves Decl. ¶ 4; see also Greaves Depo. 18:14-19:15 (Exhibit 39).

**RESPONSE:**     Defendant denies the statements in Paragraph 99 because Greaves admitted that he was aware of an article written by former Satanic Temple member Jex Blackmore, in which she claims she "experienced harassment and abuse from members who have now left the organization" and admitted that The Satanic Temple did not conduct any investigation into Blackmore's claims.  ECF 101-15; ECF 101-1 (Greaves Depo. 74:4–8).

100.    Dr. Joe Laycock has no personal knowledge of sexual abuse or cover-up. Laycock Decl. ¶¶ 6-7.

**RESPONSE:**    Defendant denies the statements in Paragraph 100 because Dr. Laycock's book about The Satanic Temple, *Speak of the Devil*, references Blackmore's article and states that, "[Blackmore] reported experiencing harassment and abuse while in [The Satanic Temple]."  ECF 101-16 (NEWSWEEK191). Dr. Laycock's book also indicates that he interviewed Blackmore for his book.  Tesoriero Decl. Ex. 2 (NEWSWEEK121).

101.    Matthew Kezhaya has no personal knowledge of sexual abuse or cover-up. Kezhaya Decl. ¶ 6.

**RESPONSE:**    Defendant lacks sufficient knowledge to form a belief as to the truth of the statements in Paragraph 101 and therefore denies them.

102.    From 2013 – 2019, Dr. Laycock interviewed over 50 people in connection with his book: *Speak of the Devil: How The Satanic Temple is Changing the Way We Talk about Religion* (Oxford Press, 2020). Laycock Decl. ¶¶ 3-4.

**RESPONSE:**    Defendant lacks sufficient knowledge to form a belief as to the truth of the statements in Paragraph 101 and therefore denies them.

103.    Among the people interviewed by Dr. Laycock were ex-members. Laycock Decl. ¶ 4.

**RESPONSE:**    Defendant admits the statements in Paragraph 103.

104.    Dr. Laycock heard rumors about sexual harassment, but never from anyone firsthand. Laycock Decl. ¶ 5.

**RESPONSE:**    Defendant admits that Dr. Laycock heard rumors about sexual harassment but otherwise denies the statements in Paragraph 104 because Dr. Laycock's book

about The Satanic Temple, *Speak of the Devil*, references Blackmore's article and states that, "[Blackmore] reported experiencing harassment and abuse while in [The Satanic Temple]." ECF 101-16 (NEWSWEEK191). Dr. Laycock's book also indicates that he interviewed Blackmore for his book. Tesoriero Decl. Ex. 2 (NEWSWEEK121).

105.    Dr. Laycock did not hear any rumors about coverup of sexual harassment. Laycock Decl. ¶ 6.

**RESPONSE:**    Defendant lacks sufficient knowledge to form a belief as to the truth of the statements in Paragraph 105 and therefore denies them.

106.    Dr. Laycock also attended events for The Satanic Temple sufficient to testify to the culture within The Satanic Temple. He did not see any permutation of sexual abuse or cover up. Laycock Decl. ¶¶ 9-10.

**RESPONSE:**    Defendant objects to this statement because it is not material, or even relevant, to any claim or defense at issue in this litigation. *See* F. R. Civ. P. 56; L.R. 56.1(a). Defendant also objects to this statement because it is not supported by any admissible evidence. Fed. R. Civ. P. 56(c)(1)(A), 56(c)(2).

Subject to these objections, Defendant lacks sufficient knowledge to form a belief as to the truth of the statements in Paragraph 106 and therefore denies them.

107.    In fact, The Satanic Temple does *not* engage in sexual abuse or cover up. Stevens Depo. at 12:20-13:10, 44:17-45:7, 160:10-20 (Exhibit 43).

**RESPONSE:**    Defendant denies the statements in Paragraph 107 for the reasons set forth in response to Paragraphs 70, 76, 78, 96–100, 104, 108, and 110–12, and in Counterstatement Paragraphs 158–68, and 191–211.

108.     To the contrary, The Satanic Temple has specific reporting and investigation requirements about any form of sexual misconduct. Stevens Depo. at 12:20-14:16, 26:6–27:7, 28:4-31:15 (Exhibit 43).

**RESPONSE:**     Defendant denies the statements in Paragraph 108 because they are not supported by the cited testimony, which generally explains the role of the Suryan Council, but does not set forth the investigation and reporting requirements for "any form of sexual misconduct."  *See* ECF 110-7 (Deposition of Gregory Stevens, dated November 3, 2023 ("Stevens Depo.") 12:20–14:16, 26:6-27:7, 28:4-31:15).

109.     Part of The Satanic Temple's reporting and investigation requirements include advising claimants to make a police report. Stevens Depo. at 28:4-18 (Exhibit 43).

**REPONSE:**     Defendant admits that Stevens testified that the Suryan Counsel's policy includes encouraging a sexual assault victim to file a police report. ECF 110-7 (Stevens Depo. 28:4–11).

110.     The Satanic Temple's reporting and investigation requirements prohibit retaliation. Stevens Depo. 91:16-20; 92:2-14 (Exhibit 43).

**RESPONSE:**     Defendant denies the statements in Paragraph 110 because they are not supported by the cited testimony.  *See* ECF 110-7 (Stevens Depo. 91:16–20 (describing an effort to "minimize the change of retaliation" but not stating The Satanic Temple's reporting and investigation requirements prohibit retaliation), 92:2–14 (same)).

111.     The Satanic Temple's reporting and investigation requirements predate the article by more than one year. See Stevens Depo. at 13:11–16 (Exhibit 43).

**RESPONSE:**        Defendant admits that the Suryan Council was established in 2020 or 2021, and that the Article was published in 2021, and otherwise denies the statements in Paragraph 111. ECF 110-7 (Stevens Depo. 50:14–23); Compl. Ex. 1.

112.     Every instance in which a claim of sexual harassment has been made known to The Satanic Temple's decisionmakers, the perpetrator of the misconduct has either voluntarily stepped down or has been removed. Stevens Depo. at 50:24-51:5 and 86:10-17 (Exhibit 43).

**RESPONSE:**        Defendant denies the statements in Paragraph 112 because it is not supported by the cited testimony, *see* ECF 110-7 (Stevens Depo. 50:24–51:5 (testifying about the informal nature of handling complaints, not about the result of all known complaints), 86:10–17 (testifying regarding one example of an accused member stepping down)), and because Plaintiff has admitted there were complaints prior to 2020 that were not formally addressed, ECF 101-2 (Stevens Depo. 83:9–12).

113.     Nancy Cooper requested a statement be included to the article, that The Satanic Temple doesn't "actually have an abortion ritual" and that "it's a piece of political theatre." Exhibit 19 (Cooper19).

**RESPONSE:**        Defendant objects to this statement because it is not material, or even relevant, to any claim or defense at issue in this litigation.  *See* F. R. Civ. P. 56; L.R. 56.1(a).

Subject to this objection, Defendant admits that, during the editing process, Cooper suggested adding "a phrase about the abortion suit" and indicated she believed it was "political theater" but otherwise denies the statements in Paragraph 113. ECF 105-22 (COOPER21).

114.     Julia Duin resisted that insertion, stating: "I don't *know* that's true and of course TST would never admit that." Exhibit 3 (Cooper37).

**RESPONSE:**        Defendant objects to this statement because it is not material, or even relevant, to any claim or defense at issue in this litigation.  *See* F. R. Civ. P. 56; L.R. 56.1(a).

Subject to this objection, Defendant admits that Duin wrote to Cooper, "I don't *know* that's true and of course TST would never admit that" and otherwise denies the statements in Paragraph 114. ECF 105-3 (COOPER37).

115.     Nancy Cooper insisted on its inclusion: "Okay to say that TST does not appear to practice abortion as a ritual?" Exhibit 6 (Cooper48); but see Cooper Depo. at 166:16-23 (Exhibit 37).

**RESPONSE:**        Defendant objects to this statement because it is not material, or even relevant, to any claim or defense at issue in this litigation.  *See* F. R. Civ. P. 56; L.R. 56.1(a).

Subject to this objection, Defendant admits that Cooper wrote to Duin, "Okay to say that TST does not appear to practice abortion as a ritual?" and otherwise denies the statements in Paragraph 115.  ECF 105-22 (COOPER19).

116.     Nancy Cooper did not engage in any fact investigation for the article, only Julia Duin performed any fact checking of this article. Cooper Depo. at 140:4-24 (Exhibit 37).

**RESPONSE:**        Defendant admits the statements in Paragraph 116.

117.     During Julia Duin's entire career at Newsweek, nobody ever fact-checked any of her articles. Cooper Depo. at 140:17-20 (Exhibit 37).

**RESPONSE:**        Defendant admits the statements in Paragraph 117.

118.    Nancy Cooper did not inquire into Julia Duin's investigation at all. Cooper Depo. at 160:24-161:8 (Exhibit 37); *see also id.* at 192:24-193:5 and 223:23-224:8.

**RESPONSE:**    Defendant admits that Cooper did not independently fact check the Article but otherwise denies the allegations in Paragraph 118.  *See* ECF 110-13 (Cooper Depo. 183:7–17 (Duin represented to Cooper that she had "fact-checked this [Article] until [her] eyes were bleary.").

119.    Newsweek does not employ fact-checkers. Cooper Depo. at 133:13-17 (Exhibit 37).

**RESPONSE:**    Defendant admits that Newsweek does not employ persons whose sole job responsibility it is to fact check.

120.    Nancy Cooper, and Newsweek, had "faith" in Julia Duin's reporting. Cooper Depo. 233:4-7 (Exhibit 37).

**RESPONSE:**    Defendant admits the statements in Paragraph 120.

121.    Nancy Cooper praised this article three times:

    a.  Exhibit 23 (Cooper45) (October 28, 2021 at 1:01 PM: "Fabulous stuff here! Wow.")

    b.  Exhibit 24 (Cooper40) (October 29, 2021 at 8:28 AM: "Looks great!"); and

    c.  Exhibit 25 (NEWSWEEK377) (October 29, 2021 at 3:19 PM: "Thanks again for terrific story!").

**RESPONSE:**    Defendant admits that Nancy Cooper sent Julia Duin the emails identified Paragraph 121.

122.     On October 29, 2021 at 8:02 PM, Julia Duin reported back to Kevin J. Jones of the Catholic News Agency: "The Newsweek folks love it - first article I've turned in that they've raved about - so that's good." Exhibit 20 (NEWSWEEK 465).

**RESPONSE:**     Defendant admits the statements in Paragraph 122.

123.     On October 29, 2021 at 5:41 PM, Lucien Greaves took issue with the article statement. Exhibit 26 (NEWSWEEK032) ("nor is there any truth to the claim that we've covered up sexual abuse.").

**RESPONSE:**     Defendant admits that on October 29, 2021, Greaves emailed Duin and indicated he was unhappy with the Article and otherwise denies the statements in Paragraph 123. ECF 105-26 (NEWSWEEK032).

124.     On October 30, 2021, undersigned counsel issued a demand for retraction and specifically took issue with the article statement. Exhibit 27 (Compl. Ex. 5), at 8 ¶ 16 ("This is not journalism, it is gossip-mongering.").

**RESPONSE:**     Defendant admits the statements in Paragraph 124.

125.     Newsweek did not and, to this day, has not issued any retraction.

**RESPONSE:**     Defendant admits the statements in Paragraph 125.

126.     The article immediately drew unfavorable comparisons between The Satanic Temple and the Catholic Church. Exhibit 1 (Compl. Ex. 1), at 22:

> a.   "At a glance I thought it was the Catholic Church in hot water again."
>
> b.   "Oh sorry, I thought this story was about the Catholic Church."
>
> c.   "They should just settle...[*sic*] like the Catholic Church does. The damage won't be as much if no minor is involved."

**RESPONSE:**      Defendant objects to and denies the statements in Paragraph 126 because it is not material, or even relevant, to any claim or defense at issue in this litigation.  *See* F. R. Civ. P. 56; L.R. 56.1(a).  Defendant also objects to this statement because it is hearsay and not supported by any admissible evidence. F.R.E. 801(c); Fed. R. Civ. P. 56(c)(1)(A), 56(c)(2).

127.    People have canceled their recurring donations to The Satanic Temple because of the article. Stevens Depo. 153:13-19 (Exhibit 43); Jarry Decl. ¶ 4.

**RESPONSE:**      Defendant objects to and denies the statements in Paragraph 127 because it is hearsay and not supported by any admissible evidence. F.R.E. 801(c); Fed. R. Civ. P. 56(c)(1)(A), 56(c)(2); ECF 110-7 (Stevens Depo. 153:8 ("I can't give you numbers.")).

128.    Others have pointed to the article as proof of the truth of the matters asserted within it. Stevens Depo. 153:20-25 (Exhibit 43); Jarry Decl. ¶ 4.

**RESPONSE:**      Defendant objects to and denies the statements in Paragraph 128 because it is hearsay and not supported by any admissible evidence. F.R.E. 801(c); Fed. R. Civ. P. 56(c)(1)(A), 56(c)(2); ECF 110-7 (Stevens Depo. 153:20–25 (referring generally to the concern that people will point to the Article but not identify any specific incidents)).

129.    To combat the ill effects of the article, The Satanic Temple hired a public relations firm. Jarry Decl. ¶ 5.; Exhibit 28 (Invoice no. 7204).

**RESPONSE:**      Defendant objects to this statement because what services the public relations firm provided is not supported by admissible evidence. *See* Fed. R. Civ. P. 56(c)(1)(A), 56(c)(2).

Subject to these objections, Defendant lacks sufficient knowledge to form a belief as to the truth of the statements in Paragraph 129 and therefore denies them.

130.    To combat the ill effects of the article, The Satanic Temple retained a public

relations professional from July 2022 – June 2023. Jarry Decl. ¶ 5.; Exhibits 29-36 (Invoice

nos.1001-1039).

**RESPONSE:**    Defendant objects to this statement because there is no admissible

evidence supporting the claim that all costs were incurred as a result of the Article. *See* Fed. R.

Civ. P. 56(c)(1)(A), 56(c)(2).

Subject to these objections, Defendant lacks sufficient knowledge to form a belief as to

the truth of the statements in Paragraph 130 and therefore denies them.

131.    The sum of The Satanic Temple's remediation expenses is $43,350. Jarry Decl. ¶

5.; Exhibits 28-36 (Invoice no. 7204 and nos. 1001-1039).

**RESPONSE:**    Defendant objects to this statement because there is no admissible

evidence supporting the claim that any costs were incurred as a result of the Article. *See* Fed. R.

Civ. P. 56(c)(1)(A), 56(c)(2).

Subject to this objection, Defendant admits that Plaintiff produced invoices purporting to

be from a Public Relations service, and otherwise denies the allegations in paragraph 131.

132.    The Satanic Temple has also suffered general reputational damages in an amount

to be determined by the fact-finder.

**RESPONSE:**    Defendant objects to and denies the statements in Paragraph 132

because there is no admissible evidence offered in support of the statements. *See* Fed. R. Civ. P.

56(c)(1)(A), 56(c)(2).

133. The Satanic Temple also seeks punitive damages in an amount to be determined by the fact-finder.

**RESPONSE:** Defendant objects to the statements in Paragraph 133 because there is no admissible evidence offered in support of Plaintiff's claim for punitive damages.

Subject to this objection, Defendant admits that Plaintiff's Complaint includes a claim for punitive damages but denies that Plaintiff is entitled to punitive damages.

134. Newsweek has supplied no polling data to substantiate a claim that The Satanic Temple is a "household name." Kezhaya Decl. ¶ 7.

**RESPONSE:** Defendants object to this statement because it is not material, or even relevant, to any claim or defense at issue in this litigation. *See* Fed. R. Civ. P. 56; L.R. 56.1(a).

Subject to this objection, Defendant admits it has not produced polling data regarding The Satanic Temple and otherwise denies the statements in Paragraph 134.

135. Julia Duin denied familiarity with The Satanic Temple prior to receiving the idea for this article from the Catholic News Agency's reporter. Duin Depo. at 73:7-8 (Exhibit 38); see also Exhibit 13 (JDUIN001).

**RESPONSE:** Defendant admits the statements in Paragraph 135.

136. Nancy Cooper denied even hearing of The Satanic Temple prior to Julia Duin's pitch of this article. Cooper Depo. at 145:22-146:5, 153:13-17 (Exhibit 37); see also Exhibit 15 (Cooper51-52).

**RESPONSE:** Defendant admits the statements in Paragraph 136.

## <u>COUNTERSTATEMENT OF UNDISPUTED MATERIAL FACTS</u>

### The Parties

137.    The Satanic Temple, Inc. has chapters throughout the United States.  Compl. ¶¶ 87, 89, 90 (identifying chapters of The Satanic Temple in Washington, West Florida, and Arizona).

138.    The Satanic Temple was founded in or around 2013 or 2014.  ECF 101-1 (Greaves Depo. 6:23–7:2).

139.    The Satanic Temple "engages in various charitable activities" and "advocates for the religious rights of its membership" through litigation, among other forms of advocacy. Compl. ¶¶ 14, 15.

140.    The Satanic Temple publishes press releases to promote Satanic Temple activities, campaigns, and issues.  ECF 101-1 (Greaves Depo. 26:14–27:13).

141.    The press releases are sent to numerous media outlets.  ECF 101-1 (Greaves Depo. 30:2–7).

142.    The Satanic Temple publishes press releases so that people are aware of the group and what it is doing.  ECF 101-2 (Stevens Depo. 141:23–142:4).

143.    Through the press releases, The Satanic Temple sometimes has "specific political or specific initiatives which [it] promote[s]." ECF 101-2 (Stevens Depo. 143:2–4).

144.    The Satanic Temple relies on the public knowing about The Satanic Temple's activities, including lawsuits it files, in order to generate donations. ECF 101-1 (Greaves Depo. 38:5–15).

145.    The Satanic Temple also uses billboards to advertise its initiatives.  ECF 101-2 (Stevens Depo. 146:12–147:11).

146.     Greaves has done multiple interviews with Tucker Carlson, on Fox news radio, and with Chris Hayes on MSNBC, to discuss The Satanic Temple.  ECF 101-1 (Greaves Depo. 40:8–41:3).

### The Washington Lawsuit

147.     In 2020, The Satanic Temple filed a lawsuit for defamation and "cyberpiracy" against several former members of its Washington Chapter in the United States District Court for the Western District of Washington (the "Washington Lawsuit").  *United Fed'n of Churches v. Johnson*, 522 F.Supp.3d 842 (W.D. Wash. 2021), *recons. denied*, 2022 WL 1093025 (W.D. Wash. 2022), *aff'd in part, vacated in part and remanded,* 2023 WL 8271978 (9th Cir., Nov. 30, 2023); Compl. ¶ 19.

148.     The defendants in the Washington Lawsuit are David Alan Johnson, Leah Fishbaugh, Mickey Meeham (a/k/a Joshua Calavera), and Nathan Sullivan, who are former members of The Satanic Temple and now members of a group called Queer Satanic.  *See gen., Johnson*, 522 F.Supp.3d 842.

149.     Queer Satanic operates a social media account under the handle @QueerSatanic. ECF 101-3 (Duin Depo.93:16–19); ECF 101-4 (Sullivan Depo. 6:15–17).

### The Article

#### *Background*

150.     After the Washington Lawsuit was dismissed by the District Court, Newsweek reporter Julia Duin received an email from Kevin Jones, a journalist with the Catholic News Agency, stating that former members of The Satanic Temple had told him about The Satanic Temple's alleged use of "defamation lawsuits . . . to harass internal critics." ECF 101-3 (Duin Depo. 37:16–38:9); ECF 101-5 (JDUIN002).

151.    Duin is a freelancer who worked for Newsweek as an independent contractor from September 1, 2021 until February 2023.  ECF 101-3 (Duin Depo. 29:3–4, 78:1–16).

152.    Duin has been a journalist for over forty-five years.  ECF 101-3 (Duin Depo. 183:10–12).

153.    Duin has received multiple awards for her reporting, including awards from the Religion News Writers Association, the Associated Press, and the Religion Communicators Council.  ECF 101-3 (Duin Depo. 11:13–12:9).

154.    Duin has published six books about religion.  ECF 101-3 (Duin Depo. 15:5–21).

155.    Duin served as a visiting journalism professor at the University of Alaska at Fairbanks, a visiting professor at Union University, an adjunct professor at the University of Maryland, and an adjunct professor at Patrick Henry University.  ECF 101-3 (Duin Depo. 15:22–16:11).

156.    Duin has a master's degree in religious studies from Trinity Episcopal School for Ministry.  ECF 101-3 (Duin Depo. 88:4–19).

### Researching the Article

157.    In connection with her research for the Article, Duin communicated with the Queer Satanic members in person and via their @queersatanic social media account.  *See* ECF 101-3 (Duin Depo. 91:10–21 (referring to her in person interview with members of Queer Satanic), 93:3–19 (referring to her social media communications with members of Queer Satanic)); ECF 101-6 (JDUIN019-025).

158.    When Duin communicated with Nathan Sullivan, he told her that the Queer Satanic members had been removed from the Washington Chapter of The Satanic Temple because they were copied on an ethics complaint, and that the ethics complaint involved the

mismanagement of a sexual harassment complaint within the Washington Chapter.  ECF 101-4

(Sullivan Depo. 16:3–12; 22:11–23:21); ECF 101-7 (JDUIN018).

159.    Sullivan also sent Duin social media posts between a member of The Satanic

Temple and The Satanic Temple's International Council, in which the member claimed she was

removed from groups within The Satanic Temple after publicly criticizing the behavior of

Satanic Temple leaders for, among other things, making inappropriate sexual comments.  ECF

101-6 (JDUIN019-025).

160.    When Duin communicated with David Johnson, he told her that he had been a

witness to a sexual harassment complaint within The Satanic Temple.  ECF 101-8 (Johnson

Depo. 10:23–11:13).

161.    On October 24, 2021, Duin emailed Scott Malphas, a former member of The

Satanic Temple, and asked if he would "mind telling [her] what chapter you were part of . . . ,

when you left [The Satanic Temple] and why."  ECF 101-9 (DUIN48-003).

162.    Duin's October 24th email to Malphas did not mention sexual abuse.  *Id.*

163.    In response to Duin's email, Malphas stated that he would be "happy to share

[his] experience with her," and further stated:

> There was an account of sexual assault, and the response was "we are looking into
> it," then never followup [sic]. One individual was in charge of on-boarding new
> chapters . . . turns out they were using their authority to coerce potential chapter
> leaders into having sex. That person was protected by the national council and
> executive leadership, for months . . . until they finally "stepped down" and the
> allegations of statutory rape were never addressed.
> [. . .]
> The nail in the coffin for me was when I found out that the national council had
> been reviewing and approving official events that included orgies. [. . .] Well,
> shortly after the first celebration, national council released "sex-positive
> guidelines." It was clear that this was in response to the complaints of sexual
> assault; an effort to shed responsibility."

ECF 101-9 (DUIN48-002–48-003).

164.     On October 24, 2021, Duin emailed Jinx Strange (a/k/a Paul Millirons), another

former member of The Satanic Temple, and asked if he would "mind telling [her] what chapter

you were part of, when you left [The Satanic Temple] and why."  ECF 101-10

(NEWSWEEK017).

165.     Duin's October 24th email to Strange did not mention sexual abuse.  *Id.*

166.     Strange wrote a lengthy response to Duin, in which he stated that he had heard

"concerning" stories from other members of The Satanic Temple, and that:

> A lot of times those things were anecdotal or unsupported, but sometimes they were
> very concerning. Screenshots or images of things and connections I hadn't seen
> before. Leaders posing happily with major alt-right media figures. Accounts of
> sexual abuse being covered up in ways that were more than anecdotal.  Dozens of
> people kicked out for asking for financial records from this alleged-non-profit
> organization.

ECF 101-10 (NEWSWEEK16).

167.     Strange explained that he ceased his involvement with The Satanic Temple after

hearing accounts of sexual abuse and "observ[ing] behavior on social media by people [he]

understood to be leaders in [The Satanic Temple]," which appeared to be efforts to cover up

those allegations.  ECF 101-11 (Strange Depo. 11:7–15).

168.     Duin found the sources who told her about allegations of sexual abuse within The

Satanic Temple credible "[b]ecause [Scott Malphas] was a true believer when he came in, and so

was Jinx.  And they were all true believers, and they saw stuff they didn't like, and they left.

They all . . . wanted to believe.  They all came in, and they believed in the organization, and they

left not believing in it."  ECF 101-3 (Duin Depo. 175:24–176:4).

169.    Duin also interviewed Lucien Greaves, spokesperson and co-founder of The Satanic Temple as part of her research for the Article.  ECF 101-3 (Duin Depo. 103:13, 104:4–7); ECF 101-1 (Greaves Depo. 14:10–12).

170.    During Duin's communications with Greaves, Greaves generally denied claims against The Satanic Temple. ECF 101-3 (Duin Depo. 124:15–18, 126:17–24).

171.    On October 29, 2021, Duin emailed Greaves and asked him about Malphas's complaints that The Satanic Temple's national council had been "approving official events that included orgies."  ECF 101-12 (NEWSWEEK027).

172.    In response, Greaves stated that "[n]o events are compulsory to continued membership within [The Satanic Temple]."  *Id.*

173.    Duin also interviewed Matt Kezhaya, The Satanic Temple's general counsel, as part of her research on the Article.  ECF 101-3 (Duin Depo. 103:22–104:7).

### *Writing the Article*

174.    The Article begins:

Can you defame a religion, especially one that doesn't believe in God, Satan or the supernatural?

The answer to that question could cost four former members of The Satanic Temple (TST) more than $140,000 in damages, including "reputation losses," in a civil lawsuit that has dragged on for more than a year and a half.

Compl. Ex. 1.

175.    The Article then sets forth the claims in the Washington Lawsuit, provides some background on The Satanic Temple's founding and history, and describes the involvement of each defendant in the organization.  *Id.*  The Article also outlines other recent legal disputes involving The Satanic Temple, reports on complaints other former members have made about The Satanic Temple's practices, and includes responses from Greaves and Kezhaya.  *Id.*  Finally,

the Article details the holding of the federal court that dismissed Plaintiff's claims, notes that "[The Satanic Temple's] brand is still under debate in Seattle," and concludes with comments from both sides in the Washington Lawsuit on the relative merits of their positions.  *Id.*

176.    As background, and as part of the reporting on other complaints made by other former members, the Article includes Jinx Strange's quote that he left The Satanic Temple after hearing "[a]ccounts of sexual abuse being covered up in ways that were more than anecdotal."  *Id.*

177.    While Duin found the Article Statement "inherently plausible," she did not intend to accuse The Satanic Temple of any wrongdoing by including the Article Statement in the Article.  ECF 101-3 (Duin Depo. 134:23–135:1); *see also* ECF 101-3 (Duin Depo. 99:13–15 ("[The Article] was not an investigation into the sexual abuse or the finances or the alt-right figures.")).

178.    Rather, Duin included the Article Statement "[b]ecause it gave a general view of the various controversies surrounding The Satanic Temple."  ECF 101-3 (Duin Depo. 100:1–2).

179.    Duin "was looking for . . . [Jinx Strange's] perception of what The Satanic Temple was about.  What he thought, what his experience was, what he was hearing from other people." ECF 101-3 (Duin Depo. 102: 5–11).

180.    Two paragraphs after the Article Statement, the Article includes Lucien Greaves' statement that he considers complaints about The Satanic Temple "old news" and that, "We get this litany of senseless disparaging claims against us that says we're a religious group acting in a nefarious manner."  Compl. Ex. 1.

181.    Duin put Greaves's general denial about claims made against The Satanic Temple after the Article Statement because she believed Greaves's denial applied to the "various

accusations" made against The Satanic Temple, including the Article Statement.  ECF 101-3 (Duin Depo. 128:20–129:7).

### *Editing the Article*

182.     Cooper testified that Duin was hired as a religion reporter for Newsweek because "[s]he was an experienced religion reporter," who had "won [] awards," and was "interested in the topic and knew about it."  ECF 101-13 (Cooper Depo. 70:6–13).

183.     Regarding Duin's experience as a reporter, Cooper further testified that "she clearly knew what she was talking about.  She was an experienced reporter . . . [S]he had been a reporter for other news outlets and covered religion for them." ECF 101-13 (Cooper Depo. 203:8–23).

184.     Newsweek relied on Duin to fact check her articles.  ECF 101-13 (Cooper Depo. 140:21–24).

185.     Duin represented to Cooper that she had "fact-checked this [Article] until [her] eyes were bleary."  ECF 101-13 (Cooper Depo 183:7–17); *see also* ECF 101-14 (COOPER49 ("Whew . . . have factchecked until I am buggy-eyed.")).

186.     Duin typically did not provide Cooper with notes for her articles because Duin "is a very experienced senior person who was hired to be on this [religion] beat who knows this beat, and I [Cooper] don't re-report stories.  That's not an editor's role."  ECF 101-13 (Cooper Depo. 157:16–2).

187.     Cooper saw no evidence Duin was biased in her reporting on The Satanic Temple. ECF 101-13 (Cooper Depo. 222:6–17).

188.     Cooper understood the Article Statement to be a report of claims people were making, not an accusation of legal guilt.  ECF 101-13 (Cooper Depo. 209:5–14).

189.     Cooper believes the Article Statement was true.  ECF 101-13 (Cooper Depo. 184:17–21).

190.     Cooper believes that Newsweek did not intend to, and did not, defame The Satanic Temple by publishing the Article Statement.  ECF 101-13 (Cooper Depo. 229:6–8).

**Additional Support for The Article Statement**

191.     Regarding allegations of sexual abuse within The Satanic Temple, Strange recalled that:

> One case was the case at the heart of the Washington Chapter issue. My understanding is that someone came forward with an allegation, and then they were immediately removed and as well as anyone it was just perceived might support them.

> The second was a young woman from, I believe, the Austin TST Chapter at the time. Her name was Kylie Scenario, and very similarly, my understanding was that she had made an allegation and was immediately removed, possibly along with other supporters.

> The third instance is a personal friend who confided in me something that happened to her at a—at a party.

ECF 101-11 (Strange Depo. 25:1–16).

192.     Regarding the sexual harassment claim he was a witness to, Johnson testified:

> There was a former member of the local [Satanic Temple] group who had been, from my understanding, repeatedly made to feel uncomfortable by a much older member. . . They left because it was non-addressed for months, and then I found out about it in 2020.

ECF 101-8 (Johnson Depo. 11:7–13).

193.     Regarding other accounts of sexual abuse he had hear about, Johnson testified that:

> [T]he most significant one would be a member of what was then The Satanic Temple, Austin chapter, who claimed that they were sexually assaulted by a chapter head. And in response to this, the—my understanding is that the chapter head and their partner, who was the leader of a Dallas group, created a doxing website to

attack the person who talked about being sexually assaulted . . . The person in
Austin who posted about it had public Facebook posts talking about their
experience . . . .

ECF 101-8 (Johnson Decl. 26:9–22).

194.   Johnson also testified that:

[The Satanic Temple] has a holiday called Lupercalia . . . It's a celebration of
sexuality, supposedly.  I know that the co-owner of [The Satanic Temple], Doug
Misicko, used to solicit nudes for that. I don't know how comfortable everyone was
with those things, but I know that some people talked about how Luercalia made
them feel uncomfortable.

ECF 101-8 (Johnson Decl. 26:24–27:5).

195.   Regarding his removal from the Washington Chapter, Sullivan testified:

My expulsion [from The Satanic Temple] was a part of . . . covering up the ethics
complaint where the harassment was an underpinning factor. The chapter head at
the time explicitly said that the—the reason for my removal was because I was a
witness to that e-mail.

ECF 101-4 (Sullivan Depo. 16:3–8).

196.   Jex Blackmore is a former member of The Satanic Temple.  ECF 101-2 (Stevens

Depo. 130:6–15).

197.   In August 2018, Blackmore wrote an article published on Medium in which she

wrote:

While I was part of the organization, [The Satanic Temple], I witnessed male
members of the organization exploit their position and influence to behave
inappropriately and disrespectfully towards women. I myself experienced
harassment and abuse from members who have now left the organization. I know
that my experience is one of many examples of systemic gaslighting, degradation
and bulling that many women have experienced within [The Satanic Temple] over
the years.

ECF 101-3 (Stevens Depo. 135:18–136:13); ECF 101-15.

198.   The Satanic Temple has admitted that "[o]ver the years we received a handful of

complaints that were sexual in nature but not 'sexual assault.'"  ECF 101-17.

199.    One such complaint was submitted by Enid Cooper, a former member of The

Satanic Temple San Jose, in December 2017.  *Id.*

200.    Enid Cooper complained that: "One of the leadership, Miles Teg (Gus Hernandez)

pulled me aside during the picnic and mentioned that he had seen me online and thought I was

'beautiful.'  I politely declined because I was with my date and excused myself to go back to my

seat. At this point, he followed me to my table where I was seated with my date and proceeded to

talk about his piercing on his penis, even going as far as looking for objects that were

comparable in shape to his genitals."  *Id.*

201.    Regarding Enid Cooper's complaint, The Satanic Temple's 30(b)(6) witness

testified:

> Enid Cooper had made some complaints to national council and then was being
> very, very aggressive in not leaving, what are you going to do about it, what are
> you going to do about it, what are you going to do about it, repeatedly and very
> quickly, and that that led to some frustration because it's like you never want to tell
> somebody who is filing a complaint like to not . . . but at the same time sometimes
> looking in to things takes time, and Enid Cooper was not having I guess any of that.

ECF 101-2 (Stevens Depo. 73:13–74:3).

202.    In April 2020, a complaint was lodged against The Satanic Temple Austin

Chapter. ECF 101-17.

203.    The Satanic Temple admitted that:

- A [Satanic Temple] Austin member (Laura Smith) emailed NC [National
  Council] with the allegation that the [Satanic Temple] Austin Chapter Head
  (Shelby Scates) sexually assaulted another person (Kiley) whom they were
  friends with.

- NC's initial response was to encourage Kiley to file a police response, due
  to the seriousness of the allegations. She refused.

- (May) Laura Smith and other friends of Kiley reached out to individual
  [Satanic Temple] members to "warn" them with these claims. This

escalated to them threatening to "go public" with the claim that TST was "covering up" the accusations.

- (June) Shelby emailed NC stating that he was stepping down from leadership and away from [The Satanic Temple].

*Id.*

204.    Regarding the Austin Chapter Complaint, The Satanic Temple's 30(b)(6) witness

testified:

> [T]he allegation was that Shelby sexually assaulted Kiley. The report was e-mailed in by a person who was a friend of Kiley's and an ex of Shelby's . . . Over the course of the following month or so . . . it seemed like there was a lot of effort to reach out to people, [The Satanic Temple] members individually, to, you know, warn people, sway people . . . and it got to a point where someone, it was Laura, threatened to go public quote unquote, whatever that means, with the claim that [The Satanic Temple] was covering up these accusations, and it was at that point that Shelby stepped down.

ECF 101-2 (Stevens Depo. 111:5–25).

205.    Regarding the Austin Chapter's response to the Austin Chapter Complaint, The

Satanic Temple's 30(b)(6) witness testified that after the alleged perpetrator "stepped down"

from his leadership position, the alleged victim and people who continued to raise the issue at

Chapter meeting were removed from the Austin Chapter.  ECF 101-2 (Stevens Depo. 114:10–23,

115:5–12, 117:4–6, 117:12–20).

206.    In addition to the above testimony, there are numerous social media posts in

which individuals purporting to be former members of The Satanic Temple have publicly

recounted experiences of sexual abuse within The Satanic Temple and expressed their frustration

with how such complaints were handled, including:

- A Facebook post and a X (formerly Twitter) post by a former Satanic Temple member, Rumor Solanine, dated May 2, 2021, in which the author shared screenshots of a chat with Southern California Satanic Temple leaders, and stated, "It's such a shame @satanic_temple_ turned out to be so hypocritical[.]  We all had such high hopes for them[.] Covering up abusive behavior from your leaders

to maintain an external image is gross[.] Punishing the victims and rewarding the abusers is gross[.] TST should be ashamed." ECF 101-18.

- A series of Facebook posts by a former Satanic Temple Member, "D.E.M.," dated March 8, 2020, in which the author described their experience of sexual harassment within the then-Seattle chapter of The Satanic Temple, stating, "First, the same [Satanic Temple] member was allowed to sexually harass me, over 5 reported counts, and even going as far as looking up my dress during The Womxns March movement while licking his lips, with the chapter doing nothing to prevent it from happening." The same person also stated on May 8, 2020, "I left The Satanic Temple then Seattle Chapter, now known as the WA State Chapter, in 2017 following the lack of action and care when I stepped forward, multiple times with proof, that I was being sexually harassed and groomed by an older member of the chapter since 2015. That member wasn't removed until 7 months later, when other femme presenting members said they were now being harassed, as well. [The Satanic Temple] WA then sent out an e-mail stating a member had been removed for inappropriate behaviors towards other members. In that e-mail, they anonymously mentioned my reports, by stating 'There were reports made by previous members, but those could of been handled between each other, and we didn't feel it necessary to intervene.'" ECF 101-19.

- A Reddit thread, from a former Satanic Temple member in the Philadelphia area dated February 15, 2020, in which the former member claims they were attending a Satanic Temple event at which there was "lots of unwanted touching, kissing, [and] a lot of pressure to be sexual and very 'out.'" ECF 101-20.

- A series of Facebook posts by a former member of The Satanic Temple Austin Chapter, who stated on September 11, 2020, "Guess who just got banned from TST for filing a report about a member of leadership in TST raping them along with everyone that has been talking to the police. This gal!" ECF 101-21.

207.    Within The Satanic Temple, member complaints about violations of The Satanic Temple code of conduct, including allegations of sexual assault, are handled by the Suryan Council. ECF 101-1 (Greaves Depo. 19:16–19); ECF 101-2 (Stevens Depo. 12:20–25, 25:24–26:15).

208.    The Suryan Council was not formed until 2020. ECF 101-2 (Stevens Depo. 13:11–16).

209.    Prior to the formation of the Suryan Council, The Satanic Temple lacked a formal process for handling complaints, including complaints involving sexual abuse.  ECF 101-2 (Stevens Depo. 82:19–82:4).

210.    Prior to 2020 there were complaints that were not formally addressed.  ECF 101-2 (Stevens Depo. 83:9–12).

211.    The Satanic Temple did not conduct any investigation into Blackmore's claims from the Medium article.  ECF 101-1 (Greaves Depo. 74:4–8).


Dated:   May 31, 2024                    Respectfully submitted,


                                         /s/*Cameron Stracher*
                                         Cameron Stracher
                                         Sara C. Tesoriero
                                         CAMERON STRACHER, PLLC
                                         51 Astor Place, 9th Floor
                                         New York, NY 10003
                                         Tel: 646.992.3850
                                         Fax: 646.992.4241
                                         cam@stracherlaw.com
                                         sara@stracherlaw.com

                                         *Attorneys for Defendant Newsweek Digital, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 31, 2024, I caused a true copy of the foregoing to be served on all counsel of record via ECF.

/s/ *Sara C. Tesoriero*
Sara C. Tesoriero, Esq.