UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| The Satanic Temple, Inc.<br><br>*Plaintiff*<br><br>v.<br><br>Newsweek Digital LLC<br><br>*Defendant.* | 1:22-cv-1343 (MKV)<br><br>**REPLY ON THE SATANIC TEMPLE'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY** |

Respectfully submitted on June 7, 2024,

By: /s/ Matt Kezhaya

Matt Kezhaya (# 0402193) (*phv*)
KEZHAYA LAW PLC
150 S. Fifth St., Suite 1850
Minneapolis, MN 55402
phone: (479) 431-6112
email: matt@kezhaya.law

# TABLE OF CONTENTS

Table of contents .................................................................................................................. ii
Table of authorities ............................................................................................................. iii
Argument ............................................................................................................................. 1
   1: The statement is provably false. ................................................................................... 2
      1.1: The Article Statement is a falsifiable claim of fact. ............................................. 2
      1.2: Passing on a rumor is still actionable. ................................................................. 3
      1.3: The Temple does not engage in sexual abuse or cover-up. ................................. 5
      1.4: Newsweek has no competent evidence to support a truth defense. ...................... 6
   2: Newsweek is at least negligent with respect to the claim. .......................................... 7
      2.1: The Temple is a private figure. ............................................................................ 7
      2.2: At issue is a matter of private concern. ............................................................... 8
      2.3: The objective indicia give rise to an inference of actual malice. ......................... 9

## TABLE OF AUTHORITIES

**Cases**

*600 W. 115th St. Corp. v. Von Gutfeld*, 80 N.Y.2d 130 (1992) ................................................................. 2, 4

*Biro v. Conde Nast*, 883 F. Supp. 2d 441 (S.D.N.Y. 2012) ................................................................. 3, 7

*Carroll v. Trump*, 685 F. Supp. 3d 267 (S.D.N.Y. 2023) ................................................................. 2, 3

*Celle v. Filipino Rep. Enterprises Inc.*, 209 F.3d 163 (2d Cir. 2000) ................................................................. 6

*Dunlop-McCullen v. Rogers*, No. 00 CIV.3274(JSR)(JCF), 2002 WL 1205029 (S.D.N.Y. Feb. 21, 2002) ................... 6

*Gil v. Pizzarotti, LLC*, No. 1:19-CV-03497-MKV, 2021 WL 1178027 (S.D.N.Y. Mar. 29, 2021) ...................... 7

*Gross v. New York Times Co.*, 82 N.Y.2d 146 (1993) ................................................................. 2

*Huggins v. Moore*, 94 N.Y.2d 296 (1999) ................................................................. 7, 8, 9

*Khan v. New York Times Co.*, 269 A.D.2d 74 (N.Y. App. Div. 2000) ................................................................. 9

*King v. Globe Newspaper Co.*, 400 Mass. 705 (1987) ................................................................. 9

*Krauss v. Globe Int'l, Inc.*, 251 A.D.2d 191 (N.Y. App. Div. 1998) ................................................................. 8

*Lindberg v. Dow Jones & Co., Inc.*, No. 20-CV-8231 (LAK), 2021 WL 3605621 (S.D.N.Y. Aug. 11, 2021) ................. 8

*Loeb v. New Times Commc'ns Corp.*, 497 F. Supp. 85 (S.D.N.Y. 1980) ................................................................. 10

*Milkovich v. Lorain J. Co.*, 497 U.S. 1 (1990) ................................................................. 3

*Palin v. New York Times Co.*,
   940 F.3d 804 (2d Cir. 2019) ................................................................................................ 9

*Scacchetti v. Gannett Co.*,
   90 A.D.2d 985 (N.Y. App. Div. 1982) ................................................................................ 8

*Steinhilber v. Alphonse*,
   68 N.Y.2d 283 (1986) .......................................................................................................... 2

*Stern v. Cosby*,
   645 F. Supp. 2d 258 (S.D.N.Y. 2009) ................................................................................. 2

*Sweeney v. Prisoners' Legal Servs. Of New York, Inc.*,
   84 N.Y.2d 786, 793 (1995) .................................................................................................. 9

*Time, Inc. v. Firestone*,
   424 U.S. 448 (1976) ............................................................................................................ 8

*Yiamouyiannis v. Consumers Union of U. S., Inc.*,
   619 F.2d 932 (2d Cir. 1980) ................................................................................................ 7

**Statutes**

CPLR § 76-a .................................................................................................................................. 8

**Other Authorities**

*Dictionary of Psychology*, "Sexual Abuse" ................................................................................. 3

*Dictionary of Psychology*, "Sexual Contact" .............................................................................. 3

**Rules**

FRCP 56 ................................................................................................................................... 7, 8

LR Civ. 56.1 ................................................................................................................................. 7

Second Circuit Rule 32.1.1 .......................................................................................................... 6

**Treatises**

30B *Fed. Prac. & Proc. Evid.* § 6718 (2024 ed.) ........................................................................ 7

# ARGUMENT

The Temple asserts grounds for summary judgment on all four elements of defamation. Newsweek only responds to the first and second elements. The Court should enter partial summary judgment on the third and fourth elements by concession. At issue is a single claim over an unprivileged, unauthorized defamatory *per se* statement which caused special harm.

The statement is false. The Temple presented evidence and well-founded testimony to support that it prohibits sexual misconduct, investigates complaints, directs the complainant to make a police report when appropriate (*i.e.*, in cases of "sexual abuse"), and all offending members have been either removed or voluntarily departed. Newsweek responds that the article merely recites Strange's stated basis for dissociating from the Temple. That is barred by the republishing rule. As a fallback position, Newsweek relies on hearsay. This is *verboten*.

Newsweek has fault. Simple negligence applies because the statement is about a private figure on a matter of private concern. Newsweek offers no legal or factual basis to contest either ground. Even if a showing of actual malice was required, the undisputed evidence shows it. Newsweek's own Editorial Guidelines, drafted and otherwise enforced by the very editor for this article, required factchecking and an opportunity to respond and prohibited reliance on anonymous hearsay conveyed by a hostile source. Newsweek offers no response to the point that Cooper breached her own subjective standard of care when she approved the publishing of this defamatory *per se* statement. No part of this record shows that Newsweek had any concern for the truth. It shows that Newsweek set out to accuse the Temple of sexual wrongdoing and, when the facts didn't support that claim, it published the accusation anyway. Newsweek consciously disregarded its own subjective standards. That is actual malice.

## 1: The statement is provably false.

*1.1: The Article Statement is a falsifiable claim of fact.*

The article statement is provably false, *i.e.*, it pertains to facts as opposed to an unfalsifiable opinion. *Gross v. New York Times Co.*, 82 N.Y.2d 146, 152-53 (1993); *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 286 (1986). The article statement is: "He [Jinx Strange] soon left the group, then was leaked material about … 'Accounts of sexual abuse being covered up in ways that were more than anecdotal.'" ECF No. 113 ¶ 9. These words are actionable claims of fact because they are "commonly understood to mean criminal behavior and refer to verifiable acts." *600 W. 115th St. Corp. v. Von Gutfeld*, 80 N.Y.2d 130, 143 (1992); *Stern v. Cosby*, 645 F. Supp. 2d 258, 284 (S.D.N.Y. 2009) (statement is actionable which "in substance accuse[d] Stern of murder") accord. ECF No. 113 ¶ 59 (Depo. Cooper 186:24-187:6) (Q: "Would you agree with me that covering up sexual abuse would be a criminal act?" A: "Yes.")[1]

Newsweek contends that these words should be given meaning, not by the dictionary or as determined by the Court, but by the *post hoc* testimony of the rumormongers whose "delicious quotes" Newsweek uncritically chose to publish. Response at 21-22; ECF No. 113 ¶¶ 60, 91. But the issue at hand asks whether a "reasonable listener" could have concluded that the delicious quote is "conveying facts about the plaintiff." *Von Gutfeld*, 80 N.Y.2d at 139. Given the dictionary definition of the words Newsweek chose to publish, the article statement

---

[1] Newsweek objects that this question called for a legal conclusion. ECF No. 113 ¶ 59. It didn't. The Temple relies on the dictionary definition and the sworn testimony of its opposing party's Rule 30(b)(6) representative, not some technical argument based on a penal statute. *See Carroll v. Trump*, 685 F. Supp. 3d 267, 277 (S.D.N.Y. 2023) (applying dictionary definition to ascertain the legal question of what the reasonable listener understood, rejecting counter-plaintiff's "fine and shaded distinction" drawn by reference to a penal statute).

can only be understood as "an articulation of an objectively verifiable event." *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 22 (1990). Newsweek also points to half the definition of sexual abuse in the "Dictionary of Psychology." This is a jargon definition which runs afoul of the rule to construe how a "reasonable reader" would interpret the words. *Carroll*, 685 F. Supp. 3d at 277. If the "delicious quote" appeared in *Psychology Today*, Newsweek would begin to have a colorable point. Even then, the remaining half of the American Psychological Association's definition defeats Newsweek's point: sexual abuse entails "sexual contact."[2] "Sexual contact" more particularly entails touching, not words: "any person-to-person *touching* or *connection with genital or erogenous skin* … as in fondling, kissing, biting, or coitus" (emphasis added).[3] Once again, Newsweek's own authorities betray it.

*1.2: Passing on a rumor is still actionable.*

Newsweek's response chiefly contends that it cannot be held liable for defamation because it merely passed on Strange's stated basis for leaving the Temple. Response at 18-19.[4] There are two problems. *First*, binding caselaw precludes that defense: "one who republishes a libel is subject to liability just as if he had published it originally, even though he attributes the libelous statement to the original publisher, and even though he expressly disavows the truth of the statement." *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 461 (S.D.N.Y. 2012) (quoting *Cianci*

---

[2] American Psychological Association, *Dictionary of Psychology*, "Sexual Abuse" available at https://dictionary.apa.org/sexual-abuse (last visited June 6, 2024) ("Although the term typically is used with reference to any *sexual contact* between adults and children, sexual abuse can also occur in any relationship of trust") (emphasis added).

[3] American Psychological Association, *Dictionary of Psychology*, "Sexual Contact" available at https://dictionary.apa.org/sexual-contact (last visited June 6, 2024)

[4] Citations are to the ECF header's page number, *e.g.*, "Response at 18" is paginated as 13.

*v. New Times Pub. Co.*, 639 F.2d 54, 60–61 (2d Cir.1980)). This is hornbook law which the Temple has been repeating since the pleadings stage. See ECF No. 21, at 6 ("a newspaper is subject to liability if it republishes a defamatory statement, although it names the author and another newspaper in which the statement first appeared.") (quoting *Restatement (Second) of Torts* § 578, cmt. b (1977)). Newsweek's defense is inapt under black-letter, binding law.

*Second*, the article does not state that Strange left "because he heard about accounts of sexual abuse being covered up." Response at 19. The text of the article is that he left "*then* was leaked material about … Accounts of sexual abuse being covered up in ways that were more than anecdotal." ECF No. 105-1, at 17 (emphasis added). The non-existent "leaked material" was purportedly received *after* he left, it is impossible for it to have caused his departure. ECF No. 121 ¶ 105 (the words "leaked" and "materials" do not appear in his email).

A newspaper's decision to publish "is the product of some deliberation, not of the heat of a moment." *Von Gutfeld*, 80 N.Y.2d at 142. Prior to its publication, the article statement had to pass through the hands of "professional editors" and thus "carrie[d] with it the cloak of credibility and authority of the particular newspaper and the profession." Id.; accord. ECF No. 113, at ¶¶ 4-6, 14, 28, 29 (it is undisputed that Newsweek was, until recently, one of the "Big Three" news magazines and that this article was edited by Newsweek's global editor in chief, a "much more experienced editor" than who otherwise supervised Duin). Given the undisputed facts, the only inference to be drawn is that the reasonable reader will be "less skeptical and more willing to conclude that the report is stating or implying facts garnered by a professional news gatherer and reporter." *Id.* The Court should find that the article statement, published under the name of a recently credible newspaper, is actionable because it implies the existence of undisclosed "leaked material" which purportedly shows "sexual

– 4 –

abuse being covered up in ways that are more than anecdotal."

### *1.3: The Temple does not engage in sexual abuse or cover-up.*

The article statement is false: the Temple does *not* engage in sexual abuse or cover-up. The Temple has a code of conduct which prohibits sexual misconduct, provides a complaint process to address sexual misconduct of any sort (including "sexual abuse"), investigates those complaints, directs the complainant to make a police report when appropriate (*i.e.*, in cases of "sexual abuse"), and provides an appropriate resolution for the facts of the particular case which has uniformly resulted in the removal or departure of the offending member. ECF No. 113 ¶¶ 107-112. Newsweek responds that the process wasn't formalized until 2020, so "it could not possibly determine whether and how complaints of sexual abuse were handled prior to that time." Response at 16. At most, this is an appeal to ignorance, the assertion of "metaphysical doubt" of the kind that does not defeat a motion for summary judgment. *See Sheindlin v. Brady*, 597 F. Supp. 3d 607, 622 (S.D.N.Y. 2022). More importantly, Newsweek's response disregards the evidence. Prior to the Suryan Council, complaints were *informally* addressed by the National Council. ECF No. 116 ¶ 88-91 (Newsweek's Exhibit 17 addresses the pre-2020 process and complaints resolved in July 2018, August 2019, and April 2020).

Newsweek's response offers nothing to controvert the material facts that the Temple prohibits sexual abuse, not engages in it, and invites public scrutiny into accusations of criminal sexual acts, not covers up the same. Even Newsweek admits that the Temple has an investigative and reporting structure which both predated the article and involve a directive to file a police report in a case of "sexual abuse." ECF No. 113 ¶¶ 108-109. Problems only arose when the rare individual got confounded by the Temple's "evidence-based" disciplinary decisions when they apparently expected the Temple to instead "act[] on accusations." Compare ECF

No. 104 ¶ 107 (Depo. Stevens 90:19-24) with ECF No. 116 ¶¶ 82, 86. The article statement is proven false by the evidence that the Temple prohibits all sexual misconduct and directs a police report be made about accusations of sexual abuse.

*1.4: Newsweek has no competent evidence to support a truth defense.*

Rather than present admissible evidence of "sexual abuse being covered up in ways that are more than anecdotal," Newsweek bristles at the idea of competing with a general denial. Response at 17. As grounds, Newsweek singularly relies on *Celle v. Filipino Rep. Enterprises Inc.*, 209 F.3d 163, 188 (2d Cir. 2000).[5] There, the "colorless denial" was a "bald assertion of falsity" without a foundation to support the denial. *Id.* The question was whether a radio station had "dwindling listeners and advertisers" which could have been falsified by discussing advertising trends or with evidence of sales. *Id.* To contrast, *Celle* upheld a finding of falsity on the testimony that (1) "AT & T was not withdrawing its sponsorship of Radyo Pinoy an that AT & T was not being shortchanged on advertising time," (2) that "AT &T had never complained to Radyo Pinoy that it was being shortchanged" and (3) that "AT & T continued advertising with Radyo Pinoy." *Id.*, at 189. The evidence cited at ECF No. 104 ¶¶ 107-112 more than satisfies the *Celle* requirement of laying a foundation to support a general denial.

Because the Temple presented a well-founded basis to find that the article statement falsely accused the Temple of sexual abuse and cover-up, it was incumbent upon Newsweek to present admissible evidence of the statement's truth. *See Dunlop-McCullen v. Rogers*, No. 00 CIV.3274(JSR)(JCF), 2002 WL 1205029, at *6 (S.D.N.Y. Feb. 21, 2002) (burden shifts to

---

[5] Newsweek also relies on a summary order which "do[es] not have precedential effect." Second Circuit Rule 32.1.1(a).

non-movant to defeat the motion); *Yiamouyiannis v. Consumers Union of U. S., Inc.*, 619 F.2d 932, 940 (2d Cir. 1980) (defamation cases use the normal summary judgment standards).

On this point, Newsweek offers nothing but internet hearsay. *Gil v. Pizzarotti, LLC*, No. 1:19-CV-03497-MKV, 2021 WL 1178027, at *7 n.3 (S.D.N.Y. Mar. 29, 2021). Initially, Newsweek contends that the hearsay it relies upon isn't for the truth of the matter asserted. Response at 20 n. 6. But the non-truth purpose of the evidence must be relevant in the first place. 30B *Fed. Prac. & Proc. Evid.* § 6718 (2024 ed.). The fact of the rumors is irrelevant because repeating rumors is no defense to liability. *Biro*, 883 F. Supp. 2d at 461. Even then, Newsweek quickly abandons the pretext of its non-truth purpose. Response at 20-21 (relying on the rumors to prove the truth of the rumors). Every single witness Newsweek can call has denied having any personal knowledge to substantiate the truth of the matters asserted within the rumors. ECF No. 113 ¶¶ 94-101; FRE 602 (requirement of personal knowledge). Thus, Newsweek has nothing to compete with the Temple's proof that it does *not* engage in sexual abuse or cover-up. LR Civ. 56.1(d). The Court should summarily find falsity. FRCP 56(g).

## 2: Newsweek is at least negligent with respect to the claim.

The third element requires proof that the publisher made the statement with "fault," which requires at least negligence. Simple negligence is the threshold for liability, here, because the Temple is a private figure and at issue is "mere gossip" on a matter of "prurient interest" which is a private concern. *Huggins v. Moore*, 94 N.Y.2d 296, 302 (1999).

### 2.1: The Temple is a private figure.

Newsweek bears the burden to show that the Temple is a public figure. *Scacchetti v. Gannett*

*Co.*, 90 A.D.2d 985, 986 (N.Y. App. Div. 1982). In full, Newsweek's discussion reads: "The Satanic Temple is a public figure," followed by a recitation of the elements for a limited public figure. ECF No. 112, at 23 n. 8. There is no effort to tie any evidence to the elements, nor any response to the points and authorities in the Temple's memorandum. The Court should find that Newsweek failed to meet its burden and that fthe Temple is a private figure. FRCP 56(g).

*2.2: At issue is a matter of private concern.*

Newsweek also blithely disregards the Temple's comprehensive briefing on the point that the article statement is on a matter of private concern. Response, at 23-24. Instead, it relies upon a statute which only incorporates the public *vs.* private concern inquiry. CPLR § 76-a(d); *Lindberg v. Dow Jones & Co., Inc.*, No. 20-CV-8231 (LAK), 2021 WL 3605621, at *7 (S.D.N.Y. Aug. 11, 2021). The article statement is unabashed rumormongering about private disputes among private individuals as pertains to their sex lives, *i.e.*, the very definition of "private concern." *Krauss v. Globe Int'l, Inc.*, 251 A.D.2d 191, 192 (N.Y. App. Div. 1998); *Time, Inc. v. Firestone*, 424 U.S. 448, 454 (1976). As to Newsweek's two #MeToo cases, this article isn't presented as part of the #MeToo movement nor is it about power dynamics in the workplace.

Newsweek provides neither evidence nor authority to support the proposition that the rumor it passed on was "arguably within the sphere of legitimate public concern, which is reasonably related to matters warranting public exposition." *Chapadeau v. Utica Observer-Dispatch*, 38 N.Y.2d 196, 199 (1975). Nor does Newsweek respond to the point that the rumor falls "into the realm of mere gossip and prurient interest." *Huggins*, 94 N.Y.2d at 302. Instead, Newsweek leans in to the point that it engaged in outright gossipmongering. Response at 19-20. The simple fact of the matter, unacknowledged by Newsweek's response, is that the rumormongering Newsweek participated in is "directed only to a limited, private audience."

*Huggins*, 94 N.Y.2d at 303. Nobody outside of the Temple has any legitimate concern about the "handful of complaints that were sexual in nature *but not* 'sexual assault.'" ECF No. 100 ¶ 79 (emphasis added). And the article statement was included, notwithstanding that it was outside the "focus" of the article, because it was a "delicious quote." ECF No. 113 ¶¶ 8, 91. That presentation of alleged criminal sexual activity was clickbait, purely included to cause scandal and promote ridicule of the Temple "just in time for Halloween." Id. ¶¶ 48, 89, 91.

*2.3: The objective indicia give rise to an inference of actual malice.*

Even if actual malice was the threshold for liability, the undisputed evidence shows it. It is indisputable that Cooper ignored her own Editorial Guidelines, which she drafted and otherwise enforced, in the publishing of this article. ECF No. 113 ¶¶ 26, 56. Newsweek responds that violating someone *else's* standards is not sufficient to show actual malice. Response, at 26. That is non-responsive. Cooper had to consciously disregard her *own* standards to publish this hit piece. *Khan v. New York Times Co.*, 269 A.D.2d 74, 77 (N.Y. App. Div. 2000).

From its very conception, this article was going to include a claim of covered up sexual abuse. Id. ¶¶ 46, 50; *Palin v. New York Times Co.*, 940 F.3d 804 (2d Cir. 2019) (pre-determined narrative as actual malice). Cooper took no action to ascertain whether Duin performed an investigation (there was none); even though the Editorial Guidelines required fact-checking. Id. ¶¶ 58, 59, 89, 118; *accord. Sweeney v. Prisoners' Legal Servs. Of New York, Inc.*, 84 N.Y.2d 786 (1995) (deliberate avoidance of truth as actual malice). She published this accusation of sexual criminality, even though the text of the article shows that it was based on the overt retelling of hearsay by a biased source; although the Editorial Guidelines require reliance on only "credible" sources. Id. ¶¶ 65, 69, 73-74; *accord. King v. Globe Newspaper Co.*, 400 Mass. 705, 721–22 (1987) (sole reliance on "hearsay perhaps multi-level" as actual malice). A plain

reading of the article shows that Greaves was not given an opportunity to comment; although the Editorial Guidelines requires one. *Id.* ¶¶ 57, 81-83. And the emails show in real time that Cooper contributed a fabricated claim that the Temple falsifies its ritual activities and overruled *Duin's* objection they had no basis to make the claim. *Id.* ¶¶ 113-115. Cooper consciously disregarded her own standards and published this claim without any factual basis to believe it was true. That is actual malice.

Newsweek misrepresents the record when it contends that Duin relied on "four separate sources," who were "true believers" which ostensibly left because of "what they observed." Response at 27-28. The accusation of covered up sexual abuse was derived solely from Strange, not from four separate sources. *Id.* ¶¶ 73-74; see also ECF No. 116 ¶ 25 (QueerSatanic made no mention of sexual abuse or cover-up). Strange denied being "involved." ECF No. 105-17 at 1. And Strange never claimed to have "observed" anything. *Id.* ¶¶ 77-80.

Newsweek's authority is distinguishable. Response at 27-28; *Loeb v. New Times Commc'ns Corp.*, 497 F. Supp. 85, 93 (S.D.N.Y. 1980) (emphasis added). There, the defendants presented an "overwhelming showing" that the article was "prepared with a reasonable concern for the truth." *Id.* The authors investigated their claims for "over a year" and interviewed more than 200 "friends and enemies," and poured through 40 years' worth of documents. *Id.*, at 89 n 5. Newsweek, on the other hand, published a "delicious quote" from one enemy, without investigation, without inquiry, and without opportunity to comment. *Id.* ¶¶ 88-93. Because Newsweek offers nothing to show that it published this statement with a reasonable concern for the truth, *id.*, the Court should summarily find actual malice.

Respectfully submitted on June 7, 2024,

|  |  |
|---:|:---|
| By: | */s/ Matt Kezhaya* |
|  | Matt Kezhaya (# 0402193) |
|  | Kezhaya Law PLC |
|  | 150 S. Fifth St., Suite 1850 |
|  | Minneapolis, MN 55402 |
| phone: | (479) 431-6112 |
| email: | matt@kezhaya.law |

## Certificate of service

**Notice is given** that I, Matt Kezhaya, efiled the foregoing document by uploading it to the Court's CM/ECF system on June 7, 2024, which sends service to registered users, including all other counsel of record in this cause. *s/ Matt Kezhaya*