# Exhibit 49

Excerpts of deposition of David Alan Johnson
(November 17, 2023)

**In the Matter Of:**

# THE SATANIC TEMPLE

vs

# NEWSWEEK DIGITAL

---

## DAVID JOHNSON

November 17, 2023

---



**Moburg Reporting**

33400 9th Ave. South, Suite 207

Federal Way, WA 98003

(206) 622-3110

www.MoburgReporting.com

```
 1              UNITED STATES DISTRICT COURT

 2             SOUTHERN DISTRICT OF NEW YORK

 3    ---------------------------------------------------
                                            )
 4    THE SATANIC TEMPLE, INC.,             )
                                            )
 5              Plaintiff,                  )
                                            )
 6       vs.                                )NO. 1:22-CV-01343-MKV
                                            )
 7    NEWSWEEK DIGITAL, LLC,                )
                                            )
 8              Defendant.                  )
                                            )
 9    ---------------------------------------------------

10       Videotaped Deposition Upon Oral Examination

11                          of

12               DAVID ALAN JOHNSON

13    ---------------------------------------------------

14             Friday, November 17, 2023

15                     9:36 a.m.

16             7900 Southeast 28th Street

17             Mercer Island, Washington

18

19

20

21

22

23

24    Cheryl Macdonald, CRR, RMR
      Court Reporter
25    License No. 2498
```

**COPY**

Page 10

1  after a complaint was made.  It could be incidental.
2  They could be removed for some other reason besides
3  that.
4     Q.   So if they were removed because of the
5  complaint, though, then that's not a cover-up, in your
6  opinion; is that correct?
7        MS. TESORIERO:  Objection to form.
8     A.   I think it depends on the particulars of
9  the situation.
10    Q.   Okay.  Have you personally witnessed any
11 sexual abuse within The Satanic Temple?
12    A.   I have not.
13    Q.   You gave an interview to Julia Duin at some
14 point previously; is that correct?
15    A.   That is correct.
16    Q.   During that interview you indicated --
17 well, let's back up.  I believe during that interview
18 you indicated that you were a witness to a sexual
19 harassment complaint.  Do you recall that?
20    A.   That sounds correct, yes.
21    Q.   And when I say "I believe," I'm not sure if
22 it was you or if it was someone else.  So unpacking it
23 slightly, did you indicate to Julia Duin that you were
24 a witness to a sexual harassment complaint?
25    A.   I believe that is correct, yes.

Page 11

1     Q.   Okay.  In your definition of sexual abuse,
2  whatever the sexual harassment complaint was, was that
3  sexual abuse?
4     A.   I don't know that I feel qualified to say.
5     Q.   Okay.  Well, what was the sexual harassment
6  complaint?
7     A.   There was a former member of the local
8  TST group who had been, from my understanding,
9  repeatedly made to feel uncomfortable by a much older
10 member.  I think -- I think this was in a period of
11 2017 to 2018.  So it was before I was a member.  They
12 left because it was nonaddressed for months, and then
13 I found out about it in 2020.
14    Q.   Let's unpack that slightly.  You indicated
15 that you were a listed witness on a complaint;
16 correct?
17        MR. ROLLER:  Object to the form.  I think
18 it misstates prior testimony.
19    Q.   Let me rephrase.  You indicated to Duin
20 that you were a listed witness on a sexual harassment
21 complaint; correct?
22    A.   I'm not -- I'm not sure.  There was a
23 complaint by a person who was no longer a member.  We
24 found out about it in 2020, and then that was brought
25 up.  That's when I was made aware of it.

Page 12

1     Q.   You say when "that was brought up."  What
2  was brought up?
3     A.   In 2020, when the former member, who was
4  unhappy about the way their sexual harassment had been
5  treated, talked publicly about it, as their
6  unhappiness with their treatment in the organization.
7     Q.   Was this a written complaint or an
8  unwritten complaint?
9     A.   I believe it was a Facebook post.
10    Q.   So this was -- backing up slightly, are you
11 familiar with the concept of National Council or
12 International Council?
13    A.   Within the context of The Satanic Temple?
14    Q.   Correct.
15    A.   My understanding is that the National
16 Council and International Council were a leadership
17 committee directly below Doug Misicko and Cevin
18 Soling, the executive committee.
19    Q.   But the question posed is whether you're
20 familiar with them in the first place.  So that's a
21 yes, correct?
22    A.   If what I just said was accurate, then yes.
23    Q.   Within your understanding, did
24 International Council or National Council investigate
25 matters of claims of sexual harassment?

Page 13

1        MS. TESORIERO:  Objection to form.
2        MR. ROLLER:  Object to form.
3     A.   Sorry.  Could you restate the question?
4     Q.   In your understanding, did national -- I'm
5  just going to call it the National Council.  In your
6  understanding, did National Council investigate claims
7  of sexual harassment?
8     A.   I am not sure.  I have heard that that's
9  so.
10    Q.   Okay.  But you lack personal knowledge;
11 correct?
12    A.   That's correct.
13    Q.   Okay.  Do you have any personal knowledge
14 whether the person who claimed sexual harassment ever
15 raised a complaint to national council?
16    A.   I do not know that, no.
17    Q.   You indicated that you were a witness.  I'm
18 having trouble understanding how you are a witness in
19 this complaint.
20        MR. ROLLER:  Object to the form.
21    Q.   Please help me understand that.  You
22 indicated to Duin, "We were a witness", correct?
23    A.   I'm not sure what the -- that's what we
24 said.  If that's what the transcript is, then that's
25 what we said.



November 17, 2023
THE SATANIC TEMPLE vs NEWSWEEK DIGITAL                     David Johnson

Page 14

1    Q.   Well, let's interject there and play the
2 clip.  So for benefit of the record, we're pulling
3 Newsweek 390, which is a portion of an -- which prior
4 testimony has established that this is a portion of an
5 interview between Duin and four prior members of The
6 Satanic Temple.
7    A.   I do not believe it was four.  It was three
8 people were there.
9    Q.   Oh, okay.  So prior testimony suggested it
10 was you, Leah Fishbaugh, and --
11    A.   Nathan Sullivan.
12    Q.   Okay, yes.  So who is the fourth member of
13 QueerSatanic?
14    A.   The fourth person that you're suing is
15 Micky Powell.
16    Q.   And Micky was not at this interview; is
17 that correct?
18    A.   That is correct.
19    Q.   So returning again to the audio clip, this
20 is Newsweek 390.  We have a four-minute clip from that
21 interview.  Prior testimony established that this was
22 approximately an hour-and-a-half-long interview; is
23 that correct?
24    A.   I am not sure.  It's been a while.  So I
25 don't recall.

Page 15

1         (Tape played.)
2    Q.   Pausing at 16 seconds, a male voice is
3 speaking here.  Is that Nathan Sullivan?
4    A.   That's Nathan Sullivan.
5         (Tape played.)
6    Q.   Pausing at 50.  So thus far, Nathan tells
7 Duin that there was an ethics complaint.  It was
8 e-mailed, and several of us were listed as witnesses.
9 Were you one of the "several of us"?
10       MS. TESORIERO:  Objection to form.
11    A.   I was CC'd on that e-mail, yes.
12    Q.   So this terminology "listed as witnesses,"
13 is that just because you were CC'd on the e-mail?
14    A.   I believe so, yes.
15    Q.   And when did this e-mail take place?
16    A.   By recollection, it was in March of 2020.
17    Q.   Who sent the e-mail?
18    A.   Another former member who is not a party in
19 the suit.
20    Q.   So not one of the four constituting QS.
21 Was it the former member who claimed sexual
22 harassment?
23    A.   No.
24    Q.   Who was it?
25    A.   It was another former member who knew that

Page 16

1 person.
2    Q.   Okay.  But I need to find this e-mail.  So
3 do you recall the e-mail address?
4    A.   I do not.
5    Q.   Do you recall whether they used a
6 pseudonym?
7    A.   I believe they were going by Wylie,
8 W-Y-L-I-E.
9    Q.   Do you recall Wylie's last name?
10    A.   Duffy, D-U-F-F-Y.
11    Q.   And to clarify, that is a pseudonym, to the
12 best of your knowledge; correct?
13    A.   Correct.
14    Q.   Do you recall whether this was a Gmail
15 address?
16    A.   It was probably a Gmail address.
17    Q.   Do you know where Wylie is?
18    A.   I do, yes.
19    Q.   Where is Wylie?
20    A.   They live in Seattle.
21    Q.   Do you have Wylie's residential address?
22    A.   I do not, no.
23    Q.   Do you have Wylie's work address?
24    A.   I do not.
25    Q.   Do you have Wylie's telephone number?

Page 17

1    A.   I might.
2    Q.   Do you have Wylie's e-mail address?
3    A.   I would have Wylie's e-mail address, yes.
4    Q.   Do you have this e-mail?
5    A.   You mean off the top of my head?
6    Q.   Yes.
7    A.   No.
8    Q.   So off the top of your head you know that
9 you do not have his e-mail?
10    A.   I can't recall to you what the e-mail
11 address is.
12    Q.   No, no.  I'm not asking whether you can
13 recall the e-mail address.  I'm asking whether you
14 have that e-mail.  If I were to, for example, issue a
15 subpoena duces tecum, could you produce the e-mail?
16    A.   I haven't checked in a while.  I might be
17 able to.
18    Q.   Returning your attention to the earlier
19 testimony.  You did not personally witness this
20 particular event; correct?
21    A.   Can you specify what this particular event
22 is?
23    Q.   This e-mail complaint raised by Wylie Duffy
24 about sexual harassment that continued on for some
25 period of time three years before you were a member.



November 17, 2023
THE SATANIC TEMPLE vs NEWSWEEK DIGITAL                                      David Johnson

Page 18

1   A.   I did not witness the sexual harassment
2   before I was a member, that's correct.
3   Q.   And have you seen any other sexual abuse of
4   any sort within The Satanic Temple?
5       MS. TESORIERO:  Objection to form.
6   A.   When you say that, do you mean have I
7   witnessed with my own eyes?
8   Q.   Correct, yeah.  You personally.
9   A.   No, I don't believe so.
10  Q.   Okay.  So any knowledge you have would be
11  based on hearsay; is that correct?
12      MR. ROLLER:  Object to the form.
13  A.   Knowledge I have comes from other people
14  who experienced things, yes.
15  Q.   And the information that you received from
16  other people who experienced things, did they give you
17  this information under penalty of perjury?
18      MS. TESORIERO:  Objection to form.
19  A.   No.
20  Q.   This complaint in 2020, did you raise any
21  criminal complaints on the matter?
22  A.   I did not.
23  Q.   To your knowledge, were any criminal
24  complaints ever raised?
25  A.   To my knowledge, no.

Page 19

1   Q.   To your knowledge, were there ever any
2   criminal charges on the matter?
3   A.   To my knowledge, no.
4       MR. KEZHAYA:  I think we're at a good place
5   to take a break.
6       THE VIDEOGRAPHER:  We're now going off the
7   record.  The time is now 9:56 a.m.
8       (Recess.)
9       THE VIDEOGRAPHER:  We are now back on the
10  record.  The time is now 10:02 a.m.
11  Q.   Do you recall the name of the person about
12  whom this 2017 sexual harassment claim was raised?
13  A.   I believe I know their pseudonym.
14  Q.   What is their pseudonym?
15  A.   Dice Marlow.
16  Q.   How do I spell Dice?
17  A.   D-I-C-E, and then Marlow, I believe, is
18  M-A-R-L-O-W.
19  Q.   Do you recall the name or pseudonym of the
20  person who allegedly sexually harassed Dice Marlow?
21  A.   To my recollection, the pseudonym was John
22  Milton.
23  Q.   Do you know whether John Milton, as of
24  2020, was still a member of TST Washington?
25  A.   To my knowledge he was not.

Page 20

1   Q.   So to be more particular, you personally
2   know that he was not a member of TST Washington in
3   2020; correct?
4       MR. ROLLER:  Object to the form, but you
5   can answer.
6   A.   That's a somewhat complicated question
7   because membership was not kept up in a particularly
8   organized way.  So, to my knowledge, he was not a
9   member anymore.
10  Q.   But I'm trying to ascertain -- you say to
11  your knowledge, meaning you affirmatively know that he
12  was not; is that correct?
13  A.   I do not know that he was not.
14  Q.   Okay.
15  A.   Yeah.
16  Q.   And how do you know that or -- strike that.
17      What would constitute him being a member or
18  not a member of TST Washington, in your opinion?
19  A.   In my mind?
20  Q.   Mm-hmm.
21  A.   There were lists of people who were
22  members.  However, those lists were not up to date.
23  So sometimes people who were supposedly expelled were
24  not actually, like, officially expelled, if that makes
25  sense.

Page 21

1   Q.   Yeah, meaning their name was not struck
2   from some list; correct?
3   A.   No.  There were lists of active members and
4   supposedly expelled members, but this was not kept up
5   to date in any sort of accurate way, in my experience
6   with the organization.
7   Q.   Did TST Washington have in-person events?
8   A.   They did, yes.
9   Q.   If John Milton showed up at one of those
10  in-person events, would he have been removed?
11  A.   I am not sure.
12  Q.   Would he have been welcomed?
13  A.   I am not sure.
14  Q.   Did you ever tell Duin that you personally
15  witnessed any form of sexual abuse?
16  A.   Not to my knowledge, no.
17  Q.   Did you ever tell Duin that you personally
18  witnessed any form of cover-up?
19  A.   Not to my recollection, no.
20  Q.   Did Duin ever ask you for any clarifying
21  details as to the ethics complaint?
22      MS. TESORIERO:  Objection to form.
23  A.   Not to my recollection, but if you have the
24  interview, then that would -- that should say that.
25  Q.   So, in other words, if it's not in the

Page 22

1  clip, there was no follow-up writings, you know,
2  asking follow-up questions.  Is that --
3     A.   Not to my recollection.
4     Q.   Okay.  Did Duin ever ask you for any
5  clarifying details as to cover-up?
6     A.   Not to my recollection.
7     Q.   Did Duin ever ask you any follow-up
8  questions about issues raised by Jinx Strange?
9        MS. TESORIERO:  Objection to form.
10    A.   Not to my recollection.
11    Q.   Do you recall the time difference between
12  the interview and you providing Duin contact
13  information for Jinx Strange?
14    A.   I do not know.
15    Q.   And I earlier asked you more generally --
16  let's establish that foundation.  Did you personally
17  provide Duin the contact information for Jinx Strange?
18    A.   I honestly don't recall.
19    Q.   Do you recall how Duin received the contact
20  information for Jinx Strange?
21       MR. ROLLER:  Objection to form.
22       MS. TESORIERO:  Objection.
23    A.   I do not know.
24       MR. KEZHAYA:  Okay.  Pass the witness.
25       MS. TESORIERO:  Thank you.

Page 23

1              EXAMINATION
2  BY MS. TESORIERO:
3     Q.   Good morning, Mr. Johnson.  Thank you for
4  being here.  As I said earlier, my name is Sara
5  Tesoriero.  I'm an attorney for Newsweek, who is the
6  defendant in this case.  I just have a couple
7  follow-up questions.
8        First, a point of clarification from the
9  earlier conversation.  Did you say that John Milton
10  was the accused in the complaint we've been
11  discussing?
12    A.   I believe that's correct, yes.
13    Q.   And Dice Marlow was the alleged victim?
14    A.   That's correct.
15    Q.   Thank you.  Turning to the discussion you
16  and the other QueerSatanic members and Duin had during
17  the interview.  Based on the interview, it is my
18  understanding that your position is that you were
19  removed from TST leadership after being copied on the
20  e-mail complaint; is that correct?
21    A.   I believe the dissolution of the so-called
22  guild structure happened after that, yes.
23    Q.   Would you please describe the timeline and
24  connect for me the e-mail to the breakdown of the
25  guild structure?

Page 24

1        MR. KEZHAYA:  I'm going to interpose an
2  objection here.  We have a protective order that
3  limits this deposition to sexual abuse and cover-up.
4  I very intentionally did not ask any questions about
5  the guild structure.  We can get into it, but this is
6  outside the protective order that you-all asked for.
7        MS. TESORIERO:  Let me clarify.
8     Q.   I am trying to get to the allegation of a
9  cover-up.  If individuals were removed after being
10  copied on a sexual harassment complaint, I believe
11  that goes to cover-up.  I am only asking for you to
12  explain to me the connection between this complaint,
13  your knowledge of the complaint, and to the extent you
14  believe it led to your removal from the group.
15       MR. ROLLER:  If I can just say one thing
16  before you answer.  I have no objection to the line of
17  inquiry here without waiver of raising the scope of
18  the protective order.
19       MR. KEZHAYA:  Okay.  I'm just letting you
20  know now before we get into it further, I'm going to
21  cross-examine him further about the nature of the
22  guild structure, what did he do for TST.  This has a
23  very high likelihood of turning into a dispute that
24  I'm trying to avoid here.
25       MS. TESORIERO:  I am only asking about a

Page 25

1  specific incident that, based on the definition we
2  discussed, could constitute a cover-up.
3        MR. KEZHAYA:  Okay.
4     A.   I'm sorry.  Could you restate the question?
5  I know it's difficult.
6     Q.   One moment.  What is your basis for
7  believing that you personally were removed from TST
8  guild leadership because you were copied on an e-mail
9  complaint about sexual harassment?
10    A.   I do not understand that to be the cause
11  and effect.
12    Q.   Then I have no further questions on that
13  matter.
14    A.   Okay.
15    Q.   You mentioned briefly that the e-mail
16  complaint that Wylie Duffy brought to your attention
17  was not the only incident of -- actually, pause that
18  question one moment.  Strike that.
19       I know you and Mr. Kezhaya discussed your
20  understanding of sexual abuse.  For the purpose of my
21  questions, I'm going to tell you that my definition of
22  sexual abuse for these questions is any and all forms
23  of unwanted sexual contact, whether physical or
24  verbal, which would include but not be limited to
25  sexual harassment.  Do you understand that definition?



Page 34

1   questions.
2        THE VIDEOGRAPHER:  We are now going off the
3   record.  This marks the end of the deposition of David
4   Alan Johnson.  The time is now 10:27 a.m.
5        THE REPORTER:  Signature?
6        MR. ROLLING:  Yes.  We want to read it.
7        MR. KEZHAYA:  We'll need the transcript.
8        MS. TESORIERO:  Copy, please.
9          (Deposition concluded at 10:27 a.m.)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 36

1   outcome thereof;
2        I further certify that the witness before
3   examination was by me duly sworn to testify to the
4   truth, the whole truth, and nothing but the truth;
5        I further certify that the deposition, as
6   transcribed, is a full, true and correct transcript of
7   the testimony, including questions and answers, and
8   all objections, motions, and exceptions of counsel
9   made and taken at the time of foregoing examination
10   and was prepared pursuant to Washington Administrative
11   Code 308-14-135, the transcript preparation format
12   guideline;
13        I further certify that I am sealing the
14   deposition in an envelope with the title of the above
15   cause and the name of the witness visible, and I am
16   delivering the same to the appropriate authority;
17
18        IN WITNESS WHEREOF, I have hereunto set my hand,
19   and affixed my official seal this 30th day of
20   NOvember 2023.
21          _____
22          Cheryl Macdonald, CCR
23          Washington State Certified
24          Court Reporter
25          License No. 2498

Page 35

1             C E R T I F I C A T E
2
3   STATE OF WASHINGTON        )
4                    ) ss.
5   COUNTY OF KING         )
6
7      I, the undersigned Washington Certified Court
8   Reporter, pursuant to RCW 5.28.010, authorized to
9   administer oaths and affirmations in and for the State
10   of Washington, do hereby certify:
11      That the annexed and foregoing deposition
12   consisting of Page 1 through 34 was taken
13   stenographically before me and reduced to a typed
14   format under my direction;
15      I further certify that according to CR 30(e) the
16   witness was given the opportunity to examine, read and
17   sign after the same was transcribed, unless indicated
18   in the record that the review was waived;
19      I further certify that all objections made at the
20   time of said examination to my qualifications or the
21   manner of taking the deposition, or to the conduct of
22   any party, have been noted by me upon said deposition;
23      I further certify that I am not a relative or
24   employee of any such attorney or counsel, and that I
25   am not financially interested in said action or the

Page 37

1             D E C L A R A T I O N
2
3
4
5        I declare under penalty of perjury that I
6   have read my within deposition, and the same is true
7   and accurate, save and except for changes and/or
8   corrections, if any, as indicated by me on the
9   correction sheet hereof.
10
11
12          _____
13          DAVID ALAN JOHNSON
14
15
16
17
18
19      Dated this_____day of_____,
20   2023.
21
22
23
24
25   CHERYL MACDONALD, Court Reporter



November 17, 2023

THE SATANIC TEMPLE vs NEWSWEEK DIGITAL                                    David Johnson

Page 38

```
1
   MOBURG REPORTING
2  COURT REPORTERS & LEGAL VIDEO
   33400 9th Avenue South
3  Suite 207
   Federal Way, WA 98003
4  206-622-3110
5  _____
   PLEASE MAKE ALL CHANGES OR CORRECTIONS ON THIS SHEET,
6  SHOWING PAGE, LINE, AND REASON, IF ANY.  SIGN THIS
   SHEET, SIGN THE ACCOMPANYING SIGNATURE SHEET AND
7  RETURN AS PER INSTRUCTIONS IN COVER LETTER.
8  _____
   PAGE     LINE        CORRECTION AND REASON
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23              _____
                    (SIGNATURE)
24
25
   REPORTER: CHERYL MACDONALD
```

Page 39

```
1
                 MOBURG REPORTING
2           Court Reporters & Legal Video
          33400 9th Avenue South, Suite 207
3              Federal Way, WA 98003
          (206) 622-3110  FAX (206) 343-2272
4           E-mail: info@moburgreporting.com
5
6  TO:   Jeremy E. Roller           November 30, 2023
          Arete Law Group
7         1218 3rd Avenue
          Suite 2100
8         Seattle, WA 98101
9
   IN RE:  The Satanic Temple v. Newsweek
10
   DEPOSITION(S) OF: David Alan Johnson
11
   DATE OF DEPOSITION: November 17, 2023
12
13 A copy of the deposition transcript of the above-named
   is provided via E-transcript.  Please have the
14 deponent read the deposition, sign the correction
   sheet and declaration.  The signed correction sheet
15 and declaration should then, within 30 (thirty) days,
   be forwarded to:
16
               CHERYL MACDONALD
17
           33400 9th Ave. So.  #207
18
           Federal Way, Washington 98003
19
   who will then enclose them in the original transcript,
20 seal it, and forward it to Mr. Kezhaya for retention
   until the time of trial.
21
       If you have any questions, feel free to contact
22 me at the number listed above.
23 Sincerely,
24
   CHERYL MACDONALD, CCR
25
   CC: S. Tesoriero  M. Kezhaya
```

Page 40

```
1
        Certification of Court Rule and WAC Compliance
2
          The Satanic Temple v. Newsweek
3
     I, VALERIE SEATON, am an authorized representative of
4  MOBURG REPORTING and do hereby, under penalty of perjury,
   certify that Moburg Reporting and all court reporters
5  providing services in the above-captioned case on MOBURG
   REPORTING'S behalf will fully comply with all applicable
6  rules and regulations governing the provision of court
   reporting services, including, where applicable,
7  Washington Superior Court Rule 28(c)-(e) and WAC
   308-14-130(1).*
8
                                   11/30/23
9  _____   _____
   Valerie L. Seaton                 Date
10 President
   Moburg Reporting
11
12     *28(c)  Disqualification for Interest.  No deposition
   shall be taken before a person who is a relative or
13 employee or attorney or counsel of any of the parties, or
   is a relative or employee of such attorney or counsel, or
14 is financially interested in the action.
   28(d)  Equal Terms Required.  Any arrangement concerning
15 court reporting services or fees in a case shall be
   offered to all parties on equal terms.  This rule applies
16 to any arrangement or agreement between the person before
   whom a deposition is taken or a court reporting firm,
17 consortium, or other organization providing a court
   reporter, and any party or any person arranging or paying
18 for court reporting services in the case, including any
   attorney, law firm, person or entity with a financial
19 interest in the outcome of the litigation, or person or
   entity paying for court reporting services in the case.
20 28(e)  Final Certification of the Transcript.  The court
   reporter reporting a deposition shall not certify the
21 deposition transcript until after he or she has reviewed
   the final version of the formatted transcript.  A court
22 reporting firm, consortium, or other organization
   transmitting a court reporter's certified transcript
23 shall not alter the format, layout, or content of the
   transcript after it has been certified.
24     *308-14-130(1)  Offer arrangements on a case
   concerning court reporting services or fees to all parties
25 on equal terms.
```