USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/26/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE SATANIC TEMPLE, INC.,

Plaintiff,

-against-

NEWSWEEK MAGAZINE LLC,

Defendant.

---

1:22-cv-1343 (MKV)

**OPINION AND ORDER
GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT AND DENYING
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT**

MARY KAY VYSKOCIL, United States District Judge:

The Satanic Temple, Inc. ("The Satanic Temple" or "Plaintiff") brought this action against Newsweek Magazine LLC ("Newsweek" or "Defendant") seeking damages for numerous allegedly defamatory statements made in the article titled *Orgies, Harassment, Fraud: Satanic Temple Rocked by Accusations, Lawsuit*" published by Newsweek. [ECF No. 1-1], (the "Article"). After this Court's Opinion and Order on Defendant's motion to dismiss, only one statement, "Accounts of sexual abuse being covered up in ways that were more than anecdotal" (the "Article Statement"), remains at issue. *See Satanic Temple, Inc. v. Newsweek Mag. LLC*, 661 F. Supp. 3d 159, 176 (S.D.N.Y. 2023), [ECF No. 27]. Now before the Court are the parties' competing motions for summary judgment. [ECF Nos. 98, 109]. For the reasons set forth below, Defendant's motion for summary judgment is GRANTED and Plaintiff's motion for summary judgment is DENIED.

## FACTUAL BACKGROUND[1]

The Satanic Temple is an atheistic religious corporation. Pl. Resp. ¶ 1; Def. Resp. ¶ 1; Pl. Second Resp. ¶ 137. The Satanic Temple engages in various charitable activities and advocates

---

[1] The facts as stated herein are based on the parties' Rule 56.1 Statements in support of their motions for summary judgment and the opposing party's counterstatements. [ECF Nos. 100, 104, 113, 116, 121, 123]. All citations to "Pl. Resp. ¶" refer to ECF No. 116, which is Plaintiff's responses to Defendant's Rule 56.1 Statement. All citations to "Def. Resp. ¶" refer to ECF No. 113, which is Defendant's responses to Plaintiff's Rule 56.1 Statement. All citations to "Pl. Second Resp. ¶" refer to ECF No. 123. All citations to "Def. Second Resp. ¶" refer to ECF No. 121.

for the religious rights of its members though litigation and various forms of advocacy.  Pl. Resp. ¶ 3; Pl. Second Resp. ¶ 139.  The Satanic Temple publishes press releases, utilizes billboards, and participates in interviews to promote and advertise its activities, campaigns and specific political issues or initiatives.  Pl. Resp. ¶¶ 4–5, 7, 9, 10; Pl. Second Resp. ¶¶ 140–41, 143, 145–46.  The Satanic Temple engages in this conduct to ensure that the public is aware of the group and to help generate donations.  Pl. Resp. ¶¶ 6, 8; Pl. Second Resp. ¶¶ 142, 144.

Newsweek publishes the online news magazine *Newsweek* through its website.  Def. Resp. ¶ 3; Pl. Resp. ¶ 11.  Julia Duin[2] worked for Newsweek from September 1, 2021 until February 2023 and was hired to serve as the Newsweek religion reporter.  Pl. Resp. ¶ 18; Pl. Second Resp. ¶ 151; Def. Resp. ¶ 18.  Duin was considered a senior hire, Def. Resp. ¶ 3, because she had been a journalist for over forty-five years and had received multiple awards for her reporting.  Pl. Resp. ¶¶ 19–20; Pl. Second Resp. ¶¶ 152–53.  In addition, Duin had published six books about religion, served as a visiting and/or adjunct journalism professor at various universities, and has a master's degree in religious studies from Trinity Episcopal School for Ministry.  Pl. Resp. ¶¶ 21–23; Def. Resp. ¶¶ 32–33; Pl. Second Resp. ¶¶ 154–56.

In 2020, The Satanic Temple filed a lawsuit in the United States District Court for the Western District of Washington (the "Washington Lawsuit") asserting claims for defamation, among other claims, against several former members, including David Alan Johnson and Nathan Sullivan.  Pl. Resp. ¶¶ 13–14; Pl. Second Resp. ¶¶ 147–48.

On September 29, 2021, Duin received an email from Kevin Jones, a journalist with the Catholic News Agency, stating that some former members of The Satanic Temple had told him

---

[2] Duin was previously dismissed as a defendant in this case for lack of personal jurisdiction. *See Satanic Temple, Inc.*, 661 F. Supp. 3d at 167.

about The Satanic Temple's alleged use of "defamation lawsuits . . . to harass internal critics." Pl. Resp. ¶ 16; Def. Resp. ¶ 44; Pl. Second. Resp. ¶ 150. This email inspired Duin to pitch the Article, which is the subject of this lawsuit, to her direct supervisor, Juliana Pignataro, who was a U.S. Editor at Newsweek with the title of U.S. News Director. Def. Resp. ¶¶ 47, 28–29. Within a week of the pitch, all three of Newsweek's senior management—Pignataro, Nancy Cooper, the Global Editor in Chief of Newsweek, and Dayan Candappa, Chief Strategy and Content Officer of Newsweek—approved Duin to write the Article. Def. Resp. ¶¶ 53–54, 22; Pl. Resp. ¶ 57.

In researching the Article, Duin had contact with numerous former members of The Satanic Temple, some of whom served as sources for the Article. Def. Resp. ¶ 69. Duin communicated with two of the defendants in the Washington Lawsuit, David Alan Johnson and Nathan Sullivan. Pl. Resp. ¶ 24; Def. Resp. ¶ 68; Pl. Second Resp. ¶ 157. After those communications, Sullivan provided Duin with the contact information for Jinx Strange, which is a pseudonym for Paul Millirons, a former member of the Satanic Temple. Def. Resp. ¶¶ 71–72.

Duin emailed Strange to inquire of what chapter he was a part of before he left The Satanic Temple, and why he left. Pl. Resp. ¶¶ 31–32; Pl. Second Resp. ¶ 164. Duin's email to Strange did not contain any reference to or question about sexual abuse. Pl. Second Resp. ¶ 165. In response, Strange provided a three-page email with his experience as a former member of The Satanic Temple. Def. Resp. ¶ 73; Pl. Second Resp. ¶ 166. Included within this email Strange said that he had heard stories from other members and:

> [a] lot of times those things were anecdotal or unsupported, but sometimes they were very concerning. Screenshots or images of things and connections I hadn't seen before. Leaders posing happily with major alt-right media figures. Accounts of sexual abuse being covered up in ways that were more than anecdotal. Dozens of people kicked out for asking for financial records from this alleged-non-profit organization.

Pl. Resp. ¶ 33; Pl. Second Resp. ¶ 166.[3]  In his email response, Strange does not claim that he personally suffered any sexual abuse or that he personally witnessed any sexual abuse.  Def. Resp. ¶¶ 74–75.  Duin did not ask Strange any follow up questions.  Def. Resp. ¶¶ 79–80.

In addition to the above-mentioned research, Duin also communicated with Scott Malphas, another former member of The Satanic Temple.  Pl. Resp. ¶ 28; Pl. Second Resp. ¶¶ 160–62.  Duin also spoke with Dr. Joseph Laycock, the author of "*Speak of the Devil: How The Satanic Temple is Changing the Way We Talk about Religion*."  Pl. Resp. ¶¶ 45–46; Def. Resp. ¶¶ 84–85.  Finally, Duin interviewed Matt Kezhaya, General Counsel of The Satanic Temple, and Lucien Greaves, the spokesperson and co-founder of The Satanic Temple.  Pl. Resp. ¶¶ 40, 47; Def. Resp. ¶ 81; Pl. Second Resp. ¶¶ 169, 173.  Duin did not specifically ask Greaves about the Article Statement in their conversations.  Def. Resp. ¶ 83.

After concluding her research, Duin wrote the Article.  Def. Resp. ¶ 11.  Cooper was the sole editor of the Article.  Pl. Resp. ¶¶ 57–58; Def. Resp. ¶¶ 12–17, 25, 28.  Neither Cooper, nor anyone else at Newsweek, besides Duin, fact-checked the Article.  Def. Resp. ¶¶ 116–120.  Instead, they relied on Duin to fact check the Article.  Def. Resp. ¶¶ 116–120.  Duin represented in an email to Cooper that she had fact-checked the Article.  Pl. Resp. ¶ 64.[4]  Additionally, Cooper had faith

---

[3] Plaintiff does not dispute that Strange's email to Duin includes this quote, but cites to Strange's deposition testimony for the proposition that Strange did not personally witness any sexual abuse and therefore had no first-hand knowledge of the truth of the underlying stories he shared. Strange Depo. Tr. at 11:16-18.  After reviewing the cited deposition transcript, the Court deems this factual assertion admitted, insofar as what is asserted—*i.e.* that Strange's response to Duin he said what is quoted—is supported by the evidence in the record and is not controverted with citations to evidence that raises a genuine dispute of material fact.  *See* Local Civ. R. 56.1(c)–(d); *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004).

[4] Plaintiff does not dispute that Duin's email to Cooper says that Duin fact-checked the Article, but asserts that as it pertains to the Article Statement it was a lie. The Court deems this factual assertion admitted, insofar as this factual assertion is supported by the evidence in the record. Specifically, an email from Duin to Cooper states "Whew . . . have factchecked until I am buggy-eyed."  ECF No. 101–14.  Further, Cooper testified that Duin represented to her in an email that she had fact-checked the article. *See* Cooper Depo. Tr. at 183:13–17.  Other than its conclusory statement that the underlying truth of this statement is a lie, Plaintiff does not cite to specific evidence in the record to raise a genuine dispute of material fact.  (*See supra* note 3).

in Duin's reporting because she was hired specifically to serve as a religion reporter, had experience as a religion reporter, was interested in the topic, and knew what she was talking about. Pl. Resp. ¶¶ 59–62; Def. Resp ¶ 136; Pl. Second Resp. ¶ 182–83.  No one else at Newsweek other than Duin and Cooper had any substantive involvement in the Article.  Def. Resp. ¶¶ 13–14, 17.

Newsweek has Editorial Guidelines that require Newsweek journalists to "[r]each out for comment and give parties a time to respond" and note that "[i]f [Newsweek is] accusing a person or company of wrongdoing, [the article] must include fair comment."  Def. Resp. ¶ 57. Furthermore, the Editorial Guidelines state that "[w]hen writing about criminal charges or allegations, be specific and complete."  Def. Resp. ¶ 58.  Finally, the Editorial Guidelines also require that Newsweek journalists use "credible" sources.  Def. Resp. ¶ 65.

On October 29, 2021, Newsweek published the Article,  Pl. Resp. ¶ 70; Def. Resp. ¶ 7, which included the following:

> He hadn't been involved long when he came to feel that TST 'appeared to be an inept, rudderless organization that had accidentally risen to prominence through something of a disingenuous prank,' referring to the 2013 filming event in Florida. He soon left the group, then was leaked material about 'leaders posing happily with major alt-right media figures,' he wrote. *'Accounts of sexual abuse being covered up in ways that were more than anecdotal.* Dozens of people kicked out for asking for financial records from this alleged-non-profit organization.'

ECF No. 1-1 (emphasis added to indicate the Article Statement).

## PROCEDURAL HISTORY

Plaintiff initially filed its complaint asserting a single claim for defamation with respect to numerous statements in the Article.  [ECF No. 1].  Duin moved to dismiss the claims against her for lack of personal jurisdiction, [ECF Nos. 16, 17], and both Duin and Newsweek moved to dismiss the action for failure to state a claim, [ECF Nos. 19, 20], pursuant to Rule 12(b)(6).  The Court granted Defendant Duin's motion to dismiss and granted in part and denied in part Defendant

Newsweek's motion to dismiss for failure to state a claim. *See Satanic Temple, Inc.*, 661 F. Supp. 3d at 176. Before the Court now are the parties' competing motions for summary judgment with respect to the defamation claim on the sole remaining statement. [ECF Nos. 98, 109]. Pursuant to a request by Plaintiff, [ECF No. 111], the Court heard Oral Argument on the competing motions.

## **LEGAL STANDARD**

"Summary judgment is appropriate only when, 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' " *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 69 (2d Cir. 2015) (quoting Fed. R. Civ. P. 56(a)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine issue of material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* at 248. A material factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The Court's role here "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011). In determining whether the moving party is entitled to judgment as a matter of law, the court must "resolve all ambiguities and draw all justifiable factual inferences in favor of the party against whom summary judgment is sought." *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008); *see also Samuels v. Mockry*, 77 F.3d 34, 35 (2d Cir. 1996) ("Summary judgment is proper if, viewing all facts of record in a light most favorable to the non-moving party, no genuine issue of material fact remains for adjudication.") (citing *Anderson*, 477 U.S. at 247–50). The Court may not make factual findings, determine credibility of witnesses, or weigh evidence. *See Jeffreys v. City of New York,* 426 F.3d 549, 554 (2d Cir. 2005).

On a motion for summary judgment, the moving party bears the initial burden of demonstrating that it is entitled to judgment as a matter of law due to "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, the movant may discharge its burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322; *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017) (The moving party may satisfy this burden "in either of two ways: (1) by submitting evidence that negates an essential element of the non-moving party's claim, or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim.").

If the moving party satisfies its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citing *Anderson*, 477 U.S. at 249). But, "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Flores v. United States*, 885 F.3d 119, 122 (2d Cir. 2018) (quoting *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996)); *see also Jeffreys*, 426 F.3d at 554 ("[A] nonmoving part[y] . . . may not rely on conclusory allegations or unsubstantiated speculation . . . [and] must offer some hard evidence showing that its version of the events is not wholly fanciful.").

When ruling on cross-motions for summary judgment, "a court must evaluate each party's own motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Cayuga Nation v. Tanner*, 6 F.4th 361, 373 (2d Cir. 2021).

Under New York law a defamation plaintiff must establish: (1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or *per se* actionability. *See Armstrong v. Simon & Schuster*, 85 N.Y.2d 373, 380–81 (1995); N.Y. Pattern Jury Instr. Civil 3:34; *see also Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019) (citing *Celle v. Filipino Reporter Enterps. Inc.*, 209 F.3d 163, 176 (2d Cir. 2000) (citations omitted).

## DISCUSSION

The Satanic Temple moves for partial summary judgment as to liability and argues that the evidence demonstrates that all the required elements of defamation are satisfied and there are no genuine issues of material fact thereby entitling it to judgment as a matter of law. ("Pl. Mem." at 4–5, [ECF No. 103]). Newsweek opposes the motion, asserting that The Satanic Temple has failed to demonstrate two essential elements, falsity and actual malice, and therefore summary judgment is inappropriate. ("Def. Opp." at 1, [ECF No. 112]). The Satanic Temple replied. ("Pl. Reply," [ECF No. 112]).

Newsweek moves for summary judgment arguing that the evidence demonstrates that The Satanic Temple cannot meet its burden of demonstrating that the Article Statement is substantially false or that Newsweek published the Article Statement with actual malice. ("Def. Mem.," [ECF No. 99]). The Satanic Temple opposes the motion. ("Pl. Opp.," [ECF No. 115]). Newsweek replied. ("Def. Reply," [ECF No. 120]).

When ruling on competing motions for summary judgment the Court must evaluate each motion independently, on its merits, drawing all reasonable inferences against the moving party. *Cayuga*, 6 F.4th at 373. The Court is conscious of this standard and has carefully drawn all reasonable inferences against the party whose motion is under consideration, but since the motions here are mirror images of one another, for brevity the Court discusses the analysis in tandem.

I.    **THERE IS A GENUINE DISPUTE OF MATERIAL FACT REGARDING THE ARTICLE STATEMENT PRECLUDING JUDGMENT AS A MATTER OF LAW ON THE FALSITY ELEMENT.**

"Whether particular words are defamatory presents a legal question to be resolved by the court[ ] in the first instance." *Celle*, 209 F.3d at 177 (quoting *Aronson v. Wiersma*, 65 N.Y.2d 592, 593, 493 N.Y.S.2d 1006, 483 N.E.2d 1138 (1985)). "If any defamatory construction is possible, it is a question of fact for the jury whether the statements were understood as defamatory." *Purgess v. Sharrock*, 33 F.3d 134, 140 (2d Cir. 1994); *Kelly v. Schmidberger*, 806 F.2d 44, 46 (2d Cir. 1986) ("On a motion to dismiss or for summary judgment, the issue is not whether the court regards the language as libelous, but whether it is reasonably susceptible of such a construction.").

When a court interprets a publication in an action for defamation, "[t]he entire publication, as well as the circumstances of its issuance, must be considered in terms of its effect upon the ordinary reader." *Silsdorf v. Levine*, 59 N.Y.2d 8, 13, 462 N.Y.S.2d 822, 449 N.E.2d 716 (1983); *see also Celle*, 209 F.3d at 177 (quoting *Armstrong*, 85 N.Y.2d at 380) (a court "must give the disputed language a fair reading in the context of the publication as a whole"). "[T]he words are to be construed not with the close precision expected from lawyers and judges but as they would be read and understood by the *public to which they are addressed*." *Id.* (emphasis in original). If a statement is reasonably susceptible to multiple meanings, some of which are not defamatory, it is "for the trier of fact, not for the court acting on the issue solely as a matter of law, to determine in what sense the words were used and understood." *Davis v. Ross*, 754 F.2d 80, 83 (2d Cir. 1985).

The relevant portion of the Article, with the Article Statement emphasized here (but not in the Article), reads:

> He hadn't been involved long when he came to feel that TST 'appeared to be an inept, rudderless organization that had accidentally risen to prominence through something of a disingenuous prank,' referring to the 2013 filming event in Florida.

> He soon left the group, then was leaked material about 'leaders posing happily with major alt-right media figures,' he wrote. *'Accounts of sexual abuse being covered up in ways that were more than anecdotal.* Dozens of people kicked out for asking for financial records from this alleged-non-profit organization.'

In Newsweek's motion, it argues that the Article Statement is substantially true and therefore cannot be defamatory because the most straight forward interpretation of the Article Statement merely asserts that Jinx Strange, or other members of The Satanic Temple, were no longer involved with The Satanic Temple in part because they "heard about accounts of sexual abuse being covered up." Def. Mem. at 14–15. The Satanic Temple argues that the Article Statement does not merely convey that Strange, or other members, were aware of these allegations. Instead, The Satanic Temple asserts that the Article Statement "falsely implies the existence of 'leaked material' which shows sexual abuse and cover-up." Pl. Opp. at 6.

Conversely, in its motion The Satanic Temple argues that the Article Statement is false and defamatory because when read in context the Article Statement is reasonably interpreted as presenting an accusation that there are reports of sexual abuse that have been covered up by The Satanic Temple and those accounts are based on leaked materials. Pl. Mem. at 7–9. In opposition, Newsweek argues that read in context the Article Statement does not accuse The Satanic Temple of sexual abuse and cover up. Newsweek argues that instead it asserts "a former member of The Satanic Temple, Jinx Strange, was no longer involved with The Satanic Temple in part because he heard about accounts of sexual abuse being covered up." Def. Opp. at 13–14.

On Newsweek's motion, drawing all reasonable inferences in favor of The Satanic Temple the Court agrees that in the context of the Article an ordinary reader could reasonably understand the Article Statement to have a defamatory connotation. Specifically, The Satanic Temple argues that the "leaked materials" reference applies to the Article Statement and therefore, it is not just

relaying Strange's awareness of rumors, but is instead asserting that he received materials showing sexual abuse and cover ups occurring within The Satanic Temple.

> He soon left the group, *then was leaked material about* 'leaders posing happily with major alt-right media figures,' he wrote. 'Accounts of sexual abuse being covered up in ways that were more than anecdotal. Dozens of people kicked out for asking for financial records from this alleged-non-profit organization.'

ECF No. 1-1 (emphasis added). The Satanic Temple's interpretation is reasonable because the two quoted sections could lead a reasonable reader to connect them as the various pieces of information that Strange identified from the leaked materials. As both sides agree the Court needs to give the language a fair reading in the context of the publication as a whole. Here the Article Statement and the following statement are both fragment sentences following the sentence about Strange receiving leaked materials. Therefore, the way that the paragraph is written, punctuated, and structured could cause a reasonable reader to connect the sentence fragments as other topics that were covered in the allegedly leaked materials.

On The Satanic Temple's motion, drawing all reasonable inferences in favor of non-movant Newsweek, the Court agrees that in the context of the Article an ordinary reader also could reasonably interpret and understand the Article Statement merely to be conveying Strange's awareness of these rumors and that they were a reason that he left the organization.

> *He hadn't been involved long when he came to feel that TST* 'appeared to be an inept, rudderless organization that had accidentally risen to prominence through something of a disingenuous prank,' referring to the 2013 filming event in Florida. He soon left the group, then was leaked material about 'leaders posing happily with major alt-right media figures,' he wrote. 'Accounts of sexual abuse being covered up in ways that were more than anecdotal. Dozens of people kicked out for asking for financial records from this alleged-non-profit organization.'

ECF No. 1-1 (emphasis added).  This is also a reasonable interpretation since when reading the Article Statement in context, as the parties agree the Court must, the section of the Article and the specific paragraph in which the Article Statement appears is discussing Jinx Strange's experience with and his feelings about The Satanic Temple.  Additionally, the reference to leaked materials is in a separate sentence then the Article Statement, so a reasonable reader could interpret that reference to apply only to the preceding sentence discussing of leaders of The Satanic Temple posing with alt-right media figures statement.

Based on Newsweek's reasonable interpretation of the Article Statement, Newsweek argues that the Article Statement is true because Strange testified that the Article Statement was "some of the reasons that [he] was not involved with TST or had -- had left the organization, and that was part of a list of things that concerned [him]."  Strange. Depo. Tr. at 11:7–13.  Thus, if a jury were to determine that a reasonable reader would interpret the Article Statement as Newsweek proposes, as opposed to how The Satanic Temple proposes, then the Article Statement could be found to be true based on this evidence and therefore not defamatory.

In sum, in reviewing each of the motions and drawing all reasonable inferences in favor of the non-moving party, the Court concludes that the Article Statement is reasonably susceptible to multiple meanings, some of which are non-defamatory, and thus the Court cannot conclude as a matter of law that the Article Statement is false and defamatory or true and not defamatory.  *See Electra v. 59 Murray Enterprises, Inc.*, 987 F.3d 233, 259 (2d Cir. 2021) (rejecting appellants argument that the challenged statements were false and defamatory based on their proposed "most obvious interpretation" as "without merit" because the other side's alternative interpretation was also "a reasonable interpretation" and it was "for the trier of fact, not for the court acting on the issue solely as a matter of law, to determine in what sense the words were used and understood")

(internal quotations and citations omitted). Because the Article Statement is susceptible to multiple meanings, some of which are non-defamatory, the Court cannot conclude as a matter of law whether the Article Statement is false and defamatory or true and not defamatory.

## II. THERE IS INSUFFICIENT EVIDENCE IN THE RECORD FOR A REASONABLE JURY TO FIND THAT NEWSWEEK PUBLISHED THE ARTICLE STATEMENT WITH ACTUAL MALICE.

Newsweek argues that even if the Article Statement is defamatory, it is entitled to summary judgment because the evidence demonstrates "that The Satanic Temple cannot meet its burden of demonstrating by clear and convincing evidence" that "Newsweek published the Article Statement with actual malice." Def. Mem. at 1; Def Opp. at 18. The Satanic Temple argues that the appropriate standard is negligence, but that even if the actual malice standard applies, there is sufficient evidence for a reasonable jury to find actual malice. Pl. Mem. at 13, 18; Pl. Opp. at 5.

### A. The Actual Malice Standard Applies.

Newsweek asserts that actual malice is an essential element of The Satanic Temple's defamation claim under New York's anti-SLAPP statute. Def. Mem. at 17, Def. Opp. at 18. Alternatively, Newsweek states, in a footnote, that even if the anti-SLAPP statute does not apply, The Satanic Temple is a "limited purpose public figure" and thus actual malice is required to prevail on a defamation claim. Def. Mem at 17 n.5; Def. Opp. at 18 n.8.

The Satanic Temple argues that it is a private figure and the Article Statement covers a matter of private concern so it need only demonstrate negligence. Pl. Mem. at 13–18; Pl. Opp. at 15–17. The Satanic Temple also argues that even if the Court finds that the actual malice standard applies then it is nonetheless satisfied because Newsweek did not follow its own Editorial Guidelines. Pl. Mem. at 18–25; Pl. Opp. at 18–19.

1. *The New York Anti-SLAPP Law Applies.*

The New York anti-SLAPP law states:

> In an action involving public petition and participation, damages may only be recovered if the plaintiff, in addition to all other necessary elements, shall have established by clear and convincing evidence that any communication which gives rise to the action was made with knowledge of its falsity or with reckless disregard of whether it was false, where the truth or falsity of such communication is material to the cause of action at issue.

N.Y. Civ. Rights Law § 76-a(2).  As a federal court sitting in diversity in this defamation action we are governed by the substantive law of the state, including the substantive provisions of the New York anti-SLAPP law.  *See La Liberte v. Reid*, 966 F.3d 79, 86 n.3 (2d Cir. 2020) (distinguishing between the applicability in federal court of substantive and procedural elements of state anti-SLAPP laws); *see also Coleman v. Grand*, 523 F. Supp. 3d 244, 258 (E.D.N.Y. 2021) ("The anti-SLAPP provision at issue here, § 76-a, applies in federal court because it is manifestly substantive, governing the merits of libel claims and increasing defendants' speech protections.") (internal quotations and citations omitted).  Therefore, if the Court finds that The Satanic Temple's defamation claim is "[a]n action involving public petition and participation," as defined by in New York's anti-SLAPP law, The Satanic Temple must establish actual malice.

The anti-SLAPP law defines an action involving public petition and participation as "a claim based upon: (1) any communication in a place open to the public or a public forum in connection with an issue of public interest."  N.Y. Civ. Rights Law § 76-a(1)(a).  The Court finds that this action does involve a "communication in a place open to the public or a public forum," because the Article Statement was published on Newsweek's online website. Def. Resp. ¶¶ 3, 7; Pl. Resp. ¶¶ 11–12, 70; *see Ctr. for Med. Progress v. Planned Parenthood Fed'n of America*, 551 F. Supp. 3d 320, 332 (S.D.N.Y. 2021), *aff'd sub nom*, *Daleiden v. Planned Parenthood Fed'n of*

*America*, No. 21-CV-2068, 2022 WL 1013982 (2d Cir. Apr. 5, 2022) (concluding that "[t]he present case clearly falls within the scope of the newly amended anti-SLAPP law" because the challenged statements were published on Twitter and Rewire News which "are both open to the public").

The Court also finds that the Article Statement falls within the statute's intentionally broad definition of a communication "in connection with an issue of public interest." The anti-SLAPP law expressly provides that the term " '[p]ublic interest' shall be construed broadly, and shall mean any subject other than a purely private matter." N.Y. Civ. Rights Law § 76-a(1)(d); *see Lindberg v. Dow Jones & Co., Inc.*, No. 20-CV-8231, 2021 WL 3605621, at *8 (S.D.N.Y. Aug. 11, 2021) ("In light of the extremely broad interpretation [of what qualifies as public interest] by New York courts," cases where "the subject matter was not a matter of legitimate public concern are extremely rare."). In particular, with the rise of the #MeToo movement and the public's growing awareness of and activism surrounding the topics of sexual misconduct, harassment, and abuse, the Court finds that the Article Statement—which addresses alleged accounts of sexual abuse being covered-up in an organized religion—an "issue of public interest." *See Watson v. NY Doe 1*, No. 19-CV-533, 2023 WL 6540662, at *3 (S.D.N.Y. Oct. 6, 2023) (finding that the anti-SLAPP statute applied to a lawsuit regarding online posts about statements that implicated the plaintiff in several acts of workplace sexual misconduct); *Coleman*, 523 F. Supp. 3d at 259 (concluding that "allegations of sexual impropriety and power dynamics in the music industry, as in others, were indisputably an issue of public interest"); *Goldman v. Reddington*, No. 18-CV-3662, 2021 WL 4099462, at *4 (E.D.N.Y. Sept. 9, 2021) (concluding that the defendant's online posts accusing [the plaintiff] of sexual assault" and "criticism of the law enforcement investigation of her sexual-assault complaint" amounted to an issue of public interest). The Court finds that the Article

Statement addresses an idea or topic that is a "matter of political, social, or other concern to the community." *Abbott v. Harris Publ'ns, Inc.*, No. 97-CV-7648, 2000 WL 913953, at *7 (S.D.N.Y. July 7, 2000).

Because the Court concludes that New York's anti-SLAPP law is applicable, The Satanic Temple must demonstrate actual malice by clear and convincing evidence.[5]

> 2. *There Is Insufficient Evidence For A Reasonable Jury To Conclude That Newsweek Made The Article Statement With Actual Malice.*

"We have emphasized that the actual malice standard imposes on a plaintiff 'a heavy burden of proof, a burden that is designed to assure to the freedoms of speech and press that breathing space essential to their fruitful exercise.' " *Brimelow v. New York Times Co.*, No. 21-66-CV, 2021 WL 4901969, at *2 (2d Cir. Oct. 21, 2021) (quoting *Contemp. Mission, Inc. v. N.Y. Times Co.*, 842 F.2d 612, 621 (2d Cir. 1988) (internal quotation marks and citation omitted). On summary judgment, the question for the Court is "whether the evidence in the record could support a reasonable jury finding either that the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not." *Kipper v. NYP Holdings Co.*, 12 N.Y.3d 348, 354 912 N.E.2d 26 (2009) (quoting *Anderson*, 477 U.S. at 255–256).

To demonstrate actual malice a plaintiff must show that an allegedly defamatory "statement was made 'with knowledge that it was false or with reckless disregard of whether it was false or not.' " *Palin*, 940 F.3d at 809 (quoting *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 173–

---

[5] Because the Court determined that the actual malice standard applies to this action due to New York's anti-SLAPP law the Court need not determine if Plaintiff is a limited purpose public figure. And in any event, Defendant bears the burden of establishing that Plaintiff is a public figure, *Coleman*, 523 F. Supp. 3d at 255, and it fails to do so by merely asserting in a footnote that The Satanic Temple is a public figure and listing the elements required to establish a plaintiff as a limited purpose public figure. *See* Def. Mem. at 17, n.5. That is insufficient. *See Sulzer Mixpac AG v. A&N Trading Co.*, 988 F.3d 174, 182 n.5 (2d Cir. 2021) (issues raised in only a footnote are insufficient and generally deemed waived).

74 (2d Cir. 2001)).  The standard is a subjective one, meaning that to satisfy this burden the plaintiff needs to allege that the defendant actually possessed knowledge that the statement was false or a "high degree of awareness of [the statement's] probable falsity."  *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964); *see also Liberman v. Gelstein*, 80 N.Y.2d 429, 438, 605 N.E.2d 344 (1992) ("[T]here is a critical difference between not knowing whether something is true and being highly aware that it is probably false. Only the latter establishes reckless disregard in a defamation action.").

A defendant's subjective mental state "revolves around facts usually within the defendant's knowledge and control, and rarely is admitted."  *Dalbec v. Gentleman's Companion, Inc.*, 828 F.2d 921, 927 (2d Cir. 1987).  As such, "a court typically will infer actual malice from objective facts."  *Celle*, 209 F.3d at 183.  For instance, "[a]ctual malice can be established through the defendant's own actions or statements, the dubious nature of [its] sources, and the inherent improbability of the story among other circumstantial evidence."  *Id.* (internal quotation marks omitted).  In cases "involving the reporting of a third party's allegations, recklessness may be found where there are *obvious reasons* to doubt the veracity of the informant or the accuracy of his reports."  *See Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989) (internal citations and quotations omitted) (emphasis in original).

Newsweek argues that there is insufficient evidence in the record from which a reasonable jury could find, by clear and convincing evidence, that Newsweek made the Article Statement with actual malice.  Def. Mem. at 17; Def. Opp. at 19.  The Satanic Temple asserts that there is sufficient evidence, viewed in the aggregate, to support the conclusion that Newsweek made the Article Statement with actual malice because the Article Statement was: (1) not specific or fact-checked;

(2) not responded to by The Satanic Temple; and (3) supplied by incredible sources, all of which are violations of Newsweek's own Editorial Guidelines.  Pl. Mem. at 18; Pl. Opp. 19.

>    **a.  Newsweek's Alleged Failure To Follow Its Own Editorial Guidelines Is Insufficient To Support A Finding Of Actual Malice.**

As an initial matter, The Satanic Temple's argument that this "case presents the need for only a single yardstick, the Editorial Guidelines because those establish . . . Newsweek's subjective standard of care" is mistaken.  Pl. Mem. at 18; Pl. Opp. at 18.  As the Court outlined above, actual malice is demonstrated when there is evidence that the Article Statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not." *Palin*, 940 F.3d at 809.  Thus, evidence that Newsweek allegedly failed to follow its own internal Editorial Guidelines, without more, does not satisfy the actual malice requirement.  *See Harte-Hanks Commc'ns, Inc.*, 491 U.S. at 665 (holding that "an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers' cannot alone support a verdict in favor" of finding actual malice); *Khan v. New York Times Co.*, 269 A.D. 2d 74, 77, 710 N.Y.S.2d 41 (1st Dep't 2000) (A " 'reckless disregard' for the truth requires more than a departure from reasonably prudent conduct.").  The Satanic Temple simply pointing to alleged violations of the Newsweek Editorial Guidelines is insufficient evidence to support a finding of actual malice.  *See Brimelow*, No. 21-66-CV, 2021 WL 4901969, at *3 ("[n]or are we persuaded by [the plaintiff's] attempts to find additional support in the Complaint's references to the [defendant's] alleged departure from 'accepted newsgathering standards' and its 'own commitment to fairness and impartiality' ").

However, because "a court typically will infer actual malice from objective facts," including "defendant's own actions or statements, the dubious nature of [its] sources, and the

inherent improbability of the story among other circumstantial evidence," *Celle*, 209 F.3d at 183, the Court will analyze the conduct underlying each of the alleged Editorial Guideline violations to determine if they could amount to evidence sufficient for a reasonable jury to find, by clear and convincing evidence, that Newsweek made the Article Statement with actual malice.

> **b. Even In the Aggregate the Evidence is Insufficient For a Reasonable Jury to Conclude That Newsweek Published The Article Statement With Actual Malice.**

First, Newsweek argues that Cooper was reasonable in relying on Duin's good reputation, extensive experience, and representations that the Article, (including the Article Statement), was accurate and the Court should therefore not consider Duin's state of mind.  Def. Mem. at 19; Def. Reply at 8–9; Def. Opp. at 20.  The Satanic Temple argues that Newsweek cannot escape liability by simply stating that it relied on its reporter.  Pl. Mem. at 21; Pl. Opp. at 25.

In support of its argument Newsweek first points to *Stern v. Crosby*, which granted a book publisher's motion for summary judgment when a plaintiff offered evidence only that the author of the book, but not the publisher, acted with actual malice.  645 F. Supp. 2d 258, 284–85 (S.D.N.Y. 2009).  Next, Newsweek relies on *Tzougrakis v. Cyveillance, Inc.*, which granted a magazine publisher's motion for summary judgment because in the absence of "obvious reasons to doubt the truth of the article" it was not "grossly irresponsible" for a publisher to rely on "a trusted reporter's, representations without rechecking her assertations or retracing her sources." 145 F. Supp. 2d 325, 332 (S.D.N.Y. 2001).  Finally, Newsweek points to *Chaiken v. VV Pub. Corp.*, which granted a newspaper's motion for summary judgment and concluded that it was not "grossly irresponsible" when it "relie[d] upon the integrity of a reputable author and ha[d] no serious reasons to question the accuracy of the information provided by that author."  119 F.3d 1018, 1032 (2d Cir. 1997).

However, since those cases were decided the Second Circuit has ruled that, "[w]hen actual malice in making a defamatory statement is at issue, the critical question is the state of mind of those responsible for the publication." *Palin*, 940 F.3d 804 (concluding that the state of mind of the author of the relevant editorial was what was relevant to the actual malice determination). Moreover, the Second Circuit has held that "[w]hen there are multiple actors involved in an organizational defendant's publication of a defamatory statement, the plaintiff must identify the individual responsible for publication of a statement, and it is that individual the plaintiff must prove acted with actual malice." *Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 123 (2d Cir. 2013). Here, the Satanic Temple has identified Cooper, as the editor of the Article, and Duin, as the author of the Article, as the individuals responsible for publication of the Article Statement by Newsweek. Therefore, the Court will consider evidence of both Cooper's and Duin's states of mind in determining whether there is sufficient evidence for a jury to find actual malice.

> i.    *The Evidence of Cooper' State of Mind Does Not Support a Finding of Actual Malice.*

The Satanic Temple argues, both in support of its own motion for summary judgment and in opposition to Newsweek's motion, that Cooper, as the editor of the Article, generally failed to follow the Editorial Guidelines of Newsweek and also had a personal bias against The Satanic Temple. Pl. Mem. at 19, 24; Pl. Opp. at 24. Newsweek argues that The Satanic Temple cannot point to any evidence that Cooper entertained serious doubts as to the truth of the Article Statement. Def. Mem. at 19–20; Def. Opp. at 21.

The Satanic Temple cites to Cooper's deposition testimony where she admits that she does not know specifically who was sexually abused, what sexual abuse entailed, who engaged in the cover up, or what the cover up entails, Cooper Depo. Tr. at 207:12–25–208:1–5, and contends this

is evidence of her failing to follow Newsweek's Editorial Guidelines requiring specific and complete allegations of criminal wrongdoing. Pl. Mem. at 19. But this lack of knowledge about the underlying facts of the Article Statement does not amount to evidence of actual malice. *See Liberman*, 80 N.Y.2d at 438, ("[T]here is a critical difference between not knowing whether something is true and being highly aware that it is probably false. Only the latter establishes reckless disregard in a defamation action."); *see Contemp. Mission, Inc.*, 842 F.2d at 622–23 (plaintiffs "must come forward with sufficient facts to enable a jury to find by clear and convincing evidence that the [newspaper or the author] in particular, acted with malice in the constitutional sense, i.e., with knowledge that the statements made were false or with reckless disregard of the truth").

Cooper's alleged failure to further investigate the answers to these questions also does not amount to evidence of actual malice because there is no evidence that Cooper had any obvious reason to doubt the Article Statement. *See Dongguk Univ.*, 734 F.3d at 124 ("a publisher who does not already have obvious reasons to doubt the accuracy of a story is not required to initiate an investigation that might plant such doubt") (internal quotations and citation omitted); *see also Gertz,* 418 U.S. at 332 ("mere proof of failure to investigate, without more, cannot establish reckless disregard for the truth"). On the contrary the only evidence in the record is that Cooper did not have a reason to doubt the sources on which Duin relied (Cooper Depo. Tr. at 155:1–10, 176:7–15–177:9–12, 206:8–9), she did not have a reason to doubt that Duin fully investigated the Article Statement (Cooper Depo. Tr. at 196: 4–7, 201:12–13, 203:11–13, 208: 15–23, 209:19–24), and she was confident that Duin fact-checked the Article Statement (Cooper Depo. Tr. at 140:21–24, 182:25–183:1–6, 183:13–17). None of the evidence put forward by The Satanic Temple shows—certainly not clearly and convincingly— that Cooper had subjective knowledge or a "high

degree of awareness of [the statement's] probable falsity," *Garrison*, 379 U.S. at 74 (1964), as required to create a genuine issue of material fact regarding actual malice.

The Satanic Temple claims also that Cooper was biased against The Satanic Temple, and that purported bias combined with her failure to investigate could support a jury's finding of actual malice. The Court disagrees. First, to support its claim that Cooper was biased, The Satanic Temple points to a single email chain between Duin and Cooper in which Cooper asks Duin, "[c]an you add a phrase about the abortion suit—that it's a piece of political theatre; they don't actually have an abortion ritual." ECF No. 105–22. In her deposition Cooper said, "I am assuming they don't actually have an abortion ritual, so, before we say that, let's make sure that either is the case or that it's a piece of political theater." Cooper Depo. Tr. at 167:20–15. The Court is entirely unconvinced that this single email posing a question to the Duin about The Satanic Temple amounts to evidence that Cooper was biased. Bare assertions of bias are insufficient. *See Contemp. Mission, Inc.*, 842 F.2d at 622–23 (assertions that the defendants "intentionally distorted and manipulated the truth in order to blacken [plaintiffs'] reputations" are insufficient because "bare assertions of ill will are not sufficient to establish a triable issue of actual malice.")

Even if this email were somehow illustrative of a personal bias that Cooper had against The Satanic Temple, without evidence to suggest that Cooper had serious reservations about the accuracy of the Article Statement or that she acted pursuant to that bias, this evidence is insufficient to create a triable issue of actual malice. *See Palin*, 940 F.3d at 814 (requiring more than "sheer political bias" to establish actual malice); *see also Brimelow*, No. 21-66-CV, 2021 WL 4901969, at *3 ("referencing the alleged ill will toward [the plaintiff] harbored by the [defendant]" and allegations of failure to adhere to standards were insufficient when there was "no basis for plausibly inferring that the [the defendant] had any doubts about the truth of its statements"). There

is insufficient— and certainly not clear and convincing—evidence in the record for a reasonable jury to conclude that Cooper acted with actual malice when publishing the Article Statement.

> ii.    *Evidence of Duin's State of Mind
> Does Not Support a Finding of Actual Malice*

In support of its own motion, and in opposition to Newsweek's motion, The Satanic Temple argues that a reasonable jury could conclude that Newsweek made the Article Statement with actual malice based on the aggregate evidence that Duin: (1) did not fact check or properly investigate the Article Statement, (2) relied on incredible sources, and (3) had a personal bias against The Satanic Temple.  Pl. Mem. at 19; Pl. Opp. at 19.  Newsweek argues that the evidence The Satanic Temple cites to does not amount to actual malice.  Def. Mem at 20; Def. Opp. at 22.

The Satanic Temple contends that Duin failed to properly investigate and fact-check the Article Statement and this is evidence of actual malice.  In support, The Satanic Temple provides evidence that Duin did not ask Strange follow-up questions about who specifically was sexually abused or what he meant by "cover up," and evidence that she did not ask Graves or Dr. Laycock about the Article Statement.  *See* Duin Depo. Tr. at 99:3–17, 123:10–18, 123:24–124:5, 136:9–13. However, these facts without evidence that Duin harbored any serious doubts or had uncertainties as to the accuracy of the Article Statement do not constitute proof of actual malice.  *See Gertz,* 418 U.S. at 332 ("mere proof of failure to investigate, without more, cannot establish reckless disregard for the truth"); *Dongguk Univ.*, 734 F.3d at 124 ("a publisher who does not already have obvious reasons to doubt the accuracy of a story is not required to initiate an investigation that might plant such doubt ") (internal quotations and citation omitted).

The record evidence demonstrates that Duin did not have any serious doubts about the truth of the Article Statement.  For example, Duin testified that she found the Article Statement "inherently plausible considering the account from the Seattle [members she interviewed], or the

interviews with the Seattle people . . . and the account from Scott . . . that what Jinx was saying was true." Duin Depo. Tr. at 121:23–35–122:1–4; 134:23–25. Furthermore, Duin testified that she looked into Strange's claims and "everything checked out." Duin Depo. Tr. at 122:19. She testified that there were many complaints about the alt-right figures, Duin Depo. Tr. at 122:11–23, and there were multiple people raising flags about The Satanic Temple's finances, including in Dr. Laycock's book. Duin Depo. Tr. at 123:1–4. Plus, Duin testified that she "found it plausible [Strange] was correct" because "there were plenty of people who were saying" the same or similar allegations, including in her "other interviews." Duin Depo. Tr. at 123:7–9; 165:1–5; 175:2–3; 185:2–3; 186:15–25–187:1–12. Therefore, The Satanic Temple merely pointing to potential negligent short comings in her research or investigation are insufficient to support a finding of actual malice. *See Kipper*, 12 N.Y.3d 348 at 355 ("plaintiff's reliance upon the [the defendant's] failure to employ fact-checkers, to attempt to verify the [challenged statement] . . . is misplaced . . . such proof of mere negligence does not suffice to establish actual malice by clear and convincing evidence") (internal quotations and original alterations omitted).

The Satanic Temple attempts to argue that Duin should have had obvious reasons to doubt the Article Statement because its source, Strange, was biased and semi-anonymous. Pl. Mem. at 22; Pl. Opp. at 21–22. This also does not satisfy the actual malice standard. While, relying on wholly anonymous sources can be circumstantial evidence of actual malice, the evidence here does not support that Duin relied wholly on anonymous sources. The evidence, as outlined above, shows that Duin relied on a whole multitude of sources before including the Article Statement. *See Biro*, 807 F.3d 546 (affirming a district court's conclusion that there was no evidence of actual malice because "none of the four sections of the Article containing the allegedly defamatory statements were based 'wholly' on information from unverified and anonymous sources"). While

it is true that the Article Statement was supplied to Duin by an individual who utilizes a pseudonym, the record evidence clearly demonstrates that Duin spoke with multiple other individuals, conducted her own research, including reviewing articles, books, and internet sources, and interviewed other individuals, including non-anonymous sources, which all supported her decision to include the Article Statement. *See* Duin. Depo. Tr. at 186:15–15; 188:1–6.

Furthermore, Duin relying on former members of The Satanic Temple whom she described as disgruntled, when there is no evidence that she had doubts about the truth of their statements, does not amount to evidence of actual malice. *See Sharon v. Time, Inc.*, 599 F. Supp. 538, 583 (S.D.N.Y. 1984) ("[B]ias on the part of sources does not necessarily create an issue of actual malice."); *see also Sweeney v. Prisoners' Legal Servs. of New York, Inc.* 84 N.Y.2d 786, 793–94, 647 N.E.2d 101 (1995) (The New York Court of Appeals held that a complaint from a "convicted felon who had been administratively disciplined . . . does not support the further inference that defendants were likely aware that [the felon's] allegations were probably false.").

The Satanic Temple further argues that Duin consciously avoided serious doubts by not asking Greaves about the Article Statement. Pl. Mem. at 20; Pl. Opp. at 21. However, this argument fails because, as the Court explained above, there is no evidence that Duin was faced with subjective doubts that would have required her to investigate further. *See Dongguk Univ.*, 734 F.3d at 124 ("a publisher who does not already have obvious reasons to doubt the accuracy of a story is not required to initiate an investigation that might plant such doubt "); *see also Sweeney*, 84 N.Y.2d at 793–94 ("Absent some direct evidence that defendants were aware of probable falsity, they cannot be found to have harbored an intent to avoid the truth."). The Satanic Temple has not pointed to, nor has the Court found, any evidence in the record that Duin had serious doubts as to the veracity of the Article Statement which would have required her to investigation further.

25

The Satanic Temple further argues that Duin's failure to investigate combined with her purported bias and "pattern of spreading rumors about sexual abuse and cover up" is sufficient evidence to support a finding of actual malice. Pl. Mem. at 23; Pl. Opp. 23. The Satanic Temple points to four prior articles Duin previously wrote as evidence of her bias against The Satanic Temple. ECF No. 105–9. However, a review of these articles cannot support the conclusion that Duin was biased against The Satanic Temple. To begin, none of the articles even discuss The Satanic Temple. *See generally* ECF No. 105–9. Additionally, the quotes to which The Satanic Temple points as evidence of Duin's supposed biased towards satanism more generally, *see Pl.* Mem. at 23; Pl. Opp. at 23, are explaining the various topics covered in a book, not Duin's thoughts, opinions, or views. *See* ECF No. 105–9 at 13. These articles are not probative evidence of Duin's purported bias against The Satanic Temple and do not support a finding of actual malice.

Similarly, the Court is also unpersuaded that the two articles Duin wrote that do mention The Satanic Temple, *see* ECF Nos. 105–10, 105–12, show any evidence that Duin was biased against The Satanic Temple because in these articles Duin is critiquing that state of journalism and only tangentially mentions The Satanic Temple. *See* ECF Nos. 105–10, 105–12. Finally, an email Duin sent to Cooper, dated October 28, 2021, ECF No. 101–14, on which The Satanic Temple relies for evidence of actual malice says, "TST is a religion (sounds cray, I know..)." ECF No. 101–14. Drawing all inferences in the favor of the non-moving party, the Court acknowledges that a jury could find this email to be evidence of some bias Duin may have had against The Satanic Temple. However, as explained already, evidence of bias is insufficient to support actual malice. *See Palin*, 940 F.3d at 814 (requiring more than "sheer political bias" to establish actual malice).

Viewing in the aggregate the evidence marshalled by The Satanic Temple there is not sufficient evidence in the record to support a finding that Newsweek made the Article Statement

with actual malice.  The Second Circuit's opinion in *Brimelow*, 2021 WL 4901969, at *3, is illustrative of the Court's conclusion.  In *Brimelow*, the Second Circuit clarified that although the Supreme Court in *Harte-Hanks* acknowledged that evidence of ill will and a newspaper's departure from accepted standards of reporting could be used as circumstantial evidence to support actual malice, it also "cautioned that courts must be careful not to place too must reliance on such factors."  2021 WL 4901969, at *3 (quoting *Harte-Hanks*, 491 U.S. at 667–68).  The Second Circuit went on to highlight that in *Harte-Hanks* the evidence of the newspaper's departure and motive were "supported by a host of other evidence" that the newspaper did in fact have serious doubts as to the truth of the challenged statement.  *Id.*  This evidence included the fact that the plaintiff and five other witnesses had denied the truth of the challenged statements directly to the newspaper.  *Id.*  Here, similar to *Brimelow* and unlike the record in *Harte-Hanks*, there is limited evidence of potential departures from professional standards, sparse evidence of bias, and a total lack of any evidence that Duin harbored any serious uncertainties or had any obvious reasons to doubt the truth of the Article Statement.  Based on the record before the Court, a reasonable jury could not conclude by clear and convincing evidence that Newsweek, through Cooper or Duin, made the Article Statement with actual malice.

## CONCLUSION

For the reasons described above, Defendant's motion for summary judgment is GRANTED and Plaintiff's motion for summary judgment is DENIED.  The Clerk of Court respectfully is requested to terminate the motions pending at ECF Nos. 98 and 109 and to close this case.

**SO ORDERED.**

**Date:  March 26, 2025**
**        New York, NY**

_____
**MARY KAY VYSKOCIL**
**United States District Judge**